1  **JENNER & BLOCK LLP**
David R. Singer (Cal. Bar No. 204699)
2  dsinger@jenner.com
633 West 5th Street, Suite 3600
3  Los Angeles, CA  90071-2054
Phone:       (213) 239-5100
4  Facsimile:      (213) 239-5199

5  **JENNER & BLOCK LLP**
Andrew H. Bart (*pro hac vice*)
6  abart@jenner.com
Jacob L. Tracer (*pro hac vice*)
7  jtracer@jenner.com
919 Third Avenue, 39th Floor
8  New York, NY  10022-3908
Phone:       (212) 891-1600
9  Facsimile:      (212) 891-1699

10  Attorneys for Defendant
The Trustees of Princeton University

11

12

13                     UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16

| | |
|---|---|
| 17  UAB "PLANNER5D" d/b/a PLANNER 5D, | Case No. 3:19-cv-03132-WHO |
| 18                      Plaintiff, | **NOTICE OF MOTION AND MOTION BY THE TRUSTEES OF PRINCETON UNIVERSITY TO DISMISS THE COMPLAINT** |
| 19        v. | |
| 20  FACEBOOK INC.; FACEBOOK TECHNOLOGIES, LLC; THE TRUSTEES OF | Complaint Filed:  June 5, 2019 |
| 21  PRINCETON UNIVERSITY; DOES 1-200; ABC CORPORATIONS 1-20; and XYZ | Hearing Date: November 6, 2019 Hearing Time: 2:00 p.m. |
| 22  UNIVERSITIES 1-20, | Judge:  Honorable William H. Orrick Courtroom:  2 |
| 23                      Defendants. | |
| 24 | |

25

26

27

28

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on November 6, 2019, at 2:00 p.m., or as soon thereafter as the Court is available, in Courtroom 2 of the federal courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant The Trustees of Princeton University ("Princeton") will and hereby does move the Court to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that the Complaint fails to state a claim upon which relief can be granted.

Princeton's motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice and exhibits attached thereto, any additional briefing on this subject, and any evidence and arguments that will be presented to the Court at the hearing on this matter.

Dated: August 2, 2019

JENNER & BLOCK LLP

By: /s/ *Andrew H. Bart*
Andrew H. Bart (*pro hac vice*)

Attorneys for Defendant
The Trustees of Princeton University

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ................................................................................................................3

I.      Planner 5D's Home Design Website...........................................................................3

II.     Planner 5D's Claims .................................................................................................4

LEGAL STANDARD ........................................................................................................5

ARGUMENT ....................................................................................................................5

I.      The Complaint Fails To State A Claim For Copyright Infringement. ....................6

        A.      The Complaint Fails To Allege Either That Planner 5D Complied With The Registration Requirement Contained In Section 411(a) Or Was Exempt From That Requirement. .......6

        B.      Because Planner 5D's Alleged Works Are "United States Works," Amendment Of The Complaint Would Be Futile. ..................................................................................10

                1.      Planner 5D's Alleged Works Are "United States Works." ....................................10

                        a.      Planner 5D Published Its Alleged Works By Making Them Available For Anyone To Download And Copy. ...........................................................11

                        b.      Planner 5D First Published Its Alleged Works Simultaneously Worldwide, Or At Least In The United States.............................................................12

                2.      Amendment Would Be Futile. .................................................................16

II.     The Complaint Fails To State A Claim For Misappropriation Of Trade Secrets. ...............16

        A.      Planner 5D Did Not Possess A Trade Secret In Data Files It Provided To Its Users Online. ................................................................................................................17

        B.      The Complaint Does Not Allege Princeton Used "Improper Means" To Obtain Downloads Of Planner 5D's Files.....................................................................................20

CONCLUSION ................................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

CASES

*Art of Living Foundation v. Does 1-10*,
No. 5:10-cv-5022-LHK, 2012 WL 1565281 (N.D. Cal. May 1, 2012) ..............................18

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) .........................................................................................................14

*Be In, Inc. v. Google Inc.*,
No. 12-cv-3373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013).................................20

*Broker Genius, Inc. v. Zalta*,
280 F. Supp. 3d 495 (S.D.N.Y. 2017) ........................................................................19, 20

*DeHoog v. Anheuser-Busch InBev SA/NV*,
899 F.3d 758 (9th Cir. 2018) ............................................................................................5

*DigitAlb, Sh.a v. Setplex, LLC*,
284 F. Supp. 3d 547 (S.D.N.Y. 2018)........................................................................6, 8, 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991).........................................................................................................8

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
139 S. Ct. 881 (2019).............................................................................................6, 8, 16

*Getaped.com, Inc. v. Cangemi*,
188 F. Supp. 2d 398 (S.D.N.Y. 2002)...........................................................................11, 12

*In re Providian Credit Card Cases*,
116 Cal. Rptr. 2d 833 (Cal. Ct. App. 2002) ......................................................................17

*Izmo, Inc. v. Roadster, Inc.*,
No. 18-cv-6092-NC, 2019 WL 2359228 (N.D. Cal. June 4, 2019)..................................16

*Kernal Records Oy v. Mosley*,
794 F. Supp. 2d 1355 (S.D. Fla. 2011), *aff'd on alternate grounds*, 694 F.3d 1294
(11th Cir. 2012)........................................................................................................passim

*Kwan v. SanMedical Int'l*,
854 F.3d 1088 (9th Cir. 2017) .........................................................................................5

*McKinney v. Carey*,
311 F.3d 1198 (9th Cir. 2002) .........................................................................................16

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*,
528 F.3d 1258 (10th Cir. 2008) ......................................................................................7

*Moberg v. 33T LLC*,
666 F. Supp. 2d 415 (D. Del. 2009)...............................................................................passim

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...................................................................................19

*Shropshire v. Canning*,
    809 F. Supp. 2d 1139 (N.D. Cal. 2011) ....................................................................15

*Sleep Science Partners v. Lieberman*,
    No. 09-cv-4200-CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010)........................11

*Teradata Corp. v. SAP SE*,
    No. 18-cv-3670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018).....................16

*Torres-Negron v. J & N Records, LLC*,
    504 F.3d 151 (1st Cir. 2007)......................................................................................7

*Veronica Foods Co. v. Ecklin*,
    No. 16-cv-7223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017).......................18

*Way.com, Inc. v. Singh*,
    No. 3:18-cv-4819-WHO, 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018)...................18

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ......................................................................17

*William Wade Waller Co. v. Nexstar Broadcasting, Inc.*,
    No. 4:10-cv-764, 2011 WL 2648584 (E.D. Ark. July 6, 2011) .................................11

**STATUTES**

17 U.S.C. § 101........................................................................................................passim

17 U.S.C. § 411........................................................................................................passim

18 U.S.C. § 1839...................................................................................................2, 17, 20

Cal. Civil Code § 3426.1.......................................................................................2, 17, 20

Cal. Com. Code §§ 2314-2316 ....................................................................................15

**OTHER AUTHORITIES**

Cal. Civil Code § 3426.1 Legislative Committee Comments-Senate; 1984 Addition  ............................19

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (2019) ......................10

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices (3d ed. 2017). ........................7

U.S. Copyright Office, Report on the General Revision of the U.S. Copyright Law
    (H.R. Comm. Print 1961)...........................................................................................7

Pursuant to Civil Local Rule 7-4, Defendant The Trustees of Princeton University ("Princeton") respectfully submits this memorandum of points and authorities in support of its Motion to Dismiss the Complaint filed by Plaintiff UAB "Planner5D," d/b/a Planner 5D ("Planner 5D") for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Planner 5D operates a home design website that allows users to create virtual interior design scenes using a library of virtual objects (such as tables, chairs, and sofas) to populate the scenes. The Complaint acknowledges that anyone who uses Planner 5D's website can access Planner 5D's objects and scenes. The Complaint also acknowledges that Planner 5D users can access and obtain downloads of those objects and scenes directly from Planner 5D. Nonetheless, Planner 5D alleges that when a team of Princeton researchers and students interested in the field of machine vision requested and obtained downloads of files that Planner 5D itself made publicly available on Planner 5D's own website and then used them for educational and research purposes, Princeton infringed Planner 5D's copyrights and misappropriated Planner 5D's trade secrets. But the very facts that Planner 5D alleges are fatal to its claims, and this lawsuit should be dismissed as a result.

*First*, the Complaint fails to contain threshold allegations required of all claims for copyright infringement. The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made" with the United States Copyright Office (the "Copyright Office") or the Copyright Office refuses to register the work. 17 U.S.C. § 411(a). The Supreme Court recently interpreted this provision to mean that a copyright action cannot be instituted until the Copyright Office actually grants or refuses to grant a certificate of registration; merely applying for a certificate is not enough. The Complaint does not allege that Planner 5D applied for registration, much less that the Copyright Office acted on any such application.

While this registration requirement applies only to "United States works," the Complaint does not allege that Planner 5D's alleged works are exempt from its application. Indeed, the Complaint says nothing at all about Planner 5D's position on this issue. If it is, in fact, Planner 5D's position that its alleged works are not United States works, it is required to identify in the Complaint the details as to whether and where

the works were first published so as to establish its entitlement to an exemption from the registration requirement. Because it is a plaintiff's burden to plead and ultimately prove that it complied with or was exempt from the Copyright Act's registration requirement, Planner 5D's silence on this critical threshold issue mandates dismissal of its claim for infringement.

Moreover, it is evident from the facts that are alleged in the Complaint that Planner 5D's alleged works *were* "United States works" within the meaning of the Copyright Act and therefore subject to the registration requirement. "United States works" include works that were first published online and were thus available to the entire world simultaneously or alternatively first published in the United States. Planner 5D's alleged works meet that standard. Planner 5D targeted its website to the United States and made downloads of the objects and scenes available to any of its millions of users (in the United States and worldwide). Accordingly, the Court should dismiss Planner 5D's claim for copyright infringement without prejudice to refile if and when Planner 5D obtains certificates of registration for any alleged works on which it seeks to base its claim or the Copyright Office refuses to issue such certificates.

*Second*, the same facts alleged in the Complaint leave no doubt that Planner 5D's claims for trade secret misappropriation fail as a matter of law and should be dismissed with prejudice. Planner 5D's alleged secrets were neither secret nor misappropriated. Numerous courts—including this one—have held that when a plaintiff makes information available through its own website, that information is publicly available and not a trade secret as a matter of law. That is what the Complaint concedes Planner 5D did here. Moreover, misappropriation requires proof that a defendant acted through "improper means," such as theft, bribery, misrepresentation, breach of a duty to maintain secrecy, or espionage. 18 U.S.C. § 1839(6); Cal. Civil Code § 3426.1(a). Planner 5D attempts to invoke certain Terms of Service that were allegedly applicable to its website to satisfy this requirement, but Planner 5D was not a party to those terms. Moreover, even if those Terms of Service could theoretically create contractual obligations in certain circumstances (that are not alleged in this action), they did not purport to create any duty to maintain the secrecy of any part of Planner 5D's website. Nor does Planner 5D specifically allege that Princeton (or anyone else) breached any such duty. The Complaint thus fails to allege any "improper means" within the meaning of federal or California trade secret law.

# BACKGROUND[1]

## I.   Planner 5D's Home Design Website

Planner 5D is a "private limited liability company organized under the laws of the Republic of Lithuania." Compl. ¶ 19. It is "not headquartered in the [United States]." *Id.* ¶ 30.

The Complaint alleges that in 2011, Planner 5D was founded "as a user-friendly home design tool that allowed anyone to quickly and easily create their own home, office, or landscape designs." *Id.* ¶ 27. Planner 5D offers its users access to a digital library of household objects including "structural features," "furniture," "bathroom appurtenances," "electrical appliances," and "exterior features," and it allows users to create virtual home design scenes by dragging those objects to or around floor plans and then moving, rotating, resizing, or otherwise manipulating the objects "to create the desired design." *Id.* Users can "toggle between two- and three-dimensional renderings" of their scenes, and they can rotate and tilt the 3D renderings "to any desired perspective." *Id.* Planner 5D alleges its website now has "over 40 million users worldwide," *id.* ¶ 28, and its object library now "contains over 4,500 objects," *id.* ¶ 29. Planner 5D also alleges that its collection of scenes—virtually all apparently created by users—now "includes over 1,000,000 scenes." *Id.* ¶ 30.

Planner 5D alleges that its website is powered by "Planner 5D's proprietary software," which can be "access[ed]" by anyone who "navigate[s] to the company's website, found at https://planner5d.com/." *Id.* ¶ 31. The software then "allows users to access individual objects and scenes." *Id.*

According to the Complaint, users' "access and use of the objects and scenes" made available by Planner 5D at the relevant time was subject to "Planner 5D's Terms of Service" (the "Terms of Service"). *Id.* In reality, Planner 5D was not a party to the Terms of Service, which purported to be an agreement "between you (either an individual or legal entity) and Farminers Limited ('Administration' or 'we' or 'us'), whose principal place of business is at: Midland Trust Limited, 177 Main Street, Road Town, Tortola,

---

[1] Unless otherwise noted, the facts described herein are drawn from the Complaint and accepted as true for the purposes of this motion only. Nothing in this submission should be read to suggest that Princeton agrees with any factual allegations in the Complaint.

British Virgin Islands, VG1110."  Request for Judicial Notice ("RJN"), Ex. 1 at 1.[2]  The Complaint does not plead facts sufficient to establish that the Terms of Service are enforceable by Planner 5D, nor does it identify any specific means other than the Terms of Service by which users' access to and use of the objects and scenes were limited.

## II.  Planner 5D's Claims

The Complaint alleges that in or before 2016, computer science researchers at Princeton[3] "determined that large sets of realistic, digitized, three-dimensional scene and object data were critical to their research" on machine vision and robotics.  Compl. ¶ 36.  According to Planner 5D, it was difficult to find such datasets, but the Princeton researchers "solved this problem" by "download[ing] all required data from Planner 5D."  *Id.* ¶ 38.  The Complaint alleges that the researchers later released this data to the public by posting it to a Princeton-hosted website and calling it the "SUNCG Dataset."  *Id.* ¶ 40.  The Complaint further alleges that Princeton aided Defendants Facebook Inc. and Facebook Technologies, LLC (collectively, "Facebook") in further distributing the SUNCG Dataset in 2018 as part of Facebook's first Scene Understanding and Modeling Challenge (the "SUMO Challenge").  *See id.* ¶¶ 47-48, 51.

On March 14, 2019, Planner 5D's counsel sent a letter to Princeton asserting copyright infringement and other claims but not alleging the presence or misappropriation of any trade secrets.  *See* RJN, Ex. 2.[4] On June 5, 2019, Planner 5D initiated this action alleging: (1) copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*; (2) trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; and (3) trade secret misappropriation under California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Proc. Code § 3426, *et seq.  See* Compl. ¶¶ 57-80.

---

[2] Because the Complaint quotes from the Terms of Service, *see* Compl. ¶¶ 31, 45, the Court may take judicial notice of the entire document.  *See* RJN at 1 (citing *Salinas Valley Memorial Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-cv-7076-LHK, 2019 WL 2569545, at *4 (N.D. Cal. June 21, 2019) (taking judicial notice of contract referenced in complaint)).

[3] While the Complaint defines "Princeton" to include "the university, its employees, agents, and others acting at its behest and direction," Compl. ¶ 22, that term is used herein to refer only to Defendant The Trustees of Princeton University (*i.e.*, the university and not its employees, agents, or others).

[4] As the Complaint references this letter, *see* Compl. ¶ 55, it is judicially noticeable.  *See* RJN at 1 (citing *Kao v. Abbott Laboratories Inc.*, No. 17-cv-2790-JST, 2017 WL 5257041, at *3 (N.D. Cal. Nov. 13, 2017) (taking judicial notice of party's letter referenced in complaint)).

The Complaint alleges that Planner 5D owns copyrights in the objects in Planner 5D's library and in compilations of those objects and scenes incorporating them. *See id.* ¶¶ 29-30. The Complaint does not allege that Planner 5D registered or attempted to register any of its alleged copyrights with the Copyright Office. Nor does the Complaint allege anything about whether any of Planner 5D's alleged works were "published" within the meaning of the Copyright Act, and if so, where any the alleged works were first published. *See* 17 U.S.C. § 101 (definition of "United States work"). Rather, all the Complaint claims is that these alleged works are copyrightable, that Planner 5D owns the copyrights, and that Princeton is liable for direct, contributory, and vicarious copyright infringement. *See* Compl. ¶¶ 58-62.

Planner 5D also alleges that that the files embodying the objects and scenes appearing on its website constitute trade secrets of the company. *See id.* ¶ 33. According to Planner 5D, Princeton misappropriated those trade secrets under both federal and California law by identifying those files on Planner 5D's website and obtaining downloads of them from Planner 5D. *Id.* ¶¶ 68 (DTSA claim), 76 (CUTSA claim).

## LEGAL STANDARD

Under the "now-familiar standard of *Twombly* and *Iqbal*," to survive a motion to dismiss "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint's "factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a court evaluating a motion to dismiss "must take all allegations of material fact as true," it should not take the same approach to legal conclusions, which "are not entitled to the assumption of truth." *Kwan v. SanMedical Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (internal quotations omitted). "Legal conclusions may provide a framework for a complaint, but 'they must be supported by factual allegations'" to survive a motion to dismiss. *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

All of Planner 5D's claims should be dismissed. With regard to Planner 5D's claim for copyright infringement, the Complaint fails to allege either that before instituting this lawsuit Planner 5D registered its alleged copyrights with the Copyright Office (or that the Copyright Office refused to register them) as

required by 17 U.S.C. § 411(a) ("Section 411(a)"), or that Planner 5D was exempt from the registration requirement.  Planner 5D's claims for trade secret misappropriation must also be dismissed because the Complaint fails to allege facts that create a plausible inference that Planner 5D owned a trade secret or that any alleged trade secret was misappropriated.

## I.      The Complaint Fails To State A Claim For Copyright Infringement.

It is manifest that Planner 5D's claim for copyright infringement must be dismissed as currently framed.  Contrary to the Supreme Court's recent decision in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the Complaint does not allege that Planner 5D registered its alleged works with the Copyright Office before instituting this litigation.  Nor does the Complaint allege that the Copyright Office refused to register any of Planner 5D's alleged works or that those alleged works are exempt from that registration requirement.  Without Planner 5D's pleading (and ultimately proving) one of those circumstances, this case cannot proceed.

The only issue, then, is whether Planner 5D can cure its failure by amending its Complaint.  It cannot.  Because Planner 5D made its alleged works publicly available online to anyone in the world who wanted to obtain a download of them, and directed its website to the United States, those alleged works are considered "United States works" under the Copyright Act and subject to the registration requirement.  Planner 5D's copyright claim therefore cannot be saved by mere repleading, and must instead be dismissed without prejudice to its right to refile after it obtains certificates of registration from the Copyright Office or the Copyright Office refuses to issue such certificates.

### A.      The Complaint Fails To Allege Either That Planner 5D Complied With The Registration Requirement Contained In Section 411(a) Or Was Exempt From That Requirement.

Any complaint alleging copyright infringement must plead either that the plaintiff complied with Section 411(a)'s registration requirement before instituting litigation or that the alleged work in question is exempt from the registration requirement.  *See Fourth Estate*, 139 S. Ct. at 887, 892; *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018).  Because the Complaint here does neither, Planner 5D's claim for copyright infringement cannot proceed.

The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made" with the Copyright Office or the Copyright Office refuses to issue a certificate of registration.  17 U.S.C. § 411(a).  Among other purposes, this registration requirement "allow[s] the Copyright Office to make an initial judgment about the validity of copyrights, based on its experience and expertise, and to reduce the burdens of litigation by giving that judgment some weight in subsequent litigation."  *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 161 (1st Cir. 2007).  As a result of the Copyright Office's examination of registration applications, "[m]any unfounded claims . . . are weeded out, thus avoiding needless controversy and litigation," and "[t]he courts and the public are assisted in construing the law."  U.S. Copyright Office, 87th Cong., Reg.'s Rep. on the General Revision of the U.S. Copyright Law 72 (H.R. Comm. Print. 1961).

The Copyright Office's examination of Planner 5D's claims of authorship and copyright ownership could be particularly helpful in focusing and resolving the issues in this case.  Planner 5D has made extravagant claims of copyright ownership, and it is unlikely that all of the alleged works to which the Complaint refers are copyrightable.  For example, Planner 5D alleges it owns copyrights in "realistic" digital models of real-world objects.  Compl. ¶ 5; *see also id.* ¶ 29.  However, such models are not copyrightable when they do not reflect any creative expression beyond the physical properties of those objects in the real world.  *See Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1265-67 (10th Cir. 2008).

Planner 5D also alleges it owns separate copyrights in the "data files" that embody its objects and scenes, as well as compilations thereof.  Compl. ¶¶ 29-30, 32.  However, it is not apparent from the Complaint that those data files would qualify as copyrightable works of authorship distinct from the objects and scenes they embody.  Likewise, it is not apparent that a compilation of those data files would qualify as a copyrightable work of authorship distinct from Planner 5D's asserted compilation of the objects and scenes themselves.  As a matter of Copyright Office practice, a data file is nothing more than a group of records from a database.  *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 727.1 (3d ed. 2017).

It is well established, moreover, that copyrights in compilations extend only to the author's selection, coordination, and arrangement of the included items.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 347-49 (1991).  The extent to which Planner 5D selected, coordinated, or arranged any of the compilations it alleges it owns is unknown.[5]  Without initial examination by the Copyright Office, the parties here would have to litigate all these claims of authorship and ownership and the Court would have to examine them in the first instance.

In *Fourth Estate*, the Supreme Court recently held that under Section 411(a), a "registration" is "made" only "when the Copyright Office registers a copyright."  139 S. Ct. at 886.  The Court also described the registration requirement contained in Section 411(a) as being "akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."  *Id.* at 887.  Thus, a copyright infringement action is subject to dismissal under Rule 12(b)(6) when Section 411(a) applies and the plaintiff fails to plead that it has preregistered or registered the copyright at issue or that the Copyright Office refused to register it.  *See id.* at 891 (affirming dismissal of the complaint under Rule 12(b)(6)).

As noted above, the registration requirement applies only to "United States work[s]."  17 U.S.C. § 411(a).  "United States work" is a defined term in the Copyright Act, and whether a work is a United States work turns largely on whether and where the work has been "published" ("publication" is also a defined term).  *See* 17 U.S.C. § 101.  However, a plaintiff believing that the registration requirement in Section 411(a) does not apply because its work is not a United States work "must allege that the work[ is] not [a] United States work[] within the meaning of § 101."  *DigitAlb*, 284 F. Supp. 3d at 555.  Critically, "the *omission* of allegations indicating that the work is a United States work" is insufficient, as otherwise "any party seeking to surmount the registration requirement could simply omit any allegation of first publication."  *Id.* (emphasis in original).

---

[5] While Planner 5D makes conclusory allegations that it created a compilation of over 1,000,000 scenes and owns the copyright therein, Compl. ¶ 30, it also appears that the scenes were virtually all created by users of Planner 5D's website who dragged and dropped Planner 5D's objects into the users' room designs and resized, repositioned, and otherwise altered the objects, *see id.* ¶¶ 30-32.  The Terms of Service, if enforceable at all, purport to grant Farminers Limited and its affiliates only a nonexclusive license with respect to such user-provided content.  *See* RJN, Ex. 1 at 2.  Thus, it is not apparent from the Complaint what compilation authorship might really be copyrightable by Planner 5D.

The Complaint here fails to allege either that Planner 5D complied with Section 411(a)'s registration requirement before instituting this lawsuit or that it was exempt from the requirement.  The Complaint does not allege that Planner 5D registered any works with the Copyright Office, preregistered any works, or even filed any registration applications that the Copyright Office refused.  Nor does the Complaint attach any certificates of registration from the Copyright Office.  This failure is reflected in the Report on the Filing or Determination of an Action or Appeal Regarding a Copyright submitted by the Northern District of California's clerk's office to the Copyright Office, which does not identify any copyright registration number in the Complaint.  *See* Report on the Filing or Determination of an Action or Appeal Regarding a Copyright, June 6, 2019, ECF No. 7.  If Section 411(a) applies to Planner 5D's alleged works, *Fourth Estate* plainly compels dismissal.

Nor does the Complaint allege that Planner 5D's works are exempt from the registration requirement because they are not "United States works" (or for any other reason).  The Complaint does not address this issue at all, avoiding any discussion of whether any of Planner 5D's alleged works were "published" and where any published works were "first published" within the meaning of the Copyright Act.  Instead, the Complaint makes conclusory allegations that the alleged works "were authored in Europe or Russia" by persons who are not "nationals, domiciliaries, or habitual residents of the U.S., or legal entities with headquarters in the U.S."  Compl. ¶ 29; *see also id.* ¶ 30.  However, those alleged facts as to authorship are not relevant to the publication status of the alleged works.  Indeed, some of those alleged facts are similar to averments specifically found by the court in *DigitAlb* to be insufficient to establish an exemption from the registration requirement under the current formulation of Section 411(a).  *See* 284 F. Supp. 3d at 555-56 (distinguishing between the locations where a work was created or developed and where a work was "first published").  Because the Complaint does not allege that Planner 5D's copyrights were registered or refused registration, and also fails to allege facts from which it can be concluded that Planner 5D's works are exempt from the registration requirement, Planner 5D's claim for copyright infringement cannot proceed.

**B.** **Because Planner 5D's Alleged Works Are "United States Works," Amendment Of The Complaint Would Be Futile.**

Despite Planner 5D's decision to ignore Section 411(a), the facts alleged in the Complaint nevertheless show that Planner 5D's alleged works were, in fact, "United States works." Accordingly, Planner 5D was required to attempt to register those alleged works with the Copyright Office before instituting this lawsuit, and its copyright infringement claim should be dismissed for its failure to do so. This failure cannot be cured by repleading, because an action for infringement of the copyright in a "United States work" cannot properly be instituted until a registration certificate has been obtained or refused.

1. Planner 5D's Alleged Works Are "United States Works."

Planner 5D's alleged works are subject to Section 411(a)'s registration requirement because it is apparent from the Complaint that those works were simultaneously published in the United States and other countries, or were first published in the United States, making those works "United States works" under the Copyright Act.

As relevant here, the Copyright Act considers a work to be a "United States work" if

> in the case of a published work, the work is first published—
> (A) in the United States;
> (B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States; [or]
> (C) simultaneously in the United States and a foreign nation that is not a treaty party[.]

17 U.S.C. § 101. For this purpose, the Copyright Act defines "publication" to mean in relevant part "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." *Id.* Based on this language, "a *sine qua non* of publication should be the acquisition by members of the public of a possessory interest in tangible copies of the work in question." Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 4.07[A] (2019).

Princeton is aware of only two reported cases addressing whether works posted online are "United States works" under the Copyright Act. *See Moberg v. 33T LLC*, 666 F. Supp. 2d 415 (D. Del. 2009); *Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355 (S.D. Fla. 2011), *aff'd on alternate grounds*, 694 F.3d

10

1294 (11th Cir. 2012).   The courts in those cases have adopted a two-step analysis: first, determining whether the works in question were first published online; and second, determining where any such publication occurred (and in particular whether the works were published simultaneously in the United States and every other country, or merely "in the country where the Internet site is located").   *Moberg*, 666 F. Supp. 2d at 421; *see also Kernal Records*, 794 F. Supp. 2d at 1360.   Although those courts disagreed in their application of this framework, it is clear here that the only plausible conclusion that can be drawn from the Complaint is that Planner 5D published its alleged works online, and that those works were first published in every country simultaneously, or alternatively were first published in the United States, making them "United States works."

> a.    *Planner 5D Published Its Alleged Works By Making Them Available For Anyone To Download And Copy.*

The definition of "publication" in Section 101 of the Copyright Act does not distinguish between online publication and publication in any other medium.   Whether copies are distributed online or otherwise, a work is considered published when there has been a "distribution of copies . . . to the public by sale or other transfer of ownership, or by rental, lease, or lending" or an "offering to distribute copies . . . for purposes of further distribution, public performance, or public display."   17 U.S.C. § 101.

Consistent with that clear statutory language, courts have found works to have been published by virtue of online posting when users were able to make or obtain copies of those works.   *Kernal Records*, 794 F. Supp. 2d at 1364 (a sound recording was published when it was "available for downloading and copying");[6] *see also William Wade Waller Co. v. Nexstar Broadcasting, Inc.*, No. 4:10-cv-764, 2011 WL 2648584, at *2 (E.D. Ark. July 6, 2011) (photographs were published when they were "accessible to others for distribution"); *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 400-02 & n.3 (S.D.N.Y. 2002) (software for pages of a website was published when it was transmitted to each visitor to the site and capable of being copied); *cf. Sleep Science Partners v. Lieberman*, No. 09-cv-4200-CW, 2010 WL 1881770, at *6 (N.D. Cal. May 10, 2010) (website published because it was made available to the public).

---

[6] The Eleventh Circuit disagreed with some of the district court's factual determinations in *Kernal Records*, but did not question this legal conclusion, and affirmed on other grounds.   *See* 694 F.3d at 1311.

As in all these cited cases, the facts alleged in the Complaint establish that Planner 5D's alleged works were first published when Planner 5D posted them online.  First, Planner 5D is, and since its founding has always been, an online business.  *See* Compl. ¶¶ 27-28.  There is no suggestion in the Complaint that Planner 5D might have first published its alleged works in physical form (*e.g*., in home design books), nor is it plausible that Planner 5D might have physically published 4,500 objects or 1,000,000 scenes.  *See id.* ¶¶ 29-30.

Second, the only plausible inference to be drawn from the Complaint is that Planner 5D made its alleged works available for downloading and copying online.  The Complaint concedes that Planner 5D's website "allows users to access individual objects and scenes," *id.* ¶ 31, is accessible to "anyone," *id.* ¶ 27, and in fact is alleged to be used by 40 million users, *id.* ¶ 28.  While Planner 5D tries to distinguish its objects and scenes from the data files that embody them, and asserts that users are not permitted to access or download those files, *id.* ¶ 32, that is precisely what it alleges researchers at Princeton did.  *See id.* ¶ 6 (cataloging locations of available data files and downloading them), ¶ 7 (downloading five gigabytes of data), ¶ 38 (downloading data).  The Complaint neither does nor could, in good faith, allege that Princeton's researchers or anyone else hacked into Planner 5D's servers in order to obtain the alleged works or otherwise circumvented any security measure in place to prevent the public from obtaining downloads of the alleged works.  Thus, the only plausible reading of the Complaint is that all users were able to download the alleged works, and that its references to what users are or are not permitted to do relate solely to the Terms of Service, not to how Planner 5D posted its objects and scenes to its website or whether it protected them from reproduction.  *See id.* ¶¶ 31-32.

Taken together, the allegations in the Complaint make clear that Planner 5D configured its website so that its alleged works were "not merely viewable . . . on the Internet," but "also available for downloading and copying."  *Kernal Records,* 794 F. Supp. 2d at 1364; *see also Getaped.com*, 188 F. Supp. 2d at 400-02.  Planner 5D therefore published its alleged works.

        b.    *Planner 5D First Published Its Alleged Works Simultaneously Worldwide, Or At Least In The United States.*

The courts in *Moberg* and *Kernal Records* disagreed as to the application of the second step of the analysis to the specific facts of each case: determining whether the publication of works online constituted

simultaneous first publication worldwide, rendering any works so published "United States works" under the Copyright Act. But, however this Court evaluates the interpretive dispute addressed in those decisions, Planner 5D's alleged works are United States works because they were either published simultaneously around the world or first published in the United States.

*Moberg* involved a series of photographs by a Swedish photographer that were "first published . . . on a German website." 666 F. Supp. 2d at 418. Some of those photographs were then re-posted on other websites. *See id.* When the photographer sued for infringement in the United States, the court found that the photographs were first published in Germany and not published simultaneously in the United States. In making that determination, the Court did not address the relevant statutory language but rather relied heavily on various policy concerns with requiring U.S. registration in the circumstances presented. *See id.* at 422-24.

In *Kernal Records*, the works at issue were a musical composition and sound recording created by a resident of Norway, which the plaintiff alleged were copied into a new composition and sound recording written and performed by the defendants. *See* 794 F. Supp. 2d at 1358. The court found that the plaintiff first authorized publication of the works by an online Australian magazine that made them "available for downloading and copying." *Id.* Based on the plain language of the Copyright Act, the court concluded that when a work is first published online worldwide, it is necessarily a "United States work" because "[t]here can be little dispute that posting material on the Internet makes it available at the same time—simultaneously—to anyone with access to the Internet." *Id.* at 1366. It rejected *Moberg*'s conclusion that an online posting did not constitute simultaneous online publication, finding its "policy-driven analysis" to be "wholly untethered to the actual statutory and treaty language that governs this dispute," *id.* at 1365, and "reflect[ing] a deference to certain goals of the Berne Convention at the expense of clear statutory language," *id.* at 1367. The Eleventh Circuit affirmed, disagreeing with some of the district court's factual determinations, but nevertheless concluding the plaintiff had failed to meet its burden of proving the work was not a "United States work" and thus was exempt from the registration requirement. *See* 694 F.3d at 1311.

Princeton respectfully submits that the analysis of *Kernal Records* is more persuasive.  As the court in *Kernal Records* recognized, consideration of this issue must begin with "the language of the statute itself."  794 F. Supp. 2d at 1365 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002) (internal quotations omitted).  Thus, when a statute is unambiguous, "judicial inquiry is complete."  *Id.* at 462 (internal quotations omitted).

The relevant language of the Copyright Act is unambiguous.  Any published work is a United States work if it is first published either "simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States" or "simultaneously in the United States and a foreign nation that is not a treaty party."  17 U.S.C. § 101.[7]  "Simultaneous" is not defined, and should therefore be given its ordinary meaning: "existing or occurring at the same time: exactly coincident."  *Kernal Records*, 794 F. Supp. 2d at 1366 (quoting Merriam-Webster Dictionary online).  Thus, if a work is first published online and made available to anyone with Internet access worldwide at the same time, it is a "United States work."  *See id.*

Here, the Complaint concedes that when the alleged works were published online, they were published to a "worldwide" audience of users.  Compl. ¶ 28.  While the Eleventh Circuit in *Kernal Records* noted factual ambiguity as to whether the first publication was actually made on a public website or through some more limited form of online communication, *see* 694 F. 3d at 1306-09, the Complaint in this action leaves no doubt about the scope of permitted access to Planner 5D's website.  Planner 5D's website "allowed *anyone* to quickly and easily create their own home, office, or landscape designs."  Compl. ¶ 27 (emphasis added).  Distribution of Planner 5D's objects and scenes to a worldwide public audience of 40 million users thus constitutes simultaneous worldwide publication.

---

[7] "Treaty party" is defined to mean "a country or intergovernmental organization other than the United States that is a party to an international agreement."  17 U.S.C. § 101.  "International agreement" is in turn defined to mean "(1) the Universal Copyright Convention; (2) the Geneva Phonograms Convention; (3) the Berne Convention; (4) the WTO Agreement; (5) the WIPO Copyright Treaty; (6) the WIPO Performance and Phonograms Treaty; and (7) any other copyright treaty to which the United States is a party."  *Id.*

1
2
3
4
5
6
7
8
9
10
11
12

However, even if this court were to take a more limited view of online publication, Planner 5D's alleged works still would be United States works, because Planner 5D targeted its publication to the United States.[8]  Planner 5D "is a Lithuanian corporation."  Compl. ¶ 30.  However, the Complaint does not suggest that it targeted the Lithuanian market for its alleged works.  To the contrary, the Terms of Service make clear that the principal target market for the Planner 5D website at the relevant time was the United States, and indeed this very state.[9]  Those terms include a choice of law clause specifying that California law is to apply, and a choice of forum clause identifying Santa Clara County.  *See* RJN, Ex. 1 at 4.  Consistent with that choice of law and forum, the Terms of Service were written in English (not Lithuanian), a point that is specifically noted therein.  *See id.*  The Terms of Service were also clearly formulated for the United States market, as they included terms such as disclaimers of implied warranties arising under the Uniform Commercial Code.  *Compare id.* at 3 (disclaiming implied warranties of merchantability and fitness), *with* Cal. Com. Code §§ 2314-2316 (providing for such warranties and their disclaimer).

13
14
15
16
17
18
19
20
21
22
23
24

Publication is defined in the Copyright Act as "distribution of copies . . . to the public."  17 U.S.C. § 101.  If this Court feels that it is appropriate to try to localize the first publication here to one or more markets targeted by Planner 5D, rather than the "worldwide" market addressed by Planner 5D's website, the country Planner 5D clearly tried to reach with its online publication was the United States.  That is where its distribution or publication of its alleged works should be considered to have occurred, even if Planner 5D transmitted those works into the United States from somewhere abroad.  *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146-47 (N.D. Cal. 2011) (distribution subject to U.S. law occurred when Canadian defendant distributed content into the U.S.).  A work first published in the United States is a United States work, regardless whether this Court finds *Kernal Records* or *Moberg* to be more persuasive concerning the question of worldwide simultaneous publication by virtue of posting on a website.

25
26

[8] Even the *Moberg* court acknowledged that an online first publication had to occur *somewhere*.  It understood the first publication there to have occurred "on a German website."  666 F. Supp. 2d at 418; *see also id.* at 419, 422, 423.

27
28

[9] Princeton does not believe that the Terms of Service are enforceable as a matter of contract law, and as noted earlier, Planner 5D is not a party to them.  Nonetheless, the Terms of Service are an unmistakable indicator of the intentions of the operator of the website Planner 5D claims to own.

2.     Amendment Would Be Futile.

Because Planner 5D's alleged works are "United States works," Section 411(a) requires Planner 5D to attempt to register them with the Copyright Office before any infringement action could be "instituted."  17 U.S.C. § 411(a).  As there is no indication that Planner 5D registered its alleged works before it filed this lawsuit or that the Copyright Office refused to register them, Planner 5D cannot cure that failure by attempting to register those works now and amending its Complaint in this case.

Section 411(a) is "akin to an administrative exhaustion requirement." *Fourth Estate*, 139 S. Ct. at 887.  In other contexts, the Ninth Circuit has interpreted administrative exhaustion requirements to prohibit amended pleadings when the original complaint was filed prematurely.  *See Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-6092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (citing *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002)).  In *McKinney*, the Ninth Circuit held that dismissal without prejudice was the proper remedy for failing to exhaust mandatory administrative remedies prior to filing suit even where the plaintiff was "in the process of" exhausting those remedies when the motion to dismiss was filed. 311 F.3d at 1199.  Because there is no indication that before filing this lawsuit Planner 5D registered its alleged works or unsuccessfully attempted to register them, dismissal is likewise appropriate here.

In the alternative, and at a minimum, the Court should dismiss Planner 5D's copyright claim with leave to amend the Complaint if Planner 5D represents that it plans to allege facts sufficient to demonstrate that the works were first published outside the United States, and if so, where they were first published. The Eleventh Circuit's decision in *Kernal Records* shows that it is ultimately the plaintiff's burden to prove compliance with Section 411(a) or exemption from the registration requirement.  *See* 694 F.3d at 1309. Planner 5D should be required to allege enough facts so that the Court can determine that threshold issue.

## II.     The Complaint Fails To State A Claim For Misappropriation Of Trade Secrets.

Planner 5D's claims for misappropriation of trade secrets under both federal and California state law are deficient as a matter of law and accordingly should be dismissed with prejudice.[10]

---

[10]  This Court has recognized that the elements of a claim for trade secret misappropriation "are substantially the same under the federal and state statutes."  *Teradata Corp. v. SAP SE*, No. 18-cv-3670-WHO, 2018 WL 6528009, at *3 (N.D. Cal. Dec. 12, 2018).  It is therefore appropriate to consider Planner 5D's two trade secret misappropriation claims together.

Both the federal Defend Trade Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("CUTSA") "require a plaintiff to show [1] that it possessed a trade secret, [2] that the defendant misappropriated the trade secret, and [3] that the defendant's conduct damaged the plaintiff." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019). Here, the Complaint claims that Planner 5D's trade secret is the data files embodying the objects and scenes on Planner 5D's website and alleges that Princeton researchers misappropriated that secret by obtaining downloads of that data from Planner 5D. *See* Compl. ¶¶ 33, 38. However, the Complaint concedes that Planner 5D allowed its users to obtain those downloads, consistent with the access Planner 5D provided on its website. On those allegations, Planner 5D fails to plausibly allege either of the first two elements of trade secret misappropriation.

### A.   Planner 5D Did Not Possess A Trade Secret In Data Files It Provided To Its Users Online.

It is evident why a plaintiff cannot claim trade secret protection in information the plaintiff itself made available online through its own website. Yet that is what Planner 5D seeks to do here. The plain language of the relevant statutes precludes such an argument.

Federal and California law define "trade secret" almost identically. Under the DTSA, in order to claim a trade secret, a plaintiff must demonstrate that its information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information" and that the plaintiff has "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3). Similarly, the CUTSA defines "trade secret" to mean information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use" and that is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civil Code § 3426.1(d). The Complaint fails to allege facts sufficient to satisfy either prong.

The threshold requirement for trade secret protection under either statute is that the alleged trade secret actually be a secret. "Public disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret." *In re Providian Credit Card Cases*, 116 Cal. Rptr. 2d 833, 842 (Cal. Ct. App. 2002). Thus, when owners make it possible to download or otherwise obtain their alleged trade secrets on their own

websites, trade secret misappropriation claims should be dismissed as a matter of law. *See Art of Living Foundation v. Does 1-10*, No. 5:10-cv-5022-LHK, 2012 WL 1565281, at \*19 (N.D. Cal. May 1, 2012) (dismissing claim that portions of manuals and teaching notes containing the text of a yoga meditation was a trade secret when that text was made available as a download from the plaintiff's website); *see also Veronica Foods Co. v. Ecklin*, No. 16-cv-7223-JCS, 2017 WL 2806706, at \*14 (N.D. Cal. June 29, 2017) (dismissing claim that entire customer list was a trade secret when the plaintiff posted a portion of that list to its website). Consistent with that principle, this Court has denied a motion for a preliminary injunction holding that the plaintiff was unlikely to prevail on the merits of its trade secret misappropriation claim because it made the customer list at issue available to the public on its own website. *See Way.com, Inc. v. Singh*, No. 3:18-cv-4819-WHO, 2018 WL 6704464, at \*10 (N.D. Cal. Dec. 20, 2018).

The facts alleged in the Complaint show that Planner 5D made the very files it contends are trade secrets accessible to the public and available for users to download online. First, Planner 5D concedes that it allows its 40 million users worldwide to access its library of objects and scenes. *See* Compl. ¶¶ 28, 31. Second, although Planner 5D attempts to distinguish between the objects and scenes to which users have access and the data files (and alleged trade secrets) that embody them, Planner 5D concedes that it was possible for Princeton researchers—or presumably anyone else—to locate the "object and scene files" on "Planner 5D web pages." *Id.* ¶ 43; *see also id.* ¶ 32. Third, Planner 5D alleges that the Princeton researchers obtained downloads of those files from Planner 5D's website, again presumably just as anyone else could have done. *See id.* ¶¶ 6, 7, 38. The Complaint does not (and cannot in good faith) allege that any Princeton researcher (or anyone else) hacked into Planner 5D's servers in order to download the files or circumvented any other security measure to do so. To the contrary, the Complaint makes clear that all the Princeton researchers allegedly did is find the files at the online locations where Planner 5D posted them ("cataloging the locations of all available objects and scenes") and then obtain downloads of those files. Compl. ¶ 6. The only plausible inference that can be drawn from that combination of alleged facts is that Planner 5D made its alleged trade secrets available online for users to download. Planner 5D's assertion that those files constitute a trade secret must therefore be rejected.

Further, Planner 5D fails to allege facts suggesting that it took any steps, let alone "reasonable" ones, to keep its alleged trade secrets secret. Such steps "have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on 'need to know basis,' and controlling . . . access." Cal. Civil Code § 3426.1 Legislative Committee Comments-Senate; 1984 Addition. Here, while the Complaint alleges in conclusory fashion that Planner 5D takes reasonable measures to preserve the secrecy of its alleged trade secrets, *see* Compl. ¶¶ 67, 75, that is a legal conclusion that is not entitled to any weight. *See supra* at 5 (citing *Kwan*, 854 F.3d at 1096). Critically, the Complaint alleges no *facts* that might support that legal conclusion. The Complaint does not allege that Planner 5D attempted to limit its users' ability to locate and obtain downloads of Planner 5D's alleged trade secrets from the Planner 5D website. To the contrary, and as explained above, it claims that Princeton's researchers did just that. *See supra* at 18.

While the Complaint does reference the Terms of Service applicable to Planner 5D's website, *see* Compl. ¶¶ 31, 45, that document does not provide any support for the argument that Planner 5D took reasonable steps to maintain the secrecy of its alleged trade secrets. As a threshold matter, the Terms of Service did not purport to protect Planner 5D but rather an entity called Farminers Limited. *See* RJN, Ex. 1 at 1. Moreover, even if Planner 5D was entitled to assert rights based on the Terms of Service, there is nothing in that document alleging that any portion of the Planner 5D website was confidential or requiring users to treat it as such. Without such an assertion, the Terms of Service alone do not show a reasonable effort to maintain secrecy. *See Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 521-22 (S.D.N.Y. 2017) (denying preliminary injunction as unlikely to succeed on the merits because plaintiff disclosed its alleged trade secrets to its users and its terms of service did not include a confidentiality provision). At most, the Terms of Service might create contract rights in appropriate circumstances,[11] but Planner 5D does not (and cannot) seek to invoke any such rights here. Even had it attempted to do so, the existence of potential contract rights is not evidence that Planner 5D took reasonable steps to protect the secrecy of its alleged

---

[11] As noted above, Princeton does not believe that the Terms of Service are enforceable as a matter of contract law. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) (holding that website users lacked constructive notice of "browsewrap" agreement available via website link).

1  trade secrets as required by law.  *See id.* at 510 (distinguishing between elements of breach of contract and
2  plaintiff's ability to prove the existence of a trade secret).

3      Finally, the Complaint alleges that in March 2019, Planner 5D wrote a cease-and-desist letter to
4  Princeton.  *See* Compl. ¶ 55.  Tellingly, however, that letter did not assert that any of Planner 5D's data
5  files were protectable trade secrets.  In fact, Planner 5D's letter raised multiple potential claims, but trade
6  secret misappropriation was not among them.  *See* RJN, Ex. 2.

7      The Complaint and the documents it references make clear that Planner 5D did not take any steps
8  to maintain the secrecy of the files it now contends are trade secrets.  Accordingly, Planner 5D's
9  misappropriation claims must be dismissed.

10     **B.    The Complaint Does Not Allege Princeton Used "Improper Means" To Obtain
           Downloads Of Planner 5D's Files.**

11

12     Finally, Planner 5D has failed to allege facts sufficient to demonstrate that Princeton researchers
13 used "improper means" to access and obtain downloads of content from Planner 5D's public website.  Both
14 the DTSA and the CUTSA require that to be actionable, a defendant's acquisition or use of a trade secret
15 be accomplished by "improper means."  18 U.S.C. § 1839(5); Cal. Civil Code § 3426.1(b).  The statutes
16 define "improper means" almost identically to include "theft, bribery, misrepresentation, breach or
17 inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but
18 not to include "reverse engineering" or "independent derivation."  18 U.S.C. § 1839(6); Cal. Civil Code
19 § 3426.1(a).

20     The only allegation in the Complaint that might be relevant to a consideration of "improper means"
21 is that the means by which Princeton researchers located and obtained downloads of Planner 5D's alleged
22 trade secrets was inconsistent with the Terms of Service.  *See* Compl. ¶¶ 31, 45, 68, 76.  However, such an
23 allegation falls far short of satisfying the burden of showing improper means. As explained above, the
24 Terms of Service neither purported to protect Planner 5D nor included a confidentiality provision.  *See*
25 *supra* at 19.  Thus, it did not create any duty to maintain secrecy running from Planner 5D users to Planner
26 5D.  Not surprisingly, since there was no duty of confidentiality, the Complaint fails to allege that Princeton
27 *breached* a duty to Planner 5D, which is an essential element of a claim for trade secret misappropriation
28 based on an alleged breach of a duty to maintain secrecy.  *See Be In, Inc. v. Google Inc.*, No. 12-cv-3373-

LHK, 2013 WL 5568706, at *3-4 (N.D. Cal. Oct. 9, 2013) (dismissing misappropriation claim for failure to specifically allege that defendant breached duty).  In short, while the Complaint alleges that Princeton researchers took actions inconsistent with the Terms of Service, it does not and cannot allege that those Terms of Service imposed a duty to maintain secrecy or that Princeton's researchers breached any such duty.  Therefore, Planner 5D's allegations are insufficient to form the basis of a claim that Princeton's researchers used improper means under trade secret law.

Because Planner 5D's users had no duty to maintain the secrecy of Planner 5D's alleged trade secrets and because Planner 5D does not identify any other allegedly improper means employed by Princeton, Planner 5D fails to state a claim for misappropriation.

## CONCLUSION

For the reasons stated above, all of Planner 5D's claims should be dismissed.  Planner 5D's claim for copyright infringement should be dismissed without prejudice to refile after Planner 5D obtains certificates of registration from the Copyright Office for all works on which it seeks to base its claim or the Copyright Office refuses to issue such certificates.  In the alternative, Planner 5D's claim for copyright infringement should be dismissed with leave to amend if Planner 5D represents that it plans to allege additional facts sufficient to demonstrate that the works were first published outside the United States. Planner 5D's claims for misappropriation of trade secrets should be dismissed with prejudice.

Dated:  August 2, 2019

JENNER & BLOCK LLP


By: /s/ *Andrew H. Bart*
    Andrew H. Bart (*pro hac vice*)

    Attorneys for Defendant
    The Trustees of Princeton University