Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (admitted *pro hac vice*)
johanna.schmitt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

May Eaton (S.B.N. 298123)
may.eaton@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Attorneys for Defendants
*Facebook Inc.*
*and Facebook Technologies, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>vs.<br><br>FACEBOOK INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20 and XYZ UNIVERSITIES 1-20,<br><br>Defendants. | CASE NO. 3:19-cv-03132-WHO<br><br>**FACEBOOK INC. AND FACEBOOK TECHNOLOGIES, LLC'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Complaint Filed: June 5, 2019<br><br>Hearing Date: November 6, 2019<br>Hearing Time: 2:00 p.m.<br>Judge: Honorable William H. Orrick<br>Courtroom: 2 |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 6, 2019 at the San Francisco Courthouse, Courtroom 2, 17th Floor, at 2:00 p.m. or as soon thereafter as the matter may be heard, before the Honorable William H. Orrick, United States District Judge for the Northern District of California, Defendants Facebook Inc. and Facebook Technologies, LLC (collectively, "Facebook") will and do hereby move for dismissal of Plaintiff UAB "Planner 5D" d/b/a Planner 5D's ("Planner 5D") Complaint for (1) copyright infringement, (2) trade secret misappropriation under the Defend Trade Secrets Act, and (3) trade secret misappropriation under the California Uniform Trade Secrets Act with prejudice.

Facebook seeks dismissal of the above-named claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the papers on file in this matter, the arguments of counsel, and any other matter the Court wishes to consider.

Dated: August 16, 2019

*/s/ Dale M. Cendali*
Dale M. Cendali

Attorney for Defendants
*Facebook Inc.*
*Facebook Technologies, LLC*

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION .................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................................... 2

        A.      Plaintiff Planner 5D ........................................................................................ 2

        B.      Defendant Facebook and Its Collaborative Machine Learning Research..................... 5

        C.      Planner 5D's Claims against Princeton and Facebook ................................. 6

III.    LEGAL STANDARD......................................................................................................... 7

IV.     ARGUMENT .................................................................................................................... 8

        A.      Planner 5D Fails to State a Claim for Copyright Infringement Against

                Facebook. ............................................................................................................. 8

                1.      The Complaint Does Not Allege Any of the Works Are Registered or

                        Are Exempt from Registration........................................................................ 8

                2.      The Complaint Fails to Specify the Works Owned by Planner 5D That

                        Are the Subject of Its Copyright Claims........................................................ 10

                3.      Planner 5D's Alleged Works Are Not Original or Creative. .......................... 12

        B.      Planner 5D Fails to State a Claim for Trade Secret Misappropriation against

                Facebook. ............................................................................................................. 17

                1.      Planner 5D Does Not Allege Ownership of a Trade Secret........................... 17

                2.      The Complaint Does Not Allege Improper Misappropriation by

                        Facebook. .................................................................................................. 20

V.      CONCLUSION.................................................................................................................. 21

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3

**Cases**

4

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ........................................................................................... 16

5

6

*Aqua Connect, Inc. v. Code Rebel, LLC*,
    No. 11 Civ. 5764 RSWL, 2012 WL 469737 (C.D. Cal. Feb. 13, 2012) ............................. 21

7

*Art of Living Found. v. Does 1-10*,
    No. 10 Civ. 5022 LHK, 2012 WL 1565281 (N.D. Cal. May 1, 2012) ............................... 18

8

9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 7, 19

10

*ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
    402 F.3d 700 (6th Cir. 2005) ............................................................................................ 14

11

12

*Auto. Data Sols. Inc. v. Directed Elecs. Can. Inc.*,
    No. 18 Civ. 01560 GW, 2018 WL 4751743 (C.D. Cal. May 21, 2018) ............................. 12

13

14

*Be In, Inc. v. Google Inc.*,
    No. 12 Civ. 03373 LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ......................... 20, 21

15

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.*,
    No. 18 Civ. 00933 MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018) ........................... 17

16

17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 7, 8

18

19

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
    149 F. Supp. 3d 1167 (N.D. Cal. 2015) ........................................................................ 11, 12

20

*Bridgeman Art Library, Ltd. v. Corel Corp.*,
    36 F. Supp. 2d 191 (S.D.N.Y. 1999) ................................................................................. 14

21

22

*Cline v. Reetz-Laiolo*,
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) (Orrick, J.) ........................................................ 7, 8

23

24

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ............................................................................................ 2

25

*Del Rio v. Virgin Am., Inc.*,
    No. 18 Civ. 01063 GW, 2018 WL 5099720 (C.D. Cal. June 28, 2018) ............................. 15

26

27

*Design Basics, LLC v. DeShano Cos., LLC*,
    No. 10 Civ. 14419 BC, 2012 WL 12930950 (E.D. Mich. July 2, 2012) ............................. 15

28

iv

*DigitAlb, Sh.a v. Setplex, LLC*,
   284 F. Supp. 3d 547 (S.D.N.Y. 2018)........................................................................9, 10

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*,
   No. 14 Civ. 02496 BRO, 2015 WL 12655484 (C.D. Cal. Nov. 19, 2015)......................9

*Etrailer Corp. v. Automatic Equip. Mfg. Co.*,
   No. 18 Civ. 351, 2019 WL 1596833 (D. Neb. Apr. 15, 2019) ......................................14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*,
   499 U.S. 340 (1991)..........................................................................12, 13, 14, 15

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019)..................................................................................8, 10

*Free Speech Sys., LLC v. Menzel*,
   No. 19 Civ. 00711, 2019 WL 2515579 (N.D. Cal. June 18, 2019) (Orrick, J.).............................2

*Gajo v. Chi. Brand*,
   No. 17 Civ. 00380 EMC, 2017 WL 2473142 (N.D. Cal. June 8, 2017)........................10

*Getaped.com, Inc. v. Cangemi*,
   188 F. Supp. 2d 398 (S.D.N.Y. 2002).............................................................................9

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................................................8

*Golan v. Holder*,
   565 U.S. 302 (2012)..........................................................................................................9

*Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*,
   No. 18 Civ. 05031 EMC, 2019 WL 1767329 (N.D. Cal. Apr. 22, 2019)......................21

*Izmo, Inc. v. Roadster, Inc.*,
   No. 18 Civ. 06092NC, 2019 WL 2359228 (N.D. Cal. June 4, 2019)............................10

*J & J Sports Prods., Inc. v. Dailey*,
   No. 10 Civ. 05510-SI, 2011 WL 3418391 (N.D. Cal. Aug. 4, 2011)..............................8

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
   No. 16 Civ. 1318 GBD, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017)...........................11

*KEMA, Inc. v. Koperwhats*,
   No. 09 Civ. 01587 MMC, 2010 WL 3464708 (N.D. Cal. Sept. 1, 2010)................18, 19

*Kernel Records Oy v. Mosley*,
   694 F.3d 1294 (11th Cir. 2012) ....................................................................................10

*Kittrich Corp. v. United Indus. Corp.*,
   No. 17 Civ. 06211, 2017 WL 10434389 (C.D. Cal. Oct. 18, 2017)..............................16

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ......................................................................................2

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ......................................................................................8

*MAI Sys. Corp. v. Peak Comput., Inc.*,
    991 F.2d 511 (9th Cir. 1993) (Orrick, J.)....................................................................19

*Malibu Media, LLC v. Doe*,
    No. 18 Civ. 10956 JMF, 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019)........................10

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) ......................................................................................8

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) ....................................................................21

*Meshwerks, Inc. v. Toyota Motor Sales USA, Inc.*,
    528 F.3d 1258 (10th Cir. 2008) (Gorsuch, J.)...............................................13, 14, 15

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
    No. 16 Civ. 03975 DMG, 2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) .............10, 12

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
    No 16 Civ. 00253 WHO, 2018 WL 2117424 (N.D. Cal May 8, 2018)........................19

*Perryman v. Dorman*,
    No. 10 Civ. 1800 PHX, 2011 WL 379313 (D. Ariz. Feb. 2, 2011)..............................19

*Phantomalert, Inc. v. Google Inc.*,
    No. 15 Civ. 03986 JCS, 2015 WL 8648669 (N.D. Cal Dec. 14, 2015)...................15, 16

*Phantomalert, Inc. v. Google Inc.*,
    No. 15 Civ. 03986 JCS, 2016 WL 879758 (N.D. Cal. Mar. 8, 2016)..........................12

*Proline Concrete Tools, Inc. v. Dennis*,
    No. 07 Civ. 02310 LAB, 2008 WL 11286077 (S.D. Cal. Aug. 18, 2008) ...................12

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
    No. 16 Civ. 05399, 2017 WL 67075 (N.D. Cal. Jan. 6, 2017) (Orrick, J)..............17, 19

*Rearden LLC v. Walt Disney Co.*,
    293 F. Supp. 3d 963 (N.D. Cal. 2018) .........................................................................2

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) .........................................................................8, 13, 16

*Salt Optics, Inc. v. Jand, Inc.*,
    No. 10 Civ. 00828 DOC, 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010)................11, 12

*SocialApps, LLC v. Zynga, Inc.*,
  No. 11 Civ. 04910 YGR, 2012 WL 381216 (N.D. Cal. Feb. 6, 2012) ..........................................18

*Sparaco v. Lawler, Matusky, Skelly, Engineers LLP*,
  303 F.3d 460 (2d Cir. 2002)........................................................................................................14

*Stavrinides v. Vin Di Bona*,
  No. 18 Civ. 00314 CAS, 2018 WL 1311440 (C.D. Cal. Mar. 12, 2018) .....................................10

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .......................................................................................................7

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. 13 Civ. 02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ...................................12, 20

*Tarantino v. Gawker Media, LLC*,
  No. 14 Civ. 00603 JFW, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ......................................16

*Top Agent Network, Inc. v. Zillow, Inc.*,
  No. 14 Civ. 04769, 2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) ...............................................20

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
  587 F.3d 1339 (Fed. Cir. 2009)....................................................................................................18

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
  718 F.3d 1006 (9th Cir. 2013) ......................................................................................................16

*Veronica Foods Co. v. Ecklin*,
  No. 16 Civ. 07223 JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017)............................17, 18, 21

*Wang v. Golf Tailor, LLC*,
  No. 17 Civ. 00898 LB, 2017 WL 5068569 (N.D. Cal. Nov. 3, 2017)....................................18, 21

*Warren Publ'g, Inc. v. Microdos Data Corp.*,
  115 F.3d 1509 (11th Cir. 1997) ....................................................................................................16

*Washoutpan.com, LLC v. HD Supply Construction Supply LTD.*,
  No. 19 Civ. 00494 AB (C.D. Cal. Aug. 5, 2019)..........................................................................10

*Way.com, Inc. v. Singh*,
  No. 18 Civ. 04819 WHO, 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018)....................................18

*Xclusive-Lee, Inc. v. Hadid*,
  19 Civ. 0520 PKC, 2019 WL 3281013 (E.D.N.Y. July 18, 2019) ...............................................10

**Statutes**

17 U.S.C. § 101 .................................................................................................................................9

17 U.S.C. § 411 ........................................................................................................................8, 9, 10

18 U.S.C. § 1836 ................................................................................................................................17

18 U.S.C. § 1839 ..............................................................................................................17, 19, 20

Cal. Civ. Code § 3426.1 ...................................................................................................17, 19, 20

Cal. Code Civ. Proc. § 2019.210 ........................................................................................................20

U.S. Copyright Law 72 (H.R. Comm. Print. 1961) ..............................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................2, 7

**Other Authorities**

Nimmer on Copyright (2017) ...........................................................................................................12

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

In its Complaint, Planner 5D contorts well-settled copyright and trade secret law in an attempt to claim proprietary rights over unoriginal and publicly accessible data.  In doing so, Planner 5D seeks to profit from innovative open research in the field of machine learning by Facebook, as well as Princeton and other universities.  If Planner 5D is allowed to maintain its baseless claims, it could have wide-reaching negative consequences for machine learning research and stifle innovation in artificial intelligence technology.

Planner 5D offers a free web-based interior design tool, which allows users to design floor plans using digital renderings of real-life "objects," such as chairs, tables, lamps, and beds.  Planner 5D alleges that researchers at Princeton copied some of these "objects" from its website to create the SUNCG dataset, which researchers at Princeton and Facebook, among others, have used to teach computer algorithms to recognize and interpret real-world scenes.  Planner 5D claims that the SUNCG dataset infringes its copyrighted works and contains its trade secrets.  While machine learning is a cutting-edge field, traditional principles of copyright and trade secret law can be applied to demonstrate that Planner 5D's claims have no basis in law or fact.

With regard to its copyright claim, Planner 5D does not allege ownership of a valid copyright, or copying of any protectable expression.  First, Planner 5D has not alleged facts to show that it has satisfied the registration requirement of the Copyright Act, nor has it alleged facts to show it is exempt from such registration requirement.  Second, Planner 5D does not specify the particular copyrighted works that it claims to own or which were copied in the SUNCG dataset.  Third, none of the works allegedly owned by Planner 5D are original or creative, which is required for copyright protection.  Specifically, the "objects" are exact renderings of real-life objects, which is the reason that data scientists use them to teach computers to recognize real-life scenes.  Planner 5D does not allege the objects contain any creative or original expression.  Planner 5D also alleges infringement of its compilations of objects and scenes—but these compilations are merely a repository of every object and scene.  In other words, there are no allegations that Planner 5D made any creative choices in the selection and arrangement of the objects and scenes in these compilations.

1    With regard to its claims for trade secret misappropriation, Planner 5D cannot allege

2    ownership of a trade secret, under either California or federal law.  Planner 5D claims that the data

3    files that underlie the renderings of the real-life objects and scenes constitute trade secrets—but these

4    data files are ***publicly available*** through its website and thus they are not "secret."  Public

5    information cannot constitute a trade secret as a matter of law.  Similarly, the Complaint contains no

6    allegations that Planner 5D took any steps to keep the data files confidential, which is also a required

7    element of a trade secret claim.  Nor does Planner 5D specify which aspects of, or information in,

8    the data files constitute trade secrets.  In addition to not alleging ownership of a trade secret, Planner

9    5D cannot allege improper misappropriation by Facebook.  Planner 5D does not allege that

10   Facebook misappropriated any data files directly from Planner 5D.  It simply alleges that Facebook

11   improperly used the SUNCG dataset in 2018—but at the time, the SUNCG dataset was already

12   publicly available on Princeton's website (and, as noted above, Planner 5D's data files were also

13   publicly available on its website).  Thus, the SUNCG dataset could not have been a trade secret

14   when Facebook allegedly first used it in 2018.

15   Accordingly, pursuant to Rule 12(b)(6), Facebook respectfully requests that the Court

16   dismiss Planner 5D's claims with prejudice.

17   ## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

18   ### A.    Plaintiff Planner 5D

19   Planner 5D is a company, located in Lithuania, which offers an interior design tool that

20   enables users to digitally design a floor plan for a home, office, or landscape.  (Dkt. 1 ¶¶ 19, 27

21   ("Compl.").)  Planner 5D's design tool is accessed through its publicly available website, located at

22   https://planner5d.com/, and users can download it to their computers or mobile device.[2]  It is

---

[1] The facts recited herein are taken from the allegations and materials referenced in the Complaint.
Facebook assumes the truth of the factual allegations in the Complaint and statements in the
materials referenced in the Complaint only for the purposes of this Motion.  *See Rearden LLC v.
Walt Disney Co.*, 293 F. Supp. 3d 963, 969 (N.D. Cal. 2018) (citing *Knievel v. ESPN*, 393 F.3d 1068,
1072 (9th Cir. 2005)).

[2] Planner 5D's website is incorporated by reference in the Complaint (*see, e.g.*, *id.* ¶¶ 7, 27, 31, 32,
38, 43, 68, 76), and thus this Court can consider it on a motion to dismiss.  *See Coto Settlement v.
Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (doctrine of incorporation by reference permits
consideration of documents on a motion to dismiss where the documents are alleged in the
complaint); *Free Speech Sys., LLC v. Menzel*, No. 19 Civ. 00711, 2019 WL 2515579, at *1 n.1 (N.D.

---

2

accessible to "anyone" around the world for free, and Planner 5D currently has 40 million users worldwide.  (Compl. ¶¶ 27, 28; Planner 5D Homepage.)

Planner 5D promotes itself as a "user-friendly home design tool that allow[s] anyone to quickly and easily create their own . . . designs."  (Compl. ¶ 27; *see also* Planner 5D Homepage (describing its "advanced and easy-to-use 2D/3D home design tool").)  To enable users to create designs, Planner 5D's tool contains "Objects," which are digitized versions of real-life household items (such as beds, tables and chairs).  (Compl. ¶¶ 5, 27, 30.)  Some examples of these Objects, which were downloaded from Planner 5D's design tool, are depicted below:

   

45                    46                    57                    60

The data file associated with each Object is also publicly available on Planner 5D's tool, as illustrated below by the four .p3d files that correspond to the above-referenced Objects, which were downloaded from Planner 5D's design tool:

  

45.p3d              46.p3d              57.p3d              60.p3d

Users of Planner 5D's design tool can "drag and drop" the Objects to make "Scenes."  (*Id.* ¶ 32.)  An example of a user-created "Scene," incorporating the four above-referenced Objects, is depicted below:

---

Cal. June 18, 2019) (considering a webpage on motion to dismiss where it was repeatedly referenced in complaint) (Orrick, J.).  A true and correct copy of Planner 5D's homepage is attached as Exhibit 1 (hereinafter "Planner 5D Homepage").

**FACEBOOK'S NOTICE OF MOTION & MOTION TO DISMISS**          **CASE NO. 3:19-CV-03132**

1
2
3
4
5
6
7
8
9
10



11    Planner 5D emphasizes the user-generated nature of the Scenes, stating on its homepage:

12    • "Let our home design tool guide you through *your creative process*."

13    • "Get inspired by *designs created by other users*."

14    • "See What *Users Have Created*."

15  (*See* Planner 5D Homepage (emphasis added).)

16    To access Planner 5D's website, a new user simply needs to create a login and password and

17  agree to the Terms of Service.  (Compl. ¶ 31.)  Planner 5D's Terms of Service recognize that the

18  Scenes are user-generated content, and users grant only a non-exclusive license to use and distribute

19  the Scenes:

20    We agree to enable you to contribute User generated content (hereinafter, the
      "UGC") – photos, artwork and texts, and in exchange, when you contribute UGC
21    to us, you expressly grant to Planner 5D a non-exclusive, perpetual, royalty-free,
      worldwide, complete and irrevocable right to quote, use, reproduce, modify,
22    transmit or by other ways communicate, create derivative works of, print,
      sublicense, publicly display and perform UGC, or any portion thereof, in any
23    manner, on any medium, whether now known or hereafter devised, without notice,
      payment or attribution of any kind to you or any third party. You grant us all
24    licenses, consents and clearances to enable Planner 5D to use UGC for such
25    purposes.

26  (*See id.* (incorporating Terms of Service, Planner 5D, *available at*

27

28

https://planner5d.com/pages/terms/).)[3]  The Terms of Service do not state that any of the Objects or Scenes are confidential or require users to agree that they will keep them confidential.  (*Id.*)

Planner 5D alleges that its tool contains "over 4,500" digitized, realistic Objects, which comprise its "library" or compilation of Objects (the "Object Compilation").  (*Id.* ¶ 29.)  The Complaint alleges that "[e]ach object individually, and the compilation of objects together," are copyrighted works "authored in Europe or Russia."  (*Id.*)  Planner 5D also alleges that it owns a compilation of the "over 1,000,000" Scenes created using its design tool (the "Scene Compilation").  (*Id.* ¶ 30.)  Planner 5D alleges that the Scene Compilation was "authored in Europe by Planner 5D."  (*Id.*)

### B.   Defendant Facebook and Its Collaborative Machine Learning Research

Facebook is a leader in collaborative and openly-accessible academic research in the field of artificial intelligence ("AI").  Facebook's AI research is intended to "connect[] people to what they care about, powering new, meaningful experiences, and advance[] the state-of-the-art through open research and accessible tooling."  (*See* Compl. ¶ 53 (incorporating by reference Facebook Artificial Intelligence, *available at* https://ai.facebook.com).)

Facebook's AI research extends to numerous research areas, including, but not limited to, machine learning.  (*Id.*)  Machine learning is based on the idea that computers can learn from data, identify patterns and make decisions with minimal human intervention.  One aspect of machine learning is scene recognition.  (*Id.* ¶ 2.)  The goal of scene recognition is to train a computer to understand the contents of a scene (*e.g.*, what are the objects in the scene; how are they related; if there are people in the scene, what actions are they performing; what is the place depicted in the scene, etc.).  In order to train a computer to understand a scene, it must be fed accurate data about myriad objects and scenes.  (*Id.* ¶¶ 37–38.)  The better a computer can understand visual context, the better it can interact in the world.  Some examples of the potential practical applications for machine learning and scene recognition are airport safety, care for the elderly, and improving logistics and

---

[3] As noted above, Planner 5D's Terms of Service are included on Planner 5D's website and are specifically excerpted in the Complaint.  Thus, they are incorporated by reference in the Complaint. The Terms of Service are also the subject of Princeton's Request for Judicial Notice.  (Dkt. 32.)

1    package deliveries.  (*Id.* ¶ 2.)

2        In order to foster innovation in the field, Facebook collaborates with academic AI researchers

3    associated with respected universities, including Princeton University, Stanford University,

4    University of California Berkeley, and Georgia Tech.  (*Id.* ¶ 10.)  In keeping with the openness of AI

5    research, much of Facebook's own computer vision research is publicly available and open source.

6    (*See* https://ai.facebook.com (listing recent publications).)

7        One of Facebook's cooperative scene recognition research projects is the Scene

8    Understanding and Modeling ("SUMO") Challenge.  (*See* Compl. ¶ 10 (referencing 2019 Scene

9    Understanding and Modeling Challenge, *available at* https://sumochallenge.org/).)  The SUMO

10   Challenge is a competition that "targets development of comprehensive 3D scene understanding and

11   modeling algorithms." (*Id.* ¶ 47.)  In other words, participants are given a sample dataset and

12   challenged to develop an algorithm that best represents a 3D scene through three increasingly

13   difficult tasks.  (*Id.* (incorporating by reference Facebook Research, *Facebook Reality Labs*

14   *Launches the Scene Understanding and Modeling (SUMO) Challenge*, *available at*

15   https://research.fb.com/facebook-reality-lab-launches-the-scene-understanding-and-modeling-sumo-

16   challenge/).)  The judges—made up of researchers from Facebook, Stanford, Princeton and Virginia

17   Tech—evaluate submissions based on technical criteria including geometry, pose, appearance, and

18   semantics (*i.e.*, ability to determine scene context).  (*Id.* ¶ 50.)  Results are presented at an open

19   workshop at the Conference on Computer Vision and Pattern Recognition in Long Beach,

20   California.  (*Id.* ¶¶ 11, 50.)

21       **C.    Planner 5D's Claims Against Princeton and Facebook**

22       Planner 5D alleges that "sometime in or before 2016," researchers at Princeton downloaded

23   45,622 Scenes and 2,644 Objects from Planner 5D's website.  (Compl. ¶¶ 36, 39.)  To accomplish

24   this download, Planner 5D alleges that the Princeton scientists cherry-picked particular Objects and

25   Scenes from its website.  (*Id.* ¶ 43.)  Planner 5D then claims that the Princeton researchers used these

26   Objects and Scenes to create a set of scene recognition training data (the "SUNCG Dataset"), and

27   posted the SUNCG Dataset to a publicly available Princeton website.  (*Id.* ¶ 40.)  The Complaint

28   alleges that the SUNCG Dataset was used by Princeton for the purpose of "developing artificial

6

1    intelligence applications featuring 3D scene recognition."  (*Id.* ¶ 42.)

2           In 2018, Facebook allegedly directed participants in the first SUMO Challenge to the

3    SUNCG Dataset on Princeton's website.  (*Id.* ¶ 40.)  In addition, Planner 5D alleges that Facebook

4    created a copy of the SUNCG Dataset that was then posted to Stanford University's website.  (*Id.*

5    ¶ 51.)  Planner 5D further alleges that Facebook made "at least one other copy of the SUNCG

6    dataset," which Facebook "linked to [] in another of its object-recognition projects, the 'House 3D

7    environment.'"  (*Id.* ¶ 53.)  The Complaint alleges that the SUNCG Dataset was used by Facebook in

8    order to "train artificial intelligence applications to recognize 3D interior scenes."  (*Id.* ¶ 54.)

9           On June 5, 2019, Planner 5D filed a Complaint against Princeton and Facebook

10   ("Defendants") based on their use of the SUNCG Dataset.  Planner 5D alleges that the SUNCG

11   Dataset infringes its copyrights in its Objects, Object Compilation, and Scene Compilation.  (*Id.* ¶¶

12   29, 30, 43, 59.)[4]  Additionally, the Complaint alleges that the "object files" and "scene files"

13   associated with the Objects and the Scene Compilation are trade secrets under California and federal

14   law and that Defendants misappropriated such trade secrets.  (*Id.* ¶¶ 32, 67, 75.)

15   **III.    LEGAL STANDARD**

16          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

17   fails to state a claim upon which relief can be granted.  "To survive a Rule 12(b)(6) motion to

18   dismiss, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'"

19   *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1023 (N.D. Cal. 2018) (Orrick, J.) (quoting *Bell Atl.*

20   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, the complaint must state facts that

21   show there is "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v.*

22   *Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that provides no more than a "formulaic recitation of

23   the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A plaintiff must

24   allege "facts sufficient to 'raise a right to relief above the speculative level.'"  *Cline*, 329 F. Supp. 3d

25

26   _____

[4] Planner 5D's Complaint does not allege infringement of the Scenes individually.  Nor could it as

27   Planner 5D does not own the copyright to the Scenes.  As noted above, the Scenes are created by
     users, who only grant a non-exclusive license to the Scenes pursuant to the Terms of Service.  *See*
     *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) (ownership of a "non-

28   exclusive license [] gives plaintiff no standing to sue for copyright infringement").

---

7

1   at 1023 (quoting *Twombly*, 550 U.S. at 555).  The court "is not required to accept as true 'allegations

2   that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *Id.* at

3   1024 (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).  Further, legal

4   conclusions "are not entitled to the assumption of truth . . . [and] must be supported by factual

5   allegations."  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

6   **IV.     ARGUMENT**

7        **A.     Planner 5D Fails to State a Claim for Copyright Infringement Against Facebook.**

8        To state a claim for copyright infringement, a plaintiff must allege (1) ownership of a valid

9   copyright and (2) copying of elements of the work that are original.  *Rentmeester v. Nike, Inc.*, 883

10  F.3d 1111, 1116–17 (9th Cir. 2018).  As discussed below, Planner 5D's Complaint fails to allege

11  facts to establish either of these two required elements, and thus Planner 5D's copyright

12  infringement claim must be dismissed.

13       **1.     The Complaint Does Not Allege Any of the Works Are Registered or Are

14          Exempt from Registration.**

15       First, Planner 5D's Complaint does not allege that any of its works were registered with the

16  United States Copyright Office or were the subject of a rejected application for registration.

17  Registration is a required element of ownership of a valid copyright.  *See* 17 U.S.C. § 411(a); *Malibu*

18  *Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019) ("To plead ownership, [a

19  plaintiff] must plausibly allege it owns a valid copyright registration for its work."); *J & J Sports*

20  *Prods., Inc. v. Dailey*, No. 10 Civ. 05510 SI, 2011 WL 3418391, at *1 (N.D. Cal. Aug. 4, 2011)

21  ("The Ninth Circuit effectively treats the § 411 registration requirement as an element of a copyright

22  infringement claim."); *see also Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct.

23  881, 887 (2019) ("Before pursuing an infringement claim in court . . . a copyright claimant generally

24  must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'").

25  This allows the United States Copyright Office to make an initial judgement as to the validity of a

26  copyright, which "weed[s] out" many "unfounded claims . . . thus avoiding needless controversy and

27  litigation," and assists "[t]he courts and the public . . . in construing the law."  U.S. Copyright Office,

28  87th Cong., Reg.'s Rep. on the General Revision of the U.S. Copyright Law 72 (H.R. Comm. Print.

1961).

Further, while this registration requirement only applies to "United States work[s]," Planner 5D has not alleged facts to establish that the foreign works exception applies here. 17 U.S.C. § 411(a); *see also Golan v. Holder*, 565 U.S. 302, 314 n.11 (2012) (noting "§ 411(a) [] requir[es] registration of U.S. 'work[s],' but not foreign works, before an owner may sue for infringement"). In order to meet the foreign works exception, "the party seeking to protect a work must first establish that the subject of copyright is not a United States work" as defined in the Copyright Act. *See Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, No. 14 Civ. 02496 BRO, 2015 WL 12655484, at *4 (C.D. Cal. Nov. 19, 2015) (denying reconsideration of summary judgment dismissal where plaintiff did not establish that its unregistered works were exempt from the registration requirement). A "published" work is not considered to be a United States work and thus is exempt from the registration requirement only if it was *first published* in a foreign country. 17 U.S.C. § 101 (defining "United States work"). If, however, a work was first published in the United States or simultaneously in the United States and another country (including by posting it on a website which is accessible in the United States and around the world), it is considered a United States work and the plaintiff is required to meet the registration requirement. *See* § 17 U.S.C. § 101; *Elohim EPF*, 2015 WL 12655484, at *5 (denying reconsideration of dismissal where plaintiff could not show that its works were published in Korea before they were published in the U.S.).

Here, Planner 5D's alleged works are published as they are publicly available on the internet. (Compl. ¶¶ 6, 27.) *See Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) ("[W]hen a webpage goes live on the Internet, it is distributed and 'published'"). Planner 5D's Complaint, however, contains no allegations that its works were first published outside the United States. While it alleges that the Objects and Object Compilation were "authored in Europe or Russia," (Compl. ¶ 29), and the Scene Compilation was "authored in Europe," (*id.* ¶ 30), these allegations have no bearing on publication. *See DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 556 (S.D.N.Y. 2018) (granting motion to dismiss where plaintiff alleged that its works "originated" in Albania or Kosovo, and noting such language "says nothing about where the works were first published"). Nor can Planner 5D allege that the first publication of its works occurred outside the

9

1  United States because its works were allegedly published on its website, which, as noted above, is

2  available to "anyone" worldwide. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1306 (11th Cir.

3  2012) (stating that "public websites on the World Wide Web" are consistent "with a presumption of

4  simultaneous worldwide availability").

5      Thus, Planner 5D's copyright claim must be dismissed for failure to meet the requirements of

6  Section 411(a) of the Copyright Act.[5]  *See Stavrinides v. Vin Di Bona*, No. 18 Civ. 00314 CAS, 2018

7  WL 1311440, at *3 (C.D. Cal. Mar. 12, 2018) (dismissing complaint where registration was not

8  alleged, and there was no claim that works were exempt from registration); *Gajo v. Chi. Brand*, No.

9  17 Civ. 00380 EMC, 2017 WL 2473142, at *2 (N.D. Cal. June 8, 2017) (dismissing copyright claim

10 where plaintiff argued that it was exempt from the registration requirement but there was "no

11 indication in the complaint that [plaintiff] has a copyright in a *foreign* work as opposed to a U.S.

12 work") (emphasis in original); *DigitAlb*, 284 F. Supp. 3d at 555 (dismissing complaint and stating:

13 "If a court were to woodenly accept that a work is exempt from registration based on the <u>omission</u> of

14 allegations indicating that the work is a United States work, any party seeking to surmount the

15 registration requirement could simply omit any allegation of first publication in the United States or

16 first publication simultaneously within and outside the United States.") (emphasis in original).

17 Planner 5D cannot cure its failure to meet the explicit requirements of 17 U.S.C. § 411(a) by mere

18 amendment of its Complaint.

19      **2.    The Complaint Fails to Specify the Works Owned by Planner 5D That Are the Subject of Its Copyright Claims.**

20     It is black letter law that a copyright plaintiff must specify the works that are the subject of

21 the copyright claim or face dismissal.  *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, No. 16 Civ.

22

23 [5] Moreover, such dismissal should be granted without leave to amend.  As several courts have held since the Supreme Court's decision in *Fourth Estate*, a plaintiff cannot cure its failure to meet the
24 preconditions set forth in 17 U.S.C. § 411(a) by amending its pending complaint.  *See Izmo, Inc. v. Roadster, Inc.*, No. 18 Civ. 06092 NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (granting
25 motion to dismiss without leave to amend even though plaintiff had a pending application for a registration because "permitting amendment to cure a claimant's failure to register its copyright
26 before suing would undermine the objectives animating the Supreme Court's decision in *Fourth Estate*"); *Washoutpan.com, LLC v. HD Supply Construction Supply LTD.*, No. 19 Civ. 00494 AB,
27 Order at 5–6 (C.D. Cal. Aug. 5, 2019) (same); *Xclusive-Lee, Inc. v. Hadid*, 19 Civ. 0520 PKC, 2019 WL 3281013, at *4 (E.D.N.Y. July 18, 2019) (same); *Malibu Media, LLC v. Doe*, No. 18 Civ. 10956
28 JMF, 2019 WL 1454317, at *3 (S.D.N.Y. Apr. 2, 2019) (same).

03975 DMG, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) (granting motion to dismiss where plaintiff's complaint only contained a "vague allegation[] that it owns copyrights in the content of its website and product catalog," noting "Ninth Circuit precedent makes clear . . . [a complaint] must allege sufficient facts to give defendants fair notice of the allegations against it") (internal quotation marks and citations omitted); *Salt Optics, Inc. v. Jand, Inc.*, No. 10 Civ. 00828 DOC, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) (dismissing complaint which alleged only broad ownership of all "text, photograph(s), selection, arrangement and compilation" of the plaintiff's website and catalog).

        In its Complaint, Planner 5D does not identify one specific work that it owns or that it claims was infringed.  As noted above, it does not cite any copyright registrations, which would identify the works.  Instead, it broadly alleges that "Planner 5D is the sole owner of all right, title, and interest in the copyrighted works whose infringement it is asserting here (the Copyrighted Works)."  (Compl. ¶ 58.)

        With regard to the Objects, Planner 5D generally alleges that it owns the copyright in "over 4,500 objects" and their underlying data files, and that the allegedly infringing SUNCG Dataset contains "2,644 objects."  (*Id.* ¶¶ 29, 43.)  But Planner 5D fails to specify which particular Objects are the subject of its copyright claim, or even provide a representative sampling of what it owns or which Objects were allegedly copied.  *See Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (Where "dozens of [works] are at issue . . . a plausible claim would require that Plaintiffs submit a representative sampling of infringed content, pleading infringement with the level of detail required by the Ninth Circuit and establishing that the [works] at issue are copyrightable."); *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16 Civ. 1318 GBD, 2017 WL 696126, at *14 (S.D.N.Y. Feb. 15, 2017) (A "plaintiff must [] identify, at a minimum, representative examples of the works allegedly infringed.").

        With regard to the compilations it claims to own, Planner 5D alleges that its Object Compilation contains "over 4,500 objects" and its Scene Compilation contains "over 1,000,000 scenes." (Compl. ¶¶ 5, 29, 30.)  Planner 5D also alleges that "2,644 objects and 45,622 scenes" were copied and included in the SUNCG Dataset.  (*Id.* ¶ 43.)  But the Complaint does not specify which

Objects or Scenes make up these compilations or which Objects or Scenes were allegedly copied and included in the SUNCG Dataset.

This lack of specificity—both as to the scope of Planner 5D's ownership and to Facebook's alleged infringement—fails to provide adequate notice to Facebook as to Planner 5D's claim and is grounds for dismissal. *See Blizzard Entm't, Inc.*, 149 F. Supp. 3d at 1175 (dismissing complaint where plaintiff did not identify the infringed content); *Auto. Data Sols. Inc. v. Directed Elecs. Can. Inc.*, No. 18 Civ. 01560 GW, 2018 WL 4751743, at *6 (C.D. Cal. May 21, 2018) (granting motion to dismiss where plaintiff merely alleged it was the "author and owner" of copyrighted software, noting "the lack of sufficient factual detail as to [plaintiff's] ownership fails to place [defendant] on notice of the nature of the claims against it"); *MultiCraft Imports*, 2017 WL 5664996, at *3 ("Absent any allegations of even representative infringements, the [complaint] fails to provide notice as a matter of law."); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13 Civ. 02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (dismissing complaint, stating "Plaintiff never makes clear what Defendant copied, which makes it impossible for the Court to find Plaintiff's claim plausible"); *Salt Optics*, 2010 WL 4961702, at *6 (complaint failed to state claim where "Plaintiff [made] no attempt to identify which portions of the website or catalog it accuses Defendants of infringing"); *cf. Proline Concrete Tools, Inc. v. Dennis*, No. 07 Civ. 02310 LAB, 2008 WL 11286077, at *3 (S.D. Cal. Aug. 18, 2008) (finding it "objectively unreasonable for a plaintiff to refuse to identify with any specificity whatsoever items(s) sought to be placed in issue . . . particularly when the defendant represents the Copyright Office found no record of the alleged authors' or [plaintiff's] registration of any [works], and no application for such registrations associated with the alleged authors or with [plaintiff]").

### 3. Planner 5D's Alleged Works Are Not Original or Creative.

It is black letter law that copyright only protects copying of original and creative expression. In order to allege ownership of a valid copyright, the claimed work must be original and creative. *See Phantomalert, Inc. v. Google Inc.*, No. 15 Civ. 03986 JCS, 2016 WL 879758, at *8 (N.D. Cal. Mar. 8, 2016) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991)); 1 Nimmer on Copyright § 2.05[B] (2017) ("[C]opyrightable works require two ingredients. The first

is **originality**, which signifies that the work originates in the author rather than having been copied from past sources.  The second is **creativity**, signifying that the work has a spark that goes beyond the banal or trivial.") (emphasis in original).  Similarly, to state a claim for copyright infringement, a plaintiff must allege that original expression was copied.  *Rentmeester*, 883 F.3d at 1117–18 (affirming dismissal where defendant's photograph did not copy protectable expression in plaintiff's photograph).  As discussed below, based on a plain reading of the Complaint, none of Planner 5D's allegedly infringed works—the Objects, the Object Compilation or the Scene Compilation—are original or creative, and thus its copyright claim must be dismissed.

### a.    Planner 5D's Real-World Objects Are Unoriginal Facts.

As alleged in the Complaint, Planner 5D's Objects are nothing more than exact digital renderings of real-world objects.  (*See*, *e.g.*, Compl. ¶ 3 ("For truly realistic scenes, human modelers must personally craft each three-dimensional object[.]"); *id.* ¶ 5 ("[Objects are] lifelike renderings of furniture, appliances, plants," etc.); *id.* ¶ 29 (referring to its "library of realistic, digitized objects . . ."); *id.* ¶ 39 (describing a "photo-realistic" appearance).)  Indeed, as Planner 5D admits in its Complaint, the reason that its Objects are useful to machine learning is *because* they are so realistic.  (*See, e.g.*, *id.* ¶ 3 ("Teaching machines to recognize three-dimensional settings requires feeding them large volumes of realistic, digitized renderings of such places."); *id.* ¶ 6 ("Computer scientists at Princeton were eager to use this uniquely large, uniquely realistic collection of data."); *id.* ¶ 39 ("[R]ealism was vital for accurate machine learning").)  In other words, Planner 5D's Objects are akin to real-world facts, which are not copyrightable.  *See Feist*, 499 U.S. at 347 ("No one may claim originality as to facts.") (internal quotation marks and citations omitted); *Meshwerks, Inc. v. Toyota Motor Sales USA, Inc.*, 528 F.3d 1258, 1265–66 (10th Cir. 2008) (finding that a work is not copyrightable when it does not "involve any expression apart from the raw facts in the world" and simply copies real-world objects "into a digital medium so they could be expressively manipulated by others") (Gorsuch, J.).

*Meshwerks* is particularly instructive here.  In that case, the Tenth Circuit held that digital wireframe renderings of vehicles were insufficiently original to warrant copyright protection.  The plaintiff's intent was to "replicate, as exactly as possible, the image of certain Toyota vehicles."  *Id.*

at 1261; *see id.* (noting that the plaintiff's digitization process resulted in "two-dimensional wire-frame depictions of Toyota's vehicles that appeared three-dimensional on screen").  The court found that all of the creative expression was either contributed previously by Toyota (in designing the vehicles) or subsequently by advertisers (in adding color, texture, and animation to the wireframe renderings).  *Id.* at 1269.  Thus, the plaintiff in *Meshwerks* made no creative decisions: its sole goal was to "create a realistic depiction on the computer screen."  *Id.*  As a result, the plaintiff contributed no creative expression to the resulting "unadorned" digitized vehicles, thus failing the standard under *Feist*.  *Id.* at 1269–70.  *See also ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 712 (6th Cir. 2005) (affirming summary judgment dismissal due to lack of originality in plaintiff's sketches of real-world transmission parts copied from photographs); *Sparaco v. Lawler, Matusky, Skelly, Engineers LLP*, 303 F.3d 460, 467 (2d Cir. 2002) (vacating district court entry of summary judgment due to lack of originality in plaintiff's architectural site plan which merely accurately rendered the physical characteristics of the building site); *Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F. Supp. 2d 191, 197 (S.D.N.Y. 1999) (granting summary judgment dismissal due to no originality in plaintiff's copies of public domain artworks, noting "the point of the exercise was to reproduce the underlying works with absolute fidelity").

　　　　As noted above, the Complaint alleges that Planner 5D's intent was to "replicate" the real-world Objects "as exactly as possible."  *See Meshwerks*, 528 F.3d at 1261.  There are no allegations in the Complaint that Planner 5D added any creative expression to these renderings of real-life objects, or any explanation as to how or why Planner 5D's Objects are original or creative.[6]  Thus, Planner 5D's copyright claim should be dismissed to the extent it is based on its unoriginal Objects.  *See Etrailer Corp.*, 2019 WL 1596833, at *2–3 (granting motion to dismiss where complaint "[did]

---

[6] Planner 5D's Complaint contains many allegations about the expense, time, and effort it spent in creating the Objects and Compilations.  (*See, e.g.*, Compl. ¶ 5 ("The company created and grew its [Object] collection over many years, at a cost of millions of dollars . . .  Over many years, its [Scene Compilation] grew from tens of thousands, to hundreds of thousands, to over a million."); *id.* ¶ 8 (describing its data as "painstakingly developed.").  But these allegations are wholly irrelevant to its copyright claim as it is black letter law that mere "sweat of the brow" does not establish originality or creativity.  *Feist*, 499 U.S. at 359.  *See also Etrailer Corp. v. Automatic Equip. Mfg. Co.*, No. 18 Civ. 351, 2019 WL 1596833, at *3 (D. Neb. Apr. 15, 2019) (dismissing complaint which only emphasized the time and money spent in creating unoriginal photographs).

---

14

not identify any facts describing what is original about its photographs," concluding "[w]hat the plaintiff describes in its complaint as its works are merely accurate photographs of towing parts that are available for purchase through the plaintiff's website"); *Del Rio v. Virgin Am., Inc.*, No. 18 Civ. 01063 GW, 2018 WL 5099720, at *4 (C.D. Cal. June 28, 2018) (granting motion to dismiss copyright claim where complaint "[did] not allege in any way how the rhythm or melody of [plaintiff's] Recording [was] original"); *Design Basics, LLC v. DeShano Cos., LLC*, No. 10 Civ. 14419 BC, 2012 WL 12930950, at *4 (E.D. Mich. July 2, 2012) (granting motion to dismiss complaint for failure to allege originality, noting "Plaintiff does not provide a description on the specific subject of the copyright, that is, what parts of [plaintiff's] floor plan are original"). *See also Meshwerks*, 528 F.3d at 1265 (stating that "the unequivocal lesson from *Feist* is that works are not copyrightable to the extent they do not involve any expression apart from the raw facts in the world").

> ### b. Planner 5D Does Not Allege that the Selection and Arrangement of its Compilations Are Creative or Original, or that Facebook Copied such Selection and Arrangement.

In order to allege copyright protection in a compilation (such as Planner 5D's alleged Object Compilation and Scene Compilation), a plaintiff must allege that it made creative "choices as to selection and arrangement" of the compilation's elements such that they "are made independently by the compiler and entail a minimal degree of creativity." *Feist*, 499 U.S. at 348. Here, there are no allegations that Planner 5D made any creative choices as to the selection and arrangement of the Objects or Scenes in the compilations. Planner 5D's Object Compilation is allegedly just a "catalog" of all of its Objects. (*See* Compl. ¶ 5.) Similarly, Planner 5D's Scene Compilation is merely a "repository" of all of the Scenes created by its users. (*Id.* ¶ 35.) There are no allegations that Planner 5D made any creative choices in selecting which Objects or Scenes to include in the compilations or that it arranged or organized the Objects or Scenes in a creative way. *See Phantomalert, Inc. v. Google Inc.,* No. 15 Civ. 03986 JCS, 2015 WL 8648669, at *12 (N.D. Cal Dec. 14, 2015) (dismissing claim because no allegations "that the data is organized into categories, for example, or that there is anything creative about the way the data is displayed"). Nor is there any creativity in simply including every Object or Scene in a repository, which allegedly is the case here.

1   *See Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1518 (11th Cir. 1997) (no

2   originality in directory that included the "entire relevant universe known to [plaintiff]").

3         Likewise, Planner 5D does not allege that the Defendants *copied* the selection and

4   arrangement of its Object Compilation or Scene Compilation.  *See Rentmeester,* 883 F.3d at 1116–

5   17 (copying "original" works is required).  Rather, the Complaint simply alleges that the SUNCG

6   Dataset contains "2,644 objects and 45,622 scenes," which were individually targeted and

7   downloaded by Princeton.  (Compl. ¶ 43.)  There are no allegations that the selection and

8   arrangement of the Objects and Scenes in the SUNCG Dataset are similar to the selection and

9   arrangement of the Objects and Scenes in Planner 5D's compilations.

10        Thus, Planner 5D's copyright claim should be dismissed to the extent it is based on alleged

11  infringement of its Scene Compilation and/or Object Compilation.  *See Phantomalert*, 2015 WL

12  8648669, at *13 (dismissing copyright claim where plaintiff failed to allege that defendant copied

13  the original selection and arrangement of its compilation of mapping data, noting that the "creativity

14  that may have been reflected in [plaintiff's compilation] is not implicated by merely incorporating

15  the 'raw data' into Defendants' databases"); *Kittrich Corp. v. United Indus. Corp.*, No. 17 Civ.

16  06211, 2017 WL 10434389, at *4 (C.D. Cal. Oct. 18, 2017) (dismissing complaint where the

17  plaintiff failed to identify "what particular combination of unprotectable elements Plaintiff alleges to

18  be original or copied").

19                              #        #        #

20        Thus, for each of the independent reasons stated above, Planner 5D has not stated (nor can it

21  plausibly state) a claim for copyright infringement against Facebook and thus its claim should be

22  dismissed with prejudice.[7]

23

24  ───────────────

[7] Planner 5D also asserts claims against Facebook for vicarious and/or contributory liability based

25  on the use of the SUNCG Dataset by other researchers and the SUMO Challenge participants.
    (Compl. ¶ 60.)  These claims against Facebook also should be dismissed because Planner 5D cannot

26  state a claim for direct copyright infringement based on the SUNCG Dataset  by any third party for
    the reasons discussed above.  *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d

27  1006, 1031 (9th Cir. 2013) ("It is well-established that '[s]econdary liability for copyright
    infringement does not exist in the absence of direct infringement.'") (quoting *A&M Records, Inc. v.*

28  *Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)); *Tarantino v. Gawker Media, LLC*, No. 14
    Civ. 00603 JFW, 2014 WL 2434647, at *4 (C.D. Cal. Apr. 22, 2014) (dismissing secondary liability

**B.      Planner 5D Fails to State a Claim for Trade Secret Misappropriation against Facebook.**

To state a claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") or the California Uniform Trade Secrets Act ("CUTSA"), a plaintiff must plead (1) ownership of information that constitutes a trade secret, and (2) defendant's wrongful acquisition, disclosure, or use of such information.  18 U.S.C. §§ 1836, 1839(5); Cal. Civ. Code § 3426.1; *see Becton, Dickinson and Co. v. Cytek Biosciences Inc.*, No. 18 Civ. 00933 MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018) (noting that claims under DTSA and CUTSA are "essentially the same" and dismissing both claims); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, No. 16 Civ. 05399, 2017 WL 67075, at *7 (N.D. Cal. Jan. 6, 2017) (Orrick, J) (reciting elements of trade secret claim under the CUTSA).  As discussed below, Planner 5D's trade secret claims against Facebook should be dismissed with prejudice because it has not alleged (nor can it allege) either of these two requisite elements.

**1.      Planner 5D Does Not Allege Ownership of a Trade Secret.**

To constitute a "trade secret," the information must both (1) derive "independent economic value . . . from not being generally known to the public . . ." and (2) be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *See* Cal. Civ. Code §§ 3426.1(d)(1), (2).  *See also Veronica Foods Co. v. Ecklin*, No. 16 Civ. 07223 JCS, 2017 WL 2806706, at *12 (N.D. Cal. June 29, 2017) (definition of "trade secret" in the CUTSA is "substantially identical" to the definition in the DTSA).

Planner 5D broadly alleges that its data files defining the Objects and the Scene Compilation constitute trade secrets.  (Compl. ¶¶ 67, 75.)  As discussed below, however, these data files do not constitute "trade secrets" because they are publicly available (*i.e.*, not secret) and Planner 5D does not allege that it made any effort to keep them secret.  Nor does Planner 5D allege them with specificity.

**a.      Planner 5D Disclosed Its Alleged Trade Secrets to the Public.**

It is black letter law that "[p]ublicly available information, by definition, cannot be protected

---

claim where plaintiff did not state a claim for direct infringement of copyrighted screenplay by a third party).

**FACEBOOK'S NOTICE OF MOTION & MOTION TO DISMISS          CASE NO. 3:19-CV-03132**

as a trade secret."  *SocialApps, LLC v. Zynga, Inc.*, No. 11 Civ. 04910 YGR, 2012 WL 381216, at *2

(N.D. Cal. Feb. 6, 2012) (striking portion of CUTSA claim because complaint alleged information

was released to the public on the internet and thus it did not constitute a trade secret).

Here, Planner 5D's Objects and its Scene Compilation—and their associated data files—are

publicly available.  As alleged in its complaint, Planner 5D made them available on its public

website, which "anyone" can access for free and which "currently has over 40 million users

worldwide."  (*See* Compl. ¶¶ 27–28.)  Further, as alleged by Planner 5D, Princeton researchers were

able to access these publicly available data files on Planner 5D's website (without using a special

password or by bypassing security measures) and download them.  (*Id.* ¶ 43.)  As noted above, the

data files are publicly available through Planner 5D's design tool.

Consequently, because they are not secret, Planner 5D's data files cannot constitute trade

secrets as a matter of law, and thus its claims should be dismissed.  *See Wang v. Golf Tailor, LLC*,

No. 17 Civ. 00898 LB, 2017 WL 5068569, at *5 (N.D. Cal. Nov. 3, 2017) (dismissing claim where

plaintiff had publicly disclosed the alleged trade secret); *Veronica Foods*, 2017 WL 2806706, at *14

(dismissing complaint where information was public, stating "[o]nce the information is in the public

domain and the element of secrecy is gone, the trade secret is extinguished") (quoting *Ultimax*

*Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009)); *KEMA, Inc.*

*v. Koperwhats*, No. 09 Civ. 01587 MMC, 2010 WL 3464708, at *4 (N.D. Cal. Sept. 1, 2010)

(dismissing trade secret claim where complaint alleged that plaintiff had previously disclosed its

source code to the public); *Art of Living Found. v. Does 1-10*, No. 10 Civ. 5022 LHK, 2012 WL

1565281, at *19 (N.D. Cal. May 1, 2012) (dismissing claim that portions of manuals and teaching

notes containing the text of a yoga meditation was a trade secret when that text was made available

as a download from the plaintiff's website).  *See also Way.com, Inc. v. Singh*, No. 18 Civ. 04819

WHO, 2018 WL 6704464, at *11 (N.D. Cal. Dec. 20, 2018) (denying plaintiff's request for a

preliminary injunction based on its trade secret misappropriation claims where the court found that

the information asserted is not "likely to be protectable trade secrets" as the information was

"'readily ascertainable through public sources,' namely Way's own website").

### b. The Complaint Does Not Allege That Planner 5D Took Any Reasonable Efforts to Maintain the Secrecy of Its Alleged Trade Secrets.

In addition, Planner 5D's misappropriation claims fail for the independent reason that it did not allege that it took *any* reasonable efforts to maintain the secrecy of its data files.  *See* Cal. Civ. Code § 3426.1(d)(2); 18 U.S.C. § 1839(3)(A).  The Complaint merely states generally that Planner 5D "takes reasonable measures to preserve their secrecy."  (Compl. ¶¶ 67, 75.)  The law is clear that this type of conclusory allegation is insufficient to state a claim for trade secret misappropriation.  *See Prostar*, 2017 WL 67075, at *7 (dismissing trade secret claim where sole reasonable measure alleged was "not sharing the information") (Orrick, J.); *KEMA*, 2010 WL 3464737, at *7 (dismissing trade secret claim where plaintiff's "conclusory" allegation was insufficient to allege that he took any efforts keep source code secret); *Perryman v. Dorman*, No. 10 Civ. 1800 PHX, 2011 WL 379313, at *6 (D. Ariz. Feb. 2, 2011) (dismissing misappropriation claim because claimants "fail . . . to state the kinds of efforts they made to protect the secrecy of the information they contain").  *See also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").  Moreover, the factual allegations in the Complaint affirmatively demonstrate that Planner 5D did not take any steps to maintain the confidentiality of its data files.  Specifically, as noted above, Planner 5D's Terms of Service contain no confidentiality provisions, and its data files are publicly accessible by "anyone."  Thus, Planner 5D's claims should be dismissed.

### c. Planner 5D Fails to Identify Its Trade Secrets with Specificity.

Further, Planner 5D's claims should be dismissed because its Complaint does not identify its alleged trade secrets with specificity.  "A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'"  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No 16 Civ. 00253 WHO, 2018 WL 2117424, at *4 (N.D. Cal May 8, 2018) (quoting *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) (Orrick, J.).  Further, under California law, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain

1  at least the boundaries within which the secret lies." *Openwave,* 2018 WL 2117424, at *4 (quoting

2  Cal. Code Civ. Proc. § 2019.210).

3       Here, Planner 5D's Complaint merely refers to its "vast collection of data files for the objects

4  and scenes." (Compl. ¶ 33.)  It fails to identify which particular information within its data files is

5  not generally known, such that it would qualify for trade secret protection.  As courts have noted,

6  data files "are not trade secrets just because Plaintiff says they are: there must be some minimally

7  plausible factual explanation for why trade secret protection applies." *Synopsis, Inc.*, 2013 WL

8  5770542, at *6.  Thus, Planner 5D's trade secret claims should be dismissed for failure to allege its

9  trade secrets with particularity.  *See Top Agent Network, Inc. v. Zillow, Inc.*, No. 14 Civ. 04769,

10  2015 WL 7709655, at *5 (N.D. Cal. Apr. 13, 2015) (dismissing complaint for failure to plead

11  existence of trade secrets with sufficient specificity); *Synopsis, Inc.,* 2013 WL 5770542, at *5

12  (granting motion to dismiss where "Plaintiff's complaint simply points to everything Plaintiff has

13  created and claims everything is a trade secret").

14       **2.**     **The Complaint Does Not Allege Improper Misappropriation by Facebook.**

15       In addition to failing to allege it owns a protectable trade secret, Planner 5D's claims fail

16  because it does not allege improper misappropriation by Facebook.  Planner 5D does not claim that

17  Facebook directly acquired any of its information from Planner 5D.  Rather, Planner 5D claims that

18  Facebook "continu[ed] to use Planner 5D's trade secrets even after Facebook and Facebook

19  Technologies knew and had reason to know the secrets had been acquired by Princeton through

20  improper means." (Compl. ¶ 69.)

21       The Complaint, however, does not allege that Princeton acquired the alleged trade secrets by

22  improper means, such as "theft, bribery, misrepresentation, breach or inducement of a breach of a

23  duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); Cal.

24  Civ. Code § 3426.1(a).  Nor does the Complaint allege that either Princeton or Facebook owed

25  Planner 5D a duty of confidentiality to Planner 5D and breached it.  *See Be In, Inc. v. Google Inc.*,

26  No. 12 Civ. 03373 LHK, 2013 WL 5568706, at *3 (N.D. Cal. Oct. 9, 2013) (dismissing trade secret

27  claim where plaintiff failed to "demonstrate that the defendant (1) had a duty to maintain secrecy,

28  and (2) breached that duty.")

1    Moreover, according to the Complaint, Facebook allegedly did not use any of Planner 5D's

2    data until 2018—after such data had already been posted publicly online by Princeton in 2016 as part

3    of the SUNCG Dataset.  (*Id.* ¶¶ 36, 39–41, 47.)  There are no allegations that Facebook knew that

4    Planner 5D's alleged trade secrets were misappropriated by Princeton before they were publicly

5    posted by Princeton in 2016.  In other words, Facebook "could not be a wrongdoer because, by the

6    time it [allegedly] got involved, there was no trade secret."  *Hong Kong uCloudlink Network Tech.*

7    *Ltd. v. SIMO Holdings Inc.*, No. 18 Civ. 05031 EMC, 2019 WL 1767329, at * 1 (N.D. Cal. Apr. 22,

8    2019) (dismissing trade secret counterclaim based on alleged use of trade secrets because another

9    party had published the trade secrets without authorization prior to alleged use).  *See also Wang*,

10   2017 WL 5068569, at *5 (dismissing trade secret claim because "[t]here can be no unlawful

11   misappropriation after public disclosure of the secret").

12   Thus, Planner 5D's claims against Facebook should be dismissed because it has not alleged

13   improper misappropriation by Facebook.  *See Be In,* 2013 WL 5568706, at *3 (dismissing trade

14   secret claim, stating "[p]leading misappropriation is required, as alleging mere possession of trade

15   secrets is not enough to survive a 12(b)(6) motion") (internal quotation marks and citations omitted);

16   *see also Veronica Foods*, 2017 WL 2806706, at *14 (dismissing "largely conclusory," "everything-

17   but-the-kitchen-sink assertion" that defendants "have made improper and unauthorized use of

18   [plaintiff's alleged trade secret]"); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095,

19   1113 (N.D. Cal. 2012) (dismissing trade secret claim where plaintiff "failed to identify which, if any,

20   of the trade secrets described in the complaint were encompassed in the [material] obtained by

21   [defendant]"); *Aqua Connect, Inc. v. Code Rebel, LLC*, No. 11 Civ. 5764 RSWL, 2012 WL 469737,

22   at *2 (C.D. Cal. Feb. 13, 2012) (dismissing trade secret claim without leave to amend because

23   Plaintiff failed to allege defendant improperly acquired trade secrets).

24   **V.      CONCLUSION**

25   For the foregoing reasons, Facebook respectfully requests that the Court dismiss Planner

26   5D's Complaint against it, with prejudice, in its entirety.

27

28

1 Dated: August 16, 2019      Respectfully submitted,

2             KIRKLAND & ELLIS LLP

3

4             */s/ Dale M. Cendali*
              Dale M. Cendali (S.B.N. 1969070)

5             dale.cendali@kirkland.com
              Johanna Schmitt (admitted *pro hac vice*)

6             johanna.schmitt@kirkland.com
              KIRKLAND & ELLIS LLP

7             601 Lexington Avenue
              New York, New York 10022

8             Telephone: (212) 446-4800

9

10            May Eaton (S.B.N. 298123)
              may.eaton@kirkland.com

11            KIRKLAND & ELLIS LLP
              555 California Street

12            San Francisco, CA 94104
              Telephone: (415) 439-1400

13

14            Attorneys for Defendants
              *Facebook Inc.*

15            *Facebook Technologies, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

  On August 16, 2019, I electronically filed the foregoing with the Clerk of the Court by using

3

CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All

4

copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

5

6
                  */s/ Dale M. Cendali*

7
                  Dale M. Cendali (S.B.N. 1969070)
                  dale.cendali@kirkland.com

8

9
                  Attorney for Defendants
                  *Facebook Inc.*

10
                  *Facebook Technologies, LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28