MARC N. BERNSTEIN (SBN 145837)
mbernstein@blgrp.com
WILL B. FITTON (SBN 182818)
wfitton@blgrp.com
THE BUSINESS LITIGATION GROUP, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone: 415.765.6633
Facsimile: 415.283.4804

Attorneys for Plaintiff
UAB "PLANNER5D"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" dba PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK INC.,<br>FACEBOOK TECHNOLOGIES, LLC, THE<br>TRUSTEES OF PRINCETON UNIVERSITY,<br>DOES 1-200, ABC CORPORATIONS 1-20,<br>and XYZ UNIVERSITIES 1-20.<br><br>Defendants. | **Case No. 3:19-cv-03132-WHO**<br><br>**PLANNER 5D'S OPPOSITION TO THE DISMISSAL MOTION OF FACEBOOK INC. AND FACEBOOK TECHNOLOGIES, LLC**<br><br>Judge: Honorable William H. Orrick<br>Courtroom: 2, Seventeenth Floor<br>Hearing Date: November 6, 2019<br>Hearing Time: 2:00 p.m. |

## Table of Contents

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND AND WORKS AT ISSUE ..................................................... 2

III.  LEGAL STANDARDS ..................................................................................... 3

IV.  ARGUMENT ..................................................................................................... 4

  A.  Facebook's Improper Extrinsic Evidence Should Be Disregarded. ...................... 4

    1.  The Court Must Disregard Material Allegedly Downloaded by Facebook from Planner 5D's "Design Tool." ................................ 4

    2.  The Court Must Disregard Facebook's AI Landing Page. ............................. 5

  B.  Planner 5D States a Claim for Copyright Infringement. ........................................ 5

    1.  Planner 5D Is Not Required to Plead § 411(a)'s Inapplicability .................... 5

    2.  Planner 5D Does Not Allege that Its Works Are Published. .......................... 8

    3.  If the Court Finds That Foreign Work Status Must Be Pleaded, It Should Grant Leave to Amend. ................................................ 9

    4.  The Complaint Adequately Specifies the Accused Works. ........................... 10

    5.  Planner 5D's Works Are Copyrightable. ...................................................... 11

      a.  Realistic Items Are Copyrightable If Original and Creative. ............. 12

      b.  Planner 5D's Objects Are Copyrightable. ......................................... 13

      c.  Planner 5D Sufficiently Alleges the Copyrightability of Its Compilations, and Facebook's Copying of Them. ............................ 15

        i.  The Object Compilation ................................................................. 15

        ii.  The Scene Compilation ................................................................. 16

  C.  Planner 5D States a Claim for Trade Secret Misappropriation. ............................ 17

    1.  Planner 5D Adequately Alleges Its Data Files' Value. ................................. 17

    2.  Planner 5D Adequately Alleges Its Data Files' Relative Secrecy. ............... 17

    3.  The Secrecy of Planner 5D's Data Files Is Not Destroyed by Displaying the Images Rendered from Them. ............................... 18

    4.  Planner 5D Adequately Alleges Efforts Reasonable in the Circumstances to Protect Its Data Files. ................................... 19

5.  Planner 5D's Vast Library of Data Files Is a Trade Secret. ............................ 20

6.  Planner 5D Adequately Identifies Its Trade Secrets. .................................... 21

7.  Planner 5D Adequately Alleges Facebook's Misappropriation. .................... 22

    a.  Facebook Knew or Should Have Known That Princeton Acquired Planner 5D's Trade Secrets by Improper Means. ............... 22

    b.  Facebook Knew or Should Have Known That Princeton Acquired the Trade Secrets Subject to a Duty to Maintain Their Secrecy and Limit Their Use. .................................................. 23

    c.  Facebook Acquired the Trade Secrets Under Circumstances Giving Rise to a Duty to Maintain Their Secrecy and Limit Their Use ........................................................................................ 23

8.  Facebook's Theft Is Not Excused by Princeton's. ......................................... 23

9.  If the Court Concludes Planner 5D Has Not Adequately Pleaded Its Trade Secret Claims, Planner 5D Should Be Granted Leave to Amend. ........ 25

V.   CONCLUSION ............................................................................................................. 26

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Albino v. Baca*,
   747 F.3d 1162 (9th Cir. 2014)..................................................................................................... 7

4

*Aliotti v. R. Dakin & Co.*
   831 F.2d 898 (9th Cir.1987)...................................................................................................... 12

5

6

*Aqua Connect, Inc. v.Code Rebel, LLC*,
   No. 11-CV-5764, 2012 WL 469737 (C.D. Cal. Feb. 13, 2012)............................................. 25

7

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................................................... 3, 10

8

9

*ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
   402 F.3d 700 (6th Cir. 2005).................................................................................................... 14

10

*Auto. Data Sols., Inc. v. Directed Elecs. Canada, Inc.*,
   No. 18-CV-01560 GW, 2018 WL 4751743 (C.D. Cal. May 21, 2018)................................... 11

11

12

*Auto. Data Sols., Inc. v. Directed Elecs. Canada, Inc.*,
   No. 18-CV-1560, 2018 WL 4742289 (C.D. Cal. Aug. 15, 2018)........................................... 10

13

*Be In, Inc. v. Google Inc.*,
   No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) .................................. 25

14

15

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................................................... 3, 10

16

*Berkla v. Corel Corp.*,
   66 F. Supp. 2d 1129 (E.D. Cal. 1999).............................................................................. 12, 13

17

18

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) ................................................................................. 11

19

*Bridgeman Art Library, Ltd. v. Corel Corp.*,
   36 F. Supp. 2d 191 (S.D.N.Y. 1999)...................................................................................... 14

20

21

*Clayton v. Automated Gaming Techs., Inc.*,
   No. 2:13-CV-00907, 2014 WL 1334005 (E.D. Cal. Apr. 3, 2014)......................................... 10

22

*Cohen v. Facebook Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................................................... 4

23

24

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*,
   606 F.3d 612 (9th Cir. 2010)..................................................................................................... 6

25

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010).............................................................................................. 3, 4

26

27

*Curran v. Amazon.com, Inc.*,
   No. 07-CV-0354, 2008 WL 472433 (S.D.W. Va. Feb. 19, 2008) ............................................ 5

28

iii

*DigitAlb, Sh.A. v. Setplex*, LLC,
    284 F. Supp. 3d 547 (S.D.N.Y. 2018). ............................................................................ 7, 9

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (1968) ............................................................................................ 21

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) ................................................................................................. 9

*DVD Copy Control Assn., Inc. v. Bunner*,
    116 Cal. App. 4th 241 (2004) ........................................................................................... 17

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
    No. 17-CV-00808, 2018 WL 2463869 (E.D. Cal. June 1, 2018) ...................................... 22

*E.I. duPont deNemours & Co. v. Christopher*,
    431 F.2d 1012 (5th Cir. 1970) ........................................................................................... 19

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*,
    No. 14-CV-02496, 2015 WL 12655484 (C.D. Cal. Nov. 19, 2015) .................................... 7

*Ets-Hokin v. Skyy Spirits Inc.*
    323 F.3d 763 (9th Cir. 2003) .................................................................................. 12, 13, 14

*Evox Prods. LLC v. Kayak Software Corp.*,
    No. 15-CV-5053, 2017 WL 5634856 (C.D. Cal. Jan. 20, 2017) ........................................ 14

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. 08-CV-5780 JF (RS), 2009 WL 1299698 (N.D. Cal. May 11, 2009) ........................... 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*,
    499 U.S. 340 (1991) .................................................................................................. 12, 13, 15

*Folkens v. Wyland Worldwide, LLC*
    882 F.3d 768 (9th Cir. 2018) .................................................................................... 12, 13

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*, LLC,
    139 S. Ct. 881 (2019) ............................................................................................... 5, 6, 9

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) .................................................................................. 4

*Free Speech Sys., LLC v. Menzel*,
    No. 19-CV-00711-WHO, 2019 WL 2515579 (N.D. Cal. June 18, 2019) ............................ 4

*Gajo v. Chicago Brand*,
    No. 17-CV-00380-EMC, 2017 WL 2473142 (N.D. Cal. June 8, 2017) ............................... 7

*Getaped.com, Inc. v. Cangemi*,
    188 F. Supp. 2d 398 (S.D.N.Y. 2002) ............................................................................... 8, 9

*Golan v. Holder*,
    565 U.S. 302 (2012) ............................................................................................................. 7

*HiQ Labs, Inc. v. LinkedIn Corp.*,
  No. 17-16783, 2019 WL 4251889 (9th Cir. Sept. 9, 2019) ...................................................... 22

*Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings Inc.*,
  No. 18-CV-05031-EMC, 2019 WL 1767329 (N.D. Cal. Apr. 22, 2019) .............................. 24

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
  No. 16-CV-1318, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) ............................................ 11

*Jones v. Bock*,
  549 U.S. 199(2007) ............................................................................................................. 6

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
  657 F.2d 1059 (9th Cir. 1981) .......................................................................................... 12

*KEMA, Inc. v. Koperwhats*,
  No. 09-CV-1587-MMC, 2010 WL 3464708 (N.D. Cal. Sept. 1, 2010) ........................... 19, 20

*Kern[e]l Records Oy v. Mosley*,
  794 F. Supp. 2d 1355 (S.D. Fla. 2011) .............................................................................. 8

*Kernel Records Oy v. Mosley*,
  694 F.3d 1294 (11th Cir. 2012) ...................................................................................... 8, 9

*Kittrich Corp. v. United Indus. Corp.*,
  No. 17-CV-06211, 2017 WL 10434389 (C.D. Cal. Oct. 18, 2017) ................................... 16

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .......................................................................................... 4, 5

*Krommenhock v. Post Foods, LLC*,
  No. 16-CV-04958-WHO, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018 ............................ 3

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ..................................................................................................... 18

*Malibu Media, LLC v. Doe*,
  No. 18-CV-10956, 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ....................................... 9

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
  922 F.3d 946 (9th Cir. 2019) ............................................................................................ 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) .......................................................................................... 3

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................................ 25

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*,
  575 F. App'x 801 (9th Cir. 2014) ..................................................................................... 21, 22

*Meshwerks, Inc. v. Toyota Motor Sales USA, Inc.*,
  528 F.3d 1258 (10th Cir. 2008) ........................................................................................ 14

*Microsoft Corp. v. MY Choice Software, LLC*,
  No. 15-CV-150515, 2015 WL 12765460 (C.D. Cal. Sept. 22, 2015)......................................... 10

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
  No. 16-CV-3975, 2017 WL 5664996 (C.D. Cal. Sept. 14, 2017)............................................. 11

*Nat'l Org. for Women v. Scheidler*
  510 U.S. 249 (1994) ................................................................................................................... 3

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (2014) ................................................................................................................ 23

*Oklevueha Native Am. Church, Inc. v. Holder*,
  676 F.3d 829 (9th Cir. 2012)....................................................................................................... 3

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
  No. 16-CV-00253-WHO, 2018 WL 2117424 (N.D. Cal. May 8, 2018) ................................. 21

*Palmer/Kane LLC v. Gareth Stevens Publ'g*,
  No. 15-CV-7404, 2017 WL 3973957 (S.D.N.Y. Sept. 7, 2017)................................................. 8

*Perryman v. Dorman*,
  No. 10-CV-1800, 2011 WL 379313 (D. Ariz. Feb. 2, 2011)................................................... 20

*Phantomalert Inc. v. Google Inc.*,
  No. 15-CV-03986 JCS, 2015 WL 8648669 (N.D. Cal Dec. 14, 2015).................................... 15

*Proline Concrete Tools, Inc. v. Dennis*,
  No. 07-CV-02310, 2008 WL 11286077 (S.D. Cal. Aug. 18, 2008) ........................................ 11

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
  No. 16-CV-05399-WHO, 2017 WL 67075 (N.D. Cal. Jan. 6, 2017) ...................................... 20

*QTL Corp. v. Kaplan*,
  No. 97-CV-20531-EAI, 1998 WL 303296 (N.D. Cal. Feb. 2, 1998)....................................... 15

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
  No. 95-CV-20091-RMW, 1997 WL 34605244 (N.D. Cal. Jan. 6, 1997) .......................... 17, 24

*Salt Optics, Inc. v. Jand, Inc.*,
  No. 10-CV-00828, 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010) .......................................... 11

*Satava v. Lowry*
  323 F.3d 805 (9th Cir. 2003)..................................................................................................... 12

*Scottsdale Ins. Co. v. Hudson Specialty Ins. Co.*
  2016 WL 1169378 (N.D. Cal. Mar. 25, 2016) ........................................................................... 3

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010)..................................................................................................... 18

*SocialApps, LLC v. Zynga, Inc.*,
  No. 11-CV-04910-YGR, 2012 WL 381216 (N.D. Cal. Feb. 6, 2012)..................................... 19

*Sparaco v. Lawler, Matusky, Skelly, Engineers LLP*,
   303 F.3d 460 (2d Cir. 2002) ..................................................................................... 14

*Stavrinides v. Vin Di Bona*,
   No. 18-CV-00314, 2018 WL 1311440 (C.D. Cal. Mar. 12, 2018) ............................ 7

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. 13-CV-02965-SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)............................. 11, 22

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018)...................................................................... 10

*Top Agent Network, Inc. v. Zillow, Inc.*,
   No. 14-CV-04769-RS, 2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) ...................... 22

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017)........................................................................................ 6

*United States v. Nosal*,
   844 F.3d 1024 (9th Cir. 2016) .................................................................................... 20

*Wang v. Golf Tailor, LLC*,
   No. 17-CV-00898-LB, 2017 WL 5068569 (N.D. Cal. Nov. 3, 2017) .............................. 19, 24

*Way.com, Inc. v. Singh*,
   No. 3:18-CV-04819-WHO, 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018) ........................... 17

**Statutes & Rules**

17 U.S.C. § 101 ............................................................................................................ 8, 9

17 U.S.C. § 411 ..................................................................................................... 5, 6, 7, 9

18 U.S.C. § 1836 .............................................................................................................. 17

Cal. Civ. Code § 3426 ............................................................................................... passim

Cal. Civ. Proc. Code § 2019.210........................................................................................ 21

Digital Millennium Copyright Act of 1998, P.L. 105-304, 112 Stat. 2860 ................................. 6

Fed. R. Civ. P. 12 .............................................................................................................. 3

**Other**

Restatement (Third) Unfair Competition
   § 39 (Am. Law Inst. 1995) ........................................................................................ 17

# I.      INTRODUCTION

Like Princeton, Facebook contends owners of foreign works cannot sue for infringement unless they plead exemption from a registration requirement applicable only to U.S. works. But foreign works face no such pre-suit registration requirement. If Facebook disputes Planner 5D's works are foreign, it may raise that as an affirmative defense.

Facebook contends Planner 5D insufficiently identifies the works Facebook copied. But Planner 5D identifies the copied works as exactly those appearing in the SUNCG dataset. Facebook also denies Planner 5D's objects are copyrightable. But the objects are original, hand-crafted renderings, not the slavish or mechanical reproductions Facebook charges. Facebook goes so far as to contend Planner 5D's custom-made designs are "facts." But hand-crafted designs are not "facts. Planner 5D's renderings far exceed the minimal creativity required for copyrightability. Nor, in any event, could the Court determine otherwise as a matter of law.

Facebook's trade secret challenge also fails. Facebook follows Princeton in contending that Princeton's success in crawling and scraping Planner 5D's files shows the files weren't secret. Yet they were secret, protected by both technological and legal measures. It would be strange indeed if Princeton's evasion of Planner 5D's technical measures and its violation of Planner 5D's legal terms counted as proof of those measures' inadequacy. And here again, a pleadings challenge is no place for such an argument.

Princeton's posting of the stolen files did not excuse Facebook's later use of them. Princeton offered access to the SUNCG dataset at a Princeton URL. But the extent of the resulting disclosure is not yet alleged, or indeed, known. How many researchers availed themselves of Princeton's offer, and what conditions Princeton placed on the data's use or disclosure, are not resolvable on the pleadings. As with Facebook's other trade secret theories, this one turns on facts. Facebook's motion should be denied.

Facebook paints itself as a champion of "open research." (Dkt. 33 at 1:4) But Facebook is not entitled to achieve its business ends on the back of Planner 5D's hard work and investment.

## II.     BACKGROUND AND WORKS AT ISSUE

This case alleges a scheme by two prominent institutions to steal tens of thousands of proprietary Planner 5D files, each of which defines a three-dimensional object or scene (the P5D Works). Object and scene data have become essential to the emerging field of computer vision. (Dkt. 1 ¶¶ 3-4, 36.) The quantity and quality of Planner 5D's files make them particularly valuable, and a tempting target. (*Id.* ¶ 39.) Planner 5D's collection, developed over many years at a cost of millions of dollars, is likely the world's largest. (*Id.* ¶¶ 5, 29-30.) The collection was authored in Europe by European designers. (*Id.* ¶¶ 29-30).

Computer-vision researchers at Princeton were among those interested in Planner 5D's data. (*Id.* ¶¶ 36-40.) Acting without Planner 5D's authorization or knowledge, these researchers downloaded about five gigabytes of files—some 48,000 objects and scenes—from Planner 5D's server in Europe. (*Id.* ¶¶ 6, 7, 13, 43-45.) Although Planner 5D's software generates three-dimensional images that users can see, it keeps users from directly accessing the underlying data files, or saving them for use elsewhere. (*Id.* ¶¶ 31-32.) In addition, Planner 5D's Terms of Service prohibited "download[ing] . . . any portion of the Planner5D project, the Materials or any information contained therein or us[ing] the Planner5D project or the Materials other than for their intended purposes," and specifically prohibited using a "'page-scrape,' 'robot,' 'spider[,]' or other automatic device . . . to access, acquire, copy, or monitor any portion of the Planner5D project." (*Id.* ¶¶ 31, 45.) Princeton circumvented these technical and legal restrictions by crawling tens of thousands of webpages, cataloging the object and scene locations, and then scraping the data. (*Id.* ¶¶ 32, 43.)

Princeton offered access to the files on a Princeton website, calling it the "SUNCG dataset." (*Id.* ¶¶ 7-8, 40.) Princeton researchers publicly admitted downloading the data files from Planner 5D. (*Id.* ¶¶ 7, 38-40.) The SUNCG dataset is 99.9% to 100% identical to Planner 5D's copyrighted and trade secret data files. (Dkt. 1 ¶ 44.) Although Planner 5D's collection now numbers over 4,500 objects and over 1 million scenes, (*id.* ¶¶ 29, 30), when Princeton scraped them in 2016, it took Planner 5D's entire publicly-available collection. (*Id.* ¶¶ 6, 43.)

Facebook, too, is actively developing scene-recognition technology. (*Id.* ¶¶ 46-49.) In 2018, with help from Princeton and other high-profile universities, Facebook launched its first Scene Understanding and Modeling (SUMO) Challenge. (*Id.* ¶¶ 47-50.) For this contest, Facebook made a new copy of the SUNCG dataset for contestants to use. (*Id*, ¶¶ 11, 51.) Facebook made at least one further copy, for another of its scene-recognition projects called "the House 3D environment." (*Id.* ¶ 53.)

## III.     LEGAL STANDARDS

Complaints must state claims permitting relief. Fed. R. Civ. P. 12(b)(6). They will be sustained if they allege facts sufficient to make them "plausible on [their] face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facially-plausible claims are those with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts weighing 12(b)(6) dismissal "'accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Krommenhock v. Post Foods, LLC*, No. 16-CV-04958-WHO, 2018 WL 1335867, at *3 (N.D. Cal. Mar. 15, 2018) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). Complaints don't need "'detailed factual allegations,'" but only enough facts to make relief "'above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Courts need not credit "'conclusory allegations and unwarranted inferences.'" *Id.* (quoting *Oklevueha Native Am. Church, Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012)). Finally, general allegations encompass the specific facts necessary to support them. *Scottsdale Ins. Co. v. Hudson Specialty Ins. Co.*, No. 15-CV-02896-HSG, 2016 WL 1169378, at *4 (N.D. Cal. Mar. 25, 2016) (citing *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994)).

On a motion to dismiss, a court may only consider an outside document where the complaint necessarily relies on it or alleges its contents, and neither its authenticity nor its relevance is disputed. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Mere mention of a document is insufficient. *Id.* Finally, webpages may be "incorporated by reference" only if they are authenticated, provide context for the material in the complaint, and are

necessarily viewed with it. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

## IV.   ARGUMENT

### A.   Facebook's Improper Extrinsic Evidence Should Be Disregarded.

Facebook's motion relies on facts not alleged in Planner 5D's Complaint. Facebook tries to justify this because the facts appear in websites referenced in the Complaint. (Dkt. 33 at 2-3 n.2, 5:12-17, 6:4-6, 6:16-18.) But Facebook misapprehends the incorporation-by-reference doctrine, and the Court should disregard Facebook's extrinsic evidence.

#### 1.   The Court Must Disregard Material Allegedly Downloaded by Facebook from Planner 5D's "Design Tool."

The Court should ignore Facebook's claim that it extracted ".p3d" data files associated with certain objects. (Dkt. 33 at 3:7-21.) The Court should likewise ignore a new scene Facebook appears to have created using these objects. (*Id.* at 3:23-4:10.) None of these materials is in the Complaint, or on Planner 5D's website. (*See* Dkt. 1; Dkt. 33-1; Ex. 1 (Dkt. 39-2) to Fitton Decl. (Dkt. 39-1) in Supp. of P5D Req. for Jud. Notice (Dkt. 39).) These materials are unauthenticated, and Planner 5D objects to their use. The materials are also contradicted by the pleadings, which allege that "Planner 5D's website prohibit[s] users from directly accessing, downloading, or otherwise using the data files defining Planner 5D's objects and scenes." (Dkt. 1 ¶ 32.) These extrinsic materials do not satisfy incorporation-by-reference standards and they must be disregarded. *See Coto Settlement*, 593 F.3d at 1038 (judicial notice proper only where complaint *necessarily relies* on referenced documents whose authenticity is not in question); *Free Speech Sys., LLC v. Menzel*, No. 19-CV-00711-WHO, 2019 WL 2515579, at *1 n.2 (N.D. Cal. June 18, 2019) (though webpage was cited in the complaint, the underlying HTML code was not, and was not judicially noticeable; nor were webpages at links found on the cited webpage); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011) (judicial notice unwarranted for uncited webpages that were not necessarily seen, and whose existence at the relevant times was uncertain); *Cohen v. Facebook Inc.*, 798 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011) (judicial notice unwarranted where there were "substantial questions" about when documents appeared on website, and their relevance).

1    Separately, Facebook's extrinsic evidence is incorrect. Planner 5D's website does not use

2    .p3d files, or make them available for download. It never has. Because Planner 5D's web

3    software interacts with browsers running JavaScript, its object and scene files are written in

4    JavaScript Object Notation, or JSON. JSON files are human-readable; .p3d files, which are

5    binary files, are not. None of the 48,000 files Princeton downloaded and assembled into the

6    SUNCG dataset were .p3d files. All were JSON files, or incidental file types such as image files

7    and comma-separated-value files. Similarly, all trade secret misappropriations alleged in the

8    Complaint involved the downloading of JSON files, not .p3d files.

9    **2.    The Court Must Disregard Facebook's AI Landing Page.**

10    Facebook's motion also refers to its own "AI" landing webpage at

11    https://ai.facebook.com. (Dkt. 33 at 5:12-17, 6:4-6.) Again, the Complaint does not refer to this

12    page, and Planner 5D objects to its consideration. The Complaint cites a *different* Facebook

13    page, that of the infringing "House 3D" dataset: https://ai.facebook.com/tools/house3d. (Dkt. 1

14    ¶ 53.) But Facebook's landing page is neither cited in, nor integral to, Planner 5D's claims. Nor

15    has Facebook shown that the landing page must be accessed when navigating to the webpage

16    referenced in the Complaint. These unauthenticated references have thus not been incorporated,

17    and the Court should disregard them. *See Curran v. Amazon.com, Inc.*, No. 07-CV-0354, 2008

18    WL 472433, at *13-14 (S.D.W.Va. Feb. 19, 2008); *cf. Knievel*, 393 F.3d at 1076-77.

19    **B.    Planner 5D States a Claim for Copyright Infringement.**

20    **1.    Planner 5D Is Not Required to Plead § 411(a)'s Inapplicability.**

21    Owners of U.S. works must register them before suing for infringement. 17 U.S.C.

22    § 411(a). But owners of foreign works have no such obligation. *Fourth Estate Pub. Benefit Corp.*

23    *v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019). This accords with the Berne Convention,

24    which provides that "[t]he enjoyment and exercise of [copyright by foreign authors] shall not be

25    subject to any formality."

26    Owners of foreign works also are not subject to special pleading requirements. Because

27    section 411(a) simply does not apply to foreign works, its inapplicability is not an element of

28    their infringement and, thus, not required to be pleaded. At one time, foreign works were an

5

exception to § 411(a), and thus needed to be pleaded. But that was reversed by the Digital

Millennium Copyright Act of 1998 (DMCA), P.L. 105-304, 112 Stat. 2860. (*See* Dkt. 36 at 3:10-

5:10.) (Where, as here, Facebook's arguments mirror Princeton's, Planner 5D cites and

incorporates its Princeton's responses rather than fully repeat them.)

Facebook argues that "[r]egistration is a required element of ownership of a valid

copyright." (Dkt. 33 at 8:17.) This is simply not the law. "An author gains 'exclusive rights' in

her work immediately upon the work's creation . . . ." *Fourth Estate*, 139 S. Ct. at 887. "[A]n

owner's rights exist apart from registration . . . ." *Id.*

It is true that *domestic* works must be registered before an infringement suit can be filed.

*Id.* And for U.S. works, courts and commentators have referred to registration as an element of

the plaintiff's claim. *E.g., Cosmetic Ideas, Inc. v. IAC/Interactivecorp*., 606 F.3d 612, 615 (9th

Cir. 2010), *abrogated by Fourth Estate*, 139 S. Ct. at 887; *Unicolors, Inc. v. Urban Outfitters,

Inc.*, 853 F.3d 980, 988 (9th Cir. 2017); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d

946, 951 (9th Cir. 2019). But as explained in Planner 5D's Princeton's opposition, a close review

of the text and legislative history of the Digital Millennium Copyright Act of 1998 ("DMCA"),

P.L. 105-304, 112 Stat. 2860, reveals that the DMCA modified the Copyright Act such that no

plaintiff is required to plead compliance with the registration requirement. Instead, after the

DMCA, the better reading is that failure to register a U.S. work is an affirmative defense for

defendants to plead and prove. *Compare Fourth Estate*, 139 S. Ct. at 887 ("registration is akin to

an administrative exhaustion requirement that the owner must satisfy before suing to enforce

ownership rights") *with Jones v. Bock*, 549 U.S. 199, 212 (2007) (administrative exhaustion is

typically regarded as an affirmative defense). *See also Reed Elsevier*, 559 U.S. at 166, 166 n.6

(comparing § 411(a)'s registration requirement to the administrative exhaustion requirement that

was an affirmative defense in *Jones*).

In any event, *foreign* works need not be registered at all. *Fourth Estate*, 139 S. Ct. at 891

(noting that foreign works are "removed . . . from § 411(a)'s dominion"). Facebook's assertion,

that "[r]egistration is a required element of ownership of a valid copyright," (Dkt. 33 at 8:17), is

simply false as applied to foreign works. As the P5D Works are foreign works, Facebook's

1    omission of this limitation is key. (*See* Dkt. 36 at 4:14-21, 5:11-7:25.)

2        Facebook argues that Planner 5D was required to plead facts to establish that § 411(a)

3    does not apply, citing the Supreme Court's decision in *Golan v. Holder* and four district court

4    decisions. (Dkt. 33 at 9:2-11, 9:25-28, 10:5-18.) As Planner 5D shows in its Princeton

5    opposition, one of these, *DigitAlb*, was wrongly decided. (Dkt. 36 at 4:22-5:10.) The remaining

6    cases do not support Facebook's position. As they were not addressed in the Princeton

7    opposition, Planner 5D discusses them here.

8        *Golan* supports *Planner 5D's* position that § 411(a) does not apply to foreign works. In

9    the footnote Facebook cites, the Supreme Court chronicles how, while many copyright

10   formalities have been rolled back, § 411(a) still "require[s] registration of U.S. 'work[s],' but not

11   foreign works, before an owner may sue for infringement." *Golan v. Holder*, 565 U.S. 302, 314

12   n.11 (2012). Neither this footnote nor anything else in *Golan* imposes special pleading

13   requirements for owners of foreign works.

14       *Elohim* likewise does not support Facebook's pleading theory. Facebook says *Elohim*

15   upheld a "dismissal" where the plaintiff could not "establish" its works were foreign. (Dkt. 33 at

16   9:8-9, 9:17-18.) But *Elohim* involved a summary judgment motion, not a pleadings challenge. By

17   "establish," it did not mean "plead," but "prove." *Elohim* said nothing about pleadings. *Elohim*

18   *EPF USA, Inc. v. Total Music Connection, Inc.*, No. 14-CV-02496, 2015 WL 12655484, at *5

19   (C.D. Cal. Nov. 19, 2015).

20       *Gajo* and *Stavrinides* involved pro se plaintiffs living in California. *Gajo v. Chicago*

21   *Brand*, No. 17-CV-00380-EMC, 2017 WL 2473142, at *2-3 (N.D. Cal. June 8, 2017);

22   *Stavrinides v. Vin Di Bona*, No. 18-CV-00314, 2018 WL 1311440, at *1 (C.D. Cal. Mar. 12,

23   2018). In both cases, the subject works were obviously U.S. works subject to § 411(a)'s

24   registration requirement. Neither plaintiff argued that its works were foreign works. *See Albino v.*

25   *Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (holding that an affirmative defense on face of

26   complaint is grounds for dismissal). And neither *Gajo* nor *Stavrinides* announced a general rule

27   that foreign work–status must be affirmatively pleaded.

28       Here, the Complaint reveals no affirmative defense that could support dismissal. *See*

*Albino*, 747 F.3d at 1166. It states only that the P5D Works were authored in Europe, and that objects and scenes were displayed on Planner 5D's website. (Dkt. 1. ¶¶ 27, 29-30). From this, the Court cannot conclude that the P5D works are unregistered U.S. works. Facebook can raise this defense in its answer. But its motion to dismiss should be denied.

### 2.     Planner 5D Does Not Allege that Its Works Are Published.

Facebook, like Princeton, asserts that Planner 5D's works are available on the Internet, and thus that they are published. (Dkt. 33 at 9:19.) But the Complaint does not say the works were published, and neither does the law. Planner 5D alleges its data files are restricted from downloading for use elsewhere. (Dkt. 1 ¶¶ 31-32.) The mere display of screen images rendered from data files is not publication. 17 U.S.C. § 101. ("A . . . display of a work does not of itself constitute publication.") The Complaint thus does not support a finding of publication. Instead, publication is a fact-intensive question inappropriate for resolution on the pleadings. *Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 1:15-CV-7404, 2017 WL 3973957, at *12 (S.D.N.Y. Sept. 7, 2017). (*See* Dkt. 36 at 8:6-9:21.)

In support of its argument that Internet posting is automatically publication, Facebook cites *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) and *Kernel Records Oy v. Mosley*, 694 F.3d 1294 (11th Cir. 2012). (Dkt. 33 at 9:19-10:4.) As shown in Planner 5D's Princeton opposition, to the extent these decisions announce a per se rule that Internet posting is publication, those statements are dicta, and incorrect. (*See* Dkt. 36 at 9:22-11:14.)

*Getaped* and *Kernel Records Oy* are also distinguishable. In *Getaped*, the court found that website source code was published when posted to the Internet. *Getaped.com*, 188 F. Supp. 2d at 401. The key factor was "ability of the Internet user to download a file containing a copyrighted work and thereby gain control of it." *Id.* That was easy there because a website's source code can be downloaded using the "view source" mode on a browser. *Id.* at 402 n.3. The same with *Kern[e]l Records Oy v. Mosley*, 794 F. Supp. 2d 1355 (S.D. Fla. 2011). There, the court held that the plaintiff's songs were published because they were "not merely viewable (audible) on the Internet," but also "available for downloading and copying." *Id.* at 1364. The Eleventh Circuit added that the question also entailed consideration of "the method, extent, and purpose of

1  distribution." *Kernel Records Oy*, 694 F.3d at 1303. Here, by contrast, the Complaint specifically

2  alleges that Planner 5D's data files were *not* posted in a way that allowed them to be accessed or

3  downloaded for use elsewhere. (Dkt. 1 ¶¶ 31-32.) Thus, the key factor in *Getaped*'s and *Kernel*

4  *Records*'s holdings is not present here.

5       Facebook says a work's place of authorship is irrelevant to publication, citing *DigitAlb,*

6  *Sh.A. v. Setplex*, LLC, 284 F. Supp. 3d 547 (S.D.N.Y. 2018). (Dkt. 33 at 9:25-28.) But an

7  author's residence *does* determine whether an *unpublished* work is a U.S. work. Unpublished

8  works are U.S. works only if all authors are "nationals, domiciliaries, or habitual residents of the

9  United States, or . . . are legal entities with headquarters in the United States." 17 U.S.C. § 101.

10  Here, Planner 5D does not plead publication of the P5D Works, and *does* plead that all

11  Planner 5D works were authored exclusively by foreign nationals. (Dkt. 1 ¶¶ 29, 30.) Planner 5D

12  does not contend that authorship location affects publication location for published works.

13       In sum, a pleadings challenge is not the place to determine whether the P5D Works were

14  published, and if so, where.

15              **3.    If the Court Finds That Foreign Work Status Must Be Pleaded, It
                        Should Grant Leave to Amend.**

16

17       When a district court dismisses claims under Rule 12(b)(6), leave to amend is ordinarily

18  required. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Facebook nonetheless argues

19  that leave should be denied because the P5D Works are unregistered. (Dkt. 33 at 10 n.5.) That

20  matters only if the P5D Works are U.S. works. As shown, that is a fact-intensive question. If the

21  Court holds that Planner 5D must plead the inapplicability of § 411(a), it should allow Planner

22  5D to plead additional facts showing that its works are foreign. (*See* Dkt. 36 at 8:1-13:9.)

23       Because Planner 5D could cure without registering, Facebook's four cited cases are

24  inapposite. Each holds only that, after *Fourth Estate*, owners of unregistered *U.S. works* are

25  subject to dismissal without leave to amend. (Dkt. 33 at 10 n.5.) *E.g., Malibu Media, LLC v.*

26  *Doe*, No. 18-CV-10956, 2019 WL 1454317, at *4 (S.D.N.Y. Apr. 2, 2019) (dismissing claims

27  for infringement of unregistered U.S. works without prejudice to refiling). Because Planner 5D's

28  works are foreign works, and it could amend to say so, none of these cases is pertinent here.

### 4.      The Complaint Adequately Specifies the Accused Works.

Even after *Twombly* and *Iqbal*, "[c]opyright claims need not be [pleaded] with particularity." *Clayton v. Automated Gaming Techs., Inc.*, No. 13-CV-00907, 2014 WL 1334005, at *4 (E.D. Cal. Apr. 3, 2014); *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1161-62 (C.D. Cal. 2018); *Auto. Data Sols., Inc. v. Directed Elecs. Canada, Inc.*, No. 18-CV-1560, 2018 WL 4742289, at *7 (C.D. Cal. Aug. 15, 2018); *Microsoft Corp. v. My Choice Software, LLC*, No. 15-CV-0515, 2015 WL 12765460, at *2 (C.D. Cal. Sept. 22, 2015); *cf. Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-5780-JF, 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) (post-*Twombly* but pre-*Iqbal*).

Facebook is wrong that Planner 5D doesn't specify which objects and scenes it accuses, or provide a "representative sampling" of infringed content. (*See* Dkt. 33 at 11:9-12:22.) Planner 5D identifies the infringed works as all object files and scene-file compilations in the SUNCG dataset (including associated three-dimensional images). (Dkt. 1 ¶¶ 29-30, 43-44.)

When Princeton crawled and scraped Planner 5D's files in 2016, it downloaded every object and scene file then available. (Dkt. 1 ¶¶ 6, 43.) The resulting SUNCG dataset was 99.9% identical to Planner 5D's originals, with even the remaining .1% comprising only slightly altered versions of the originals. (*Id.* ¶ 44.) Some downloaded files even retained Planner 5D's registered trademark. (*Id.*) Facebook posted its own copies of the dataset, and directed SUMO contestants to use them. (*Id.* ¶¶ 11, 51, 53.)

The SUNCG dataset thus *is* the copyrighted material whose infringement Planner 5D alleges. Its content defines Facebook's infringement. This is not just ample, but comprehensive, notice to Facebook of the infringed works. *Cf. Ticketmaster L.L.C.*, 315 F. Supp. 3d at 1159, 1161-62 (sustaining allegation that "at least one Defendant" copied unspecified portions of the Ticketmaster website or mobile app); *Power Ventures, Inc.*, 2009 WL 1299698, at *3-4 (sustaining Facebook's allegations that defendants copied unspecified portions of its website).

Facebook argues that given the number of copyrighted materials at issue, Planner 5D must provide a "representative sampling," and does not. (Dkt. 33 at 11:14-24; 12:10-12.) However, such a sampling is not called for where, as here, the copyrighted materials are identical

to the accused materials in defendant's possession. Facebook's authorities illustrate this logical distinction. In *Blizzard*, the court required a representative sample because Blizzard's allegations that unspecified characters, settings, and other features of its games were copied did not put the defendants on notice of what was accused. *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.,* 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015). In *Joint Stock*, the court required broadcasters to provide representative samples where they accused websites of pirating "all or substantially all of their television programming" without identifying particular programs. *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC,* No. 16-CV-1318, 2017 WL 696126, at *14 (S.D.N.Y. Feb. 15, 2017). And in *MultiCraft Imports*, the court required a representative sampling where the plaintiff did not specify which of 3,700 objects in its copyrighted catalog were accused. *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, No. 16-CV-3975, 2017 WL 5664996, at *1, 2-3 (C.D. Cal. Sept. 14, 2017). Here, Facebook knows exactly what is accused.

Facebook's remaining copyright-pleading-standard cases are inapt. (*See* Dkt. 33 at 12:6-22.) Unlike the plaintiff in *Automotive Data Solutions,* Planner 5D *does* "explicitly plead that [it] owns a copyright as to [all] aspects of the [materials at issue.]" (Dkt. 1 ¶¶ 29-30.) *Auto. Data Sol., Inc. v. Directed Elecs. Caada., Inc.*, No. 18-CV-01560, 2018 WL 4751743, at *6 (C.D. Cal. May 21, 2018).) And unlike the plaintiffs in *Proline Concrete Tools*, Planner 5D has pointed Facebook to the SUNCG dataset and thus has *not* "refuse[d] to identify with any specificity whatsoever items[] sought to be placed in issue." (Dkt. 1 ¶¶ 38-39, 43-44, 51-53.) *Proline Concrete Tools, Inc. v. Dennis,* No. 07-CV-02310, 2008 WL 11286077, at *3 (S.D. Cal. Aug. 18, 2008); *see Salt Optics, Inc. v. Jand, Inc.,* No. 10-CV-0828, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) (claim dismissed where accused portions of website not identified). And finally, unlike the plaintiff in *Synopsys, Inc. v. ATopTech, Inc.,* by citing the SUNCG dataset, Planner 5D has "ma[de] clear what [Facebook] copied[.]" No. 13-CV-02965-SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013). (Dkt. 1 ¶¶ 38-39, 43-44, 51, 53; Dkt. 33 at 12:12-14.)

### 5.    Planner 5D's Works Are Copyrightable.

Planner 5D's works are proper subjects of copyright protection. Facebook is wrong that Planner 5D's works are not copyrightable because they are not original or creative, (*see* Dkt. 33

1  at 13:9-15:12), and it is incorrect that the Complaint fails to allege the copyrightability of the

2  object and scene compilations, (*id.* at 15:13-16:18).

3            **a.      Realistic Items Are Copyrightable If Original and Creative.**

4            To qualify for copyright protection, a work must be original and creative. *Feist Publ'ns,*

5  *Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345-46 (1991). "Original," as used in copyright

6  law, means only that a work be "independently created by the author (as opposed to copied from

7  other works), and that it possesses at least some minimal degree of creativity." *Id.*at 345. "[T]he

8  requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority

9  of works make the grade quite easily, as they possess some creative spark, 'no matter how crude,

10  humble or obvious' it might be." *Id.* "Originality does not signify novelty; a work may be

11  original even though it closely resembles other works so long as the similarity is fortuitous, not

12  the result of copying." *Id.* Planner 5D's objects easily meet this standard.

13            Facebook contends that Planner 5D's works are "realistic" and "exact digital renderings

14  of real-world objects." (Dkt. 33 at 13:10-25.) Facebook's argument fails for two reasons. First,

15  Planner 5D does not allege that its "real-world objects" are modeled on actual real-life objects.

16  Instead, it alleges they are "original," "hand-crafted" works of authorship. (Dkt. 1 ¶¶ 5, 29.)

17  Because the models came from the modelers' imaginations, they are not mere reproductions of

18  existing designs.

19            Second, even "realistic" or "lifelike" depictions are copyrightable. *Folkens v. Wyland*

20  *Worldwide, LLC*, 882 F.3d 768, 776 (9th Cir. 2018) (realistic depiction of dolphins crossing);

21  *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003) (realistic sculptures of jellyfish); *Ets-Hokin*

22  *v. Skyy Spirits Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (realistic photographs of a vodka bottle);

23  *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) (dinosaur dolls having dinosaur

24  physiognomy); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981)

25  (realistic toys resembling live animals); *Alpi Int'l, Ltd. v. Anga Supply, LLC*, 118 F. Supp. 3d

26  1172, 1177 (N.D. Cal. 2015) (toys patterned after animals and other real-world objects); *Berkla*

27  *v. Corel Corp.*, 66 F. Supp. 2d 1129, 1141-42 (E.D. Cal. 1999) (digital renderings of realistic

28  plant, flower and other nature components for construction of a digital garden).

1

**b.      Planner 5D's Objects Are Copyrightable.**

2      Planner 5D claims copyright protection in both the three-dimensional objects as visually

3   depicted and also their underlying data files. (Dkt. 1 ¶ 29.) Notably, Facebook challenges only

4   the copyrightability of the former (the objects as rendered), not the latter (the data files). On this

5   basis alone, Facebook's copyrightability challenge should be rejected.

6      But separately, Facebook's challenge to the rendered images also fails. Facebook argues

7   that the object images are merely "exact digital renderings of real-world objects" that are "so

8   realistic," they are "akin to real-world facts, which are not copyrightable." (Dkt. 33 at 13:10-20.)

9   Facebook mischaracterizes the Complaint's allegations and misapplies the law.

10      First, Planner 5D satisfies the originality prong of *Feist*, 499 U.S. at 345-46. Planner 5D

11   pleads that its objects are each an "original work of authorship" that have been hand-crafted by

12   human designers. (Dkt. 1 ¶¶ 3, 5, 29.) Planner 5D does not allege its designers copied their

13   objects from other sources. And Facebook is not entitled to this embellishment.

14      Second, the Complaint alleges creativity in the object images. A review of the Planner 5D

15   website reveals "hand-crafted" objects with various colors, textures, features, and

16   embellishments. (Dkt. 1 ¶ 5; Dkt. 39-2.) These depictions are realistic, yet artistic, renderings of

17   household objects, and are copyrightable as such. *See Folkens*, 882 F.3d at 776 (realistic

18   depiction of dolphins crossing); *Ets-Hokin,* 225 F.3d at 1077 (photograph of utilitarian bottle

19   copyrightable); *Berkla*, 66 F. Supp. 2d at 1141-42 (digital renderings of realistic garden

20   components). Planner 5D's website demonstrates that the claimed objects embody at least "some

21   minimal degree of creativity." Under *Feist*, nothing more is required. 499 U.S. at 345-46.

22      Facebook presses still further on copyrightability, urging that because Planner 5D's

23   objects are "exact digital renderings of real-world objects," the works are "akin to facts."

24   (Dkt. 33 at 13:10-20.) But handmade objects are not "facts." (*See* Dkt. 1 ¶ 5; Dkt. 39-2.) A more

25   accurate description would be virtual sculptures.

26      *Meshwerks*, cited by Facebook, (Dkt. 33 at 13:26-14:8), strongly supports

27   copyrightability here. As Facebook notes, (*id.* at 14:2-6), the *Meshwerks* court found the plaintiff

28   had made *no creative decisions* and that *all* creative expression came from Toyota (which

13

1  designed the vehicles) and the advertisers (who added color and texture to the renderings).

2  *Meshwerks, Inc. v. Toyota Motor Sales USA, Inc.*, 528 F.3d 1258, 1269 (10th Cir. 2008). Here,

3  Planner 5D's designers *did* make creative decisions, including color, texture, and the like.

4  *Compare* Dkt. 39-2 (showing objects' colors, textures, features, and embellishments) *with Evox*

5  *Prods. LLC v. Kayak Software Corp*., No. 15-CV-5053, 2017 WL 5634856, at *1, *6 (C.D. Cal.

6  Jan. 20, 2017) (distinguishing *Mershwerks* in light of creative decisions made by photographers

7  in creating "digital photographs of over 6,000 different automotive makes and models since

8  model year 2000"). *Meshwerks*, by contrast, acknowledged that even a photograph of an object

9  can be copyrightable. 528 F.3d at 1264-65 (citing *Ets-Hokin.,* 225 F.3d at 1077, 1080).

10  *Meshworks* was also a summary judgment decision, made on a full factual record. *Id.* at 1260.

11  The present motion, of course, is a pleading challenge.

12        Facebook cites three additional summary judgment cases, (Dkt. 33 at 14:8-16), but each

13  is inapplicable here. In *ATC Distribution Group*, the court determined that the plaintiff's

14  illustrations "were intended to be as accurate as possible in reproducing the [transmission] parts

15  shown in the photographs on which they were based, a form of slavish copying that is the

16  antithesis of originality." *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts,*

17  *Inc.*, 402 F.3d 700, 712 (6th Cir. 2005). In *The Bridgeman Art Library,* the court determined that

18  "the point of the exercise was to reproduce the underlying works with absolute fidelity.

19  Copyright is not available in these circumstances." *The Bridgeman Art Library, Ltd. v. Corel*

20  *Corp.*, 36 F. Supp. 2d 191, 197 (S.D.N.Y. 1999). Each of these cases is inapt because, as

21  explained above, Planner 5D's designers employed artistic expression rather than slavish

22  copying. Finally, *Sparaco* found there was no copyright protection for facts reflected in a site

23  plan. *Sparaco v. Lawler, Matusky, Skelly, Engineers LLP*, 303 F.3d 460, 467 (2d Cir. 2002).

24  Planner 5D's artistic renderings are not comparable to a site plan.

25        Facebook also cites three cases dismissing copyright claims for failing to allege

26  originality. (Dkt. 33 at 14:22-15:9.) But as noted above, Planner 5D *does* allege originality. (*E.g.*,

27  Dkt. 1 ¶¶ 3, 5, 29.)

28        Planner 5D more than adequately pleads its works' copyrightability.

14

**c.      Planner 5D Sufficiently Alleges the Copyrightability of Its Compilations, and Facebook's Copying of Them.**

Planner 5D adequately alleges the copyrightability of its compilations, and Facebook's copying of them. Facebook's arguments ignore the Complaint's allegations and the content of Planner 5D's webpage. (*See* Dkt. 33 at 15:18-16:9.)

The collection and assembly of pre-existing materials, facts, or data qualifies as a copyrightable compilation where the "selection, coordination, or arrangement" of the materials creates an original work of authorship. *Feist*, 499 U.S. at 357. A compilation, "even a directory that contains absolutely no protectible written expression, only facts," qualifies for copyright protection if it features an original selection or arrangement of the collected data. *Id.* at 348.

**i.   The Object Compilation**

Here, Planner 5D pleads originality in its selection of objects for its compilation, which Facebook copied. The Complaint and Planner 5D's website show that Planner 5D's designers selected, from practically unlimited possibilities, a subset of interior design objects that allow users to "create [their] dream home." (Dkt. 1 ¶¶ 3-5, 27, 29, 35; Dkt. 39-2 at 1.) That Planner 5D refers to its object compilation as a "catalog" does not change its copyrightability. (*Compare* Dkt. 33 at 15:20-21 (Facebook's catalog argument) *with*, *e.g., QTL Corp. v. Kaplan*, No. 97-CV-20531-EAI, 1998 WL 303296, at *1, 3 (N.D. Cal. Feb. 2, 1998) (motion for more definite statement denied where plaintiff specified *catalogs* at issue).)

*Phantomalert, Inc. v. Google Inc.,* cited by Facebook, (Dkt. 33 at 15:25-27), does not support its theory that Planner 5D inadequately pleads the copyrightability of its selection of object files. *Phantomalert* recognized the copyrightability of a selection for a navigation app of just the points of interest its users would value. No. 15-CV-03986 JCS, 2015 WL 8648669, at *11-12 (N.D. Cal Dec. 14, 2015) (finding no copying). And *Warren Publishing* is distinguishable. (*See* Dkt. 33 at 16:1-2.) There the court found no selection because the directory contained the "entire relevant universe known to [plaintiff]." 115 F.3d 1509, 1518 (11th Cir. 1997). Here, by contrast, Planner 5D did select objects from the "relevant universe" of possible home and office design objects to include in its compilation. Planner 5D thus properly pleads

1    compilation rights in its chosen set of objects.

2           Contrary to Facebook's argument, (Dkt. 33 at 16:3-18), Planner 5D also sufficiently

3    pleads that Facebook infringed this compilation. Princeton copied all existing Planner 5D

4    objects. (Dkt. 1 ¶¶ 6, 43.) It follows that the SUNCG dataset contains an unlawful copy of

5    Planner 5D's object selection. When Facebook copied this dataset, it similarly copied

6    Planner 5D's selection. This wholesale copying of Planner 5D's compilation distinguishes this

7    case from those, such as Facebook's, (Dkt. 33 at 16:11-18), that do not allege an intact copy of

8    the plaintiff's entire compilation. *See Phantomalert*, 2015 WL 8648669, at *12-13 (insufficient

9    to allege reproduction of data "in modified form"); *Kittrich Corp. v. United Indus. Corp.,* No.

10   17-CV-06211, 2017 WL 10434389, at *4 (C.D. Cal. Oct. 18, 2017) (insufficient to accuse

11   competitor's packaging without pointing to the particular combination of elements taken).

### ii.  The Scene Compilation

13          Planner 5D's scene compilation is similarly original, and its originality was copied by

14   Facebook. Facebook contends the scene compilation is "merely a 'repository' of all the Scenes

15   created by its users." (Dkt. 33 at 15:21-22 (citing Dkt. 1 ¶ 35).) Here again, Facebook reaches

16   outside the pleadings. Nowhere does the Complaint allege Planner 5D's scene compilation

17   includes all scenes all users ever created. Facebook's sole support for this point, Paragraph 35 of

18   the Complaint, alleges only that "[o]ne of Planner 5D's key goals has become leveraging its

19   unparalleled repository of three-dimensional object and scene files to develop first-of-its-kind

20   scene-recognition technology." This statement does not mention, much less demonstrate, that

21   Planner 5D included "all of the Scenes created by its users."

22          By contrast, the Complaint does allege the richness of the selection of scenes in

23   Planner 5D's collection. The collection was described as a "rich, simulated environment based

24   on 3D indoor scenes" and "a rich environment containing thousands of human-designed 3D

25   scenes of visually realistic houses with fully labeled 3D objects, textures, and scene layouts."

26   (Dkt. 1 ¶¶ 41, 53.) These descriptions suggest an artistic dimension to Planner 5D's scene

27   selection. Accordingly, Planner 5D adequately pleads a compilation based on its selection of

28   scenes. By contrast, the cable television system directory in *Warren Publishing*, cited by

1   Facebook, (Dkt. 33 at 16:1-2), was not copyrightable because it "included the entire relevant

2   universe known to" the publisher. 115 F.3d at 1518.

3       Planner 5D sufficiently pleads Facebook's copying of copyrightable object and scene

4   compilations.

5       **C.     Planner 5D States a Claim for Trade Secret Misappropriation.**

6       A trade secret is "secret" information whose "owner has made reasonable efforts to keep

7   secret" and that "derives independent economic value from not being generally known to other

8   persons." *Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *4 (N.D.

9   Cal. Dec. 20, 2018) (citations, internal quotation marks, and ellipses omitted). This is true under

10  both the Defense of Trade Secrets Act, 18 U.S.C. § 1836, and the California Uniform Trade

11  Secrets Act, Cal. Civ. Code § 3426. Planner 5D adequately pleads its data files as trade secrets,

12  and Facebook's misappropriation of them.

13      **1.     Planner 5D Adequately Alleges Its Data Files' Value.**

14      Over many years and at a heavy cost, Planner 5D compiled a unique and extensive library

15  of digitized, realistic three-dimensional objects and scenes, each one created by human hands.

16  (Dkt. 1 ¶¶ 5, 29, 30.) Libraries of such data files have become exceedingly valuable for scene

17  recognition research, (*id.* ¶¶ 4, 34-35), and Planner 5D's is by far the world's largest, (*see id.* ¶¶

18  3-6).

19      **2.     Planner 5D Adequately Alleges Its Data Files' Relative Secrecy.**

20      Secrecy is "a relative concept and requires a fact-intensive analysis." *DVD Copy Control*

21  *Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004). Internet publication "does not

22  necessarily destroy the secret if the publication is sufficiently obscure or transient or otherwise

23  limited so that it does not become generally known to . . . persons to whom the information

24  would have some economic value." *Id.* "The concern is whether the information has retained its

25  value to the creator in spite of the publication." *Id.* (citing Restatement (Third) Unfair

26  Competition (Restatement) § 39 cmt. f (Am. Law Inst. 1995)). (*See* Dkt. 36 at 14:3-16.) *Accord*

27  *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, No. 95-CV-20091-RMW, 1997

28  WL 34605244, at *12 (N.D. Cal. Jan. 6, 1997).

1    Here, Planner 5D does not make its data files publicly accessible, and structures its

2 website to prevent users from seeing them, or saving them for use elsewhere. (Dkt. 1 ¶ 32.)

3 Despite this, Facebook argues that Planner 5D's data files were not secret because "Princeton

4 researchers were able to access . . . and download them." (Dkt. 33 at 18:7-9.) But the mere

5 possibility of access does not destroy a trade secret. *See DVD Copy Control Assn.*, 116 Cal. App.

6 4th at 251 (observing that Internet publication that is "obscure or transient or otherwise limited"

7 does not destroy secrecy). (*See* Dkt. 36 at 16:21-17:5.)

8    Also, despite Planner 5D's clear allegations that its website is structured to prevent public

9 access to its data files, Facebook attempts to introduce extrinsic claims about downloading

10 ".p3d" files. As shown in section IV.A above, Facebook's reference to these unpleaded facts is

11 improper and misleading. The Court should disregard them.

**3.    The Secrecy of Planner 5D's Data Files Is Not Destroyed by
Displaying the Images Rendered from Them.**

12

13

14    A baker can sell a pie without revealing the recipe used to make it. *Silvaco Data Sys. v.*

15 *Intel Corp.*, 184 Cal. App. 4th 210, 224, 226 (2010), *overruled on other grounds by Kwikset*

16 *Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011). Likewise, a developer can distribute finished

17 software and still maintain the secrecy of source code from which it was compiled. *Id.* at 218.

18 (*See* Dkt. 36 at 13:22-14:2.)

19    Planner 5D's software displays images that users can see using data files the users cannot

20 see. The data files are trade secrets; the images are not. *See Silvaco Data Sys.*, 184 Cal. App. 4th

21 at 229 (holding that, just as a pie does not reveal its recipe, running software does not reveal its

22 source code). (*See* Dkt. 36 at 16:10-20.)

23    Facebook cites several decisions, (Dkt. 33 at 18:1-3, 18:12-27), but none contradicts this

24 basic distinction between secret process and disclosed product, or secret source code and

25 disclosed features. Some of these cases are distinguished in Planner 5D's Princeton opposition.

26 (*See* Dkt. 36 at 17:6-16, 17:21-18:5.) As with those cases, in Facebook's newly-cited ones,

27 secrecy was lost through disclosure of the trade secret itself—not of an underlying process or

28 specification.

The plaintiff in *SocialApps* claimed misappropriation of the secret source code for its myFarm game, and certain "images and features" of the game. *SocialApps, LLC v. Zynga, Inc.*, No. 11-CV-04910-YGR, 2012 WL 381216, at *2 (N.D. Cal. Feb. 6, 2012). Zynga did not challenge the secrecy of the source code, which was not shown on the Internet, but that of the images and features the source code rendered, which were shown. *Id.* SocialApps did not contend that the "images and features [were] themselves trade secrets." *Id.* Unsurprisingly, the court agreed, holding that the publicly-viewable images and features were not trade secrets. *Id.*

In *Wang v. Golf Tailor*, Golf Tailor alleged that Jonathon Wang and his company misappropriated its golf club designs, which were kept secret before their release for a first-to-market advantage. *Wang v. Golf Tailor, LLC*, No. 17-CV-00898-LB, 2017 WL 5068569, at *2 (N.D. Cal. Nov. 3, 2017). The problem for Golf Tailor was the timeline. The allegations showed that Wang's alleged use came after the product launch. Once public, the formerly-secret design had become obvious. *Id.* at *5.

Finally, the plaintiff in *KEMA* disclosed its own source code by giving the defendant one version, and depositing relevant parts of another with the Copyright office. *KEMA*, 2010 WL 3464708, at *4. No one argued the secrecy of *undisclosed* source code was lost.

Thus, none of Facebook's cases supports its argument that Planner 5D's data files lost their secrecy merely because images were rendered from them on the Internet. Planner 5D adequately alleges the secrecy of its individual data files and data file library.

### 4. Planner 5D Adequately Alleges Efforts Reasonable in the Circumstances to Protect Its Data Files.

A trade secret must be subject to secrecy efforts that are "reasonable under the circumstances." Cal. Civ. Code § 3426.1 (d)(2). Efforts to maintain secrecy may be reasonable even if "unauthorized actions" can overcome them. *Pyro Spectaculars*, 861 F. Supp. 2d at 1091. Courts "should not require . . . unreasonable precautions to prevent another from doing that which he ought not do in the first place." *E.I. duPont deNemours & Co. v. Christopher,* 431 F.2d 1012, 1017 (5th Cir. 1970). Whether efforts to maintain secrecy are reasonable under the circumstances is a jury question. *Mattel*, 782 F. Supp. 2d at 1046. (*See* Dkt. 36 at 15:4-24.)

Facebook contends that the Complaint "merely states generally that Planner 5D 'takes reasonable measures to preserve their secrecy.'" (Dkt. 33 at 19:5-6.) The contrary is true. The Complaint alleges that Planner 5D's website is structured to prevent users from directly accessing data files or downloading them for use elsewhere. (Dkt. 1 ¶¶ 31, 32.) Bypassing this structure requires technical skill and effort. (*See id.* ¶¶ 6, 43.) And Planner 5D's Terms prohibit using of any "'page-scrape,' 'robot,' 'spider[,]' or other automatic device . . . to access, acquire, copy, or monitor any portion of the Planner5D project" or "download[ing] . . . any portion of the Planner5D project . . . other than for their intended purposes." (*Id.* ¶¶ 31, 45.) Whether these efforts were reasonable is a fact question unsuitable for resolution in this motion. *See Mattel*, 782 F. Supp. 2d at 1046. (*See* Dkt. 36 at 18:6-19:6.)

Planner 5D's factual allegations about its secrecy efforts are not the kind of "formulaic recitation of the elements" that were insufficient in Facebook's cited cases. *See Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, No. 16-CV-05399-WHO, 2017 WL 67075, at *7 (N.D. Cal. Jan. 6, 2017) (allegation of "not sharing the information with anyone except those necessary"); *KEMA, Inc. v. Koperwhats*, No. 09-CV-1587-MMC, 2010 WL 3464708, at *4 (N.D. Cal. Sept. 1, 2010) (allegation of "understanding" that source code was confidential, without elaboration); *Perryman v. Dorman*, No. 10-CV-1800, 2011 WL 379313, at *6 (D. Ariz. Feb. 2, 2011) (allegation of "reasonable efforts," without describing them). In none of these cases were specific technical and legal secrecy measures alleged, as they are here.

### 5.    Planner 5D's Vast Library of Data Files Is a Trade Secret.

Compilations can be trade secrets even when individual elements are in the public domain. *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016). *See also Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1089-90 (E.D. Cal. 2012) (holding plaintiff's database was trade secret where it was a "virtual encyclopedia of specific . . . customer, operator, and vendor information," and "developed at great expense and labor," even though much or all publicly available). Apart from individual data files, Planner 5D's vast library of data files is itself a trade secret, created at great expense and valuable to scene-recognition researchers because of its quality and unparalleled size. (*See* Dkt. 1 ¶¶ 3-6, 9.) (*See* Dkt. 36 at 14:17-15:3,

1   19:7-19.)

2   **6.      Planner 5D Adequately Identifies Its Trade Secrets.**

3   State and federal courts applying California law use separate standards for identifying

4   trade secrets in the complaint and in the required pre-discovery disclosure. *Meggitt San Juan*

5   *Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801, 803 (9th Cir. 2014). At the pleading stage, no

6   heightened specificity is required. *Id.* (noting lack of authority that plaintiff "should have

7   identified the particular trade secrets *at the pleading stage*" (emphasis in original)). It is enough

8   to "allege the ultimate facts showing the existence of a trade secret or other confidential data to

9   state such a cause of action." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968). "One

10  who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out

11  the details of the trade secret to avoid a demurrer to a complaint." *Id.*

12  But before commencing discovery, in a disclosure that is typically (but not necessarily)

13  separate from the complaint, the plaintiff must "identify the trade secret with reasonable

14  particularity." Cal. Civ. Proc. Code § 2019.210. *See Openwave Messaging, Inc. v. Open-*

15  *Xchange, Inc.*, No. 16-CV-00253-WHO, 2018 WL 2117424, at *4 (N.D. Cal. May 8, 2018)

16  (observing that "courts in this district have routinely applied the trade secret disclosure

17  provisions in Section 2019.210"). That heightened standard does not apply to pleadings. *Meggitt*

18  *San Juan Capistrano*, 575 F. App'x at 803; *Diodes*, 260 Cal. App. 2d at 252.

19  Here, Planner 5D identifies its misappropriated trade secrets in sufficient detail to meet

20  either standard. Planner 5D alleges that 99.9% to 100% of the SUNCG dataset is made up of

21  Planner 5D's trade secret data files. (Dkt. 1 ¶ 44.) The content of each data file is secret. (*See id.*

22  ¶¶ 4-5, 29-30, 34-35.) So too is the complete collection of data files. (*Id.* ¶¶ 3-6.) This surpasses

23  Planner 5D's burden not just for the pleadings stage, but also the discovery stage.

24  Facebook misstates the pleadings standard, blurring it with the discovery standard, which,

25  as already noted, is different. In *Openwave Messaging*, cited by Facebook, this Court addressed,

26  not the pleading standard, but a summary judgment motion and a separate section 2019.210

27  disclosure. *Openwave Messaging*, 2018 WL 2117424, at *4-5.

28  Facebook's other cases, *Synopsys* and *Top Agent Network*, have been overruled or

21

criticized. The Ninth Circuit in *Meggitt* held that compliance with section 2019.210 is not required at the pleading stage. *Meggitt*, 575 F. App'x at 803. *Synopsys* was decided before *Meggitt*, and was thus overruled by it. *Synopsys*, 2013 WL 5770542, at *5. *Top Agent Network* conflicts with *Meggitt*. *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *4 (N.D. Cal. Apr. 13, 2015). Later cases have criticized it for that reason. *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 17-CV-00808, 2018 WL 2463869, at *4 n.2 (E.D. Cal. June 1, 2018).

### 7.  Planner 5D Adequately Alleges Facebook's Misappropriation.

Trade secret misappropriation includes acquisition, disclosure, or use of a trade secret with knowledge that it was acquired by improper means. Cal. Civ. Code § 3426.1 (b)(1),(2)(B)(i). It also includes disclosure or use of a trade secret with knowledge that it was "[d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use," Cal. Civ. Code § 3462.1(b)(2)(B)(iii), or "[a]cquired under circumstances giving rise to" such a duty, Cal. Civ. Code § 3462.1(b)(2)(B)(ii). (*See* Dkt. 36 at 19:20-20:3.) We address these different possibilities in turn.

### a.  Facebook Knew or Should Have Known That Princeton Acquired Planner 5D's Trade Secrets by Improper Means.

The Complaint alleges that Princeton publicly proclaimed its appropriation and use of Planner 5D's data file library. (Dkt. 1 ¶¶ 38-39.) Such downloading and use was subject to obvious technical secrecy measures and clearly forbidden by Planner 5D's terms of service. (*See* Dkt. 1 ¶¶ 31-32, 43, 45, 69; *see also* Dkt. 36 at 21:3-24:13.)

A recent, groundbreaking Ninth Circuit decision confirms that Princeton's circumvention of technical and legal secrecy measures was improper means. *HiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-16783, 2019 WL 4251889, at *14 & n.15 (9th Cir. Sept. 9, 2019). The court in *HiQ* recognized that nonconsensual web scraping can be unlawful. Noting that "victims of data scraping are not without resort," the court stated scraping without consent could give rise to claims for trespass to chattels, copyright infringement, unjust enrichment, conversion, breach of contract, breach of privacy, or—as in this case—misappropriation. While the court denied a

1   preliminary injunction under the CFAA, the LinkedIn profiles allegedly scraped in *HiQ* were

2   deliberately made public by the users who owned them. *Id.* at *10. In contrast, and as the *HiQ*

3   court affirmed, scraping of *hidden* data *without* consent can be actionable.

4       Because Princeton publicly pronounced that it took the SUNCG dataset from Planner 5D,

5   Facebook knew or should have known that Princeton acquired it by improper means. Facebook's

6   contrary argument is simply false. (*See* Dkt. 33 at 20:21-28.) By acquiring, disclosing, and using

7   them with knowledge of Princeton's misappropriation, Facebook misappropriated Planner 5D's

8   trade secrets. *See* Cal. Civ. Code § 3426.1 (b)(1),(2)(B)(i).

9                 **b.**      **Facebook Knew or Should Have Known That Princeton**
                                **Acquired the Trade Secrets Subject to a Duty to Maintain**

10                                  **Their Secrecy and Limit Their Use.**

11      These same allegations show that Facebook knew or should have known Princeton

12  derived the SUNCG dataset "under a duty to maintain its secrecy or limit its use." Planner 5D's

13  Terms expressly prohibit "us[ing] the Planner5D project . . . other than for their intended

14  purposes." (Dkt. 1 ¶¶ 31, 45.) By disclosing and using the data files with that knowledge,

15  Facebook misappropriated Planner 5D's trade secrets. *See* Cal. Civ. Code § 3462.1(b)(2)(B)(iii).

16                **c.**      **Facebook Acquired the Trade Secrets Under**
                                **Circumstances Giving Rise to a Duty to Maintain Their**

17                                  **Secrecy and Limit Their Use**

18      Because Facebook knew that Princeton downloaded the SUNGC dataset from

19  Planner 5D, Facebook should have known that its own use of the dataset was subject to Planner

20  5D's Terms of Service, including the prohibition against using them "other than for their

21  intended purposes." (Dkt. 1 ¶¶ 31, 38-39, 45.) If Facebook had actual notice, it was bound by

22  Planner 5D's Terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (2014). The same

23  is true if a reasonably prudent person in its position would have had inquiry notice. *Id.* (*See* Dkt.

24  36 at 23:17-24:13.) By disclosing and using the dataset with this knowledge, Facebook

25  misappropriated Planner 5D's trade secrets. *See* Cal. Civ. Code § 3462.1(b)(2)(B)(ii).

26          **8.**      **Facebook's Theft Is Not Excused by Princeton's.**

27      Facebook argues that its use was not misappropriation because it "allegedly did not use

28  any of Planner 5D's data until 2018—after such data had already been posted publicly online by

Princeton in 2016 as part of the SUNCG dataset." (Dkt. 33 at 21:1-3.) But Internet posting does not automatically destroy a trade secret. *DVD Copy Control Assn.*, 116 Cal. App. 4th at 251; *Religious Tech. Ctr.*, 1997 WL 34605244, at *12. Secrecy is preserved if Internet publication is "sufficiently obscure or transient or otherwise limited so that it does not become generally known to . . . persons to whom the information would have some economic value." *Id.*

Here, the Complaint alleges that Princeton offered access to the SUNCG dataset on its website. (Dkt. 1 ¶ 40.) But it does not allege who actually accessed the dataset in response to its Princeton's offer. It also does not allege whether Princeton imposed restrictions on recipients, and, if so, what they were. Accordingly, the extent of disclosure and loss of secrecy are fact questions requiring discovery to resolve.

None of Facebook's cited cases required this same kind of fact-intensive inquiry. (*See* Dkt. 33 at 20:24-21:23.) In *uCloudlink*, counterdefendant Wang Bin stole the counterclaimant's trade secrets, and obtained patents incorporating them. *Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings Inc.*, No. 18-CV-05031-EMC, 2019 WL 1767329, at *1 (N.D. Cal. Apr. 22, 2019). The other counterdefendant, uCloudlink, made products using the patents. At first, uCloudlink was unaware, but allegedly "became a wrongdoer once it learned of Wang Bin's misappropriation" and kept making the products. The court rejected this claim because the patent destroyed the trade secret and uCloudlink and Wang Bin were not privies. Here, Planner 5D alleges that Facebook was on notice of Princeton's misappropriation. And a published patent does not compare with the as-yet unquantified disclosure resulting from Princeton's offer of access.

There was likewise no fact-intensive loss-of-secrecy question in *Wang v. Golf Tailor*, 2017 WL 5068569. As discussed above, in *Wang*, the plaintiffs' golf club designs were only kept secret until their release, after which the designs became fully public. *Id.* at *2, 5. Here, Planner 5D does not allege (and does not know) the exact nature and extent of Princeton's disclosure.

Facebook cites four cases involving dismissal of trade secret claims for failure to adequately allege misappropriation. (Dkt. 33 at 21:12-23.) All are distinguishable.

The defendants in *Aqua Connect* reverse engineered the plaintiff's software. *Aqua*

*Connect, Inc. v. Code Rebel, LLC*, No. CV 11-5764-RSWL, 2012 WL 469737, at *2 (C.D. Cal. Feb. 13, 2012). The court dismissed the case because the statutory definition of misappropriation specifically excludes "reverse engineering alone." Cal. Civ. Code § 3426.1(a). Here, Princeton's scraping is covered by no such statutory exception.

The plaintiff in *MedioStream* alleged that Sony indirectly misappropriated its trade secret technology by purchasing it from Sonic, which appeared to be MedioStream's longtime licensing partner. *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012). The court dismissed with leave to amend to add facts showing Sony knew MedioStream's relationship with Sonic had soured. *Id.* Here, by contrast, Facebook had no similar reason to believe that Princeton's scraping was authorized by Planner 5D.

The plaintiff in *Be In* secured a non-disclosure agreement from Google and shared its idea for video chat software. *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *1 (N.D. Cal. Oct. 9, 2013). Less than two months later, Google released its own video chat software, Hangouts. *Id.* at *2. Be In sued for misappropriation. Be In adequately alleged that Google had a duty to maintain secrecy. *Id.* at *3. But Be In failed to allege that any of its trade secrets were misappropriated in Google's design of Hangouts. *Id.* The court found Be In's conclusory allegations inadequate and dismissed with leave to amend. *Id.* The court rejected similarly conclusory allegations in *Veronica Foods*, 2017 WL 2806706, at *14.

Here, Planner 5D alleges that Facebook exploited the SUNCG dataset, which is 99.9% to 100% Planner 5D's trade secrets, knowing that Princeton acquired them by improper means and subject to duties to maintain their secrecy and limit their use, and knowing that any use of the data files was subject to Planner 5D's Terms. (Dkt. 1 ¶¶ 51-55, 69.)

### 9. If the Court Concludes Planner 5D Has Not Adequately Pleaded Its Trade Secret Claims, Planner 5D Should Be Granted Leave to Amend.

If Facebook's motion is granted on Planner 5D's trade secret claims, Planner 5D should be granted leave to amend. *Doe*, 58 F.3d at 497. Planner 5D can allege many additional facts to support the elements of its trade secret claim, including secrecy, reasonable efforts to maintain secrecy, and "improper means."

**V.      CONCLUSION**

For these reasons, Planner 5D respectfully requests that the Court deny Facebook's motion to dismiss in its entirety.


RESPECTFULLY SUBMITTED,


September 20, 2019                                   THE BUSINESS LITIGATION GROUP, P.C.


                                                    By:      _/s/*Marc N. Bernstein*_____
                                                              Marc N. Bernstein

                                                    Attorneys for Plaintiff UAB "PLANNER5D"