Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (admitted *pro hac vice*)
johanna.schmitt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

May Eaton (S.B.N. 298123)
may.eaton@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Attorneys for Defendants
*Facebook Inc.*
*and Facebook Technologies, LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>                    Plaintiff,<br><br>          vs.<br><br>FACEBOOK INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20 and XYZ UNIVERSITIES 1-20,<br><br>                    Defendants. | ) CASE NO: 3:19-cv-03132-WHO<br>)<br>)<br>)<br>) **FACEBOOK INC. AND FACEBOOK**<br>) **TECHNOLOGIES, LLC'S REPLY IN**<br>) **SUPPORT OF THEIR MOTION TO DISMISS**<br>)<br>) Complaint Filed: June 5, 2019<br>)<br>)<br>)<br>)<br>)<br>) |

# TABLE OF CONTENTS

**Page**

I.      LEGAL STANDARD...............................................................................................1

II.     PLANNER 5D CANNOT STATE A COPYRIGHT CLAIM AGAINST
        FACEBOOK .............................................................................................................2

        A.      Planner 5D Cannot Satisfy the Copyright Registration Requirement. .........2

        B.      Planner 5D's Complaint Does Not Specify Its Copyrighted Works............5

        C.      Planner 5D's Alleged Works Are Not Original or Creative. .......................6

                1.      The Complaint Does Not Allege Creativity or Originality for the
                        Objects. .......................................................................................6

                2.      Planner 5D's Alleged Compilations Are Not Original or Creative ................7

III.    PLANNER 5D CANNOT STATE A TRADE SECRET CLAIM ........................10

        A.      Planner 5D Cannot Allege Ownership of a Trade Secret. .........................10

                1.      Planner 5D's Data Files Are Not "Secret".....................................10

                2.      Planner 5D Alleges No Value Derived from Secrecy of the Data Files.........11

                3.      Planner 5D Does Not Allege Any Reasonable Efforts to Maintain
                        Secrecy.......................................................................................12

                4.      The Complaint Fails to Identify a Trade Secret.............................13

        B.      Planner 5D's Complaint Does Not Allege Any Misappropriation by Facebook........13

IV.     CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs., Inc.*,
   No. 18 Civ. 10187, 2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) .................................................11

*Aliotti v. R. Dakin & Co.*,
   831 F.2d 898 (9th Cir. 1987) ...............................................................................................................6

*Alpi Int'l, Ltd. v. Anga Supply, LLC*,
   118 F. Supp. 3d 1172 (N.D. Cal. 2015) ...............................................................................................6

*In re Apple Comput., Inc.*,
   127 F. App'x 296 (9th Cir. 2005) ........................................................................................................1

*Aquino v. Cal. Reconveyance Co.*,
   No. 14 Civ. 01818, 2014 WL 5494446 (N.D. Cal. Oct. 30, 2014) (Orrick, J.) ...............................1

*ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
   402 F.3d 700 (6th Cir. 2005) ...............................................................................................................7

*Auto. Data Sols., Inc. v. Directed Elecs. Can., Inc.*,
   No. 18 Civ. 1560, 2018 WL 4742289 (C.D. Cal. Aug. 15, 2018) ......................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................................1

*Berkla v. Corel Corp.*,
   66 F. Supp. 2d 1129 (E.D. Cal. 1999) ................................................................................................6

*Broker Genius, Inc. v. Zalta*,
   280 F. Supp. 3d 495 (S.D.N.Y. 2017) ...............................................................................................13

*Clayton v. Automated Gaming Techs., Inc.*,
   No. 13 Civ. 00907, 2014 WL 1334005 (E.D. Cal. Apr. 3, 2014) .......................................................6

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) (Orrick, J.) ..........................................................................1

*DigitAlb, Sh.a v. Setplex, LLC*,
   284 F. Supp. 3d 547 (S.D.N.Y. 2018) .................................................................................................3

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1963) .............................................................................................................13

*DVD Copy Control Ass'n, Inc. v. Bunner*,
   116 Cal. App. 4th 241 (2004) ......................................................................................................11, 14

*E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek,*
    No. 1:17 Civ. 00808 DAD, 2018 WL 2463869 (E.D. Cal. June 1, 2018) .....................................13

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*
    No. 14 Civ. 02496 BRO, 2015 WL 12655484 (C.D. Cal. Nov. 19, 2015) ......................................4

*Etrailer Corp. v. Automatic Equip. Mfg. Co.,*
    No. 18 Civ. 351, 2019 WL 1596833 (D. Neb. Apr. 15, 2019) ........................................................7

*Ets-Hokin v. Skyy Spirits, Inc.,*
    225 F.3d 1068 (9th Cir. 2000) ......................................................................................................6

*Evox Prods. LLC v. Kayak Software Corp,*
    No. 15 Civ. 5053 PSG, 2017 WL 5634856 (C.D. Cal. Jan. 20, 2017) ...........................................7

*Facebook, Inc. v. Power Ventures, Inc.,*
    No. 08 Civ. 5780, 2009 WL 1299698 (N.D. Cal. May 11, 2009) ...................................................6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,*
    499 U.S. 340 (1991) ..................................................................................................................7, 8

*Folkens v. Wyland Worldwide, LLC,*
    882 F.3d 768 (9th Cir. 2018) ........................................................................................................6

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,*
    139 S. Ct. 881 (2019) ................................................................................................................2, 3

*Gajo v. Chi. Brand,*
    No. 17 Civ. 00380, 2017 WL 2473142 (N.D. Cal. June 8, 2017) ..................................................3

*Getaped.Com, Inc. v. Cangemi,*
    188 F. Supp. 2d 398 (S.D.N.Y. 2002) ...........................................................................................4

*hiQ Labs, Inc. v. Linkedin Corp.,*
    No. 17-16783, 2019 WL 4251889 (9th Cir. Sept. 9, 2019) ........................................................14

*Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.,*
    No. 18 Civ. 05031 EMC, 2019 WL 1767329 (N.D. Cal. Apr. 22, 2019) ....................................14

*Izmo, Inc. v. Roadster, Inc.,*
    No. 18 Civ. 06092, 2019 WL 2359228 (N.D. Cal. June 4, 2019) ..............................................2, 5

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC,*
    No. 16 Civ. 1318, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) ....................................................3

*KEMA, Inc. v. Koperwhats,*
    No. 09 Civ. 1587, 2010 WL 3464708 (N.D. Cal. Sept. 1, 2010) .................................................11

*Kernel Records Oy v. Mosley,*
    694 F.3d 1294 (11th Cir. 2012) ....................................................................................................4

iii

*Kwan v. SanMedica Int'l,*
  854 F.3d 1088 (9th Cir. 2017) ............................................................................................1

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.,*
  922 F.3d 946 (9th Cir. 2019) ..............................................................................................3

*Meggitt San Juan Capistrano, Inc. v. Yongzhong,*
  575 F. App'x 801 (9th Cir. 2014). (Opp. .).......................................................................13

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.,*
  528 F.3d 1258 (10th Cir. 2008) .......................................................................................6, 7

*Microsoft Corp. v. MY Choice Software, LLC,*
  No. 15 Civ. 0515, 2015 WL 12765460 (C.D. Cal. Sept. 22, 2015)...................................5

*Nguyen v. Barnes & Noble Inc.,*
  763 F.3d 1171 (9th Cir. 2014) ..........................................................................................15

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.,*
  No. 16 Civ. 05399, 2017 WL 67075 (N.D. Cal. Jan. 6, 2017) (Orrick, J.)......................13

*QTL Corp. v. Kaplan,*
  No. 97 Civ. 20531, 1998 WL 303296 (N.D. Cal. Feb. 2, 1998).........................................9

*Religious Tech. Ctr. v. Netcom On-Line Comm'ns Servs., Inc.,*
  No. 95 Civ. 20091, 1997 WL 34605244 (N.D. Cal. Jan. 6, 1997) ..................................11

*Religious Tech. Ctr. v, Netcom On-Line Commc'n Servs.,*
  923 F. Supp. 1231 (N.D. Cal 1995) ..................................................................................14

*Satava v. Lowry,*
  323 F.3d 805 (9th Cir. 2003) ..............................................................................................6

*Schneider v. Cal. Dep't of Corr.,*
  151 F.3d 1194 (9th Cir. 1998) ....................................................................................1, 6, 7

*Silvaco Data Sys. v. Intel Corp.,*
  184 Cal. App. 4th 210 (2010) ...........................................................................................11

*Silverstein v. Penguin Putnam, Inc.,*
  368 F.3d 77 (2d Cir. 2004)..................................................................................................9

*Synopsys, Inc. v. ATopTech, Inc.,*
  No. 13 Civ. 02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)............................13

*Ticketmaster L.L.C. v. Prestige Entm't Worldwide, Inc.,*
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..............................................................................5

*Wang v. Golf Tailor, LLC,*
  No. 17 Civ. 00898 LB, 2017 WL 5068569 (N.D. Cal. Nov. 3, 2017)..............................14

iv

*Webpass Inc. v. Banth*,
   No. 14 Civ. 02291, 2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ...............................................12

**Statutes**

17 U.S.C. § 101 ...............................................................................................................................3, 4

18 U.S.C. § 1839 .................................................................................................................................12

Cal. Civ. Code § 3426.1 ......................................................................................................................12

Digital Millennium Copyright Act .......................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................................1

**Other Authorities**

Nimmer on Copyright (2017) ............................................................................................................4, 8

1    As explained in Facebook's motion, Planner 5D's Complaint fails to state a claim for

2  copyright infringement or trade secret misappropriation.  Faced with these deficiencies, Planner 5D

3  tries to use its Opposition as an improper vehicle to include new allegations.  But no amount of

4  obfuscation can change the fact that the Complaint is fatally deficient and fails to put Facebook on

5  notice as to the substance of its claims.  As to the copyright claim, Planner 5D fails to plead

6  copyright registration, specify the copyrighted works at issue, or even plead that the works are

7  original or creative.  As to the trade secret claims, Planner 5D fails to plead the existence of trade

8  secrets or that Facebook misappropriated the alleged trade secrets.  Planner 5D should not be

9  permitted to proceed on a confusing complaint that prejudices Defendants.  Facebook respectfully

10  requests that the Court grant its motion to dismiss without leave to amend.

11  **I.    LEGAL STANDARD**

12    Planner 5D's Complaint must "allege 'enough facts to state a claim to relief that is plausible

13  on its face,'" and conclusory statements and legal conclusions must be supported by factual

14  allegations.  *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1023–24 (N.D. Cal. 2018) (Orrick, J.)

15  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kwan v. SanMedica Int'l*,

16  854 F.3d 1088, 1096 (9th Cir. 2017).  If the allegations in the Complaint do not meet this standard,

17  Facebook's motion should be granted.  Planner 5D cannot amend or supplement its deficient

18  pleadings with new statements made in its Opposition.  *See Schneider v. Cal. Dep't of Corr.*, 151

19  F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiff's] opposition

20  motion . . . are irrelevant for Rule 12(b)(6) purposes.").  Moreover, this Court should deny Planner

21  5D's request for leave to amend if it can "reasonably conclude that [] amendment would be futile."

22  *Aquino v. Cal. Reconveyance Co.*, No. 14 Civ. 01818, 2014 WL 5494446, at *5 (N.D. Cal. Oct. 30,

23  2014) (Orrick, J.) (internal citations omitted).  Planner 5D's request to amend should also be denied

24  to the extent it has not specified the "additional facts [it] might plead" because such "failure is a

25  strong indication that [it] ha[s] no additional facts to plead."  *In re Apple Comput., Inc.*, 127 F.

26  App'x 296, 305 (9th Cir. 2005) (quotations omitted).

27

28

1

1    II.    **PLANNER 5D CANNOT STATE A COPYRIGHT CLAIM AGAINST FACEBOOK.**

2          A.    **Planner 5D Cannot Satisfy the Copyright Registration Requirement.**

3          While its Complaint is vague, Planner 5D states in its Opposition that its copyright claim is

4    based on **both** (1) the "images" of the Objects, the Object Compilation, and the Scene Compilation

5    as "visually depicted," and (2) "their underlying data files." (Dkt. 38 at 10, 13 ("Opp.").)[1]  As

6    discussed below, Planner 5D cannot state a claim for infringement for either the images or the data

7    files.

8                1.    **Planner 5D's Complaint Does Not Allege That Its Works Are Registered or Fall Within the Foreign Works Exemption.**

9          Planner 5D does not dispute that it has not registered any of its works, and admits that

10   registration is required for "U.S. works" before bringing an infringement suit. (Opp. at 5–6.)  In

11   addition, Planner 5D admits that nowhere in its Complaint does it allege that the asserted works fall

12   within the foreign works exemption. (Opp. at 7–8.)  Planner 5D's allegations make clear that its

13   works are United States works. (*Infra* 4–5.)  Given that Planner 5D has not alleged registration, the

14   complaint should be dismissed without leave to amend. *See Izmo, Inc. v. Roadster, Inc.*, No. 18 Civ.

15   06092, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (granting motion to dismiss copyright

16   claims, without leave to amend, because they were based on registrations obtained after the lawsuit

17   was filed as to do otherwise would circumvent the Supreme Court's decision in *Fourth Estate*).

18         Faced with this clear-cut pleading deficiency, Planner 5D argues that failure to meet the

19   registration requirement is an affirmative defense, and thus, it should not be required to affirmatively

20   allege the foreign works exception in its Complaint. (Opp. at 6.)  In doing so, Planner 5D ignores

21   well-settled law that registration is an element of a copyright claim, that a plaintiff must allege it has

22   complied with Section 411(a), and that a complaint will be dismissed if the plaintiff does not allege

23   that its United States work is registered. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com,*

24   *LLC*, 139 S. Ct. 881, 887 (2019) (dismissing complaint for failure to plead registration); *Malibu*

25   _____

26   [1] Planner 5D's allegation of copyright infringement states that "Planner 5D is the sole owner of all right, title, and interest in the copyrighted works whose infringement it is asserting here (the Copyrighted Works)" without further elaboration. (Dkt. ¶ 58 ("Compl.").)  It was not until after Facebook raised in its Motion to Dismiss that Planner 5D's Complaint failed to specify the

27   copyrighted works at issue, (Dkt. 33 at 11–12 ("Br.")), that Planner 5D clarified that its claim

28   included the data files. (Opp. at 10, 13.)

*Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019) ("To plead ownership, [a plaintiff] must plausibly allege it owns a valid copyright registration for its work.").

In its Opposition, Planner 5D relies on a strained reading of the legislative history of the "technical" revisions of the Digital Millennium Copyright Act.  (Opp. at 6.)  It cites no cases, however, in which a court has held that a plaintiff is not required to allege the exemption, or that failure to meet the registration requirement is an affirmative defense.  In fact, as discussed below, the law is clear that a plaintiff has the burden to plead and ultimately prove that the work is registered or exempt from the requirement, and Planner 5D's attempt to distinguish these cases is unavailing.

In *DigitAlb, Sh.a v. Setplex, LLC,* 284 F. Supp. 3d 547 (S.D.N.Y. 2018), the complaint did not allege registration *or* that the works were exempt.  Like Planner 5D, DigitAlb merely argued that it was "not required to explicitly plead that the works are exempt from registration."  *Id*. at 554.  The court rejected this argument and dismissed the claim with prejudice, explaining:

> If a court were to woodenly accept that a work is exempt from registration based on the omission of allegations indicating that the work is a United States work, any party seeking to surmount the registration requirement could simply omit any allegation of first publication in the United States or first publication simultaneously within and outside the United States.  Thus, should DigitAlb seek to rely on the § 411 registration exemption, it must allege that the works are not United States works within the meaning of § 101.

*Id*. (emphasis in original).  Planner 5D's claim that *DigitAlb* was "wrongly decided" cannot undermine this clear statement of the law.  (Opp. at 7.)

Further, in *Gajo v. Chi. Brand*, No. 17 Civ. 00380, 2017 WL 2473142, *2 (N.D. Cal. June 8, 2017), the court dismissed the complaint, which failed to plead that the works were registered or that they were exempt.  The court rejected the plaintiff's "suggestion that he is relieved from the registration requirement by virtue of the Berne Act" because "[t]here is no indication in the complaint that [plaintiff] has a copyright in a foreign work as opposed to a U.S. work."  *Id.*  Likewise, in *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 696126, at *13–14 (S.D.N.Y. Feb. 15, 2017), the court dismissed the complaint for the same reason, stating that "[t]o take advantage of this exemption from the registration requirement of § 411, 'the party seeking to protect a work must first establish that the subject of copyright is not a United States work'" and that "plaintiffs must still allege the factual preconditions to [its] assertions .

3

. . [including] they were not 'United States works.'"[2]  *See also* 2 Nimmer on Copyright § 7.16[B][6][c] n.390 (stating "[t]he burden is on the plaintiff to plead and prove that its work is of foreign Berne origin"); *id.* § 7.16[B][6][d] (burden to show exemption from registration "remains on the party claiming it.").

### 2.   Planner 5D's Request to Amend Should Be Denied Because It Cannot Allege Its Works Are Exempt from Registration.

In its Opposition, Planner 5D claims that its works are unpublished foreign works and thus exempt from the registration requirement.  (Opp. at 9.)  This claim, however, is belied by the facts alleged in the Complaint, which make clear that Planner 5D's alleged works are United States works because they were first published at least simultaneously in the United States.  17 U.S.C. § 101.[3]

According to its Complaint, Planner 5D displays and distributes its alleged works on its website, which is available to "anyone" and has been accessed by over 40 million people "worldwide." (*See* Compl. ¶¶ 27–28.)  Users (including those in the United States) can access the Objects through the website and manipulate and rearrange them to make Scenes for their own interior design purposes.  (Compl. ¶¶ 27–28, 30–32; Dkt. 37 at 12 ("Princeton's Reply Br.").)  Planner 5D claims that there are now *over* 1 million such user-generated Scenes.  (Compl. ¶ 5.)  Courts have held that *this* type of alleged distribution on a website, where users can make or obtain copies of the works, constitutes simultaneous worldwide publication.  *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1306 (11th Cir. 2012) (stating that content posted on "public websites on the World Wide Web" is consistent "with a presumption of simultaneous worldwide availability"); *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) (concluding that "when a webpage goes live on the Internet, it is distributed and 'published'").

In its Opposition, Planner 5D does not expressly dispute that the images of the Objects,

---

[2]  Even though the context was summary judgment (not a motion to dismiss), the *Elohim* court made clear that the burden of establishing the foreign works exemption is on "the party seeking to protect a work," and it did not say it was an affirmative defense.  *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*  No. 14 Civ. 02496 BRO, 2015 WL 12655484, at *4 (C.D. Cal. Nov. 19, 2015).

[3]  "'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication . . ." 17 U.S.C. § 101.

---

4

Object Compilation and Scene Compilation were first published on its website simultaneously in the United States.  (Opp. at 8.)  Nor could Planner 5D credibly dispute publication of the images because, as with most websites, users of Planner 5D's website can, among other things, print out screenshots depicting the images and use them elsewhere.  (Dkt. 39-02 (printout of Planner 5D's website depicting images of Objects).)

Instead, Planner 5D argues that its "data files" are unpublished foreign works because they are "restricted from downloading for use elsewhere" by the website's Terms of Use and the unspecified "structure" of the website.  (Opp. at 8–9.)  But, Planner 5D does not dispute that its data files are publicly accessible on its website.  In addition, Planner 5D admits in the Complaint that its works are not only displayed on its website; rather, users can use and manipulate the Objects to create their own "desired design."  (Compl. ¶ 27.)  Moreover, according to Planner 5D's own allegations, Princeton was able to download the data files from Planner 5D's website.  (*Id.* ¶¶ 6–7.) Planner 5D cites no cases in which a court found that data files or other works that were widely available on a public website for use people to use and manipulate, like the data files on Planner 5D's website, were unpublished.  Thus, because Planner 5D's allegations make clear that these are unregistered United States works, its request for leave to amend should be denied.  *See Izmo, Inc.*, 2019 WL 2359228, at *2.

**B.    Planner 5D's Complaint Does Not Specify Its Copyrighted Works.**

The Complaint cites no registrations, nor does it specify the works allegedly owned by Planner 5D or infringed by Facebook.  Instead, it alleges that some of the Objects and Scenes in the Scene Compilation were copied for the SUNCG Dataset—but does not specify which ones.  These allegations do not give adequate notice of the claim, and are less specific than those found sufficient in cases cited by Planner 5D.[4]  Faced with these vague allegations, Planner 5D now asserts that the

---

[4] *See Ticketmaster L.L.C. v. Prestige Entm't Worldwide, Inc.*, 315 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018) (specified registered works); *Auto. Data Sols., Inc. v. Directed Elecs. Can., Inc.*, No. 18 Civ. 1560, 2018 WL 4742289, at *7 (C.D. Cal. Aug. 15, 2018) (specified discrete components of its website); *Microsoft Corp. v. MY Choice Software, LLC*, No. 15 Civ. 0515, 2015 WL 12765460, at *2 (C.D. Cal. Sept. 22, 2015) (specified registered works); *Clayton v. Automated Gaming Techs., Inc.*, No. 13 Civ. 00907, 2014 WL 1334005, at *4 (E.D. Cal. Apr. 3, 2014) (alleged ownership of a specific app); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08 Civ. 5780, 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) (alleged ownership over every page on website).

1  allegedly infringing SUNCG Dataset copies every Object and the entire Scene Compilation owned

2  by Planner 5D in 2016.  (Opp. at 10.)  As noted above, however, these new claims are irrelevant

3  here, and Facebook's motion should be granted.  *See Schneider,* 151 F.3d at 1197 n.1.

4          **C.**    **Planner 5D's Alleged Works Are Not Original or Creative.**

5          **1.**    **The Complaint Does Not Allege Creativity or Originality for the Objects.**

6        According to Planner 5D's Complaint, its Objects are not original or creative, but rather are

7  renderings of real-world things found in a home or office.  Planner 5D itself alleges that its Objects

8  are "lifelike renderings" that have a "photo-realistic appearance."  (Compl. ¶¶ 5, 39.)  Planner 5D's

9  intent was not to create fanciful works of art, but rather to be used in its tool for people to make

10  "truly realistic scenes" of rooms for their own design purposes.  (*Id.* ¶ 3.)  The "realism" of the

11  Objects is the whole reason that they are useful to machine learning.  (*Id.* ¶¶ 3, 6, 39.)

12        Planner 5D's Complaint includes no allegations that the Objects contain *any* creative

13  expression or that Planner 5D made imaginative choices in modeling them.  It is black-letter law that

14  copyright only protects original and creative expression, and does not protect lifelike renderings of

15  real-world objects created for utilitarian purposes, like Planner 5D's Objects.[5]  *See Meshwerks, Inc.*

16  *v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1267 (10th Cir. 2008).[6]

17

---

18  [5]  The cases relied on by Planner 5D are inapposite as they involve decorative works of art or toys
19  with creative expression, not realistic renderings intended for use in a design tool, like the Objects.
    (Opp. at 12.)  In one case, the court was "skeptical" that the animal toys were even protectable
20  because they only had "slight exaggerations to the physique of its toys' real-world models." *Alpi*
    *Int'l, Ltd. v. Anga Supply, LLC*, 118 F. Supp. 3d 1172, 1178 (N.D. Cal. 2015).  *See also Folkens v.*
21  *Wyland Worldwide, LLC*, 882 F.3d 768, 776 (9th Cir. 2018) (painting reflected "expression of the
    two dolphins in dark water, with ripples of light on one dolphin"); *Satava v. Lowry*, 323 F.3d 805,
22  813 (9th Cir. 2003) (sculpture reflected variations in "pose, attitude, gesture, muscle structure, facial
    expression, coat, or texture of [jellyfish]. . . [or] background, lighting, or perspective"); *Ets-Hokin v.*
23  *Skyy Spirits, Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (photographs reflected artistic decisions
    regarding "lighting, shading, angle, background, and so forth"); *Aliotti v. R. Dakin & Co.*, 831 F.2d
24  898, 900 (9th Cir. 1987) (stylized dinosaur doll with "sleepy eyed, 'dingy' [appearance and]
    exaggerated facial and other anatomical features"); *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129,
25  1141–42 (E.D. Cal. 1999) (computer illustration of flowers expressed artistic judgment in "the
    particularized color highlights, the dimensionality, [and] the sharpness of the shading").

26  [6]  Tellingly, Planner 5D does not dispute that *Meshwerks* is correct as a matter of law.  Rather,
    Planner 5D simply argues, without reference to a single paragraph of the Complaint, that it did allege
27  a creative process.  (Opp. at 12–13.)  Its reliance on *Evox Prods. LLC v. Kayak Software Corp.*,
    (Opp. at 14), is misplaced as, unlike here, the complaint in *Evox* alleged a detailed description of the
28  creative process.  No. 15 Civ. 5053 PSG, 2017 WL 5634856, at *5 (C.D. Cal. Jan. 20, 2017).

---

6

1    In its Opposition, Planner 5D claims that it satisfies the originality requirement because it

2    alleged the Objects are "original work[s] of authorship" that were "hand-crafted by human

3    designers." (Opp. at 13.)  This only illustrates Planner 5D's fundamental misunderstanding of

4    copyright law.  "Originality" does not refer to the physical work or "sweat of the brow" that went

5    into rendering the Object.  Rather, it "means [] that the work was independently created by the

6    author (as opposed to copied from other works), and that it possesses at least some minimal degree

7    of creativity."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991).

8    In other words, a work is not "original" if it simply replicates and contains material copied

9    from the real-world or another source, regardless of the time and effort involved in rendering it.

10   Planner 5D's Complaint contains no allegations that its Objects embody any expression that was not

11   copied from real-world objects.  *See id.* at 364 (directory not original despite "Rural's efforts in

12   compiling [it]"); *Meshwerks, Inc.*, 528 F.3d at 1261 (renderings created "by hand" not original); *ATC*

13   *Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 712 (6th Cir.

14   2005) (no protection for illustrations of engine parts "copied from photographs [from] competitors'

15   catalogs"); *Etrailer Corp. v. Automatic Equip. Mfg. Co.*, No. 18 Civ. 351, 2019 WL 1596833, at *3

16   (D. Neb. Apr. 15, 2019) (photographs not original despite alleged effort to create them).

17   In addition, Planner 5D does not dispute that the Complaint contains no allegations that its

18   Objects are creative.  Instead, in an attempt to salvage its claim, Planner 5D argues that its Objects

19   are "artistic," "virtual sculptures," and come from "the modelers' imaginations," and that "Planner

20   5D's designers [] make creative decisions, including color, texture, and the like."  (Opp. at 12–14.)

21   These newfound arguments contradict its prior allegations that the Objects are meant to replicate

22   real-life objects, and Planner 5D cannot defeat a motion to dismiss by adding allegations to its

23   Complaint through its Opposition.  *See Schneider*, 151 F.3d at 1197 n.1.[7]

24

25

---

26   [7]  Planner 5D asserts that Facebook's argument that the Objects are not copyrightable is limited to
     the visual appearance, and not the underlying data files.  (Opp. at 13.)  But, as discussed above,

27   Planner 5D's vague Complaint did not specify that Planner 5D's copyright claim was also based on
     the underlying data files.  Regardless, Planner 5D makes no allegations in its Complaint that there is

28   ***any*** creative or original expression in the data files themselves.  Thus, its claim should be dismissed.

---

2.      **Planner 5D's Alleged Compilations Are Not Original or Creative.**

It is well-settled that a compilation of elements (even elements that are not individually copyrightable) can be entitled to copyright protection if there is creativity and originality in the "selection, coordination, or arrangement" of the elements that make up the compilation. *Feist*, 499 U.S. at 357. In its Complaint, Planner 5D does not allege that there is anything creative or original in the "selection, coordination or arrangement" of the Objects or Scenes in its compilations.

a.      **Selection of Objects in the Object Compilation is Not Creative**

As a threshold matter, Planner 5D does not dispute that there is nothing creative or original in the "coordination" or "arrangement" of the Objects within its compilation. Planner 5D only claims that the "selection" of the Objects in the compilation is creative and original (Opp. at 15)—but that argument is belied by the factual allegations in the Complaint.

Planner 5D does not dispute that its Object Compilation contains all Objects it has rendered at any given time. (Opp. at 15.) At the time it filed the Complaint, Planner 5D alleged that it had rendered "over 4,500 [O]bjects" and all of them are in its Object Compilation. (Compl. ¶ 29.) Also, Planner 5D claims that Princeton infringed its Object Compilation in 2016 by downloading "every object . . . then available" on Planner 5D's website, which at that time totaled 2,600. (Opp. at 10.) Planner 5D does not allege that it has rendered any Objects which were omitted from the compilation. It does not allege that it made any creative choices in selecting certain Objects among many that it had rendered to include in its compilation. Selecting all of the Objects to include in the Object Compilation is not the type of creative "selection" that is protected by copyright. *See* 1 Nimmer on Copyright § 3.02 (2019) (noting that House Report of Copyright Act of 1976 states that a compilation "must be of the 'discrete' writings of a given author [because] if the collection consists of all of a given author's writings, the process of selection would then involve no originality or authorship").

In its Opposition, Planner 5D now asserts that its "designers selected, from practically unlimited possibilities, a subset of interior design objects that allow users to 'create [their] dream home.'" (Opp. at 15.) But, as noted above, Planner 5D does not claim—nor does its homepage state—that it creatively selected a subset from its repository of existing, digitally-rendered Objects to

8

1   include in its compilation.  Rather, Planner 5D appears to argue that because there are practically an

2   unlimited number of Objects that it could have rendered in theory—just like there are practically an

3   unlimited number of pieces of furniture and appliances in the real world—the selection of the

4   Objects in its Object Compilation is creative.  This argument is nonsensical.  It is like arguing a

5   collection of *all* poems written by a single poet reveals creative selection because the poet could

6   have (but did not) create an unlimited number of additional poems.  Planner 5D cites no cases which

7   support an argument that this is the type of creative selection that is protected by copyright law.[8]

8   Planner 5D cannot simply incant that creative selection exists, when it really is just a repository of

9   all existing files.  *See Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 85 (2d Cir. 2004) (finding

10   plaintiff's compilation of every published poem by Dorothy Parker was uncopyrightable because

11   "'all' is not a selection").  Thus, because Planner 5D does not allege any originality or creativity in

12   the selection, coordination or arrangement of the Objects, its claim based on the Object Compilation

13   should be dismissed.

14                    **b.        Selection of Scenes in the Scene Compilation is not Creative**

15            Similar to the Object Compilation, Planner 5D does not dispute that there is no creativity or

16   originality in the "arrangement" or "coordination" of the Scenes within the Scene Compilation, and

17   instead confirms that it "pleads a compilation based on its selection of scenes."  (Opp. at 16.)  There

18   is no alleged creativity or originality, however, in the selection of the Scenes.

19            Planner 5D does not claim that it owns the individual Scenes; they are created by users (not

20   Planner 5D).  (Br. at 7.)  Planner 5D also does not dispute that the Scene Compilation consists of all

21   of the user-generated Scenes that exist at the time.  In fact, Planner 5D alleges that its users created

22   "over a million" Scenes and the same number of Scenes is in its Scene Compilation.  (Compl. ¶¶ 5,

23   30.)  Further, Planner 5D claims that Princeton infringed the Scene Compilation in 2016 by copying

24   "every . . . scene file then available" on Planner 5D's website, which at the time totaled over 45,000.

25   (Opp. at 10.)  Planner 5D does not allege it exercised any creativity in selecting among the user-

26

27   [8] Planner 5D's reliance on *QTL Corp. v. Kaplan*, No. 97 Civ. 20531, 1998 WL 303296 (N.D. Cal.
    Feb. 2, 1998) is misplaced because the arrangement, coordination or selection of underlying works
28   was not at issue.

1    generated Scenes, nor does it identify any Scenes that Planner 5D omitted from the compilation.  As

2    discussed above, selecting all of the Scenes that exist does not constitute copyrightable expression.

3         Planner 5D's claim that descriptions of the SUNCG Dataset as a "rich environment" of

4    scenes "suggest[s] an artistic dimension" to the Scene selection fails for two reasons.  (Opp. at 16.)

5    *First*, the fact that someone thought the SUNCG Dataset was a "rich environment" does not mean

6    that Planner 5D exercised any creativity in selecting the Scenes.  Rather, any alleged "rich

7    environment" derives from the users' creation of thousands of individual Scenes—not from any

8    creative selection of the Scenes by Planner 5D.  Again, a compilation of all poems written by a

9    single poet may be a "rich environment" of poetry, but it does not reflect creative selection.  *Second*,

10   these descriptions were not of Planner 5D's Scene Compilation, but rather were of the SUNCG

11   Dataset, which allegedly is <u>not</u> identical to the Planner 5D dataset.  (Compl. ¶ 39.) Thus, because

12   Planner 5D does not allege any originality or creativity in the selection, coordination or arrangement

13   of the Scenes, its claim based on the Scene Compilation should be dismissed.

14   **III.    PLANNER 5D CANNOT STATE A TRADE SECRET CLAIM**

15        As discussed below, Planner 5D's data files do not constitute trade secrets, and Facebook has

16   not misappropriated anything from Planner 5D.  Thus, Planner 5D's trade secret claim against

17   Facebook should be dismissed with prejudice and without leave to amend.

18        **A.    Planner 5D Cannot Allege Ownership of a Trade Secret.**

19             **1.    Planner 5D's Data Files Are Not "Secret."**

20        Planner 5D does not (and cannot) deny that its data files underlying the Objects and Scenes

21   are accessible on its website, which is public and available to "anyone."  (Compl. ¶¶ 27–28.)

22   Moreover, the Complaint alleges that Princeton accessed Planner 5D's data files on its public

23   website without receiving special access.  (*Id*. ¶ 6.)  There are no allegations that the "structure" of

24   Planner 5D's website prevented Princeton from gaining access, or that Princeton circumvented any

25   security measures.  (*Id*. ¶ 43.)  Nor does Planner 5D claim that Princeton possesses specialized

26   knowledge or equipment, which enables it (but no one else) to access the data files.  In other words,

27   according to Planner 5D's allegations, its data files (individually and as a collection) are "readily

28

1    ascertainable" on its website. [9]  *See Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs., Inc.*, No.

2    18 Civ. 10187, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) (dismissing claim where plaintiff

3    failed to allege that the trade secrets were "not readily ascertainable").

4            In response, Planner 5D backtracks and argues that its data files are only "***relatively*** secret"

5    because they do not appear on the face of its website, like the visual depiction of the Objects and

6    Scenes.  (Opp. at 17.)  Planner 5D cites no cases that stand for the proposition that information

7    remains a trade secret unless it is readily visible on the face of a public website.  In fact, courts have

8    held that information loses its status as a trade "secret" when the owner discloses it in less open and

9    notorious ways than including it on a website.  *See, e.g.*, *KEMA, Inc. v. Koperwhats*, No. 09 Civ.

10   1587, 2010 WL 3464708, at *4 (N.D. Cal. Sept. 1, 2010) (filing a deposit copy of source code with

11   the Copyright Office equates to public disclosure despite efforts required to obtain copies).[10]  In

12   addition, Planner 5D argues that the fact that the Objects and Scenes are visible on the screen does

13   not necessarily mean that the underlying data files are public.  It makes the analogy that a recipe is

14   not revealed just because a baker sells a pie, and cites *Silvaco Data Sys. v. Intel Corp.,* 184 Cal. App.

15   4th 210 (2010), where a court found that defendant's use of object code was like eating a pie and did

16   not automatically mean that that defendant made use of the underlying source code "recipe."  *Id*. at

17   224.  In this case, however, Planner 5D disclosed both the visual image of the Objects and their

18   underlying data files on its publicly-available website.[11]  Indeed, a recipe is publicly revealed if the

19   baker includes it under the pie plate for anyone to see if turned over.

---

21   [9] For the first time, Planner 5D claims that its trade secrets include a "compilation" of the data files. (Opp. at 20.)  Nowhere does this appear in the Complaint.

22   [10] Planner 5D's reliance on *DVD Copy Control Ass'n, Inc. v. Bunner* and *Religious Tech. Ctr. v.*
23   *Netcom On-Line Comm'ns Servs., Inc.,* which both involved motions for preliminary injunctions, is misplaced.  (Opp. at 17–18.)  In *DVD Copy Control*, the court found the trade secret was part of the public domain.  116 Cal. App. 4th 241, 253 (2004).  In *Religious Tech.*, the court "question[ed]
24   whether [plaintiff] will ultimately be able to prove its claim of trade secret status." No. 95 Civ. 20091, 1997 WL 34605244, *12 (N.D. Cal. Jan. 6, 1997).

26   [11] Planner 5D objects to Facebook's reference to data files downloaded from Planner 5D's tool. (Opp. at 4–5.)  It was proper, however, for Facebook to cite them in its brief as Planner 5D's tool is
27   incorporated by reference in the Complaint. (Compl. ¶¶ 27–28, 34; *see also* Br. at 2.)  None of the cases cited by Planner 5D discuss incorporation by reference; rather, they discuss judicial notice,
28   which was not asserted here.  Moreover, the inclusion of the data file images (as well as references to Facebook's AI homepage) was illustrative and Facebook is not relying on them for its motion.

## 2. Planner 5D Alleges No Value Derived from Secrecy of the Data Files.

In its Opposition, Planner 5D claims that it has alleged the value of its trade secrets. (Opp. at 17.) Planner 5D claims that it spent "millions of dollars" creating its "objects and scenes" over "many years" and each was created by "human hands," and these types of data files have "become exceedingly valuable for scene recognition research." (Compl. ¶¶ 5, 29; Opp. at 17.)

Alleging that the data files are valuable is not enough. Indeed, hit songs have "economic value"—but they are not trade secrets. Nowhere does Planner 5D allege that the value of its data files derives from their secrecy, which is an element. *See* Cal. Civ. Code § 3426.1(d)(1); 18 U.S.C. § 1839(3)(B). In fact, the allegations indicate that scene recognition research is more valuable when it is public and shared. (Compl. ¶ 11 (describing SUMO Challenge in which many parties come together to develop new applications for scene recognition and related technology).) In other words, unlike a customer list or novel business plan, which loses value if others discover and use it, Planner 5D's data files do not lose value simply by being revealed. Thus, Planner 5D's trade secret claim should be dismissed. *See Webpass Inc. v. Banth*, No. 14 Civ. 02291, 2014 WL 7206695, at *3 (N.D. Cal. Dec. 18, 2014) (dismissing case because the complaint "does not set forth facts establishing how the alleged trade secrets derive value" by virtue of not being generally known).

## 3. Planner 5D Does Not Allege Any Reasonable Efforts to Maintain Secrecy.

Planner 5D's claim also should be dismissed for the additional, independent reason that it does not allege any reasonable efforts to maintain the secrecy of its data files. Planner 5D does not (and cannot) deny that its data files were accessible to the public through its website and Princeton was able to access them, as discussed above. Nor can Planner 5D deny that it did not require anyone to agree to any confidentiality restrictions before accessing its data files.

Faced with this, Planner 5D cites a stray reference to the "structure" of its website in support of its argument that it alleged in its Complaint that it took reasonable measures to maintain secrecy of its data files. (Compl. ¶ 32.) But Planner 5D does not even explain what this alleged "structure" is or how it maintains secrecy of its data files. Such a vague reference to an alleged security measure is insufficient under the law. *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, No. 16 Civ. 05399, 2017 WL 67075, at *7 (N.D. Cal. Jan. 6, 2017) (Orrick, J.).

1    Planner 5D also cites restrictions contained in its Terms of Service as a reasonable security

2    measure.  (Opp. at 20.)  As detailed in Princeton's Reply Brief, however, Planner 5D is not a party to

3    these Terms of Service as they are in the name of an entity called Farmiers Limited.  (*See*

4    Princeton's Reply Br. at 13.)  Moreover, Terms of Service like these, which restrict reproduction or

5    display of files, but do not contain any confidentiality provisions, are not a "reasonable way to

6    protect [] secrecy."  (*See* Br. at 4–5.)  *See Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 521–22

7    (S.D.N.Y. 2017).

8                    **4.      The Complaint Fails to Identify a Trade Secret.**

9    Planner 5D alleges that its "data files" are trade secrets, but does not describe what part of

10   these data files is a trade secret and why.  (Compl. ¶ 33.)  It argues that it only has to provide this

11   information in discovery, but the law is clear that a complaint must *also* "describe the subject matter

12   of the trade secret with sufficient particularity to separate it from matters of general knowledge in the

13   trade or of special knowledge of those persons who are skilled in the trade, and to permit the

14   defendant to ascertain at least the boundaries within which the secret lies."  *E. & J. Gallo Winery v.*

15   *Instituut Voor Landbouw—En Visserijonderzoek*, No. 1:17 Civ. 00808 DAD, 2018 WL 2463869, at

16   *3 (E.D. Cal. June 1, 2018) (denying motion where, unlike here, plaintiffs alleged that the trade

17   secrets concern the design of specific parts of a specific machine).  *See also Synopsys, Inc. v.*

18   *ATopTech, Inc.*, No. 13 Civ. 02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013)

19   ("Materials are not trade secrets just because Plaintiff says they are: there must be some minimally

20   plausible factual explanation [in pleadings] for why trade secret protection applies.").[12]  Planner 5D

21   cites no cases which state that conclusory allegations, like the ones here, are sufficient.

22                   **B.      Planner 5D's Complaint Does Not Allege Any Misappropriation by Facebook.**

23   Planner 5D's trade secret claim also should be dismissed for the independent reason that it

24

---

25   [12]  Planner 5D asserts that *Synopsys* was decided before, and thus was overruled by, *Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801 (9th Cir. 2014).  (Opp. at 22.)  But *Synopsys*

26   was recently cited by a court in this district and remains good law.  *See E. & J. Gallo Winery*, 2018 WL 2463869, at *3. Also, *Meggitt San Juan Capistrano* is distinguishable because the court held

27   that, unlike here, plaintiff had sufficiently alleged the trade secrets at issue.  575 F. App'x at 803. Further, *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244 (1963) supports Facebook as the court

28   dismissed the claim because the plaintiff did not allege facts showing the existence of a trade secret.

1  fails to allege *any* wrongful conduct by Facebook that would give rise to a claim for trade secret

2  misappropriation by Facebook.  Critically, Planner 5D does not allege that Facebook took data

3  directly from Planner 5D's website or facts showing that Facebook owed Planner 5D a duty of

4  confidentiality.  Instead, Planner 5D alleges that Facebook accessed the SUNCG Dataset from

5  *Princeton's* public website in 2018.  The Complaint contains no allegations that Facebook had any

6  reason to believe before, or at that time, that Princeton had misappropriated anything from Planner

7  5D.  Based on these allegations, there cannot be a claim against Facebook for misappropriation.[13]

8         According to these allegations, Princeton's posting was public disclosure and amounted to a

9  loss of secrecy;[14] the law is clear that Facebook cannot be liable for misappropriation thereafter.  *See*

10  *Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18 Civ. 05031 EMC, 2019

11  WL 1767329, at * 1 (N.D. Cal. Apr. 22, 2019) (no misappropriation if defendant's acquisition

12  occurred after trade secrets were acquired and made public by separate entity); *Wang v. Golf Tailor,*

13  *LLC*, No. 17 Civ. 00898 LB, 2017 WL 5068569, at *2 (N.D. Cal. Nov. 3, 2017) (same); *Religious*

14  *Tech. Ctr. v, Netcom On-Line Commc'n Servs.*, 923 F. Supp. 1231, 1256 (N.D. Cal 1995) (finding no

15  likelihood of success where the defendant raised "previous public disclosures as a defense to his

16  disclosure").  *See also DVD Copy Control Ass'n*, 116 Cal. App. 4th at 253 (stating even if

17  "information was originally acquired by improper means, it does not necessarily follow that once the

18  information became publicly available that everyone else would be liable under the trade secret laws

19  for republishing it simply because they knew about its unethical origins").

20

21

---

22  [13] Planner 5D cites a recent Ninth Circuit decision to argue that Princeton's alleged "scraping" of the
   data files constituted misappropriation.  (Opp. at 22–23 (citing *hiQ Labs, Inc. v. Linkedin Corp.*, No.
23  17-16783, 2019 WL 4251889 (9th Cir. Sept. 9, 2019).)  But that case simply said that nonconsensual
   web scraping could be unlawful under certain circumstances and it did not involve a claim of trade
24  secret misappropriation.  *hiQ Labs*, 2019 WL 4251889, at *14.  Moreover, there are no allegations
   that Facebook was aware of how Princeton allegedly acquired the files from Planner 5D.
25
26  [14] Planner 5D now argues that Princeton's posting of the SUNCG Dataset on its website was not
   necessarily public disclosure because it "does not allege (and does not know) the exact nature and
   extent of Princeton's disclosure."  (Opp. at 24.)  Planner 5D's Complaint, however, expressly alleges
27  that Princeton "posted the data to a ***publicly-accessible*** Princeton URL" and offered the data "to
   ***anyone*** to download and use," with no allegations of restricted access.  (Compl. ¶ 8 (emphasis
28  added).)  Planner 5D cannot change these allegations based on unknown, hypothetical facts.

---

1      Trying to salvage its claim, Planner 5D now argues that Facebook knew, or should have

2   known, of Princeton's alleged misappropriation when it first accessed the SUNCG Dataset.  (Opp. at

3   23.)  This argument is based solely on an allegation that a December 2016 publication by Princeton

4   stated that the SUNCG Dataset was derived from "scenes" downloaded from Planner 5D's website.

5   (Compl. ¶¶ 38–39.)  There are no allegations, however, that Facebook was ever aware of this article.

6   Even if it was aware, there are no allegations that Facebook had reason to believe Planner 5D's data

7   files were proprietary, or that it objected to Princeton's use of the data files.  Tellingly, Planner 5D

8   cites no cases in which a defendant was found to have notice of trade secret misappropriation based

9   on similar facts.

10      Planner 5D also argues that Facebook should have known that Princeton's alleged

11   misappropriation was in violation of Planner 5D's Terms of Service.  (Opp. at 23.)  But there are no

12   allegations that Facebook ever visited Planner 5D's website or was even aware of its Terms of

13   Service and restrictions on use.  Planner 5D cites *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171

14   (9th Cir. 2014) for the proposition that Facebook should be bound by Planner 5D's Terms of

15   Service.  (Opp. at 23.)  Yet, in *Nguyen*, the party visited the website in question, whereas Planner 5D

16   does not allege Facebook ever used its website.  Moreover, the court in *Nguyen* held that the visiting

17   user was not on actual notice of the terms, and that merely placing terms of service on a website was

18   insufficient to give rise to constructive notice.  763 F.3d at 1179.

19      Accordingly, as Planner 5D has not, and could not with a good faith basis, allege that

20   Facebook has improperly misappropriated any of its alleged trade secrets, Planner 5D's claim

21   against Facebook for trade secret misappropriation should be dismissed.

22   **IV.    CONCLUSION**

23      For the reasons stated above, and for those stated in Facebook's memorandum of points and

24   authorities in support of its Motion to Dismiss, Facebook respectfully requests that Planner 5D's

25   claims be dismissed in their entirety, with prejudice and without leave to amend.

26

27

28

1    Dated: October 4, 2019                    Respectfully submitted,

2                                              KIRKLAND & ELLIS LLP

3
                                              */s/ Dale M. Cendali*
4                                             Dale M. Cendali (S.B.N. 1969070)
                                              dale.cendali@kirkland.com
5                                             Johanna Schmitt (admitted *pro hac vice*)
                                              johanna.schmitt@kirkland.com
6                                             KIRKLAND & ELLIS LLP
                                              601 Lexington Avenue
7                                             New York, New York 10022
                                              Telephone: (212) 446-4800
8

9                                             May Eaton (S.B.N. 298123)
                                              may.eaton@kirkland.com
10                                            KIRKLAND & ELLIS LLP
                                              555 California Street
11                                            San Francisco, CA 94104
                                              Telephone: (415) 439-1400
12

13                                            Attorneys for Defendants
                                              *Facebook Inc.*
14                                            *Facebook Technologies, LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

On October 4, 2019, I electronically filed the foregoing with the Clerk of the Court by using

3

CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All

4

copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

5

*/s/ Dale M. Cendali*

6

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com

7

8

Attorney for Defendants
*Facebook Inc.*
*Facebook Technologies, LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28