United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UAB "PLANNER5D",<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., et al.,<br><br>Defendants. | Case No. 19-cv-03132-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 31, 33 |

## INTRODUCTION

UAB Planner 5D ("Planner 5D") brings copyright infringement and trade secret misappropriations claims against Facebook, Inc., Facebook Technologies, LLC (collectively "Facebook"), and The Trustees of Princeton University ("Princeton"). Complaint ("Compl.") [Dkt. No. 1]. Planner 5D operates a home design website that allows users to create virtual interior design scenes using a library of virtual objects (such as tables, chairs, and sofas) to populate the scenes. It claims that it owns copyrights in these three-dimensional objects and scenes, and in the compilation of objects and scenes, as well as trade secrets in the underlying data files of these objects and scenes.

Princeton and Facebook move to dismiss for failure to state a claim, and I will GRANT their motions. Planner 5D does not sufficiently allege a copyright infringement claim because it does not allege: (i) that it has met the threshold registration requirement of 17 U.S.C. § 411(a) or that it is exempt from that requirement as a non-United States work; (ii) the originality or creativity of the objects, scenes, and compilations of objects and scenes; and (iii) that copyrightable elements were copied. Planner 5D also fails to sufficiently allege a trade secret misappropriation claim because it does not explain: (i) how the structure of its website and the

Terms of Services maintained secrecy of the underlying data files of the objects and scenes; and (ii) what improper means Princeton and Facebook took to obtain these files. Planner 5D may have leave to amend to address these deficiencies.

**BACKGROUND**

**I.      FACTUAL BACKGROUND**

**A.      Planner 5D's Home Design Website**

In 2011, Planner 5D created a website that it describes as a "user-friendly home design tool that allowed anyone to quickly and easily create their own home, office or landscape designs." Compl. ¶ 27. Planner 5D offers its users access to a digital library of thousands of household objects, including "structural features," "furniture," "bathroom appurtenances," "electrical appliances," and "exterior features." *Id.* Users can create unique designs by "simply dragging any of these objects onto or around a chosen floor plan." *Id.* Once added to a design, these objects can be "easily moved, rotated, tilted, re-sized, or otherwise manipulated to create the desired design." *Id.* Users can also "easily toggle between two- and three-dimensional renderings of the design," and can rotate and tilt three-dimensional renderings "to any desired perspective." *Id.* Planner 5D claims that it currently has over 40 million users worldwide and that it owns "a collection of over a million hand-crafted, digitized, and realistic three-dimensional objects and scenes, depicting a wide variety of household and office designs." *Id.* ¶¶ 5, 28.

**1.      Alleged Copyright in Objects and Compilation of Objects**

Planner 5D alleges that it created the "library of realistic, digitized objects over a span of more than seven years, at the cost of millions of dollars." Compl. ¶ 29. The library consists of over 4,500 objects. *Id.* Planner 5D contends that it holds copyright in "[e]ach object individually, and the compilation of objects together," as well as in "the data files underlying each object, and in the compilation of individual data files." *Id.* All of these works were allegedly "authored in Europe or Russia," and "neither Planner 5D nor any individual object modelers are nationals, domiciliaries, or habitual residents of the U.S., or legal entities with headquarters in the U.S." *Id.*

**2.      Alleged Copyright in Scenes and Compilation of Scenes**

Planner 5D also alleges that it owns copyright in the "compilation of design scenes made

from arrangements of these individual objects." Compl. ¶ 30. These "scenes" consist of "floor plans created within the Planner 5D application using Planner 5D's objects." *Id.* Planner 5D contends that each scene in its collection "was individually created by a human designer," and the compilation of scenes now includes over 1,000,000 scenes. *Id.* All of these works were allegedly "authored in Europe by Planner 5D," which is a "Lithuanian corporation not headquartered in the U.S." *Id.*

### 3. Alleged Trade Secret in Underlying Data Files

In addition to the copyrights Planner 5D claims it owns in the objects and scenes, it also claims that the vast collection of underlying data files of these objects and scenes are confidential and proprietary trade secrets of the company. Compl. ¶ 33. These trade secrets and Planner 5D's copyrights "are the company's core assets." *Id.*

### 4. Access to Planner 5D's Objects and Scenes

Planner 5D claims that third parties can only access its objects and scenes "using Planner 5D's proprietary software" by navigating to the company's website, found at https://planner5d.com/. Compl. ¶ 31.[1] It contends in Paragraph 32 of the Complaint that its "terms of services and the structures of [its] website prohibit users from directly accessing, downloading, or otherwise using the data files defining Planner 5D's objects and scenes." *Id.* ¶ 32. It further asserts that users "may never . . . access, use, or download the underlying data files," and may never "make their own copies of the three-dimensional renderings of these files, [and] not use the renderings other than while on Planner 5D's website designing floor plans." *Id.* Paragraph 32 is the only paragraph in the Complaint that mentions the "structure" of Planner 5D's website. The Complaint does not allege how the "structure" of its website prevents users from

---

[1] Planner 5D's request for judicial notice of its website homepage as saved on September 13, 2019 from the URL https://planner5d.com/ is granted. *See* Planner 5D Request for Judicial Notice, Ex. 1 [Dkt. No. 39-2]. Under the "incorporation by reference" doctrine, a court may "consider materials incorporated into the complaint or matters of public record," including "documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Because Planner 5D repeatedly refers to its website and includes its web address in the Complaint, the website is incorporated by reference.

accessing its objects and scenes and/or its underlying data files.

Planner 5D's Terms of Service prohibit use of any "'page-scrape,' 'robot,' 'spider[,]' or other automatic device, program, algorithm or methodology which perform[s] similar functions[,] to access, acquire, copy, or monitor any portion of the Planner 5D project." Compl. ¶ 45. The Terms also prohibit "download[ing] (other than page caching) any portion of the Planner 5D project, the Materials or any information contained therein or use [of] the Planner 5D project or the Materials other than for their intended purposes." *Id.*[2]

### 5. Planner 5D Evolves Into Artificial Intelligence and Scene Recognition

Planner 5D alleges that since its founding in 2011, the company's core business objective evolved from providing home design tools "to becoming the leader and innovator in computer scene recognition." Compl. ¶ 34. Scene-recognition technology is the ability of machines to recognize three-dimensional scenes. *Id.* ¶ 1. It has been estimated that the computer vision market will reach $48 billion by 2023, and $60 billion by 2025. *Id.*

There is a major roadblock in developing this technology – finding enough data. *Id.* ¶¶ 2, 37. Teaching machines to recognize three-dimensional settings requires "feeding them large volumes of realistic, digitized renderings of such places—digitalized doors, walls, furniture, and the like, arranged into plausible interiors and rendered in three dimensions." *Id.* Planner 5D claims that creating lifelike digital scenes is "extremely time- and labor-intensive," and that to create truly "realistic" scenes, "human designers must arrange the objects in real-life configurations." *Id.* "Large collections of these kinds of three-dimensional settings are thus exceedingly rare." *Id.*

Planner 5D cites a presentation by a senior Princeton computer scientist who stated that "data" is the main roadblock for 3D scene understanding and research. *Id.* ¶ 4. Accordingly,

---

[2] Princeton's request of judicial notice of the Terms of Service is granted. *See* Princeton Request for Judicial Notice, Ex. 1 [Dkt. No. 32-1]. Planner 5D quotes from the Terms of Service throughout its Complaint, and the court may therefore take judicial notice of the entire document. *See Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-cv-7076-LHK, 2019 WL 2569545, at *4 (N.D. Cal. June 21, 2019) (taking judicial notice of contract referenced in complaint).

4

Planner 5D argues that its vast collection of objects and scenes, estimated at over a million, have become more valuable over time as "no other collection in the world numbers even in the tens of thousands." *Id.* ¶ 5. It maintains that over the past several years it has "invested significantly in developing algorithms that capitalize on [its] catalog of three-dimensional files to achieve market-leading 3D recognition." *Id.* ¶ 35.

### B. Princeton Downloads Planner 5D's Data to Create the SUNCG Dataset

Planner 5D alleges that computer scientists at Princeton "were eager to use this uniquely large, uniquely realistic collection of data," and "decided to download the entirety of Planner 5D's data collection." Compl. ¶ 6. It claims that its data is especially desirable given that its objects and scenes are designed by humans, making it more likely to be "realistic," a feature vital for accurate scene-recognition technology. *Id.* ¶ 39.

The method by which Princeton allegedly downloaded Planner 5D's data is contested. Planner 5D claims that Princeton "created computer code that crawled through thousands or tens of thousands of pages within Planner 5D's servers, progressively cataloging the locations of all available objects and scenes." *Id.* ¶¶ 6, 43. Through this method, which Planner 5D characterizes as "scrap[ing]" for data," Princeton was able to download over five gigabytes of data, including 2,644 of Planner 5D's objects and 45,622 of its scenes. *Id.* ¶¶ 6, 7, 43. Together, Planner 5D alleges that Princeton scraped each of the over 48,000 desired files from Planner 5D's servers. *Id.* ¶ 43.

Planner 5D claims that Princeton then used this scraped data to bolster its scene-recognition activities. Compl. ¶ 7. Princeton researchers "did not disguise" that the data they used in research was derived from Planner 5D's website. *Id.* (citing to a research article by Princeton that states "We use a collection of 3D scene models downloaded from the Planner 5D website"). Not only did Princeton use this data for their own research purposes, but Planner 5D also claims that Princeton posted the data to a publicly-accessible Princeton URL and labeled it the "SUNCG dataset." *Id.* ¶ 8. It states that more than 99.9% of the files in the SUNCG dataset are identical copies of files from Planner 5D's collection, with only a few that have been slightly altered. *Id.* ¶ 44. Some of the SUNCG dataset's files "even continue to bear Planner 5D's registered

5

1  trademark." *Id.* Planner 5D claims that these actions by Princeton both violate its Terms of
2  Service and the "structure" of its website. *Id.* ¶¶ 32, 45.

### C. Facebook Uses the SUNCG Dataset for its SUMO Challenge and Other Object-Recognition Projects

Planner 5D claims that Facebook was also interested in its objects and scenes collection that would help it tap into the commercial potential of scene recognition technology. Compl. ¶¶ 9, 46. Facebook launched an international scene-recognition competition, called the Scene Understanding and Modelling Challenge ("SUMO Challenge"), which encouraged entrants to submit scene-recognition papers and algorithms for the chance of winning cash prizes and speaking at a "SUMO Challenge conference." *Id.* ¶¶ 10, 11, 47. Planner 5D alleges that Facebook facilitated contestants' work by providing them with a copy of the SUNCG dataset, which it published on a URL belonging to Stanford University. *Id.* ¶¶ 11, 51. It claims that Facebook, aided by others including Stanford and Princeton, made its own copy of the Princeton SUNCG dataset. *Id.* ¶ 51. Planner 5D believes that "dozens of copies or more of this copy of the SUNCG dataset have been downloaded and used, by an unknown number of users." *Id.* Current and former Stanford and Princeton researches have also served as SUMO Challenge organizers, advisors, or program committee members." *Id.* ¶ 48. Planner 5D further alleges that both defendants are connected because "Facebook has supported Princeton and its researchers financially." *Id.* ¶ 49. It argues that Facebook's activities "strike[] at the heart of Planner 5D's business objective," given that Facebook has explicitly secured rights to commercialize the fruits of SUMO Challenge participants' work. *Id.*

Planner 5D also alleges that Facebook made at least one other copy of the SUNCG dataset for Facebook's "House 3D environment" project. *Id.* ¶ 53. According to Facebook, House 3D "is a rich environment containing thousands of human-designed 3D scenes of visually realistic houses with fully labeled 3D objects, textures, and scene layouts." *Id.* Planner 5D claims that Facebook obtained these objects and scenes by extracting them from the SUNCG dataset. *Id.* It argues that, like Princeton, Facebook is also exploiting Planner 5D's dataset "for the same purpose Planner 5D has set for itself: to train artificial intelligence applications to recognize 3D interior scenes." *Id.* ¶

6

54.

Planner 5D alleges that the gigabytes of data Princeton, Facebook, and an unknown number of others have downloaded and used are its intellectual property. Its data was allegedly scraped, copied, and used without its knowledge or permission. "Defendants' copying, use, and public disclosure and dissemination of Planner 5D's core asset has caused catastrophic and potentially permanent damage to the company." Compl. ¶ 13.

## II.     PROCEDURAL HISTORY

On March 14, 2019, Planner 5D wrote Facebook, Princeton, and others, demanding that they cease and desist infringement of Planner 5D's copyrights. Compl. ¶ 55; *see also* Princeton Request for Judicial Notice, Ex. 2 [Dkt. No. 32-2] (copy of cease and desist letter sent to Princeton).[3] On June 5, 2019, Planner 5D filed this Complaint against Princeton, Facebook, and other unknown entities and persons, alleging claims for copyright infringement and trade secret misappropriation. *See* Compl. Both Princeton and Facebook move to dismiss the Complaint under 12(b)(6) grounds for failure to state a claim upon which relief can be granted. *See* Princeton Motion to Dismiss ("Princeton Mot.") [Dkt. No. 31]; Facebook Motion to Dismiss ("Facebook Mot.") [Dkt. No. 33]. I heard oral arguments on November 6, 2019.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff

---

[3] Princeton's request of judicial notice of the cease and desist letter is granted. Planner 5D expressly references this letter in its Complaint, rendering it judicially noticeable. *See Kao v. Abbott Laboratories Inc.*, No. 17-cv-2790-JST, 2017 WL 5257041, at *3 (N.D. Cal. Nov. 13, 2017) (taking judicial notice of party's letter that was "explicitly referenced in the complaint").

must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. COPYRIGHT CLAIMS

To state a claim for copyright infringement, a plaintiff must plausibly allege two elements: (1) ownership of a valid copyright, and (2) copying of elements of the work that are original. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116 – 17 (9th Cir. 2018) (citing *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991)). As to first element, both Princeton and Facebook argue that Planner 5D has not plausibly alleged compliance with the threshold registration requirement of 17 U.S.C. § 411(a), which acts a gatekeeper on copyrightable claims. Princeton Mot. 6; Facebook Mot. 8. Facebook further argues that Planner 5D has failed to plausibly allege that its works are copyrightable because they are not original and creative. Facebook Mot. 12. As to the second element, Facebook argues that the Complaint "lacks specificity—both as to the scope of Planner 5D's ownership and to Facebook's alleged infringement—[and therefore] fails to provide adequate notice to Facebook as to Planner 5D's

8

claim and is grounds for dismissal." Facebook Mot. 12.

**A. Threshold Requirement Under to Section 411(a)**

**1. Plaintiffs are Required to Allege Whether Works are Registered or Exempt from Registration Under Section 411(a)**

The first element of a copyright claim requires a plaintiff to plausibly allege that it owns a valid copyright registration for its work pursuant to 17 U.S.C. § 411(a). Section 411(a) of the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made" with the Copyright Office. 17 U.S.C. § 411(a); *see Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) ("[Plaintiff] was required to show registration as an element of an infringement claim."); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) ("[A]lthough an owner's rights exists apart from registration, registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights.") (citations omitted). The registration requirement applies only to "United States work[s]." 17 U.S.C. § 411(a).

Both Princeton and Facebook argue that Planner 5D has failed to meet this threshold requirement because the Complaint does not plausibly allege that any of Planner 5D's works are registered as "United States works" or exempted from registration as "non-United States works." Princeton Mot. 6; Facebook Mot. 8. If Planner 5D's alleged works are considered United States works, then it automatically compels dismissal because a complaint cannot be filed before registration. Facebook Mot. 9. If Planner 5D's alleged works are considered non-United States works, then the Complaint insufficiently alleges that Planner 5D is exempt from the registration requirement. *Id.*

Planner 5D contends that it is not required to plead Section 411(a) inapplicability because only owners of United States works must register before suing for copyright infringement. Oppo. Facebook. 5. While it is true that the Section 411(a) registration requirement only applies to United States works, a plaintiff must adequately allege that its works are not United States works in order to be exempt from that requirement. The "*omission* of allegations indicating that the work

9

is a United States work" is insufficient because otherwise, "any party seeking to surmount the registration requirement could simply omit any allegation of first publication." *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018) (emphasis in original).

Planner 5D is wrong to argue that it is not required to plead Section 411(a) inapplicability. If a plaintiff believes that the registration requirement in Section 411(a) does not apply because its work is not a United States work, the plaintiff "must allege that the work [is] not [a] United States work [] within the meaning of § 101." *DigitAlb*, 284 F. Supp. 3d at 555; *see also Epikhin v. Game Insight N. Am.*, 145 F. Supp. 3d 896, 902 (N.D. Cal. 2015) (noting that "[a]lthough the registration requirement is not jurisdictional, it is a precondition to suit") (internal citation and quotation marks omitted).

### 2. Definition of a "United States Work" and "Publication"

The Copyright Act defines a "United States work" differently depending on whether the alleged work is a published work or an unpublished work. A published "United States work" is defined as a work that is first published –

> (A) in the United States;
> (B) simultaneously in the United States and another treaty party. . .
> (C) simultaneously in the United States and a foreign nation that is not a treaty party; or
> (D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of audiovisual work legal entities with headquarters in, the United States."

17 U.S.C. § 101. An unpublished "United States work" is defined as a work in which "all the authors of the work are nationals, domiciliaries, or habitual residents of the United States, or, in the case of an unpublished audiovisual work, all the authors are legal entities with headquarters in the United States." *Id.*

Planner 5D argues that its alleged works are "unpublished," so it is only required to allege that "all authors" of the work are not affiliated with the United States. Oppo. Facebook Mot. 9. Accordingly, it argues, the allegation in the Complaint that the alleged works "were authored in Europe or Russia" by persons who are not "nationals, domiciliaries, or habitual residents of the U.S." is sufficient to show that it is exempt from Section 411(a)'s registration requirement. Compl. ¶ 29; *see also id.* ¶ 30 (describing Planner 5D as a Lithuanian corporation). Defendants

10

counter that Planner 5D's alleged works were "published," so the former definition under Section 101 applies and shows that Planner 5D's works are "United States works" because they were simultaneously published in the United States when Planner 5D published its works online on its website.

Taking as true Planner 5D's allegation that its works were authored by non-United States persons, the question remains whether it has also sufficiently alleged that its works are unpublished such that they can be considered non-United States works that are exempt from the Section 411(a) registration requirement. The Copyright Act defines "publication" as the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership," and adds that a "public performance or display of a work does not itself constitute publication." 17 U.S.C. § 101. Defendants argue that the works were published on Planner 5D's website because the works were publicly available on the internet. Princeton Mot. 11; Facebook Mot. 9.[4]

Planner 5D responds that its alleged works were not published because the works were merely "displayed" on its website. Oppo. Facebook 8; Oppo. Facebook Mot. 7 (citing Compl. ¶¶ 27, 29–30). However, it only describes of the library of works (the kinds of objects and scenes, and how many there are in the library), alleges that it owns copyright in all of these works, and conclusorily alleges that these works were authored outside of the United States. Compl. ¶¶ 27, 29–30. The Complaint does not allege how these works were merely displayed on its website rather than being publicly available so that any user can obtain copies of them. While Planner 5D asserts that it has over "40 million users worldwide" who can "only access Planner 5D's objects and scenes using Planner 5D's proprietary software," it does not sufficiently allege how users' access is restricted so that the works are merely displayed. *Id.* ¶¶ 28, 31.

Planner 5D alleges that access and use of the objects and scenes is "strictly limited" by its Terms of Services and prohibited by the "structure" of its website. *Id.* ¶¶ 31–32. That is not

---

[4] Although the parties dispute whether Planner 5D's works were actually published when they were posted online on its website, the question now is whether Planner 5D has sufficiently alleged that its works were "unpublished" and did not require Section 411(a) registration.

11

enough to plead that Planner 5D's works were merely displayed and not published. Planner 5D must allege facts that show that users were not able to copy the works on its website. Doing so will require Planner 5D to explain the "structure" of its website and how it prevents users from accessing objects and scenes, as well as the underlying data files.[5] While Planner 5D has alleged that it authored its works outside the United States, in order to be exempt from the Section 411(a) registration requirement Planner 5D must also sufficiently allege that its works were unpublished.

Alternatively, if Planner 5D's works are considered to be United States works, then it cannot proceed with this case. A plaintiff cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending its pending complaint. *See Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (granting motion to dismiss without leave to amend even though plaintiff had a pending application for a registration because "permitting amendment to cure a claimant's failure to register its copyright before suing would undermine the objectives animating the Supreme Court's decision in *Fourth Estate*"). Therefore, Planner 5D can either amend its Complaint to sufficiently allege that its works are non-United States works that are exempt from registration, or dismiss this suit and bring another suit after registering with the Copyright Office.

### B. Originality and Creativity of Planner 5D's Alleged Works

#### 1. Objects and Scenes

To allege ownership of a valid copyright, the claimed work must be original and creative. *See Phantomalert, Inc. v. Google, Inc.*, No. 15-cv-03986-JCS, 2016 WL 879758, at *8 (N.D. Cal. Mar. 8, 2016) (quoting *Feist*, 499 U.S. at 361). "Original," as used in copyright law, means only that a work be "independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Id.* (internal citation and quotation marks omitted). Facebook

---

[5] This issue is also addressed in Section II.A of this Order, discussing whether Planner 5D has alleged that it maintained secrecy sufficient to bring a trade secret misappropriation claim.

12

argues that the first element of valid copyright ownership is not plausibly alleged because Planner 5D's alleged works are not original or creative, and therefore are not eligible for copyright protection. Facebook Mot. 12.

Facebook asserts that Planner 5D's works are "realistic" and "exact digital renderings of real-world objects." Facebook Mot. 13. It points to allegations in the Complaint where Planner 5D alleges that "human modelers must personally craft each three-dimensional object" in order to obtain "truly realistic scenes." Compl. ¶ 3. Planner 5D contends that it spent time, money and effort to make their objects and compilations, although that does not necessarily allege that any creative expression was added into the renderings of real-life objects. *See* Compl. ¶¶ 5,8 (describing Planner 5D grew its company "over many years, at the cost of millions of dollars," and "painstakingly developed" the objects and scenes). But the "sweat of the brow" approach does not establish originality or creativity. *Feist*, 499 U.S. at 359; *see also Etrailer Corp. v. Automatic Equip. Mfg. Co.*, No. 18 Civ. 351, 2019 WL 1596833, at *3 (D. Neb. Apr. 15, 2019) (dismissing complaint which only emphasized the time and money spent in creating unoriginal photographs).

In its opposition, Planner 5D argues that its website reveals "'hand-crafted' objects with various colors, textures, features and embellishments." Oppo. Facebook Mot. 13. This is not alleged in the Complaint, and even if it was, these allegations are not enough. Planner 5D must sufficiently allege more than the time and effort that went into making the three-dimensional objects and scenes.

### 2. Compilation of Objects and Scenes

In order to allege copyright protection in a compilation, a plaintiff must allege that it made creative "choices as to selection and arrangement" of the compilation's elements such that they "are made independently by the complier and entail a minimal degree of creativity." *Fiest*, 499 U.S. at 348. Facebook argues that Planner 5D fails to allege copyright protection in its alleged object compilation and scene compilation. Facebook Mot. 15. It contends that Planner 5D's compilations are merely a "repository" of all the scenes created by its users and that there is no indication that Planner 5D made any creative choices in selecting which objects or scenes to include in the compilations or that it arranged or organized them in any creative way. Facebook

13

Mot. 15.

As to the object compilations, Planner 5D argues that its website shows that Planner 5D's designers selected, from practically unlimited possibilities, a subset of interior design objects that allow users to "create [their] dream home." Oppo. Facebook Mot. 15. Nothing in the Complaint supports this point. Planner 5D does not allege that it has rendered any objects which were omitted from the compilation, and it does not allege any creative choices in selecting certain objects among many that it had rendered to include in the compilation. As Facebook points out, selecting all objects to include in the object compilation is not a "creative" selection that is protectable by copyright. Facebook Reply 8; *see* 1 Nimmer on Copyright § 3.02 (2019) (noting that House Report of Copyright Act of 1976 states that a compilation "must be of the 'discrete' writings of a given author [because] if the collection consists of all of a given author's writings, the process of selection would then involve no originality or authorship"). Similarly, Planner 5D has not sufficiently alleged any creative selection process behind its scene compilation. It has not alleged that it exercised any creativity in selecting among the user-generated scenes, nor does it identify any scenes that it omitted from the compilation.

### C. Specificity of Works Owned by Planner 5D that are the Subject of Its Copyright Claims

As to the second element, Facebook argues that the Complaint "lacks specificity—both as to the scope of Planner 5D's ownership and to Facebook's alleged infringement—[and therefore] fails to provide adequate notice to Facebook as to Planner 5D's claim and is grounds for dismissal." Facebook Mot. 12. Alleging the "copying of elements of the work that are original" requires a plaintiff to specify the works that are at issue. *See MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, No. 16-cv-3975-DMG, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) (finding complaint failed to allege enough facts that show copying because it is not clear what works are at issue). If a plaintiff "never makes clear what Defendant copied," it makes it "impossible for the Court to find Plaintiff's [copyright infringement claims plausible.]" *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965-SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013); *see also id.* ("Plaintiff further hamstrings its complaint by simply speculating on how widespread the copying

14

may be without describing any acts or works that infringe Plaintiff's [copyrights]."). Facebook argues that Planner 5D has failed to plead a plausible claim of copyright infringement because the Complaint does not plead the asserted copyright interests with sufficient detail or provide any representative infringements. Facebook Mot. 10.

Planner 5D alleges that it owns copyrights in over 4,500 objects, and that Princeton allegedly copied 2,644 objects for its SUNCG dataset. *Id.* ¶¶ 29, 43. Planner 5D also alleges that it owns copyrights in over 1,000,000 scenes, and that Princeton allegedly copied 45,622 scenes for its SUNCG dataset. *Id.* ¶¶ 30, 43. Altogether, Planner 5D alleges that Princeton copied over 48,000 underlying files, comprised of the 2,644 objects and 45,622 scenes. *Id.* ¶ 43. Facebook argues that this does not give defendants adequate notice because the Complaint "does not specify which Objects or Scene make up these compilations or which Objects or Scene were allegedly copied and included in the SUNCG dataset." Facebook Mot. 11–12.

Facebook's argument misses the mark. It states that Planner 5D owns copyright in a certain amount of objects and scenes yet only alleges that Princeton copied some of its objects and scenes; accordingly, it has not sufficiently alleged which works were infringed (2,644 objects copied out of the total of over 4,500 objects Planner 5D owns and 45,622 scenes copied out of the total of over 1,000,000 scenes Planner 5D owns). But Planner 5D does allege which works were infringing works—all works copied and placed into the SUNCG dataset are the allegedly infringing works. Compl. ¶¶ 43; *see also id.* ¶ 44 ("[M]ore than 99.9% of the files in the SUNCG dataset are alleged to be identical copies of the files from Planner 5D's collection."). The SUNCG dataset "thus *is* the copyrighted material whose infringement Planner 5D alleges." Oppo. Facebook 10 (emphasis in original).

That said, the question of "copying requires the Court to consider whether the 'protectable elements' of [plaintiff's] copyrights and defendants' accused works are 'substantially similar.'" *MultiCraft* Imports, 2017 WL 5664996, at *4 (quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006)). Even if Planner 5D has identified all the files in the SUNCG dataset as the infringed works, it does not identify what copyrightable elements Princeton copied when it allegedly took those objects, scenes, and/or underlying files. *See supra* Section I.B

15

(discussion on originality and creativity of Planner 5D's alleged works). This should be addressed in the amended complaint.

## II. TRADE SECRET CLAIMS

Planner 5D claims misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("CUTSA"), which both "require a plaintiff to show [1] that it possessed a trade secret, [2] that the defendant misappropriated the trade secret, and [3] that the defendant's conduct damaged the plaintiff." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019). Planner 5D claims it has a trade secret in the underlying data files that embody its objects and scenes, and alleges that defendants misappropriated that secret by obtaining downloads of the data files. Compl. ¶¶ 33, 38.

### A. Alleged Works as Trade Secrets

To constitute a trade secret, the information must both (1) derive "independent economic value . . . from not being generally known to the public . . ." and (2) be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code §§ 3426.1(d)(1), (2); *see also Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *12 (N.D. Cal. June 29, 2017) (definition of "trade secret" in the CUTSA is "substantially identical" to the definition in the DTSA). Defendants argue that Planner 5D does not allege that its data files defining the objects and scenes were secret because the Complaint makes clear that they are publicly available on the Planner 5D website. Facebook Mot. 17; Princeton Mot. 18.

Planner 5D asserts that it took reasonable efforts to maintain secrecy of its data files because the "structure" of its website "prohibit[s] users from directly accessing, downloading, or otherwise using the data files." Compl. ¶ 32. This allegation is not enough to plausibly allege that Planner 5D's underlying data files were not publicly available. As I wrote earlier, Planner 5D only mentions the structure of its website in conclusory terms in Paragraph 32 of its Complaint. It does not describe how the "structure" of the website operates as a lock. It does not define how it built the lock, and why nobody could get around that lock or at least should not have been able to get around that lock.

Planner 5D also contends that its Terms of Service prohibit users from "download[ing] . . .

16

any portion of the Planner 5D project . . . or us[ing] the Planner 5D project . . . other than for their intended purposes." Compl. ¶¶ 31, 45. The sole "intended purpose" of Planner 5D's website is interior design. *Id.* ¶ 27. It follows, Planner 5D argues, that the Terms prohibit exactly what Princeton did – "crawling through thousands of Planner 5D web pages to identify each of Planner 5D's object and scene files, then scraping those files," and using them "for its scene-recognition activities." *Id.* ¶¶ 7, 68. This is not enough. While allegations about terms of service might be evidence of secrecy if parties are bound to that contract, here Planner 5D has not alleged that any portion of Planner 5D's website was confidential or that the website requires users to treat it as confidential. *See Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 521-22 (S.D.N.Y. 2017) (denying preliminary injunction as unlikely to succeed on the merits because plaintiff disclosed its alleged trade secrets to its users and its terms of service did not include a confidentiality provision).

Princeton and Facebook also contest the enforceability of the Terms of Service because Planner 5D is not a party to these Terms – Farminers Limited is. Princeton Mot. 19. Planner 5D responds that it is an express intended beneficiary of the Terms because the Terms protect Planner 5D's project. Oppo. Princeton Mot. 23. It also states that because Princeton brought up this issue, it had no opportunity to plead its relationship with Farminers. *Id.* I now give it that opportunity. Planner 5D must add factual allegations regarding this issue if it chooses to amend its complaint.

Altogether, Planner 5D must plausibly allege how both the "structure" of its website made its data files secret and protected them from reproduction, and how the Terms of Service are enforceable and bound the parties to treat the files as confidential.

**B.     Alleged Improper Means**

To state a trade secret claim, a plaintiff must also allege the second element that the defendant misappropriated the trade secret. Both Princeton and Facebook argue that the Complaint does not allege that Princeton acquired the alleged trade secrets by improper means, such as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(a). They assert that Planner 5D does not sufficiently allege that Princeton had a duty of

17

confidentiality to Planner 5D and breached it. *See Be In, Inc. v. Google Inc.*, No. 12 Civ. 03373 LHK, 2013 WL 5568706, at *3 (N.D. Cal. Oct. 9, 2013) (dismissing trade secret claim where plaintiff failed to "demonstrate that the defendant (1) had a duty to maintain secrecy, and (2) breached that duty.").

Planner 5D has failed to allege facts showing that a duty to maintain secrecy existed and that defendants breached that duty. It does not allege how the Terms of Service created a duty of confidentiality to maintain secrecy, and whether the duty was between its users and Planner 5D. Nor does it sufficiently show how Princeton breached that duty. It also conclusorily alleges that its website is "structured" to protect underlying data files, but does not sufficiently describe facts to support that contention. It does not explain how Princeton's "crawling" and "scraping" constitute improper means given the protective "structure" of its website. On the face of the Complaint, it is not clear that what Princeton did that was improper; the allegations only say that Princeton located the files through thousands of pages within Planner 5D's website, and then downloaded them. Compl. ¶ 32, 45, 68, 75.

Facebook also argues that there is no allegation that it knew or had reason to know Planner 5D's trade secrets were misappropriated by Princeton before they were publicly re-posted by Princeton in the SUNCG dataset in 2016. Facebook Mot. 21. Facebook argues that it could not be the "wrongdoer because, by the time it got involved, there was no trade secret." *Id.* (citing *Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18-cv-05031-EMC, 2019 WL 1767329, at * 1 (N.D. Cal. Apr. 22, 2019) (dismissing trade secret counterclaim based on alleged use of trade secrets because another party had published the trade secrets without authorization prior to alleged use)). Planner 5D only conclusorily alleges that Facebook knew or should have knew but does not plausibly allege facts to support that contention. Compl. ¶ 69. The Complaint merely alleges that Facebook has supported Princeton and its researchers financially and that Princeton was one of the sponsors of Facebook's SUMO Challenge. *See* Compl. ¶¶ 48–49. It is not clear how that is pertinent to showing Facebook knew or should have known that Princeton improperly acquired data files from Planner 5D. If Planner 5D chooses to amend its complaint, it must specifically allege misappropriation as it each Princeton and Facebook.

18

**CONCLUSION**

For the foregoing reasons, Princeton's and Facebook's motions to dismiss the complaint is GRANTED. Planner 5D is granted leave to amend within 15 days from the date of this order.

**IT IS SO ORDERED.**

Dated: November 21, 2019

William H. Orrick
United States District Judge