**JENNER & BLOCK LLP**
David R. Singer (Cal. Bar No. 204699)
dsinger@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Phone:      (213) 239-5100
Facsimile:     (213) 239-5199

**JENNER & BLOCK LLP**
Andrew H. Bart (*pro hac vice*)
abart@jenner.com
Jacob L. Tracer (*pro hac vice*)
jtracer@jenner.com
919 Third Avenue, 39th Floor
New York, NY 10022-3908
Phone:      (212) 891-1600
Facsimile:     (212) 891-1699

Attorneys for Defendant
The Trustees of Princeton University

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>                    Plaintiff,<br><br>    v.<br><br>FACEBOOK INC.; FACEBOOK TECHNOLOGIES, LLC; THE TRUSTEES OF PRINCETON UNIVERSITY; et al.,<br><br>                    Defendants. | Case No. 3:19-cv-03132-WHO<br><br>**NOTICE OF MOTION AND MOTION BY THE TRUSTEES OF PRINCETON UNIVERSITY TO DISMISS THE COMPLAINTS**<br><br>This Document Relates To: All Actions<br><br>Complaint filed: June 5, 2019<br>First Amended Complaint filed: December 6, 2019 |
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>                    Plaintiff,<br><br>    v.<br><br>FACEBOOK INC.; FACEBOOK TECHNOLOGIES, LLC; THE TRUSTEES OF PRINCETON UNIVERSITY; et al.,<br><br>                    Defendants. | Case No. 3:20-cv-02198-WHO<br><br>Complaint filed: March 31, 2020<br><br><br><br>Hearing Date: July 9, 2020<br>Hearing Time: 10:30 a.m.<br>Judge: Honorable William H. Orrick<br>Courtroom: 2 |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on July 9, 2020, at 10:30 a.m., or as soon thereafter as the Court is available, Defendant The Trustees of Princeton University ("Princeton") will and hereby does move the Court in Courtroom 2 of the federal courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, to dismiss Plaintiff's First Amended Complaint in Case No. 3:19-cv-03132-WHO and Plaintiff's Complaint for Copyright Infringement in Case No. 3:20-cv-02198-WHO pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that the pleadings fail to state a claim upon which relief can be granted.

Princeton's motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice and declaration and exhibits attached thereto, any additional briefing on this subject, and any evidence and arguments that will be presented to the Court at the hearing on this matter.


Dated: April 29, 2020

JENNER & BLOCK LLP


By: /s/ *Andrew H. Bart*

Andrew H. Bart (*pro hac vice*)

Attorneys for Defendant
The Trustees of Princeton University

INTRODUCTION..................................................................................................................1

BACKGROUND ................................................................................................................2

I.     Planner 5D's Website .............................................................................................2

II.    The SUNCG Dataset and SUMO Challenge ........................................................5

III.   Procedural History.................................................................................................6

       A.     Planner 5D's Original Complaint ..............................................................6

       B.     Planner 5D's Amended Pleadings .............................................................7

LEGAL STANDARD ........................................................................................................8

ARGUMENT ....................................................................................................................8

I.     Planner 5D Has Again Failed To Comply With The Copyright Act's Registration Requirement. .........................................................................................................9

II.    The First Amended Complaint Fails To State A Claim For Misappropriation Of Trade Secrets. ..................................................................................................................11

       A.     Planner 5D Does Not Possess Any Trade Secrets. ..................................12

              1.     Planner 5D's Website Transmits Its Alleged Trade Secrets To Its Users' Browsers Where They Are Cached........................................12

              2.     Planner 5D's Terms Of Service Expressly Recognized That Its Files Would Be Cached...............................................................................16

       B.     Planner 5D Fails To Allege That Princeton Used Any "Improper Means" To Acquire Any Alleged Trade Secret.....................................................17

CONCLUSION ................................................................................................................19

ii

PRINCETON UNIVERSITY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINTS
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-02198-WHO

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Arkeyo, LLC v. Cummins Allison Corp.*,
   342 F. Supp. 3d 622 (E.D. Pa. 2017) ................................................. 15

*Art of Living Found. v. Does 1-10*,
   No. 5:10-cv-5022-LHK, 2012 WL 156281 (N.D. Cal. May 1, 2012) ................................. 15

*Atl. Recording Corp. v. Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ................................................. 4

*Borden v. Horwitz*,
   No. 10-cv-00141-MWF-AJWx, 2012 WL 12877995 (C.D. Cal. Sept. 20, 2012) ................. 10

*Broker Genius, Inc. v. Zalta*,
   280 F. Supp. 3d 495 (S.D.N.Y. 2017) ................................................. 16

*DeHoog v. Anheuser-Busch InBev SA/NV*,
   899 F.3d 758 (9th Cir. 2018) ................................................. 8

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014) ................................................. 8, 14

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
   307 F. Supp. 2d 521 (S.D.N.Y. 2004) ................................................. 10

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ................................................. 18

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ................................................. 11

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ................................................. 8

*Newt v. Twentieth Century Fox Film Corp.*,
   No. 15-cv-2778-CBM-JPRx, 2016 WL 4059691 (C.D. Cal. July 27, 2016) ................. 7

*Oskar Sys., LLC v. Club Speed, Inc.*,
   745 F. Supp. 2d 1155 (C.D. Cal. 2010) ................................................. 10

*Sara Design, Inc. v. A Classic Time Watch Co.*,
   234 F. Supp. 3d 548 (S.D.N.Y. 2017) ................................................. 9

*Seiler v. Lucasfilm, Ltd.*,
   808 F.2d 1316 (9th Cir. 1986) ................................................. 11

*Teradata Corp. v. SAP SE*,
  No. 18-cv-3670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ................................ 11

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
  No. 19-cv-3716-JSW, 2020 WL 1694361 (N.D. Cal. Apr. 7, 2020) ................................... 4

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*,
  507 F. Supp. 2d 1096 (C.D. Cal. 2007) ......................................................................... 13

*UAB "Planner 5D" v. Facebook, Inc.*,
  No. 19-cv-3132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) .......................... passim

*United States v. Kuchinski*,
  469 F.3d 853 (9th Cir. 2006) ........................................................................................ 13

*United States v. Nance*,
  767 F.3d 1037 (10th Cir. 2014) ..................................................................................... 13

*United States v. Romm*,
  455 F.3d 990 (9th Cir. 2006) .............................................................................. 4, 13, 14

*United States v. Tucker*,
  305 F.3d 1193 (10th Cir. 2002) ..................................................................................... 13

*Veronica Foods Co. v. Ecklin*,
  No. 16-cv-7223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ............................... 15

**STATUTES**

17 U.S.C. § 408 ..................................................................................................................... 7

17 U.S.C. § 409 ................................................................................................................... 10

17 U.S.C. § 411 .......................................................................................................... 8, 9, 11

18 U.S.C. § 1839 ...................................................................................................... 12, 17, 18

Cal. Civ. Code § 3426.1(a) ...................................................................................... 12, 17, 18

**OTHER AUTHORITIES**

37 C.F.R. § 202.20 ........................................................................................................... 7, 14

Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16 ..................................... 10

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1509.1 (3d ed. 2017) ............. 7

PRINCETON UNIVERSITY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINTS
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-02198-WHO

Pursuant to Civil Local Rule 7-4, Defendant The Trustees of Princeton University ("Princeton") respectfully submits this memorandum of points and authorities in support of its Motion to Dismiss the Complaints filed by Plaintiff UAB "Planner5D," d/b/a Planner 5D ("Planner 5D") for failure to state a claim upon which relief can be granted.

## INTRODUCTION

This Court previously dismissed, with leave to amend, Planner 5D's claims for copyright infringement and trade secret misappropriation because Planner 5D did not comply with the Copyright Act's registration requirement and did not plausibly allege a trade secret claim. *See UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-3132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019). Thereafter, Planner 5D filed a First Amended Complaint (the "FAC") in this action that repleaded its trade secret claims and also filed a separate complaint alleging copyright infringement (the "Copyright Complaint"). However, these two pleadings (collectively, the "Complaints") do not cure the deficiencies in Planner 5D's original complaint and must also be dismissed.

Planner 5D again alleges that it operates a home design website that allows users to create virtual interior design scenes using a library of virtual objects (such as tables, chairs, and sofas) to populate the scenes. It further alleges that in 2016 or earlier, a team of Princeton researchers and students interested in the field of machine vision infringed its copyrights and misappropriated its trade secrets in the data files associated with those objects and scenes when they obtained downloads of those files and used them for research and educational purposes. However, Planner 5D's copyright claim fails because it has not registered a copyright in the works on its website as they existed at the time Princeton's researchers allegedly copied them. Further, the trade secret claims fail because the very files that Planner 5D claims are trade secrets were made publicly available to Planner 5D's users *by Planner 5D itself*. As a result, the Complaints must be dismissed.

*First*, Planner 5D did not register copyrights in the works it alleges were infringed. It is well established that a plaintiff suing for copyright infringement based on a registered copyright must show that the registered work was created *before* the alleged infringement. Such a rule is essential to prevent parties from asserting fraudulent or otherwise unsupportable claims that a later-created work existed in the same

form during an earlier time period. Planner 5D alleges that the infringement occurred in 2016 or earlier. However, when Planner 5D decided to register its alleged works with the Copyright Office, it submitted versions of those alleged works that were not created until 2019. Thus, Planner 5D has again failed to satisfy the registration requirement.

*Second*, Planner 5D's trade secret misappropriation claims fail as a matter of law because Planner 5D transmits copies of the very data files it alleges are trade secrets to its users. Planner 5D passingly admits as much in the Complaints. When Planner 5D transmits those files, they are saved in the user's browser "cache," or temporary memory folder. The files in the cache are then easily accessible to the user. These transmissions of data files from Planner 5D to its users were expressly acknowledged in Planner 5D's Terms of Service, which limited users' rights to download files from Planner 5D but expressly excluded "page caching" from that limitation. Because Planner 5D designed its website to transmit its data files to its users, its allegation that any of those files is a trade secret fails as a matter of law. Thus, Planner 5D's misappropriation claims must also be dismissed.

## BACKGROUND[1]

### I.     Planner 5D's Website

The Complaints allege that Planner 5D was founded in 2011 as a "user-friendly" website designed to allow users to "quickly and easily" create interior designs. FAC ¶ 30; Copyright Compl. ¶ 30. Planner 5D's website offers its users access to a digital library of household objects (*e.g.*, sofas, beds, windows, baths, sinks, lights, and plants) and enables those users to create virtual home design scenes by dragging those objects to or around floor plans and then moving, rotating, resizing, or otherwise manipulating the objects to create designs. *Id.* Users can "toggle between two- and three-dimensional" renderings of their scenes and rotate and tilt the 3D renderings "to any desired perspective." *Id.* Planner 5D alleges that it now has over 40 million users on its "web-based" platform. FAC ¶ 31; Copyright Compl. ¶ 31.

The objects and scenes visible through Planner 5D's website are each saved as individual data files on Planner 5D's servers. FAC ¶ 32 (object files); Copyright Compl. ¶ 32 (same); FAC ¶ 36 (scene files);

---

[1] Unless otherwise noted, the facts described herein are drawn from Planner5D's Complaints and accepted as true for the purposes of this motion only. Nothing in this submission should be read to suggest that Princeton agrees with any factual allegation in the Complaints.

Copyright Compl. ¶ 45 (same).  In its copyright registrations, Planner 5D asserted that all of the object data files constitute a computer program that generates the object screen displays, and the scene data files constitute a separate computer program that generates the scene screen displays.  *See* Copyright Compl. Ex. A.  Planner 5D alleges that it created all the object files in its library, which now exceeds 4,500 objects.  FAC ¶ 32; Copyright Compl. ¶ 32.  However, the scenes themselves were created by Planner 5D's users, who can choose whether to designate them for potential inclusion in a public gallery on Planner 5D's website.  Copyright Compl. ¶ 5.  Planner 5D alleges that it has now collected "many millions of scenes." *Id.*

Planner 5D claims that these object and scene data files are secret and that it protects them through the structure of its website and the Terms of Service allegedly applicable to the website.  Central to this claim is Planner 5D's allegation that each file is "located at a unique, and secret, Internet address" that is not shown to the website's users and which users cannot access.  FAC ¶ 33 (object files); Copyright Compl. ¶ 42 (same); FAC ¶ 37 (scene files); Copyright Compl. ¶ 48 (same).  Although the Complaints do not define "Internet address," that term appears to refer to a uniform resource locator, or "URL," at which Planner 5D stores each data file online.  According to Planner 5D, it is "impossible" to identify the internet address for any of its data files or access any of those files "without circumventing Planner 5D's software and penetrating non-public addresses on its servers." *Id.*  Planner 5D does not identify any specific actions that it contends "circumvented" its software or "penetrated" its addresses and whether or how those actions involve anything more than identifying the URLs at which Planner 5D posts its data files online and accessing those URLs with a browser.  However, Planner 5D suggests, without factual foundation, that one would need to be "a hacker" to do those things. *Id*.

Planner 5D's self-serving description of how it designed its website to operate is not remotely consistent with the operation of the website itself.  In fact, Planner 5D affirmatively transmits the object and scene data files (as well as the URLs at which it posts those files online) to Planner 5D's users so the users' browsers will display the objects and scenes.  As detailed in the concurrently submitted Declaration of Steven R. Englund (the "Englund Declaration"), when a user operating a standard web browser (such as Firefox) opens a three-dimensional rendering of a scene from Planner 5D's public gallery, Planner 5D

transmits an unencrypted copy of the data file associated with that scene to the user, along with unencrypted copies of the data files associated with the objects in that scene. These are stored in the user's browser "cache," or temporary memory folder. *See* Englund Decl. ¶¶ 13-20.[2] Operating in this manner—which is not necessary to the functioning of a home design service but is only one of many different ways Planner 5D could have structured its operations—ensures that the service is easily accessible and the 3D renderings can be loaded, re-loaded and manipulated quickly. *See* FAC ¶ 30 (alleging that Planner 5D designed its website to be "user-friendly" and operate "quickly"); Copyright Compl. ¶ 30 (same); *United States v. Romm*, 455 F.3d 990, 993 n.1 (9th Cir. 2006) (recognizing that files saved in a browser's cache "can be redisplayed quickly when you go back to them").

Once Planner 5D has transmitted its data files to the user, they are stored in the user's cache, and the files and their URLs (*i.e.*, the "Internet addresses" that Planner 5D falsely alleges are secret and never shown to users) are readily accessible. All a user has to do to obtain those files and URLs is to access the cache on her computer. *See* Englund Decl. ¶¶ 14-15, 18. If the user then enters into the browser any of the URLs identified as the source of the files transmitted to her by Planner 5D, the source code to the data file appears. *See id.* ¶¶ 16, 19. No "circumvention" of Planner 5D's software or "penetration" of Planner 5D's website or servers is required.

Planner 5D further alleges that it protected the secrecy of its data files with the Terms of Service allegedly applicable to its website. According to Planner 5D, those Terms prohibited users from accessing or acquiring any of the data files, thus making those files confidential. FAC ¶¶ 40-42; Copyright Compl. ¶¶ 51-53. However, that allegation ignores plain language in the Terms of Service expressly recognizing

---

[2] Planner 5D's entire website is incorporated by reference in the Complaints. *See* Request for Judicial Notice at 3. At Planner 5D's request, this Court previously took judicial notice of Planner 5D's website homepage, holding that "the website is incorporated by reference" in Planner 5D's allegations. *UAB "Planner 5D"*, 2019 WL 6219223, at *2 n.1. The nature of those allegations has not changed in any substantive way since then, and there is no reason to treat Planner 5D's homepage differently from any other page on its website. Accordingly, the Court may undertake its own review of Planner 5D's entire website in evaluating the sufficiency of Planner 5D's pleadings. *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 693 n.3 (S.D.N.Y. 2009) (undertaking independent review of website incorporated by reference in evaluating motion to dismiss). Moreover, the contents of individual webpages within Planner 5D's website are judicially noticeable because they are publicly available and not subject to reasonable dispute. *See, e.g.*, *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, No. 19-cv-3716-JSW, 2020 WL 1694361, at *3 (N.D. Cal. Apr. 7, 2020) (recognizing that courts may take judicial notice of public websites and their contents).

that Planner 5D routinely and automatically transmits copies of its data files to its users' browsers, where those files are accessible through the browser cache by anyone who cares to look for them. While the Terms of Service generally prohibited users from downloading material from Planner 5D's website, they expressly carved out downloads for "page caching" since such downloads were an integral part of how Planner 5D chose to do business. Englund Decl. Ex. 1 (Terms of Service); *see also* FAC ¶ 40 (quoting Terms of Service); Copyright Compl. ¶ 51 (same).[3]

Planner 5D does not allege any other means by which it protected its allegedly secret files. It does not allege, for example, that it structured its website to avoid transmitting those files to its users' browsers, that it masked the URLs at which those files are posted when it transmitted them, or that any of the files posted at those URLs are encrypted, password-protected, or otherwise kept confidential. Planner 5D similarly does not allege that its Terms of Service expressly asserted that any material on its website was secret or that users should treat it confidentially. Indeed, the Terms of Service contained no such provision.

## II.    The SUNCG Dataset and SUMO Challenge

Planner 5D alleges that "sometime in or before 2016," computer science researchers at Princeton[4] "determined that large sets of realistic, digitized, three-dimensional scene and object data were critical to their research" on machine vision and robotics. FAC ¶ 48; Copyright Compl. ¶ 59. The researchers allegedly acquired such data by downloading the object and scene data files from Planner 5D's website. FAC ¶ 50; Copyright Compl. ¶ 61. Planner 5D concedes that it does not know how the researchers allegedly did this, so it speculates that they "intercepted communications activity between Planner 5D's software and its European servers" and used information from those communications to identify the URLs of the data files in order to access and obtain downloads of them. FAC ¶ 56; Copyright Compl. ¶ 67. Planner 5D claims that at the time Princeton's researchers allegedly obtained the downloads, the Planner

---

[3] The Court previously granted Princeton's request to consider the entirety of Planner 5D's Terms of Service, even though Planner 5D quoted only a portion of those Terms in its pleading. *See UAB "Planner5D"*, 2019 WL 6219223, at *2 n.2.

[4] While the Complaints define "Princeton" to include "the university, its employees, agents, and others acting at its behest and direction," FAC ¶ 25; Copyright Compl. ¶ 25, that term is used herein to refer only to Defendant The Trustees of Princeton University (*i.e.*, the university and not its employees, agents, or others).

5D website included over 2,600 objects and a public gallery of over 45,000 scenes. FAC ¶ 32 (objects); Copyright Compl. ¶ 32 (same); FAC ¶ 36 (objects); Copyright Compl. ¶ 45 (same).

The Complaints allege that the researchers later released Planner 5D's data files to the public by posting them to a Princeton-hosted website and calling it the "SUNCG dataset." FAC ¶ 52; Copyright Compl. ¶ 63. The Complaints also allege that the researchers aided Defendants Facebook Inc. and Facebook Technologies, LLC (collectively, "Facebook") in further distributing the SUNCG Dataset in 2018 as part of Facebook's first Scene Understanding and Modeling Challenge (the "SUMO Challenge"). FAC ¶¶ 63, 66; Copyright Compl. ¶¶ 74, 77. Facebook and "other SUMO Challenge organizers" allegedly launched a second SUMO Challenge in 2019. FAC ¶ 67; Copyright Compl. ¶ 78.

## III. Procedural History

### A. Planner 5D's Original Complaint

Planner 5D alleges that it first became aware of the SUNCG Dataset at some point in 2018. FAC ¶ 61; Copyright Compl. ¶ 72. In March 2019, Planner 5D's counsel sent a letter to Princeton asserting copyright infringement and other claims, but not alleging the presence or misappropriation of any trade secrets. FAC ¶ 82; Copyright Compl. ¶ 93; Englund Decl. Ex. 2.[5] Planner 5D then initiated this action in June 2019, alleging claims for copyright infringement and misappropriation of trade secrets. *See* Dkt. 1, Compl. (June 5, 2019).

Princeton and Facebook each moved to dismiss. The Court granted the motions on November 21, 2019, holding, among other things, that Planner 5D (1) was required to register its alleged copyrights with the U.S. Copyright Office (the "Copyright Office" or the "Office") or allege sufficient facts to show that registration was not required, and (2) failed to state a claim for misappropriation of trade secrets. *See UAB "Planner 5D"*, 2019 WL 6219223, at *7, *10-11. The Court gave Planner 5D an opportunity to serve amended pleadings if it believed that it could correct the deficiencies in its pleading. *Id.* at *11.

---

[5] The Court granted Princeton's request to consider Planner 5D's letter to Princeton even though Planner 5D did not attach the letter to its complaint. *See UAB "Planner5D"*, 2019 WL 6129223, at *4 n.3.

### B.    Planner 5D's Amended Pleadings

After the Court dismissed Planner 5D's initial pleading, Planner 5D filed the FAC and indicated that it intended to register its alleged copyrights.  *See* Dkt. 53, FAC (Dec. 6, 2019); Dkt. 54, Notice of Intent to Register Copyright (Dec. 6, 2019).  The FAC alleges four causes of action for misappropriation of trade secrets: (1) misappropriation of the individual object and scene data files under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (2) misappropriation of the compilation of object and scene data files under the DTSA; (3) misappropriation of the individual object and scene data files under California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*; and (4) misappropriation of the compilation of object and scene data files under the CUTSA.  FAC ¶¶ 84-113.

Planner 5D then submitted two registration applications to the Copyright Office on December 19, 2019.  One application related to Planner 5D's objects and the other related to an alleged compilation created by Planner 5D of scenes created by Planner 5D's users.  As part of its applications, Planner 5D was required to submit deposit copies of each of its alleged works.  *See* 17 U.S.C. § 408(b).  One way for an owner of a copyright in a computer program to satisfy this deposit requirement is to submit excerpts of the source code for its work, redacting any material that it believes constitute a trade secret.  *See* 37 C.F.R. § 202.20(c)(2)(vii)(A)(2); *see also* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1509.1(C)(4)(b) (3d ed. 2017).  Planner 5D did just that, submitting approximately 50 pages of source code with each application while redacting certain material.  *See* Englund Decl. Exs. 3 & 4.[6]  The bottom of every page of source code Planner 5D submitted is dated "12.12.2019" (*i.e.*, December 12, 2019).  *See id.*

Based on Planner 5D's applications and deposit copies, the Copyright Office issued two certificates of registration to Planner 5D, Nos. TX 8-818-101 (objects) and TX 8-818-102 (compilation of scenes).  Copyright Compl. ¶¶ 96-97.  Both certificates state that Planner 5D completed and published its works in 2019.  *See* Copyright Compl. Ex. A (Certificates of Registration).

---

[6] Because the deposit copies that Planner 5D submitted to the Copyright Office are public records of a governmental agency, the Court may take judicial notice of them on a motion to dismiss.  *See, e.g.*, *Newt v. Twentieth Century Fox Film Corp.*, No. 15-cv-2778-CBM-JPRx, 2016 WL 4059691, at *2-3 (C.D. Cal. July 27, 2016) (granting request to take judicial notice of deposit copies of works at issue).

Planner 5D then filed a new lawsuit with a single count for infringement of those two copyrights. Copyright Compl. ¶¶ 95-105. This Court designated that lawsuit as related to the first lawsuit filed by Planner 5D and consolidated the two actions. *See* Dkt. 63, Related Case Order (Apr. 6, 2020); Dkt. 64, Order Consolidating Cases (Apr. 8, 2020).

## **LEGAL STANDARD**

Under the "now-familiar standard of *Twombly* and *Iqbal*," to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). A complaint's "factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, a court evaluating a motion to dismiss need not accept as true legal conclusions in a complaint or factual allegations that are contradicted by materials subject to judicial notice or incorporated into the complaint by reference. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (legal conclusions); *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (factual allegations contradicted by materials properly before the court).

## **ARGUMENT**

The Court should dismiss all of Planner 5D's claims. The copyright claim should be dismissed because Planner 5D cannot sue for alleged infringement that occurred before it created the works it registered with the Copyright Office. Planner 5D alleges that infringement of its works began no later than 2016. However, Planner 5D's registrations state that all the works it registered were created in 2019. Because Planner 5D did not register works that existed at the time of the alleged infringement, it has again failed to meet the registration requirement in Section 411(a) of the Copyright Act. *See* 17 U.S.C. § 411(a). Moreover, the trade secret claims should be dismissed for the same reasons the Court previously dismissed them: Planner 5D again fails to allege facts creating plausible inferences that it owned any trade secrets or that any Princeton researcher used improper means to obtain any trade secrets from Planner 5D.

# I. Planner 5D Has Again Failed To Comply With The Copyright Act's Registration Requirement.

This Court previously dismissed Planner 5D's claim for copyright infringement because Planner 5D failed to satisfy the Copyright Act's registration requirement, 17 U.S.C. § 411(a), either by registering its alleged works with the Copyright Office before filing suit or, in the alternative, by pleading sufficient facts to allege that those works are exempt from the requirement. *See UAB "Planner 5D"*, 2019 WL 6219223, at *5-7. In response, Planner 5D opted to register some works. *See* Dkt. 54, Notice of Intent to Register Copyright (Dec. 6, 2019). However, for an infringement action to proceed, it is necessary for the plaintiff to "plausibly plead[] on its face" copyright registrations covering the works that the defendant allegedly infringed. *Sara Design, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017). Here, Planner 5D did not register copyrights in the works it alleges were infringed.

The Complaints allege that Princeton's researchers downloaded Planner 5D's works no later than 2016. FAC ¶¶ 48-50; Copyright Complaint ¶¶ 59-61. Yet each of Planner 5D's two copyright registrations identifies a work created and published years later—in 2019. The registration for the work titled "Planner 5D objects" (No. TX-8-818-101) states that the work was created in 2019 and published on December 17, 2019. *See* Copyright Compl. Ex. A. Consistent with those dates, the bottom of every page of the deposit copy that Planner 5D submitted to the Copyright Office when registering the objects is dated "12.12.2019" (*i.e.*, December 12, 2019). *See* Englund Decl. Ex. 3. Similarly, the registration for the work titled "Planner 5D scenes" (No. TX-8-818-102) states that the collection of scenes was created in 2019 and published on December 19, 2019. *See* Copyright Compl. Ex. A. The bottom of every page of that work's deposit copy is also dated "12.12.2019." *See* Englund Decl. Ex. 4.

Princeton's researchers could not and did not download works in 2016 (or earlier) that were not created until 2019.[7] Further, Planner 5D does not plead any facts that attempt to connect the 2019

---

[7] The Complaints concede that in 2016 Planner 5D's website provided very different collections of objects and scenes than it does today. Planner 5D claims that at the time of the alleged infringement, its website included over 2,600 objects and had a public gallery of over 45,000 scenes. FAC ¶ 32 (objects); Copyright Compl. ¶ 32 (same); FAC ¶ 36 (scenes); Copyright Compl. ¶ 45 (same). Today, however, Planner 5D's website allegedly includes over 4,500 objects and "many millions of scenes." FAC ¶ 32 (objects); Copyright Compl. ¶ 32 (same); Copyright Compl. ¶ 5 (scenes). While those allegations might show that Planner 5D's alleged collections have grown over time, they do not establish that any specific object or scene on Planner 5D's website in 2016 was *also* on Planner 5D's website in 2019.

9

PRINCETON UNIVERSITY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINTS
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-02198-WHO

registrations to the 2016 objects and scenes.[8]  Because Planner 5D does not have registrations plausibly covering the works that the Princeton researchers allegedly downloaded, Planner 5D's copyright claim must again be dismissed for failing to comply with the registration requirement.  *See I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 527 (S.D.N.Y. 2004) (dismissing claim where plaintiff sought to satisfy registration requirement with a registration for a work created and published the year after the alleged infringement, because "the registered work is not the same as the work which was supposedly infringed").

A copyright plaintiff cannot satisfy the registration requirement with a registration for a work created *after* the alleged infringement began.  *See Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1162-64 (C.D. Cal. 2010); 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][5][c]; *see also Borden v. Horwitz*, No. 10-cv-141-MWF-AJWx, 2012 WL 12877995, at *3-4 (C.D. Cal. Sept. 20, 2012) (rejecting attempt to use allegedly infringing work as the deposit copy for a post-infringement registration).

*Oskar Systems* is highly instructive here.  In that case, the plaintiff alleged that certain defendants began infringing its copyright in a computer program in 2006.  However, the plaintiff did not register any copyright in that program until 2009.  *See* 745 F. Supp. 2d at 1157.  When the plaintiff did register a copyright, it submitted as a deposit copy a portion of the program's source code as it existed in 2008.  *See id.* at 1160.  The court held the plaintiff could not "register and sue on a version of a software program that was created *after* the version that [the d]efendants allegedly copied."  *Id.* at 1163 (emphasis in original).

There are important reasons for such a rule.  "The registration requirement serves in part both an evidentiary function and to protect against fraud."  *Id.*  That is why the Ninth Circuit has long held that the registration requirement mandates that applicants submit "bona fide copies of the original work," not

---

[8] For example, the Copyright Complaint does not allege that Planner 5D intended to register its works as derivative works of earlier versions of objects or an earlier compilation of scenes, although any such allegation would have been meritless.  Had Planner 5D intended to register either of its works as a derivative work, it was required to identify that work as such in its application and to specify "any preexisting work or works that it is based on or incorporates."  17 U.S.C. § 409(9).  It is beyond dispute that Planner 5D did not do this.  *See* Copyright Compl. Ex. A.  Should Planner 5D nonetheless represent in opposing this motion that it intended to register its works as derivative works, Princeton will address further on reply why such an allegation, even if true, fails to cure the deficiencies in Planner 5D's registrations.

"reconstructions" of the work created later. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998). Allowing a copyright plaintiff to create an alleged work after an infringement, and to rely on a post-infringement registration of that work to satisfy the registration requirement, would permit plaintiffs to avoid the Ninth Circuit's rule against reconstructions. It would thus risk allowing fraudulent or otherwise unsupported claims to proceed, which is the very reason that the Ninth Circuit created the rule. Indeed, as the Ninth Circuit expressly recognized, without a rule requiring that a registered work be created before the alleged infringement began, "the possibilities for fraud would be limitless." *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir. 1986).

This principle is fatal to Planner 5D's copyright claim. Since it chose to register its works in response to this Court's earlier Order, Planner 5D needed to register a work that existed at the time of the alleged infringement. *See* 17 U.S.C. § 411(a). However, it did not register a version of its objects and scenes that existed at the time of the alleged infringement in 2016 or earlier. Because Planner 5D has again failed to satisfy the registration requirement, its claim for infringement must be dismissed.

## II. The First Amended Complaint Fails To State A Claim For Misappropriation Of Trade Secrets.

As was true of the trade secrets claims in Planner 5D's original pleading, Planner 5D's current claims for trade secret misappropriation against Princeton are deficient as a matter of law. Accordingly, they should be dismissed with prejudice.

Both federal and California state law require a plaintiff alleging misappropriation of trade secrets "to show [1] that it possessed a trade secret, [2] that the defendant misappropriated the trade secret, and [3] that the defendant's conduct damaged the plaintiff." *UAB "Planner5D"*, 2019 WL 6219223, at *9 (quoting *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019)).[9] The Court held that Planner 5D's original Complaint failed to allege either of the first two elements. *See id.* at *10-11. The FAC fares no better.

---

[9] As it did in its original Complaint, Planner 5D alleges causes of action under both federal and California trade secrets laws. *See* FAC ¶¶ 84-99 (federal claims), 100-113 (California state law claims). The Court previously analyzed these federal and state claims together. *See UAB "Planner5D"*, 2019 WL 6219223, at *9-11. It is appropriate to do the same here, as this Court has recognized that the elements of a claim for trade secret misappropriation "are substantially the same under the federal and state statutes." *Teradata Corp. v. SAP SE*, No. 18-cv-3670-WHO, 2018 WL 6528009, at *3 (N.D. Cal. Dec. 12, 2018).

**A. Planner 5D Does Not Possess Any Trade Secrets.**

To possess a trade secret, a plaintiff must take "reasonable measures" to protect the secrecy of its alleged secret. 18 U.S.C. § 1839(3)(A); *see also* Cal. Civ. Code § 3426.1(d)(2) (requiring "efforts that are reasonable under the circumstances"). Planner 5D argued that its original complaint adequately pled this requirement in two ways. First, it argued that the "structure" of its website prevented users from accessing its data files. Second, it contended that its Terms of Service prohibited users from downloading material from the website. The Court disagreed. Holding that Planner 5D's allegations relating to the "structure" of its website were "conclusory," the Court required Planner 5D to allege *how* its website "made its data files secret and protected them from reproduction." *UAB "Planner5D"*, 2019 WL 6219223, at *10. Further, recognizing that the Terms of Service did not include any express confidentiality provision, the Court required Planner 5D to allege *how* those Terms "bound the parties to treat the files as confidential." *Id.* at *10-11.

The FAC does not and cannot cure these deficiencies. The dispositive fact is that Planner 5D designed its website to transmit Planner 5D's allegedly secret files automatically to users so that the scenes and objects could easily and efficiently be displayed in the users' browsers. When transmitted, those files are stored in the "cache," or temporary memory, of the users' browsers. Any user who knows how to access the cache on her computer can then access the files. Moreover, Planner 5D expressly recognized that users would automatically receive downloaded material from its website in this manner. While its Terms of Service generally prohibited downloading material from the Planner 5D website, that prohibition expressly excluded "page caching." Englund Decl. Ex. 1 at 2. Thus, the structure of Planner 5D's website and the website's Terms of Service operate in tandem to provide free access to Planner 5D's object and scene data files to Planner 5D's users. Accordingly, such files are not trade secrets.

1. Planner 5D's Website Transmits Its Alleged Trade Secrets To Its Users' Browsers Where They Are Cached.

Planner 5D made a number of voluntary choices when it designed its website. It could have made choices that prioritized security (*e.g.*, encrypting its data files, requiring authentication as a condition of accessing a data file, or perhaps rendering its objects and scenes on its server instead of on the user's computer). Instead, it opted to prioritize simplicity of design and ease of operation. *See* FAC ¶ 30;

12

PRINCETON UNIVERSITY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINTS
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-02198-WHO

Copyright Compl. ¶ 30 (describing website as "user-friendly").  As a result, the structure of Planner 5D's website does not protect the alleged secrecy of its object or scene data files.  To the contrary, Planner 5D designed its website to transmit those files to its users' browsers, where they were automatically stored in the browser's cache.  Doing so enabled any user to access the cache, locate the files (which are identified by their allegedly secret URLs), and thus access and reproduce those files.

Planner 5D implicitly admits that it designed its website to transmit copies of its alleged trade secrets automatically to its users' web browsers.  As Planner 5D alleges, when a user clicks on a scene in Planner 5D's public gallery, Planner 5D's software running in the browser will "fetch the data file" from Planner 5D's server and "render[] the data file into a scene that is visible [on] the user's screen."  FAC ¶ 37; Copyright Compl. ¶ 48.  Planner 5D's reference to "fetch[ing] the data file," is a tacit admission that it designed its website so that when a user accesses a scene, a copy of the data file associated with that scene is automatically transmitted to the user's browser so it can be rendered.  Likewise, Planner 5D admits that when objects are displayed in a scene, the associated data files are fetched from Planner 5D's servers and brought to the user's browser to be rendered.  *See* FAC ¶ 33; Copyright Compl. ¶ 42.

Courts have recognized repeatedly that web browsers routinely save copies of webpages (including their components such as images on the pages) so that those webpages "can be redisplayed quickly when you go back to them."  *United States v. Romm*, 455 F.3d 990, 993 n.1 (9th Cir. 2006); *see also United States v. Tucker*, 305 F.3d 1193, 1197 n.7 (10th Cir. 2002).  Those copies are saved in the browser's "cache," or "internet temporary folder."  *Romm*, 455 F.3d at 993 n.1; *see also United States v. Kuchinski*, 469 F.3d 853, 862 (9th Cir. 2006) (explaining that "when a person accesses a web page, his web browser will automatically download that page into his Active Temporary Internet Files"); *United States v. Nance*, 767 F.3d 1037, 1045 (10th Cir. 2014) ("[W]hen a person visits a website, the web browser automatically downloads the images of the web page to the computer's cache.").  Any user who knows where his or her browser's cache is located can then access the files saved there.  Indeed, it is possible for a user to reproduce files contained in the cache or to delete them.  *See Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1105-06 (C.D. Cal. 2007) (recognizing that files in a cache can be "perceived, reproduced,

13

PRINCETON UNIVERSITY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINTS
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-02198-WHO

or otherwise communicated"); *Romm*, 455 F.3d at 995 (recognizing that users can manually delete files from their caches).

It is apparent from an examination of Planner 5D's site that, like components of other web pages, the data files constituting Planner 5D's scenes and objects are cached on the user's computer when they are transmitted by Planner 5D. It is also apparent from an examination of Planner 5D's site that, once cached, Planner 5D's data files are identifiable in the cache *by their allegedly secret URLs*. *See* Englund Decl. ¶¶ 15, 18. If the user navigates to the URL identified as being associated with the data file, the source code for the object or scene appears. *See id.* ¶¶ 16, 19.[10]

There are ways Planner 5D could have designed its website so that it would not provide this information to its users. For example, Planner 5D could have structured its website so that it transmitted encrypted data files, but that probably would have slowed down the user's experience using Planner 5D's website. *See, e.g., Romm*, 455 F.3d at 993 n.1 (recognizing that caching allows files to be "redisplayed quickly"). Faced with a choice between prioritizing data security or user experience, speed, and simplicity of design, Planner 5D chose the latter.

Given how Planner 5D designed its website to operate, the Court should ignore the contrary conclusory and misleading hyperbole in the FAC about the structure of that website. *See Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (ignoring factual allegations contradicted by materials properly before the court). First, the FAC alleges that the data files associated with Planner 5D's objects and scenes are located at URLs that are "never shown to Planner 5D's users" and are "impossible" to identify unless "a hacker" "circumvent[s] Planner 5D's software." FAC ¶¶ 33 (objects), 37 (scenes). However, Planner 5D's data files are transmitted in unencrypted form and cached by its users'

---

[10] As detailed in the Englund Declaration, it is clear that the source code contained at the URLs identified in the user's cache is the source code for Planner 5D's scene and object data files. *See* Englund Decl. ¶¶ 16-17 (scene files), 20 (object files). It is also clear that the source code appearing at the Planner 5D URLs reveals Planner 5D's purported trade secrets. As explained above, Copyright Office regulations allow applicants to redact portions of their source code deposit copies that are trade secrets. *See* 37 C.F.R. § 202.20(c)(2)(vii)(A)(2) (authorizing redactions of trade secrets in deposit copies of source code). Here, while Planner 5D redacted portions of code in its deposit copies, the code Planner 5D posted to its URLs appears without redaction. *Compare* Englund Decl. Ex. 3 (object file deposit copy), *with* Englund Decl. Ex. 14 (example of object data file); *compare* Englund Decl. Ex. 4 (scene file deposit copy), *with* Englund Decl. Ex. 12 (example of scene data file).

browsers, and are identified there by their URLs to anyone who cares to look for them. Second, the FAC alleges that it is "impossible" to access the data files without "penetrating non-public addresses on [Planner 5D's] servers." *Id.* Yet the data files can be accessed simply by navigating a web browser to the URLs revealed in the user's browser cache. And third, the FAC alleges that circumventing Planner 5D's protections "requires . . . using software developer tools to monitor and intercept communications activity between Planner 5D's software and its European servers." *Id.* To the contrary, it can be accomplished using only a standard web browser.

Stripped of these allegations, the FAC alleges no facts to create a plausible inference that Planner 5D took any steps to structure its website to prevent users from locating or accessing the data files it now claims are trade secrets. All it alleges is that Planner 5D did not publicize the URLs for the data files it makes publicly available online. *See* FAC ¶¶ 33, 37. That allegation alone is insufficient as a matter of law for Planner 5D to meet its burden of showing that the data files were trade secrets and that it took reasonable steps to protect them. *See Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622, 630 (E.D. Pa. 2017) (holding that software was not a trade secret because plaintiff posted it to an unpublicized URL that was nevertheless "guessable to anyone who wanted to access" the software).

Allowing Planner 5D to pursue these claims would create a contrary rule—that a plaintiff can possess a trade secret in files it transmits to its users through its own website—that would undermine established principles of trade secret law as they relate to the internet. *See, e.g.*, *Veronica Foods Co. v. Ecklin*, No. 16-cv-7223-JCS, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (dismissing claim that entire customer list was a trade secret when the plaintiff posted a portion of that list to its website); *Art of Living Found. v. Does 1-10*, No. 5:10-cv-5022-LHK, 2012 WL 1565281, at *19 (N.D. Cal. May 1, 2012) (dismissing claim that portions of manuals and teaching notes containing the text of a yoga meditation was a trade secret when the text was made available as a download from the plaintiff's website).

The only plausible inference that can be drawn from Planner 5D's amended allegations is that the structure of Planner 5D's website did nothing to protect the alleged secrecy of any of Planner 5D's data files. Accordingly, those claims should be dismissed with prejudice.

2.    <u>Planner 5D's Terms Of Service Expressly Recognized That Its Files Would Be Cached.</u>

Planner 5D also alleges that its Terms of Service protected the secrecy of its data files. To the contrary, those Terms confirm that Planner 5D's website was structured to function exactly as described above and to provide Planner 5D's users with downloads of those files that would be cached.

The Terms of Service expressly recognized that the Planner 5D website was designed to transmit material to its users' browsers, where it would be cached. The Terms provided that users "may not . . . download (other than page caching) any portion of the Planner 5D project." Englund Decl. Ex. 1 at 2; *see also* FAC ¶ 40 (quoting Terms of Service). The only reasonable way to interpret this language is as a recognition that that Planner 5D users' browsers would "fetch" downloaded materials from the Planner 5D website and cache them as part of the automatic operation of the website, as in the process described above.

Moreover, the Terms of Service did not prohibit users from accessing or acquiring Planner 5D's data files once those files were downloaded and cached. While Planner 5D alleges that the Terms included a "blanket prohibition on 'access[ing]' or 'acquir[ing]' Planner 5D's files," FAC ¶ 40, that is not what the Terms said. Rather, the relevant portion of the Terms provided that users "may not . . . use any 'deep-link,' 'page-scrape,' 'robot,' 'spider' or other automatic device, program, algorithm or methodology which perform [*sic*] similar functions to access, acquire, copy or monitor any portion of the Planner 5D project." Englund Decl. Ex. 1 at 2. In other words, the prohibition on accessing or acquiring Planner 5D's files was expressly limited to using certain external automated programs. As explained above, accessing a cached file does not require an automated program. It can be done by a manual process using only a standard browser. *See* Englund Decl. ¶¶ 14-19. Thus, the prohibition on which Planner 5D primarily relies in the FAC does not establish that any of Planner 5D's data files were trade secrets.

Further, the Terms of Service cannot operate to confer trade secret status on files that Planner 5D transmitted to users without restrictions. When a party discloses information to third parties, it cannot claim that information is a trade secret unless—at a minimum—the disclosure is accompanied by an express confidentiality or non-disclosure agreement. *See*, *e.g.*, *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 521-22 (S.D.N.Y. 2017) (holding that Terms of Use lacking an express confidentiality provision could not protect the secrecy of disclosed material). Planner 5D appears to agree with this principle. *See*

16

PRINCETON UNIVERSITY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINTS
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-02198-WHO

FAC ¶ 41 (recognizing that "[n]on-disclosure agreements bind parties who have been shown confidential information not to disclose it to others").  It is beyond dispute that the Terms of Service did not include a confidentiality provision, and Planner 5D alleges no facts suggesting any such agreement with its users existed elsewhere.  Thus, Planner 5D's claim that it possessed any trade secrets fails as a matter of law.

Because the Terms of Service recognized that Planner 5D transmits material from its website to its users' browsers (which cache them), did not prohibit users from subsequently accessing that material, and did not expressly assert that any of that material was confidential, those Terms did not serve to protect the secrecy of Planner 5D's alleged trade secrets.

*       *       *

It is clear from Planner 5D's pleadings and from Planner 5D's website that Planner 5D chose to structure its website with user experience, speed, and simplicity of design in mind, not data security.  The best evidence of Planner 5D's choice to prioritize efficiency over security is Planner 5D's website itself.  However, Planner 5D's choice is also reflected in how Planner 5D drafted its Terms of Service and in how Planner 5D has pled its claims.  The Terms of Service expressly recognized that the Planner 5D website was designed to transmit material to its users' browsers (where they would be cached), and the FAC confirms that Planner 5D designed its website to be "user-friendly" and to operate "quickly" because data files are "fetch[ed]" from its servers and "render[ed]" on the user's computer.  FAC ¶¶ 30, 33, 37.  Planner 5D does *not* allege any steps taken during the design of its website to prioritize the security of its files.  By choosing to transmit its data files to its users' browsers, where it knew that they would be cached, Planner 5D made its website more user-friendly but less secure.  It cannot now claim that, despite its choice, those data files are trade secrets.

**B.**     **Planner 5D Fails To Allege That Princeton Used Any "Improper Means" To Acquire Any Alleged Trade Secret.**

Planner 5D also fails to allege that any Princeton researcher used "improper means" to acquire any data file from Planner 5D's website.  To state a claim for trade secret misappropriation, a plaintiff must plausibly allege that the defendant used "improper means" to acquire or use the alleged secret.  18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).  The statutes define "improper means" almost identically to include

"theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(a).

The Court held that Planner 5D's original Complaint failed to plead this element. *See UAB "Planner5D"*, 2019 WL 6219223, at *10-11. The Complaint did not allege Princeton's researchers owed Planner 5D any duty to maintain secrecy, let alone breached any such duty. *See id.* at *11. Further, the Complaint did not allege any other improper means. *See id.*

The FAC does not allege anything new that might constitute improper means and instead repeats the failures of the original complaint—namely, alleging that there was a violation of the Terms of Service and that any such violation constituted improper means. However, as explained above, Planner 5D's Terms of Service did not include a confidentiality provision. *See supra* at 16-17. Thus, the FAC cannot allege that Princeton's researchers owed Planner 5D any duty to maintain secrecy or that they breached any such duty. *See UAB "Planner5D"*, 2019 WL 6219223, at *11 (dismissing claim for failure to allege existence and breach of duty to maintain secrecy).

Further, the FAC does not plausibly allege that Princeton's researchers used any other improper means to acquire Planner 5D's alleged trade secrets. Planner 5D concedes that it does not know how the misappropriation it alleges actually occurred: the FAC alleges that Planner 5D "will need discovery" to learn that. FAC ¶ 56. As a result, Planner 5D is forced to engage in rank speculation—alleged on information and belief—that Princeton's researchers "monitored and intercepted communications activity between Planner 5D's software and its European servers" to learn where Planner 5D posted its data files online and then wrote software to obtain downloads of those files. *Id.* ¶¶ 6, 56. Planner 5D does not identify which of its communications it believes were intercepted.

Planner 5D's unfounded allegation that Princeton's researchers "intercepted communications" is an unreasonable inference that the Court should not credit. In deciding whether a plaintiff has plausibly pled a claim for relief, courts need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As described above, Planner 5D transmitted its data files to its users' browsers expressly recognizing that they would be cached. *See supra* at 12-16. And it took no steps to protect the secrecy of

those files either by making them inaccessible on its website or by asserting their confidentiality in its Terms of Service.  In other words, anyone can access Planner 5D's data files online without intercepting secret communications.  Thus, Planner 5D's baseless allegations, asserted only on information and belief, do not create a plausible inference the Court must accept as true.

Because Planner 5D does not and cannot plausibly allege that Princeton's researchers had a duty to protect the secrecy of its data files or that they otherwise used improper means to acquire those files, Planner 5D's claim for trade secret misappropriation must be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, all of Planner 5D's claims should be dismissed with prejudice.

Dated:  April 29, 2020

JENNER & BLOCK LLP


By: <u>/s/ *Andrew H. Bart*</u>
Andrew H. Bart (*pro hac vice*)

Attorneys for Defendant
The Trustees of Princeton University

19

PRINCETON UNIVERSITY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINTS
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-02198-WHO