1    Dale M. Cendali (S.B.N. 1969070)
     dale.cendali@kirkland.com
2    Johanna Schmitt (admitted *pro hac vice*)
     johanna.schmitt@kirkland.com
3    Ari Lipsitz (*pro hac vice* forthcoming)
     ari.lipsitz@kirkland.com
4    KIRKLAND & ELLIS LLP
     601 Lexington Avenue
5    New York, NY 10022
     Telephone: (212) 446-4800
6

7    Attorneys for Defendants
     *Facebook Inc.*
8    *and Facebook Technologies, LLC*

9

10                   **UNITED STATES DISTRICT COURT**

11                   **NORTHERN DISTRICT OF CALIFORNIA**

12                     **SAN FRANCISCO DIVISION**

13   UAB "PLANNER5D" d/b/a PLANNER 5D,      ) Case No. 3:19-cv-03132-WHO
                                            ) Case No. 3:20-cv-02198-WHO
14              Plaintiff,                   )
                                            )
15        vs.                               ) **FACEBOOK INC. AND FACEBOOK**
                                            ) **TECHNOLOGIES, LLC'S NOTICE OF**
16   FACEBOOK INC., FACEBOOK                ) **MOTION AND MEMORANDUM OF**
     TECHNOLOGIES, LLC, THE TRUSTEES        ) **POINTS AND AUTHORITIES IN SUPPORT**
17   OF PRINCETON UNIVERSITY, DOES 1-       ) **OF THEIR MOTION TO DISMISS**
     200, ABC CORPORATIONS 1-20 and XYZ     ) **PLANNER 5D'S AMENDED COMPLAINT**
18   UNIVERSITIES 1-20,                     )
                                            ) Amended Complaint Filed: December 6, 2019
19              Defendants.                  )
                                            )
20                                          ) Hearing Date: July 9, 2020
                                            ) Hearing Time: 10:30 a.m.
21   ―――――――――――――――――――――――――  Judge: Honorable William H. Orrick

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on July 9, 2020 at the San Francisco Courthouse,

4   Courtroom 2, 17th Floor, at 10:30 a.m. or as soon thereafter as the matter may be heard, before the

5   Honorable William H. Orrick, United States District Judge for the Northern District of California,

6   Defendants Facebook Inc. and Facebook Technologies, LLC (collectively, "Facebook") will and do

7   hereby move for dismissal with prejudice of Plaintiff UAB "Planner 5D" d/b/a Planner 5D's

8   ("Planner 5D") Complaint for (1) copyright infringement, as consolidated with Planner 5D's

9   Amended Complaint for (2) trade secret misappropriation under the Defend Trade Secrets Act, and

10   (3) trade secret misappropriation under the California Uniform Trade Secrets Act.

11        Facebook seeks dismissal of the above-named claims against it under Federal Rule of Civil

12   Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  This Motion is

13   based on this Notice of Motion and Motion, the accompanying Memorandum of Points and

14   Authorities, the papers on file in this matter, the arguments of counsel, and any other matter the

15   Court wishes to consider.

16

17   Dated: April 29, 2020                              */s/ Dale M. Cendali*
                                                        Dale M. Cendali
18

19                                                      Attorney for Defendants
                                                        *Facebook Inc.*
20                                                      *Facebook Technologies, LLC*

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND........................................................... 2

  A. Plaintiff Planner 5D ............................................................................................... 2

  B. Defendant Facebook and Its Collaborative Machine Learning Research..................... 4

  C. Planner 5D's Claims Against Princeton and Facebook ............................................... 5

  D. This Court Dismisses Planner 5D's First Complaint ................................................... 6

III. LEGAL STANDARD ...................................................................................................... 8

IV. ARGUMENT .................................................................................................................. 8

  A. Planner 5D Fails to State a Claim for Copyright Infringement Against Facebook. ........................................................................................................... 8

    1. Planner 5D Does Not Own Copyright Registrations for the Allegedly Infringed Objects and Compilations. ................................................. 8

    2. Planner 5D Still Does Not Allege The Object Compilation Is Original and Entitled to Protection............................................................... 10

  B. Planner 5D Fails to State a Claim for Trade Secret Misappropriation Against Facebook. ........................................................................................................... 12

    1. Planner 5D Does Not Allege Ownership of a Trade Secret........................... 12

    2. The Complaint Does Not Allege Misappropriation by Facebook. ................. 17

V. CONCLUSION............................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ........................................................................................12

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs., Inc.*,
    No. 18 Civ. 10187, 2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ...............................14

*Aqua Connect, Inc. v. Code Rebel, LLC*,
    No. 11 Civ. 5764, 2012 WL 469737 (C.D. Cal. Feb. 13, 2012)....................................18

*Arkeyo, LLC v. Cummins Allison Corp.*,
    342 F. Supp. 3d 622 (E.D. Pa. 2017) ..............................................................13, 14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................15

*Be In, Inc. v. Google Inc.*,
    No. 12 Civ. 3373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)....................................18

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.*,
    No. 18 Civ. 0933, 2018 WL 2298500 (N.D. Cal. May 21, 2018) .................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................8

*BESPAQ Corp. v. Haoshen Trading Co.*,
    No. 04 Civ. 3698, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005) .........................................9

*Broker Genius, Inc. v. Zalta*,
    280 F. Supp. 3d 495 (S.D.N.Y. 2017)...........................................................................16

*Cline v. Reetz-Laiolo*,
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) ...........................................................................8

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ..........................................................................................3

*DVD Copy Control Ass'n, Inc. v. Bunner*,
    31 Cal. 4th 864 (2003) ...................................................................................................17

*DVD Copy Control Ass'n, Inc. v. Bunner*,
    116 Cal. App. 4th 241 (2004) ........................................................................................18

*Epikhin v. Game Insight N. Am.*,
    145 F. Supp. 3d 896 (N.D. Cal. 2015) ........................................................................9, 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991)..................................................................................................................11

*Forcier v. Microsoft Corp.*,
  123 F. Supp. 2d 520 (N.D. Cal. 2000) .....................................................................................17

*Free Speech Sys., LLC v. Menzel*,
  390 F. Supp. 3d 1162 (N.D. Cal. 2019) .....................................................................................3

*Getaped.com, Inc. v. Cangemi*,
  188 F. Supp. 2d 398 (S.D.N.Y. 2002)......................................................................................10

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................................................8

*Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*,
  No. 18 Civ. 05031, 2019 WL 1767329 (N.D. Cal. Apr. 22, 2019) ..........................................17

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
  307 F. Supp. 2d 521 (S.D.N.Y. 2004)...................................................................................9, 10

*Intellisoft, LTD. v. Wistron Corp.*,
  No. H044281, 2019 WL 5204293 (Cal. Ct. App. Oct. 16, 2019) (unpublished).........................18

*J & J Sports Prods., Inc. v. Dailey*,
  No. 10 Civ. 5510, 2011 WL 3418391 (N.D. Cal. Aug. 4, 2011)................................................9

*KEMA, Inc. v. Koperwhats*,
  No. 09 Civ. 1587, 2010 WL 3464737 (N.D. Cal. Sept. 1, 2010)....................................9, 10, 15

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...................................................................................................2

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) ...................................................................................................9

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ...................................................................................................8

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
  922 F.3d 946 (9th Cir. 2019) .....................................................................................................9

*Oskar Sys., LLC v. Club Speed, Inc.*,
  745 F. Supp. 2d 1155 (C.D. Cal. 2010) ...................................................................................10

*Phantomalert, Inc. v. Google Inc.*,
  No. 15 Civ. 3986, 2015 WL 8648669 (N.D. Cal Dec. 14, 2015) .................................................11

*Phantomalert, Inc. v. Google Inc.*,
  No. 15 Civ. 3986, 2016 WL 879758 (N.D. Cal. Mar. 8, 2016).....................................................11

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
    No. 16 Civ. 5399, 2017 WL 67075 (N.D. Cal. Jan. 6, 2017) ..................................................12, 15

*Rearden LLC v. Walt Disney Co.*,
    293 F. Supp. 3d 963 (N.D. Cal. 2018) ..........................................................................................2

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010)........................................................................................................................9

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) .......................................................................................................8

*Seiler v. Lucasfilm, Ltd.*,
    808 F.2d 1316 (9th Cir. 1986) .....................................................................................................10

*Silverstein v. Penguin Putnam, Inc.*,
    368 F.3d 77 (2d Cir. 2004)...........................................................................................................11

*SocialApps, LLC v. Zynga, Inc.*,
    No. 11 Civ. 4910, 2012 WL 381216 (N.D. Cal. Feb. 6, 2012)....................................................13

*In re Sotera Wireless, Inc.*,
    591 B.R. 453 (S.D. Cal. 2018)....................................................................................................13

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .......................................................................................................7

*Tarantino v. Gawker Media, LLC*,
    No. 14 Civ. 0603, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014).................................................12

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) .....................................................................................................12

*Veronica Foods Co. v. Ecklin*,
    No. 16 Civ. 7223, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ...............................................12

*Wang v. Golf Tailor, LLC*,
    No. 17 Civ. 0898, 2017 WL 5068569 (N.D. Cal. Nov. 3, 2017)..................................................17

*Warren Publ'g, Inc. v. Microdos Data Corp.*,
    115 F.3d 1509 (11th Cir. 1997) ...................................................................................................11

*Webpass Inc. v. Banth*,
    No. 14 Civ. 2291, 2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ...............................................16

**Statutes**

17 U.S.C. § 409...................................................................................................................................10

17 U.S.C. § 411.....................................................................................................................................9

18 U.S.C. § 1836........................................................................................................................12

18 U.S.C. § 1839............................................................................................................12, 13, 15, 16

Cal. Civ. Code § 3426.1...............................................................................................12, 13, 15, 16

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................................8

**Other Authorities**

1 Nimmer on Copyright § 3.02 (2019) ..............................................................................................11

House Report of Copyright Act of 1976............................................................................................11

U.S. Copyright Office,
      Compendium of U.S. Copyright Practices § 721.9(D) (3d ed. 2017)..........................................10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.     INTRODUCTION

On November 21, 2019, this Court dismissed the copyright and trade secret claims brought by Plaintiff UAB "Planner 5D" ("Planner 5D") against Facebook Inc., Facebook Technologies, LLC (collectively "Facebook"), and The Trustees of Princeton University ("Princeton," together "Defendants") in their entirety, with leave to replead.  (Dkt. 52 ("Order").)  Planner 5D then filed an Amended Complaint with regard to its trade secrets action and a new Complaint with regard to its copyright claims.  (*See* Dkt. 53, Case No. 3:19-cv-03132 ("Am. Compl."); Dkt. 1, Case No. 3:20-cv-02198 ("Copyright Compl.").)  As these Complaints are now consolidated by order of the Court, (Dkt. 64), Facebook moves to dismiss both for failure to state a claim.

In dismissing the copyright claim, this Court held that Planner 5D (1) failed to allege it owned a valid copyright registration or that the registration requirement was inapplicable; (2) failed to allege its asserted works were original; and (3) failed to allege the copyrightable elements that Defendants allegedly infringed.  (Order at 12–15.)  In dismissing the trade secret claims, this Court held that Planner 5D (1) failed to allege how its underlying data files were kept secret, (2) failed to allege that its website was confidential or required users to treat it as confidential, (3) failed to allege that Defendants acquired the files by improper means, and (4) failed to allege how Facebook knew or should have known of any allegedly improper acquisition by Princeton.  (*Id.* at 16–18.)

Despite having almost five months from the Court's Order to amend its allegations and satisfy the specific deficiencies identified by this Court, Planner 5D still has not alleged sufficient facts to support its meritless claims.  As to the copyright claim, Planner 5D's newly-acquired copyright registrations do not cover the alleged works at issue and cannot support its infringement claim.  The registration certificates Planner 5D attached to its Copyright Complaint state that the registered works were completed and first published in <u>2019</u>—but the Copyright Complaint alleges infringement in works that were available on its website by <u>2016</u>.  It is black-letter law that a plaintiff cannot maintain an infringement claim on works that are not covered by its registrations, which the allegedly infringed works manifestly could not have been.  Moreover, for the reasons

stated in this Court's Order, Planner 5D cannot plead an original selection in <u>all</u> of its Objects, which is all the Copyright Complaint continues to assert in the Object Compilation.

As to the trade secret claims in the Amended Complaint, Planner 5D has still failed to allege, as this Court required, "how the structure of its website and the Terms of Service[] maintained secrecy of the underlying data files."  (Order at 1–2.)  It relies on allegations that the "Internet addresses" where the data files were stored were "non-public"—yet then admits that "software developer tools" are sufficient to identify the location of the webpages.  There are zero allegations that Planner 5D took *any* measures to protect the content of the data files.  Planner 5D does not allege any standard measures such as password protection, encryption, server verification, or any access restrictions to the files themselves, beyond that their location on the internet was not public. Planner 5D also fails to plead any facts to support its conclusory statement that its files were valuable due to their secrecy, which is an independent basis for dismissal.  In any case, Planner 5D still has no allegations that support a claim of misappropriation ***against Facebook***, which Planner 5D does not even allege used the so-called trade secrets until ***after*** they were posted publicly by Princeton.

Accordingly, Facebook respectfully requests that the Court grant its motion to dismiss. Moreover, Planner 5D, despite filing three Complaints, has still failed to plead even basic facts supporting its claims, indicating that further amendment would be futile.  Facebook respectfully requests that the Court dismiss the claims with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Plaintiff Planner 5D

Planner 5D is a company, located in Lithuania, which offers an interior design tool that enables users to digitally design a floor plan for a home, office, or landscape.  (Am. Compl. ¶¶ 22, 30.)  Planner 5D's design tool is accessed through its publicly available website, located at

---

[1] Facebook assumes the truth of the factual allegations in the Complaints and statements in the materials referenced in the Complaints only for the purposes of this Motion.  *See Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 969 (N.D. Cal. 2018) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

https://planner5d.com/, and users can download it to their computers or mobile device.[2]  It is accessible to "anyone" around the world for free, and Planner 5D currently has 40 million users worldwide.  (*Id.* ¶¶ 30, 31.)

Planner 5D promotes itself as a "user-friendly home design tool that allow[s] anyone to quickly and easily create their own . . . designs."  (*Id.* ¶ 30.)  To enable users to create designs, Planner 5D's tool contains "Objects," which are digitized renderings of real-life household items (such as beds, tables and chairs).  (*Id.* ¶¶ 5, 30.)

To access Planner 5D's website, a new user needs to agree to the Terms of Service.  (*Id.* ¶ 40.)  Planner 5D's Terms of Service recognize that the Scenes are user-generated content, and users grant only a "non-exclusive license" to use and distribute the Scenes.  *See id.* (incorporating Terms of Service, Planner 5D, *available at* https://planner5d.com/pages/terms/).)[3]  The Terms of Service do not state that any of the Objects or Scenes are confidential or require users to agree that they will keep them confidential.  (*Id.*)  Nor do the Terms of Service—either at the time of the alleged copying or now—contain a non-disclosure clause.  (*See id.* ¶ 41.)

Planner 5D alleges that its tool contains digitized, realistic Objects, which it alleges are original works of authorship in their rendering and coding.  (Copyright Compl. ¶ 33.)  It also alleges that, based on Planner 5D's "selection of objects for inclusion," the full set of Objects is copyrightable as a compilation (the "Object Compilation").  (*Id.* ¶¶ 33, 41.)  It alleges that at the time of the alleged copying, there were "over 2,600" Objects in its "then-existing collection."  (*Id.* ¶ 32.)  Planner 5D also alleges that it owns a compilation of user-generated Scenes selected for the

---

[2] Planner 5D's website is incorporated by reference in the Amended Complaint (*see, e.g.*, *id.* ¶¶ 8, 30, 33, 34, 36, 40, 44, 50), and thus this Court can consider it on a motion to dismiss, as it did before.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (doctrine of incorporation by reference permits consideration of documents on a motion to dismiss where the documents are alleged in the complaint); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1167 n.1 (N.D. Cal. 2019) (Orrick, J.) (considering a webpage on motion to dismiss where it was repeatedly referenced in complaint).

[3] As noted above, Planner 5D's Terms of Service are included on Planner 5D's website and are specifically excerpted in the Amended Complaint.  Thus, they are incorporated by reference in the Complaint.

1    website's "public gallery" (the "Scene Compilation").[4]  (*Id.* ¶ 45.)  It alleges that at the time of the

2    alleged copying, there were "over 45,000" Scenes in the Scene Compilation.  (*Id.* ¶ 46.)

3         Planner 5D also alleges that while the rendered Objects and Scenes are public, the

4    "underlying data file" for each Object and Scene is stored at a "non-public" "Internet address."

5    (Am. Compl. ¶¶ 33, 37.)  Once a user of Planner 5D's tool selects among the thousands of Objects or

6    Scenes, Planner 5D's website contacts the non-public address containing the respective file and

7    renders the Object or Scene for the user.  (*Id.*)  Identifying the location of the non-public address

8    requires only "software developer tools."  (*Id.* ¶ 56.)  There are no allegations that Planner 5D

9    employs any measures to restrict access to the "full catalog of object files" and "scene files" beyond

10   the non-public addresses.  (*Id.* ¶¶ 33, 37.)

11        **B.      Defendant Facebook and Its Collaborative Machine Learning Research**

12        Facebook is a leader in collaborative and openly-accessible academic research in the field of

13   artificial intelligence ("AI").  Facebook's AI research is intended to "connect[] people to what they

14   care about, powering new, meaningful experiences, and advance[] the state-of-the-art through open

15   research and accessible tooling."  (*See id.* ¶ 68 (incorporating by reference Facebook Artificial

16   Intelligence, *available at* https://ai.facebook.com).)

17        Facebook's AI research extends to numerous research areas, including, but not limited to,

18   machine learning.  (*Id.*)  Machine learning is based on the idea that computers can learn from data,

19   identify patterns and make decisions with minimal human intervention.  One aspect of machine

20   learning is scene recognition.  (*Id.* ¶ 2.)  The goal of scene recognition is to train a computer to

21   understand the contents of a scene (*e.g.*, what are the objects in the scene; how are they related; if

22   there are people in the scene, what actions are they performing; what is the place depicted in the

23   scene, etc.).  In order to train a computer to understand a scene, it must be fed accurate data about

24   myriad objects and scenes.  (*Id.* ¶¶ 49–50.)  The better a computer can understand visual context, the

25   better it can interact in the world.  Some examples of the potential practical applications for machine

26   _____

27   [4] The Complaint also references a "vastly larger collection of scenes," which likely corresponds to
     the alleged full set of its "over a million" objects and scenes.  (Copyright Compl. ¶¶ 5, 46.).
     Because the Complaint only alleges originality and infringement as to the public gallery (*id.* ¶ 46),

28   Facebook assumes that the public gallery constitutes the alleged Scene Compilation.

1   learning and scene recognition are airport safety, care for the elderly, and improving logistics and

2   package deliveries.  (*Id.* ¶ 2.)

3          In order to foster innovation in the field, Facebook collaborates with academic AI researchers

4   associated with respected universities, including Princeton University, Stanford University,

5   University of California Berkeley, and Georgia Tech.  (*Id.* ¶ 12.)  In keeping with the openness of AI

6   research, much of Facebook's own computer vision research is publicly available and open source.

7   (*See* https://ai.facebook.com (listing recent publications).)

8          One of Facebook's cooperative scene recognition research projects was the Scene

9   Understanding and Modeling ("SUMO") Challenge.  (*See id.* ¶ 12 (referencing 2019 Scene

10  Understanding and Modeling Challenge, *available at* https://sumochallenge.org/).)  The SUMO

11  Challenge was a competition that "targets development of comprehensive 3D scene understanding

12  and modeling algorithms."  (*Id.* ¶ 63.)  In other words, participants were given a sample dataset and

13  challenged to develop an algorithm that best represents a 3D scene through three increasingly

14  difficult tasks.  (*Id.* (incorporating by reference Facebook Research, *Facebook Reality Labs*

15  *Launches the Scene Understanding and Modeling (SUMO) Challenge*, *available at*

16  https://research.fb.com/facebook-reality-lab-launches-the-scene-understanding-and-modeling-sumo-

17  challenge/).)  The judges—made up of researchers from Facebook, Stanford, Princeton and Virginia

18  Tech—evaluated submissions based on technical criteria including geometry, pose, appearance, and

19  semantics (*i.e.*, ability to determine scene context).  (*Id.* ¶ 65.)

20         **C.    Planner 5D's Claims Against Princeton and Facebook**

21         Planner 5D alleges that "sometime in or before 2016," researchers at Princeton downloaded

22  "the entirety of Planner 5D's then-existing public gallery of scenes, as well as all of Planner 5D's

23  individual objects."  (Copyright Compl. ¶¶ 6, 59.)  To accomplish this download of the 2,644

24  Objects and Scene Compilation consisting of 45,622 Scenes (*id.* ¶ 62), Planner 5D alleges that the

25  Princeton scientists used "software developer tools" to locate the "data files on Planner 5D's

26  servers," and then wrote software to "crawl and scrape" the above files.  (Am. Compl. ¶ 56.)

27         Planner 5D then claims that the Princeton researchers used the Objects and Scene

28  Compilation to create a set of scene recognition training data (the "SUNCG Dataset"), and offered

the SUNCG Dataset for download on its website.  (*Id*. ¶¶ 9, 52.)  The Amended Complaint alleges that the SUNCG Dataset was used by Princeton for the purpose of "developing artificial intelligence applications featuring 3D scene recognition."  (*Id*. ¶ 55.)  Planner 5D does not allege that Facebook was involved in the creation of the SUNCG Dataset, or that it helped Princeton copy the Objects, Object Compilation, or Scene Compilation.  (*Id*. ¶¶ 73–76, 79.)  It does not allege that Facebook had any knowledge of the SUNCG Dataset before Princeton researchers published it in 2016.

In 2018, Facebook allegedly directed participants in the first SUMO Challenge to the SUNCG Dataset.  (*Id*. ¶ 66.)  In addition, Planner 5D alleges that "sometime in or after 2018," the SUMO Challenge organizers (including Facebook) created a copy of the SUNCG Dataset that was then uploaded to Stanford University's website.  (Copyright Compl. ¶ 77)  Planner 5D further alleges that Facebook posted a link to the Stanford URL.  (*Id*.)  Planner 5D also alleges that Facebook has made further copies of the SUNCG Dataset, which Facebook "linked to [] in another of its object-recognition projects, the 'House 3D environment.'"  (Am. Compl. ¶ 68.)  The Complaint alleges that Facebook "sponsors" a project called AI Habitat, which "relies on the SUNCG dataset."  (*Id*. ¶ 69.)  The Complaint alleges that the SUNCG Dataset was used by Facebook in order to "train artificial intelligence applications to recognize 3D interior scenes."  (*Id*. ¶ 81.)

### D.    This Court Dismisses Planner 5D's First Complaint

On June 5, 2019, Planner 5D filed a Complaint against Princeton and Facebook ("Defendants") based on their use of the SUNCG Dataset.  (Dkt. 1.)  The Complaint's allegations were substantially identical to those discussed above.  (*Id*. ¶ 6 (alleging Princeton scraped "over 2,500 of Planner 5D's objects and over 45,000 of its scenes"); *id*. ¶ 11 (alleging Facebook posted a link to a Stanford URL containing the SUNCG Dataset); *id*. ¶ 33 (claiming trade secrets in "vast collection of data files for the objects and scenes").)

After a hearing on November 6, 2019, this Court dismissed Planner 5D's Complaint for failure to state a claim.  (Order at 19.)  The Order held that Planner 5D could not maintain a copyright claim because it (1) failed to allege it owned a valid copyright registration or that the registration requirement was inapplicable; (2) failed to allege its asserted works were original; and

(3) failed to allege the copyrightable elements that Defendants allegedly infringed.  (*Id.* at 12–15.)  The Order further held that Planner 5D could not maintain a trade secret claim because it (1) failed to allege how its underlying data files were kept secret, (2) failed to allege that its website was confidential or required users to treat it as confidential, (3) failed to allege that Defendants acquired the files by improper means, and (4) failed to allege how Facebook knew or should have known of any allegedly improper acquisition by Princeton.  (*Id.* at 16–18.)  The Court granted leave to amend the copyright and trade secret claims.  (*Id.* at 12, 18.)

Planner 5D filed an Amended Complaint on December 6, 2019 asserting its trade secret claims against both Princeton and Facebook.  (Dkt. 53.)  Planner 5D alleges that the "digital files underlying Planner 5D's objects and scenes" as well as the "compilation of over-2,600 object data files" and the "compilation of over 45,000 scene data files" are trade secrets under California and federal law and that Defendants misappropriated such trade secrets.  (Am. Compl. ¶¶ 6, 35, 39, 50, 85, 93, 101, 108.)

On March 31, 2020, after it acquired two copyright registrations—effectively abandoning its position that it owned foreign works exempt from registration (*See* Order at 9)—Planner 5D filed a new Complaint alleging that the SUNCG Dataset infringes its copyrights in its Objects, Object Compilation, and Scene Compilation.  (Copyright Compl. ¶¶ 32, 45, 99.)[5]  Its registration for "Planner 5D objects" covers a "[c]omputer program, including screen displays generated by computer program."  (*Id.* Ex. A at 2.)  Its registration for "Planner 5D scenes" covers the same, but excludes "[p]reexisting elements of Claimant's computer program" as well as "third-party authorship of derivative works based upon preexisting elements of Claimant's computer program," and states that the "[n]ew material" is the "[s]election, coordination, and arrangement of derivative works created by third parties using preexisting elements of claimant's computer program."  (*Id.* at 4.)  Both certificates state that the works were completed and first published in 2019.  (*Id.* at 2, 4.)

[5] Planner 5D's Copyright Complaint does not allege infringement of the Scenes individually.  Nor could it as Planner 5D does not own the copyright to the Scenes.  As noted above, the Scenes are created by users, who only grant a non-exclusive license to the Scenes pursuant to the Terms of Service.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) (ownership of a "non-exclusive license [] gives [plaintiff] no standing to sue for copyright infringement").

The Court consolidated the two cases on April 8, 2020, and ordered that Defendants respond by April 29, 2020.  (Dkt. 64.)

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1023 (N.D. Cal. 2018) (Orrick, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that provides no more than a "formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A plaintiff must allege "facts sufficient to 'raise a right to relief above the speculative level.'"  *Cline*, 329 F. Supp. 3d at 1023 (quoting *Twombly*, 550 U.S. at 555).  As this Court noted in its Order, it "is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  (Order at 8 (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).)  Further, legal conclusions "are not entitled to the assumption of truth [and] must be supported by factual allegations."  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

## IV.   ARGUMENT

### A.   Planner 5D Fails to State a Claim for Copyright Infringement Against Facebook.

To state a claim for copyright infringement, a plaintiff must allege (1) ownership of a valid copyright and (2) copying of elements of the work that are original.  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018).  As discussed below, Planner 5D's Copyright Complaint fails to allege facts to establish either of these two required elements, and thus Planner 5D's copyright infringement claim must be dismissed.

#### 1.   Planner 5D Does Not Own Copyright Registrations for the Allegedly Infringed Objects and Compilations.

First, Planner 5D does not own copyright registrations for its allegedly infringed Objects, Object Compilation, or Scene Compilation, which are required to allege a valid copyright.  Planner 5D alleges that Defendants copied works that existed in 2016—but Planner 5D's copyright

8

registrations cover later works that were not purportedly created until 2019.

Registration is a required element of ownership of a valid copyright. *See* 17 U.S.C. § 411(a). As the Ninth Circuit held, "[t]o plead ownership, [a plaintiff] must plausibly allege it owns a valid copyright registration for its work." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019); *see also J & J Sports Prods., Inc. v. Dailey*, No. 10 Civ. 5510, 2011 WL 3418391, at *1 (N.D. Cal. Aug. 4, 2011) ("The Ninth Circuit effectively treats the § 411 registration requirement as an element of a copyright infringement claim.").

Moreover, to withstand a motion to dismiss, courts impose the common-sense rule that the plaintiff "must [] be able to show that the [registration] in question 'cover[s] the content and matter that was allegedly infringed.'" *BESPAQ Corp. v. Haoshen Trading Co.*, No. 04 Civ. 3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005) (dismissing copyright claim where registration of furniture catalog did not encompass copyright claim in actual furniture) (quoting *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 529 (S.D.N.Y. 2004)). So where the alleged infringement predates the year of completion and first publication of the registered work, courts will dismiss the copyright claim. *KEMA, Inc. v. Koperwhats*, No. 09 Civ. 1587, 2010 WL 3464737, *3– 4 (N.D. Cal. Sept. 1, 2010) (granting motion to dismiss where infringement allegedly occurred from 2002 to 2006 while registration identified work that was completed and published in 2008); *I.M.S. Inquiry Mgmt. Sys.*, 307 F. Supp. 2d at 527 (dismissing complaint where infringement allegedly occurred in 2002 but registration identified work first published in 2003); *see also Epikhin v. Game Insight N. Am.*, 145 F. Supp. 3d 896, 904 (N.D. Cal. 2015) (dismissing copyright claim where plaintiff's deposited works were not the allegedly infringed works) (citing *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998)).[6]

---

[6] Failure to allege a valid registration covering the allegedly infringed works justifies dismissal on the basis that plaintiff fails to state a claim. While past cases held such failure stripped the court of subject matter jurisdiction, the Supreme Court's holding in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) that the Section 411(a) registration requirement is non-jurisdictional means that asserting rights in material outside the scope of a registration is properly understood as a failure to state a claim. *See Epikhin*, 145 F. Supp. 3d at 902 ("Although the registration requirement is not jurisdictional, it is a precondition to suit.") (internal quotation marks omitted). Past cases treating the issue as jurisdictional, therefore, are still helpful in assessing specific defects in copyright registrations.

Here, Planner 5D's registrations for the "Planner 5D objects" and "Planner 5D scenes" plainly state that the deposited works were "completed" and "first published" in 2019.  (Copyright Compl. Ex. A at 2, 4.)  *See* 17 U.S.C. § 409(7) (any application "shall include . . . the year in which creation of the work was completed"); U.S. Copyright Office, Compendium of U.S. Copyright Practices § 721.9(D) (3d ed. 2017) ("Each version of a program is considered complete when that version has been fixed in a tangible medium of expression for the first time.").  It cannot possibly maintain an infringement claim as to works that must have been completed and published by 2016. *See* Copyright Compl. ¶ 5 ("Millions of users of the company's design tool then dragged and dropped these virtual objects into floor plans[.]"); *id.* (the "public gallery contains the scenes that are visible to all users"); *id.* ¶ 59 (alleging infringement "sometime in or before 2016"); *id.* ¶ 61 (quoting from December 2016 article discussing SUNCG Dataset); *id.* ¶ 72 (alleging Planner 5D discovered conduct in 2018).)  *See also Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) ("[W]hen a webpage goes live on the Internet, it is distributed and 'published'").

Because Planner 5D's registrations do not cover the allegedly infringed works, the Complaint fails to allege infringement of a valid copyright.  *See Epikhin*, 145 F. Supp. 3d at 904 (dismissing complaint where plaintiff alleged infringement in original works, but plaintiff had "no proof of those originals") (quoting *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir. 1986)); *KEMA*, 2010 WL 3464737, *3; *see also Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1161 (C.D. Cal. 2010) (dismissing claim on summary judgment where, as here, "the alleged copying occurred before the deposited version of the work even existed"); *I.M.S. Inquiry Mgmt. Sys*, 307 F. Supp. 2d at 528 (granting motion to dismiss copyright claim where plaintiff's registration "speaks of a work *first* published in January of 2003" and thus "covers something other than a work that was published (and allegedly infringed) in March of 2002") (emphasis in original).

### 2. Planner 5D Still Does Not Allege The Object Compilation Is Original And Entitled to Protection.

In addition to the lack of registration, Planner 5D's copyright claim in the Object Compilation should be dismissed for the independent reason that it fails to allege any original selection or arrangement.  It is axiomatic that a valid copyright requires that the claimed work be

1   original and creative.  *See Phantomalert, Inc. v. Google Inc.*, No. 15 Civ. 3986, 2016 WL 879758, at *8

2   (N.D. Cal. Mar. 8, 2016) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361

3   (1991)).  In order to allege copyright protection in a compilation, a plaintiff must allege that it made

4   creative "choices as to selection and arrangement" of the compilation's elements such that they "are

5   made independently by the compiler and entail a minimal degree of creativity."  *Feist*, 499 U.S. at

6   348.

7        As this Court's Order held, a copyright owner cannot claim creative selection in a collection

8   of all existing works.  (Order at 14.)  *See Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 85 (2d

9   Cir. 2004) (compilation of "all" Dorothy Parker poems was uncreative as "'all' is not a selection");

10  *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1518 (11th Cir. 1997) (no originality in

11  directory that included the "entire relevant universe known to [plaintiff]"); *see also* 1 Nimmer on

12  Copyright § 3.02 (2019) (noting that House Report of Copyright Act of 1976 states that a

13  compilation "must be of the 'discrete' writings of a given author [because] if the collection consists

14  of all of a given author's writings, the process of selection would then involve no originality or

15  authorship").  This Court therefore dismissed Planner 5D's Object Compilation claim, which "[did]

16  not allege that it ha[d] rendered any objects which were omitted from the compilation, and [did] not

17  allege any creative choices in selecting certain objects among many that it had rendered to include in

18  the compilation."  (Order at 14.)

19       Planner 5D's new Complaint suffers from the same flaw.  Planner 5D alleges only that it

20  selected its Objects "from among the virtually infinite number of possible [objects]."  (Copyright

21  Compl. ¶ 41.)  As this Court held, that is not enough to allege creative selection.  Nor are there any

22  allegations that Planner 5D creatively arranged its Objects.  *See Phantomalert, Inc. v. Google Inc.*,

23  No. 15 Civ. 3986, 2015 WL 8648669, at *12 (N.D. Cal Dec. 14, 2015) (dismissing claim because no

24  allegations "that the data is organized into categories, for example, or that there is anything creative

25  about the way the data is displayed").  For this reason, its copyright claim as to the Object

26  Compilation must be dismissed.  (Order at 14.)

27                              #       #       #

28       Thus, for each of the independent reasons stated above, Planner 5D has not stated (nor can it

11

plausibly state) a claim for copyright infringement against Facebook and thus its claim should be dismissed with prejudice.[7]

### B. Planner 5D Fails to State a Claim for Trade Secret Misappropriation against Facebook.

A plaintiff must plead the same facts to state a claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") or the California Uniform Trade Secrets Act ("CUTSA").  *See Becton, Dickinson and Co. v. Cytek Biosciences Inc.*, No. 18 Civ. 0933, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018) (noting that claims under DTSA and CUTSA are "essentially the same" and dismissing both claims).  Specifically, a plaintiff must plead (1) ownership of information that constitutes a trade secret, and (2) defendant's wrongful acquisition, disclosure, or use of such information.  18 U.S.C. §§ 1836, 1839(5); Cal. Civ. Code § 3426.1; *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, No. 16 Civ. 5399, 2017 WL 67075, at *7 (N.D. Cal. Jan. 6, 2017) (Orrick, J.) (reciting elements of trade secret claim under the CUTSA).  As discussed below, all of Planner 5D's trade secret claims against Facebook should be dismissed with prejudice because it has not alleged (nor can it allege) either of these two requisite elements for any claim.

### 1. Planner 5D Does Not Allege Ownership of a Trade Secret.

To constitute a "trade secret," the information must both (1) derive "independent economic value . . . from not being generally known to the public . . ." and (2) be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *See* Cal. Civ. Code §§ 3426.1(d)(1), (2); *see also Veronica Foods Co. v. Ecklin*, No. 16 Civ. 7223, 2017 WL 2806706, at *12 (N.D. Cal. June 29, 2017) (definition of "trade secret" in the CUTSA is "substantially identical"

---

[7] Planner 5D also asserts claims against Facebook for vicarious and/or contributory liability based on the use of the SUNCG Dataset by other researchers and the SUMO Challenge participants. (Copyright Compl. ¶¶ 100–03.)  These claims against Facebook also should be dismissed because Planner 5D cannot state a claim for direct copyright infringement based on the SUNCG Dataset by any third party for the reasons discussed above.  *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1031 (9th Cir. 2013) ("It is well-established that '[s]econdary liability for copyright infringement does not exist in the absence of direct infringement.'") (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)); *Tarantino v. Gawker Media, LLC*, No. 14 Civ. 0603, 2014 WL 2434647, at *3–4 (C.D. Cal. Apr. 22, 2014) (dismissing secondary liability claim where plaintiff did not state a claim for direct infringement of copyrighted screenplay by a third party).

1   to the definition in the DTSA).

2        Planner 5D fails to sustain its broad allegations that its "files underlying Planner 5D's objects

3   and scenes" as well as its compilations constitute trade secrets.  (Am. Compl. ¶¶ 6, 35, 39.)  First, the

4   Amended Complaint is clear that the individual files and compilations are publicly accessible.

5   Second, Planner 5D does not (and cannot) allege that it made sufficient effort to keep its information

6   secret.  Third, Planner 5D does not (and cannot) allege any facts showing that its files or

7   compilations are independently valuable because of their secrecy.

8        **a.**     **Planner 5D Disclosed Its Alleged Trade Secrets to the Public.**

9        It is black letter law that "[p]ublicly available information, by definition, cannot be protected

10   as a trade secret."  *SocialApps, LLC v. Zynga, Inc.*, No. 11 Civ. 4910, 2012 WL 381216, at *2 (N.D.

11   Cal. Feb. 6, 2012) (striking portion of CUTSA claim because complaint alleged information was

12   released to the public on the internet and thus it did not constitute a trade secret); *see* 18 U.S.C. §

13   1839(3)(B); Cal. Civ. Code § 3426.1(d)(1) (a trade secret derives value "from not being generally

14   known to the public"); *see also In re Sotera Wireless, Inc.*, 591 B.R. 453, 458 (S.D. Cal. 2018)

15   ("[I]nformation that is readily ascertainable [] derives no independent value from not being generally

16   known.") (internal quotations omitted).

17        This Court gave Planner 5D leave to replead facts showing how the "structure" of its website

18   made its files secret.  (Order at 16.)  In response, the Amended Complaint adds only conclusory

19   allegations that each data file was stored on a "non-public" and "secret" internet address on its

20   website.  (Am. Compl. ¶ 37.)  However, Planner 5D does not allege how storing each file at an

21   allegedly "secret" internet address blocked access to the respective data file.  Planner 5D's

22   allegations are insufficient.

23        Indeed, information that can be readily accessed by typing an address into a browser is,

24   without more, not plausibly a trade secret.  In *Arkeyo, LLC v. Cummins Allison Corp.*, the court

25   noted that the "posting of materials on the internet without any confidentiality protections makes the

26   information publicly available and renders the materials incapable of trade secret status."  342 F.

27   Supp. 3d 622, 632 (E.D. Pa. 2017).  In that case, the plaintiff had posted the alleged trade secret to

28   an "unlisted URL," thus claiming secrecy, and argued that was sufficient to prevent it from being

publicly available.  The court disagreed, holding that "the website was publicly available to anyone who typed the URL into the address bar . . . [which] refutes Arkeyo's contention that it did not make its trade secrets publicly available on the internet."  *Id.* at 630.  Nor did the plaintiff implement any encryption, password protection, or technical measures to prevent reading the code.  *Id.* at 631.

Here, the Amended Complaint makes clear that the files were similarly publicly available. Tellingly, Planner 5D alleges that Princeton only had to use "software developer tools" to locate URLs where Planner 5D posted the files.[8]  (Am. Compl. ¶¶ 37, 56.)  Planner 5D does not allege it imposed any technical barrier to accessing the addresses or downloading the files once the addresses were located, despite the Order also requiring plausible allegations how Planner 5D's website "protected [its data files] from reproduction."  (Order at 17.)  As with the plaintiff in *Arkeyo*, Planner 5D alleges that once a visitor had the addresses, it could access and download the files.  (Am. Compl. ¶¶ 37, 56.)

Consequently, because they were posted publicly on the website for anyone to find, the allegations in Planner 5D's Amended Complaint demonstrate that its data files are readily ascertainable and cannot constitute trade secrets as a matter of law.  For the same reasons, its purported compilations of publicly available Object files and files underlying the "public gallery" of Scenes cannot be trade secrets.  (*Id.* ¶¶ 35, 39.)  Its claims should be dismissed.  *See Arkeyo*, 342 F. Supp. 3d at 632 (denying relief where plaintiff could not establish that its information was secret); *Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs., Inc.*, No. 18 Civ. 10187, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) (dismissing complaint where plaintiff failed to allege that its information was not readily ascertainable).

**b.    The Complaint Does Not Allege That Planner 5D Took Reasonable Efforts to Maintain the Secrecy of Its Alleged Trade Secrets.**

In addition, Planner 5D's misappropriation claims fail for the independent but related reason

---

[8] Planner 5D uses inflammatory language such as "scraping," "data-harvesting," "intercepted communications," and "hacking software" to inflate its allegations, which remain essentially that Princeton used a readily available software tool to identify the source of information displayed on a website.  (Am. Compl. ¶¶ 33, 59.)

that it did not allege that it took reasonable efforts to maintain the secrecy of its data files or compilations.  *See* Cal. Civ. Code § 3426.1(d)(2); 18 U.S.C. § 1839(3)(A).

As discussed above, the factual allegations that the internet addresses are "secret," without more, do not sustain Planner 5D's claim that it took reasonable measures to "ma[ke] its data files secret and protect[] them from reproduction."  (Order at 17.)  The law is clear that a conclusory allegation that a trade secret is "secret" is insufficient to state a claim for trade secret misappropriation.  *See Prostar*, 2017 WL 67075, at *7 (dismissing trade secret claim where sole reasonable measure alleged was "not sharing the information") (Orrick, J.); *KEMA*, 2010 WL 3464737, at *7–8 (dismissing trade secret claim where plaintiff's "conclusory" allegation was insufficient to allege that he took any efforts keep source code secret); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

Moreover, Planner 5D does not allege any specific access restrictions on the internet addresses.  It does not allege, for example, that a login or password was required to access the internet addresses, or that there were server verification protocols that prevented unrecognized IP addresses from accessing the internet addresses.  It further alleges no specific technical restrictions on the actual "reproduction" of the files, (*see* Order at 17), such as encryption or code obfuscation that could have prevented unauthorized downloads of data files from the addresses—all of which the court in *Arkeyo* referred to as "industry standard protections."  *Arkeyo*, 342 F. Supp. 3d at 631.  In all, Planner 5D has failed to describe how merely keeping files on non-public addresses "operates as a lock," "how it built the lock," or "why nobody could get around that lock or at least should not have been able to get around that lock."  (Order at 16.)  Rather, Planner 5D simply asks this Court to take its word that the internet addresses are "secret" and that is itself a reasonable measure.  (Am. Compl. ¶¶ 33, 37).  The use of conclusory buzzwords, without factual allegations establishing any protection measures, does not plausibly establish a protectable trade secret.

Planner 5D's allegations concerning its Terms of Service are also insufficient to equate to reasonable protective measures.  As this Court explicitly held, it "is not enough" that the Terms of Service prohibit conduct such as scraping; rather, the Terms of Service must require that users treat

1   the website as confidential.  (Order at 17.)  Planner 5D has not sufficiently alleged, as the Court

2   required, "how the Terms of Service . . . bound the parties to treat the files as confidential."  (*Id.*)

3   Planner 5D cannot circumvent this requirement by alleging that the Terms of Service "go further" to

4   establish confidentiality than a confidentiality provision would.  (Am. Compl. ¶ 41.)  There is

5   nothing in the Terms of Service imposing a duty of confidentiality, and so on its face it could not

6   possibly go further.  This makes sense, given that the entire structure of its website is set up to

7   enable its users to share their works.  *See also Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495,

8   521–22 (S.D.N.Y. 2017) (denying preliminary injunction as unlikely to succeed on the merits

9   because plaintiff disclosed its alleged trade secrets to its users and its terms of service did not include

10  a confidentiality provision).

Taken together, Planner 5D's allegations of "secret" internet addresses and terms of service

12  lacking confidentiality restrictions, even if true, are not reasonable efforts under the circumstances to

13  protect the secrecy of the alleged trade secrets.  Thus, Planner 5D's trade secret claims should be

14  dismissed.

### c.   The Complaint Does Not Allege Facts Indicating That Planner 5D's Data Files Are Valuable Because They Are Secret.

Planner 5D's Complaint also fails for the independent reason that it does not allege that its

17  data files or compilations derive "independent economic value . . . from not being generally known

18  to the public."  Cal. Civ. Code § 3426.1(d)(1); 18 U.S.C. § 1839(3)(B).  As discussed above, Planner

19  5D's allegations indicate that its data files are publicly accessible.  Moreover, it has entirely failed to

20  plead facts supporting its conclusory recitation of the "independent economic value" element.  (Am.

21  Compl. ¶¶ 85, 108.)  *See Webpass Inc. v. Banth*, No. 14 Civ. 2291, 2014 WL 7206695, at *3 (N.D.

22  Cal. Dec. 18, 2014) (dismissing case because the complaint "does not set forth facts establishing

23  how the alleged trade secrets derive [] value" by virtue of not being generally known).  To the

24  contrary, Planner 5D has only claimed economic value in its *public*, front-facing interface.  It does

25  not allege how the data files themselves (or their compilations) are independently valuable.  Thus,

26  Planner 5D has failed to allege independent economic value and its trade secrets claims should be

27  dismissed.

28

---

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.      The Complaint Does Not Allege Misappropriation by Facebook.**

In addition to failing to allege it owns a protectable trade secret, Planner 5D fails to allege misappropriation by Facebook.  Planner 5D does not claim that Facebook directly acquired any of its information from Planner 5D.  Rather, Planner 5D claims that Facebook "continu[ed] to use Planner 5D's object and scene files even after Facebook knew and had reason to know these trade secrets had been acquired by Princeton through improper means." (Am. Compl. ¶ 87.)

As this Court noted in its Order, Facebook had argued that according to Planner 5D's allegations, by the time Facebook used the SUNCG Dataset, it had been published by Princeton, and as such there were no trade secrets for Facebook to misappropriate.  (Order at 18.)  The Court granted Planner 5D leave to amend facts showing misappropriation as to Facebook.

The Amended Complaint, however, does nothing to cure this defect.  Instead, it alleges only that Facebook had knowledge of Princeton's alleged misappropriation.  (Am. Compl. ¶¶ 73–76, 79.).  That is not sufficient: there are still no facts alleging the material Princeton allegedly misappropriated remained a trade secret when Facebook got involved in 2018.  In fact, the Amended Complaint makes clear that the material was already published by Princeton in 2016, an act which destroyed any potential trade secrets owned by Planner 5D.[9]  (Am. Compl. ¶ 9.)  Thus, Facebook "could not be a wrongdoer because, by the time it [allegedly] got involved, there was no trade secret." *Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18 Civ. 05031, 2019 WL 1767329, at * 1 (N.D. Cal. Apr. 22, 2019) (dismissing trade secret counterclaim based on alleged use of trade secrets because another party had published the trade secrets without authorization prior to alleged use); *see also Wang v. Golf Tailor, LLC*, No. 17 Civ. 0898, 2017 WL 5068569, at *5 (N.D. Cal. Nov. 3, 2017) (dismissing trade secret claim because "[t]here can be no unlawful misappropriation after public disclosure of the secret"); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) (granting summary judgment to defendant on plaintiff's trade secret claim because by "by the time that Microsoft acquired the information, the 'trade secret' status

---

[9] Princeton's publication of the SUNCG Dataset on its website destroyed any alleged trade secret status for the data. *See DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 899 (2003) (Moreno, J., concurring) ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials.") (quoting Legislative Committee Comment, 12A pt. 1 West's Ann. Civ.Code (1997 ed.) foll. Civ.Code, § 3426.1, p. 239).

1    was extinguished, and Forcier can have no claim for misappropriation as against Microsoft."); *DVD*

2    *Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 253 (2004) (stating even if "information

3    was originally acquired by improper means, it does not necessarily follow that once the information

4    became publicly available that everyone else would be liable under the trade secret laws for

5    republishing it simply because they knew about its unethical origins"); *Intellisoft, LTD. v. Wistron*

6    *Corp.*, No. H044281, 2019 WL 5204293, at *6 (Cal. Ct. App. Oct. 16, 2019) ("Information that is

7    made public no longer retains the essential quality of a trade secret, regardless of whether the person

8    who made the secret public was the rightful possessor *or* a third party.") (emphasis in original)

9    (unpublished).

10            Thus, Planner 5D's trade secret claims against Facebook should be dismissed for the

11   independent reason that it has not alleged misappropriation by Facebook.  *See Be In, Inc. v. Google*

12   *Inc.*, No. 12 Civ. 3373, 2013 WL 5568706, at *3 (N.D. Cal. Oct. 9, 2013) (dismissing trade secret

13   claim, stating "[p]leading misappropriation is required, as alleging mere possession of trade secrets

14   is not enough to survive a 12(b)(6) motion") (internal quotation marks and citations omitted); *Aqua*

15   *Connect, Inc. v. Code Rebel, LLC*, No. 11 Civ. 5764, 2012 WL 469737, at *2 (C.D. Cal. Feb. 13,

16   2012) (dismissing trade secret claim without leave to amend because plaintiff failed to allege

17   defendant improperly acquired trade secrets).  As this Court held, "Planner 5D . . . must specifically

18   allege misappropriation as [to] each Princeton and Facebook."  (Order at 18.)  Planner 5D has not

19   done so, and its trade secret claims must be dismissed.

20   **V.     CONCLUSION**

21            For the foregoing reasons, Facebook respectfully requests that the Court dismiss Planner

22   5D's Amended Complaint and Copyright Complaint against it, with prejudice, in its entirety.

23

24

25

26

27

28

Dated: April 29, 2020

Respectfully submitted,

KIRKLAND & ELLIS LLP


*/s/ Dale M. Cendali*
Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (admitted *pro hac vice*)
johanna.schmitt@kirkland.com
Ari Lipsitz (*pro hac vice* forthcoming)
ari.lipsitz@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Attorneys for Defendants
*Facebook Inc.*
*Facebook Technologies, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On April 29, 2020, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Dale M. Cendali*

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com

Attorney for Defendants
*Facebook Inc.*
*Facebook Technologies, LLC*