UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UAB "PLANNER5D",<br><br>      Plaintiff,<br><br>   v.<br><br>FACEBOOK, INC., et al.,<br><br>      Defendants. | Case No. 19-cv-03132-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS COPYRIGHT CLAIMS; DENYING MOTIONS TO DISMISS TRADE SECRET CLAIMS; GRANTING MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 68, 69, 70, 75 |

UAB Planner 5D ("Planner 5D") operates a home design website that allows users to create virtual interior design scenes using a library of virtual objects (such as tables, chairs, and sofas) to populate the scenes. It claims that it owns copyrights in these three-dimensional objects and scenes, and in the compilation of objects and scenes, as well as trade secrets in the underlying data files. It filed this suit against defendants Facebook, Inc., Facebook Technologies, LLC (collectively "Facebook"), and The Trustees of Princeton University ("Princeton") for copyright infringement and trade secret misappropriation.

I granted Princeton's and Facebook's motions to dismiss the original Complaint and gave Planner 5D leave to address the deficiencies laid out in my order. *See UAB "Planner 5D" v. Facebook, Inc.*, No. 19-CV-03132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019). Princeton and Facebook now move to dismiss Planner 5D's amended claims, as alleged in the First Amended Complaint filed in this case and the Copyright Complaint filed in Case No. 3:20-cv-2198-WHO, which has been consolidated with this case. For the reasons set forth below, the motions to dismiss the copyright infringement claims are GRANTED but the motions to dismiss the trade secret misappropriation claims are DENIED. Planner 5D has leave to amend its copyright infringement claims except for its claim in the alleged compilation of objects, which is dismissed with prejudice.

**BACKGROUND**

I detailed Planner 5D's allegations in my previous order. *See Planner 5D*, 2019 WL 6219223, at *2–4 (N.D. Cal. Nov. 21, 2019). I incorporate that discussion by reference here.

I dismissed Planner 5D's copyright infringement claims because it failed to allege that it met the threshold registration requirement of 17 U.S.C. § 411(a). I gave it the choice to either sufficiently allege that its works are non-United States works that are exempt from registration or dismiss this suit and bring another suit after registering with the Copyright Office. *Id.* at *7. I also granted leave to explain "the originality or creativity of the objects, scenes, and compilations of objects and scenes" and "that copyrightable elements were copied." *Id.* at *1.

The trade secret misappropriation claims were dismissed as well. I gave leave to explain "how the structure of its website and the Terms of Service maintained secrecy of the underlying data files of the objects and scenes" and "what improper means Princeton and Facebook took to obtain these files." *Id.*

Planner 5D amended its trade secret misappropriation claims in the First Amended Complaint, realleging its claim concerning the individual object and scene data files, and adding claims for the compilation of object and scene data files. *See* First Amended Complaint ("FAC") [Dkt. No. 53]. It then submitted two registration applications to the Copyright Office on December 19, 2019. One application related to its objects and the other related to an alleged compilation of scenes. In response, the Copyright Office issued two certificates of registration. *See* Copyright Complaint ("Copyright Compl.") [Dkt. No. 1] in Case No. 3:20-cv-2198-WHO, Ex. A (Registration No. TX-8-818-101 for work titled "Planner 5D objects" and Registration No. 8-818-102 for work titled "Planner 5D scenes"). Both certificates state that Planner 5D completed and published its works in 2019. *Id.* Planner 5D subsequently filed a new lawsuit with a single count for infringement of those two copyrights. Copyright Compl. ¶¶ 95–105. I designated that lawsuit as related to the first lawsuit and consolidated the two actions. *See* Related Case Order [Dkt. No. 63]; Order Consolidating Cases [Dkt. No. 64].[1]

---

[1] Planner 5D had to file a separate suit to reassert its copyright claims after satisfying the registration requirement because "permitting amendment to cure a claimant's failure to register its

2

Princeton and Facebook now move to dismiss the copyright and trade secret claims for failure to state a claim. *See* Notice of Motion and Motion to Dismiss by The Trustees of Princeton University to Dismiss the Complaints ("Princeton MTD") [Dkt. No. 68]; Facebook Inc. and Facebook Technologies, LLC's Notice of Motion and Memorandum of Points and Authorities in Support of Their Motion to Dismiss Planner 5D's Amended Complaint ("Facebook MTD") [Dkt. No. 69].

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

copyright before suing would undermine the objectives animating the Supreme Court's decision in *Fourth Estate*." *See Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. Jun. 4, 2019) (citing *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019)); s*ee* Order on Joint Motion for Clarification [Dkt. No. 59] 3 ("Once Planner 5D has satisfied Section 411(a)'s registration requirement, it can re-assert its copyright claims in a new lawsuit, which would then be related to, and consolidated with, the trade secret claims still pending in this lawsuit.").

3

1    If the court dismisses the complaint, it "should grant leave to amend even if no request to
2    amend the pleading was made, unless it determines that the pleading could not possibly be cured
3    by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In
4    making this determination, the court should consider factors such as "the presence or absence of
5    undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous
6    amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*
7    *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. COPYRIGHT CLAIMS

#### A. Registration Requirement under Section 411(a)

Section 411(a) of the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made" with the Copyright Office. 17 U.S.C. § 411(a). For an infringement action to proceed, it is necessary for the plaintiff to "plausibly plead[] on its face" copyright registrations covering the works that the defendant allegedly infringed. *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017).

Princeton and Facebook argue that Planner 5D did not register the works it alleged were infringed in this action. Princeton MTD 9; Facebook MTD 8. The Copyright Complaint alleges that Princeton's researchers downloaded Planner 5D's works sometime around 2016, which Facebook later copied as well. Copyright Compl. ¶¶ 59–61, 77. Yet Planner 5D's two copyright registration certificates plainly state that the deposited works were "completed" and "first published" in 2019. *Id.*, Ex. A at 2, 4 (registration for "Planner 5D objects" states that the work was created in 2019 and published on December 17, 2019, and registration for "Planner 5D scenes" states that the collection of scenes was created in 2019 and published on December 19, 2019).

Accordingly, defendants argue that Planner 5D cannot sue for alleged infringement that occurred before it created the works registered with the Copyright Office. Because it failed to register a copyright in the works on its website as they existed at the time defendants allegedly

4

1  copied them around 2016, they contend that the registration requirement has not been met and
2  warrants dismissal of the copyright infringement claim. *See I.M.S. Inquiry Mgmt. Sys., Ltd. v.*
3  *Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 527 (S.D.N.Y. 2004) (dismissing claim where
4  plaintiff sought to satisfy the registration requirement with a registration for a work created and
5  published the year after the alleged infringement, because "the registered work is not the same as
6  the work which was supposedly infringed").
7        In response, Planner 5D submits its underlying application to the Copyright Office along
8  with subsequent email communication that it argues make clear that the registration encompasses
9  the entire body of material created during the periods in question. The original application for its
10 objects stated that the work was completed in 2011 and first published on February 1, 2012. *See*
11 Declaration of Naomi Jane Gray ("Gray Decl.") [Dkt. No. 76-1], Ex. A at 1 (copy of application to
12 register Planner 5D's objects). Similarly, the original application for its compilation of scenes
13 stated that the work was completed in 2012 and first published on May 18, 2012. *Id.*, Ex. B at 1
14 (copy of application to register Planner 5D's scenes). Each application also included a "note" to
15 the Copyright Office stating that Planner 5D completed those programs on December 17, 2019.
16 *Id.*, Ex. A at 3, Ex. B at 3.
17       The Copyright Office responded to these applications, seeking clarification of the
18 completion date. For the "Planner 5D objects" application, it wrote:

> Your note to our Office states the work was completed "...December 17, 2019; Planner 5D claims the entire work as it existed on December 17, 2019." However, the application gives a "year of completion" of "2011" and a publication date of "2/11/2012." However, a work cannot be completed in 2019 and published in 2012. Please let us know the year of completion and complete publication date (month, day, year) for this particular version of the work.

*Id.*, Ex. C. Similarly, for the "Planner 5D scenes" application, the Copyright Office wrote:

> Your note to our Office states the work was completed "...December 17, 2019; Planner 5D claims the entire work as it existed on December 17, 2019." However, the application gives a "year of completion" of "2012" and a publication date of "5/18/2012." However, a work cannot be completed in 2019 and published in 2012. Please let us know the year of completion and complete publication date (month, day, year) for this particular version of the work.

27 *Id.*, Ex. D. In both cases, Planner 5D responded that the year of completion was 2019 and the
28 publication date was December 17, 2019. *Id.*, Exs. C, D.

The Copyright Office policy specifies that when registering a computer program, the scope of a registration of a specific version of the program is limited to "the new material" in that version and not any "[p]reviously published material." Copyright Office Compendium § 721.8. Defendants argue that these email communications show that Planner 5D amended and limited its applications to the versions of its works that were completed and published in 2019, so the registrations issued covered only the new material (*i.e.*, the new objects and scenes) that was completed in 2019.

Planner 5D asserts that this record shows that the registration covers the objects created from 2011 through 2019 and the scenes created from 2012 to 2019, and accordingly covers all of the objects and scene compilations Princeton scraped from its website in 2016, and which Facebook subsequently copied as well. I suspect that is what Planner 5D intended to do with its application but I cannot conclude that is what the Copyright Office granted when it issued the registration certificates, which clearly state that the year of completion is 2019.

Planner 5D's attempt to distinguish the case law cited by defendants is unconvincing. Defendants cite to *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155 (C.D. Cal. 2010), where the court held that plaintiff could not "register and sue on a version of a software program that was created *after* the version that [the d]efendants allegedly copied." *Id.* at 1163 (emphasis in original). Planner 5D distinguishes *Oskar* by relying on the statements it made in its registration *application*. Planner 5D's Opposition to the Dismissal Motion of the Trustees of Princeton University ("Oppo. Princeton MTD") [Dkt. No. 76] 9. But it has not cited to any authority that allows me to look at the underlying application to determine the scope of the registration certificate issued by the Copyright Office.

Next, Planner 5D admits that it did not register its works as derivative works of previous versions of objects or an earlier compilation of scenes. It nonetheless argues that the principle of derivative works should apply here because its registrations encompass each individual object and each compilation of scenes created between 2011 and 2019. Oppo. Princeton MTD 7; *see Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746–47 (2d Cir. 1998) (registration of a derivative work can satisfy the requirements of Section 411(a) with respect to an unregistered

6

1   underlying work on which the registered derivative work is based when the same person or entity
2   owns both works).[2]

3   Planner 5D cannot rely on the principle of derivative works to save the fact that its
4   registration certificates do not identify any prior versions of the works on which the registered
5   versions were based. Nor does it plead any facts that attempt to connect the 2019 registrations to
6   the 2016 objects and scenes.[3] *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218,
7   1229–30 (11th Cir. 2008) (declining to apply *Streetwise Maps* to unregistered works when
8   registration certificate did "not identify any unregistered preexisting works"); *I.M.S.*, 307 F. Supp.
9   2d at 529 (distinguishing *Streetwise Maps* when registration certificate did "not identify the
10  preexisting work that is the foundation of this action").

11  As a last resort, Planner 5D contends that the scope of its registrations is arguably a fact
12  question that cannot be resolved at this stage. But even accepting all well-pleaded factual
13  allegations as true and construing all inferences in its favor, I am unable to conclude that it has
14  provided a plausible factual basis from which I can infer that there is a valid copyright registration
15  covering the specific works alleged in this action.

16  This cannot be brushed off as a mere technical error. Whether Planner 5D's registration
17  encompasses all of its works created between 2011 and 2019, or just works it created in 2019,
18  makes a difference here. The Copyright Complaint, supporting material, and case law do not lead
19  me to make the inference that Planner 5D would like me to make. Because I cannot conclude that
20  the copyright registrations cover the alleged works at issue, Planner 5D has failed to sufficiently
21  plead compliance with the Section 411(a) requirement.

---

[2] While the Ninth Circuit has not addressed this issue, multiple opinions from district courts within the Ninth Circuit have found the analysis in *Streetwise Maps* to be persuasive. *See, e.g.*, *Brocade Comm'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-3428-PSG, 2013 WL 831528, at *4 (N.D. Cal. Jan. 10, 2013); *BESPAQ Corp. v. Haoshen Trading Co.*, No. 04-cv-3698-PJH, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005).

[3] At the time of the alleged infringement, Planner 5D claims that its website included 2,600 objects and had a public gallery of over 45,000 scenes. Copyright Compl. ¶ 32 (objects); *id.* ¶ 46 (scenes). Today, however, its website allegedly includes over 4,500 objects and "many millions of scenes." *Id.* ¶ 32 (objects); *id.* ¶ 5 (scenes). While these allegations might show that Planner 5D's alleged collections have grown over time, they do not establish that any specific object or scene of Planner 5D's website in 2016 was *also* on Planner 5D's website in 2019.

After much argument at the hearing, I asked Planner 5D's counsel if there is a way he can fix this situation. He offered that he could file an application for all works up to 2015 or 2016, so that it could include the alleged works at issue in this lawsuit. I will give him the opportunity to do so. *See Sara Designs*, 234 F. Supp. 3d at 555 (giving plaintiff the opportunity to amend because "[p]laintiff's counsel claimed at oral argument that there is additional documentation that would establish the coverage of the certificates of registration and also suggested that [p]laintiff may claim protection of certain watches as derivative works").

Facebook's and Princeton's motions to dismiss the copyright claims are GRANTED with leave to amend.

### B. Copyrightability of Planner 5D's Alleged Object Compilation

In addition to the lack of registration, Facebook argues that Planner 5D's copyright claim in the alleged compilation of objects ("Object Compilation") should be dismissed for the independent reason that it fails to allege any original selection or arrangement. Facebook MTD 10.

In order to allege copyright protection in a compilation, a plaintiff must allege that it made creative "choices as to selection and arrangement" of the compilation's elements such that they "are made independently by the compiler and entail a minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). I previously dismissed Planner 5D's copyright infringement claim on the Object Compilation because it "[did] not allege that it ha[d] rendered any objects which were omitted from the compilation, and it [did] not allege any creative choices in selecting certain objects among many that it had rendered to include in the compilation." *Planner 5D*, 2019 WL 6219223, at *8.

Planner 5D now alleges that "[i]ts choices in assembling this [object] collection, from among the virtually infinite variety of possible ones, reflected both originality and creativity." Copyright Compl. ¶ 41. This allegation is clarified in its opposition brief. Instead of claiming that it selected certain objects, from among those it created, to include in a compilation, it now claims that it selected certain objects, from among those it could have created, to bring into existence and include in a compilation of all objects it created. In other words, because it exercised authorial

1    creativity in commissioning the objects that its employees created, it selected, from among the
2    effectively infinite variety of possible digital objects it could have created, certain types of objects
3    to bring into existence. Planner 5D's Opposition to the Dismissal Motion of Facebook, Inc. and
4    Facebook Technologies, LLC ("Oppo. Facebook MTD") [Dkt. No. 74] 11.

5        This is not enough to allege a creative selection. A selection of "all" of its own works that
6    it created (or commissioned as works for hire) in a compilation does not automatically make the
7    compilation original because it could have created fewer or different works. Planner 5D cites no
8    cases that support this argument. Instead, it relies on a number of cases holding that a registration
9    for a compilation extends protection to its constituent elements. But Facebook is not arguing a
10   failure to allege originality of the Objects themselves. Instead, the originality of the selection and
11   arrangement in the Object Compilation are at issue here.

12       For example, in *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 85 (2d Cir. 2004), the
13   Second Circuit found a compilation of "all" Dorothy Parker poems was uncreative as "'all' is not a
14   selection." Planner 5D attempts to distinguish *Silverstein* on grounds that the creator of the
15   putative compilation had not commissioned the underlying works and did not hold any copyright
16   interest in them. Had Dorothy Parker *herself* compiled a book of all of poems she ever wrote, it
17   argues that she would have had a protectable copyright in the compilation, in addition to the
18   individual poems, because she exercised creativity and selection in deciding which poems to
19   create. Again, it fails to cite to any case law that supports such an outcome.

20       Facebook's motion to dismiss the copyright claims as to the alleged Object Compilation is
21   GRANTED with prejudice.

22   **II.   TRADE SECRET CLAIMS**

23       Planner 5D claims misappropriation of trade secrets under the federal Defend Trade
24   Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("CUTSA"), which both
25   "require a plaintiff to show [1] that it possessed a trade secret, [2] that the defendant
26   misappropriated the trade secret, and [3] that the defendant's conduct damaged the plaintiff."
27   *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019). I dismissed those
28   claims because Planner 5D failed to allege the first two elements by not explaining "(i) how the

1  structure of its website and the Terms of Services maintained secrecy of the underlying data files
2  of the objects and scenes; and (ii) what improper means Princeton and Facebook took to obtain
3  these files." *Planner 5D*, 2019 WL 6219223, at *1. Princeton and Facebook argue that the FAC
4  does not and cannot cure these deficiencies.[4]

### A.  Alleged Works as Trade Secrets

Princeton contends that Planner 5D designed its website to transmit object or scene data files to its users' browsers, where they were automatically stored in the browser's "cache," or temporary memory. Princeton MTD 12. Doing so enabled any user who knows how to access the cache on her computer to locate the files, and thus access and reproduce them. While the Terms of Service generally prohibited downloading material from the website, it expressly excluded "page caching" from its list of prohibitions. Declaration of Steven R. Englund in Support of Request for Judicial Notice by the Trustees of Princeton University ("Englund Decl.") [Dkt. No. 68-2], Ex. 1 at 2 (copy of Terms of Service, version 01 on April 18, 2012). Thus, it concludes, the structure of Planner 5D's website and the website's Terms of Service operate in tandem to provide free access to its object and scene data files to users, which means the files are not trade secrets. To present these arguments, Princeton submits multiple exhibits and a declaration that attests that any user can retrace the specified steps in finding and accessing Planner 5D's data files.

Princeton effectively mounts a factual challenge to rebut Planner 5D's allegation that it used reasonable measure to protect its trade secrets. Use of extrinsic evidence is improper at this stage; Princeton can bring its factual challenge at the appropriate time. *DVD Copy Control Ass'n v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) (secrecy is "a relative concept and requires a fact-intensive analysis").[5]

---

[4] Planner 5D previously brought two trade secret misappropriation claims for its object and scene files. The FAC adds two additional claims separately alleging misappropriation of the compilations of its object and scene files. FAC ¶¶ 92-99, 107–113. Defendants bring the same arguments regarding both the individual data files and data file collections.

[5] Princeton's request for judicial notice is GRANTED as to Exhibit 1 (copy of Planner 5D's Terms of Service), Exhibit 2 (copy of cease and desist letter sent on March 14, 2019), and Exhibits 3 and 4 (deposit copies that Planner 5D submitted to Copyright Office). *See* Request for Judicial Notice in Support of Princeton's Motion to Dismiss the Complaints ("RJN") [Dkt. No. 68-1]; *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-cv-7076-LHK,

United States District Court
Northern District of California

1    Taking the factual allegations in the FAC as true, Planner 5D has sufficiently elaborated on
2  both the structural and legal measures it used to protect its data files.  Structurally, it alleges that
3  each object and scene file is "located at a unique, and secret, Internet address on Planner 5D's
4  servers," and that these addresses "are never shown to Planner 5D's users."  FAC ¶ 33 (objects);
5  *id.* ¶ 37 (scenes).  When users wish to select, or move a desired object or scene on their screen,
6  they simply select or manipulate images on the screen, never the underlying data files.  *Id.* ¶ 33.
7  Working in the background, Planner 5D's proprietary software renders the images, invisibly
8  retrieving the required data or scene files from their secret Internet address.  *Id.*  Identification of
9  the secret locations or data files content is "impossible without circumventing Planner 5D's
10 software," such as by "using software developer tools to monitor and intercept communications
11 activity between Planner 5D's software and its European severs."  *Id.*  These methods were
12 prohibited by its Terms of Service.  *Id.* ¶ 40.

13   The Terms of Service prohibited the "use [of] any 'deep-link,' 'page-scrape,' 'robot,'
14 'spider' or other automatic device, program, algorithm or methodology which perform similar
15 functions to access, acquire, copy, or monitor any portion of the Planner5D project."  FAC ¶ 57.
16 They also prohibited "'access[ing]" or "acquir[ing]" the underlying data files, which Planner 5D
17 asserts protected the secrecy of its data files more securely than a standard non-disclosure
18 agreement, which normally binds "parties who have been shown confidential information not to
19 disclose it to others."  *Id.* ¶ 41.

20   Both defendants cite to *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622, 632
21 (E.D. Pa. 2017), to argue that these allegations are insufficient to show that reasonable steps were
22 taken.  Princeton MTD 15; Facebook MTD 13.  There, plaintiff sought to enjoin defendant from

---

2019 WL 2569545, at *4 (N.D. Cal. Jun. 21, 2019) (judicial notice of contract referenced in complaint); *Kao v. Abbott Laboratories Inc.*, No. 17-cv-2790-JST, 2017 WL 5257041, at *3 (N.D. Cal. Nov. 13, 2017) (judicial notice of party's letter that was "explicitly referenced in the complaint"); *Newt v. Twentieth Century Fox Film Corp.*, No. 15-cv-2778-CBM-JPRx, 2016 WL 4059691, at *2–3 (C.D. Cal. Jul. 27, 2016)  (judicial notice of deposit copies of works at issue).

However, as addressed above, the remainder of Princeton's request as to Exhibits 5 through 14 is improper and is therefore DENIED.

selling coin counting machines that included its purported trade secret software. *Arkeyo*, 342 F. Supp. 3d at 625. After holding an evidentiary hearing to address plaintiff's motion for preliminary injunction, the court decided that plaintiff had not done enough because it published a full set of its software on the internet without employing any of the industry standard protections for its source code, such as "encryption, password protection, code obfuscation, confidentiality provisions, or require users to abide by any terms of use for its software." *Id.* at 631. Instead, plaintiff "committed the cyber equivalent of leaving its software on a park bench" because it posted its software on the internet and "made it publicly available to anyone who simply typed the 'new_software' URL into a web browser, without taking any affirmative measure to prevent others from using its proprietary information." *Id.* (citation omitted).

The same cannot be said here, at least at the pleadings stage. Unlike *Arkeyo*, where the "[t]he URL was guessable to anyone who wanted to access the zip file because [plaintiff] did not take the basic precaution of giving the URL a random name," Planner 5D alleges that it used a hard-to-guess URL and imposed restrictive terms of service. *Arkeyo*, 342 F. Supp. 3d at 630; Oppo. Facebook MTD 14; *see* FAC ¶¶ 33 (object files were located at "a unique, and secret Internet address on Planner 5D's servers); *id.* ¶ 37 (same allegation as to scene files); *id.* ¶ 45 (Planner 5D's combined effect of structural and legal barriers "consistently walls off both the location and content of the trade secrets at issue here, and under its Terms of Service, separately prohibits circumventing these protections via crawling, scraping, or otherwise accessing its data files"). These specific allegations fix the decencies in the previous Complaint.[6]

### B. Alleged Improper Means

In its original Complaint, Planner 5D did not "explain how Princeton's 'crawling' and 'scraping' constitute improper means given the protective 'structure' of its website." *Planner 5D*, 2019 WL 6219223, *11. As discussed above, it has now sufficiently explained the protective structure of its website. It also explains, to the extent that it can, how Princeton bypassed the

---

[6] In its opposition, Planner 5D claims that it also used the encrypted "https" protocol, but that allegation does not appear in the FAC. Oppo. Facebook MTD 14. Regardless, the allegations discussed above are sufficient at this stage.

structure of its website to scrap the data files.

The *Twombly* standard permits allegations on information and belief where: (1) "the facts are peculiarly within the possession and control of the defendants"; or (2) "the belief is based on factual information that makes the inference or culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Both circumstances are present here. Planner 5D alleges that it "will need discovery to determine the precise means by which Princeton scraped [its] data files," but provides several allegations that make the inference that Princeton improperly acquired the data files plausible. FAC ¶ 56. It describes a "multi-step plan" that it believes Princeton executed in order to pierce its software protections and acquire the data:

> First, "using software developer tools, Princeton or its agents monitored and intercepted communications activity between Planner 5D's software and its European servers. Through this monitoring and interception, Princeton extracted key information pointing it to the secret locations of all data files on Planner 5D's servers. Princeton then wrote its own data-harvesting software that drew on the stolen Internet address information to allow it to crawl and scrape the entirety of Planner 5D's then-existing data files.

*Id.*

The "data scraping techniques" Princeton allegedly used to acquire the data files violated prohibitions in the Terms of Service against using any "'page-scrape,' 'robot,' 'spider[,]' or other automatic device . . . to access, acquire, copy, or monitor any portion of the Planner5D project." FAC ¶ 57. Thus, it sufficiently alleges that "[b]ecause Planner 5D's website hid the locations and contents of its data files, and because Princeton had to design and deploy hacking software to obtain this information, Princeton knew or should have known that Planner 5D intended for the data files to remain confidential." FAC ¶ 59. The Terms of Service prohibited what it alleges Princeton did. *Id.* ¶¶ 55–61.

Planner 5D has also elaborated, to the extent that it can, its allegation that Facebook knew or should have known that Princeton improperly acquired data files from it. As with the precise means that Princeton took to acquire the data files, Planner 5D contends that only Facebook and Princeton know Facebook's precise involvement in Princeton's scraping of its data. But it details "many close connections" between Facebook and Princeton that make Facebook's participation

plausible. FAC ¶ 70.

Planner 5D alleges that "Dr. Shuran Song, a Princeton Ph.D student and co-author of several of the articles describing Princeton's downloading of Planner5D's data, has been a recipient of 'a Facebook Fellowship,' according to an article she and five other Princeton scientists authored." FAC ¶ 70 (citing Shuran Songet al., *Semantic Scene Completion from a Single Depth Image* 9 (Proceedings of IEEE Conference on Computer Vision and Pattern Recognition 2017), https://arxiv.org/pdf/1611.08974v1.pdf). In that article, Dr. Song acknowledges that the research "makes use of data from Planner 5D" and that she is "supported by a Facebook Fellowship." *Id.* Planner 5D also points out that "[a]nother scene-recognition researcher, Manolis Savva, who co-authored multiple articles with Princeton's Shuran Song discussing Princeton's harvesting of Planner 5D's data for use in the SUNCG dataset, is a visiting researcher at Facebook and a lead researcher at Facebook's AI Habitat computer-vision project." FAC ¶ 71. Thus, it alleges that "[o]ne of Facebook's leading scene-recognition researchers was [] a co-author of the very articles detailing Princeton's acquisition and harvesting of Planner 5D's data for use in the SUNCG dataset." *Id.* It also notes that the SUNCG dataset that Facebook had been using included files that still bore Planner 5D's registered trademark: <PLANNER 5D>. *Id.* ¶ 72.

> Altogether, Facebook's close association with Princeton is summarized as follows: Shuran Song and Manolis Savva; its "generous support" of Princeton's Vision & Robotics Department; its copying and extensive use of a dataset that still includes Planner 5D's registered trademark; and its co-sponsorship with Princeton of the SUMO Challenge, all strongly suggest that Facebook had actual knowledge, and at the very least reason to know, that the SUNCG dataset contained proprietary information belonging to Planner 5D, and that Princeton—which could not have shown Facebook any authorization for its use of that information, since it lacked any—had acquired the SUNCG dataset by improper means, and under circumstances giving rise to a duty to maintain the secrecy, and limit the use, of that data.

FAC ¶ 73. This makes the inference that "researchers then affiliated with Facebook knew of, supported, participated in, and benefitted from . . . Princeton's [scene-recognition] research, including the scraping and exploitation of Planner 5D's data" plausible. FAC ¶ 74.

Planner 5D sufficiently pleads the reasonable steps it took to protect its data files and specifically alleges, to the extent that it can at this stage, the misappropriation as to each Princeton

1   and Facebook.  The motions to dismiss the trade secret misappropriation claims are DENIED.

## III.     MOTIONS TO SEAL

Courts generally apply a "compelling reasons" standard when considering motions to seal documents related to a dispositive motion.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).  "[A] strong presumption in favor of access is the starting point."  *Kamakana*, 447 F.3d at 1178 (quotations omitted).  To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events."  *Id.* at 1178–79 (quotations omitted).  Protecting a trade secret is one such "compelling reason."  *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008).

Civil Local Rule 79-5 supplements the "compelling reasons" standard.  The party seeking to file under seal must submit "a request that establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law" and "[t]he request must be narrowly tailored to seek sealing only of sealable material."  Civil L.R. 79-5(b).

Planner 5D seeks to seal portions of the Englund Declaration in support of Princeton's request for judicial notice, as well Exhibits 10 through 14 attached to that declaration.  Administrative Motion for Leave to File Material Related to the Motion by the Trustees of Princeton University to Dismiss the Complaints Under Seal [Dkt. No. 70]; Plaintiff's Notice of Declaration in Support of the Trustees of Princeton University's Administrative Motion to File Under Seal ("Fitton Decl.") [Dkt. No. 72].  Paragraphs 14 through 20 of the Englund Declaration describe a purported method of accessing Planner 5D's files and Exhibits 10 through 14 were generated during that course.

In particular, Exhibits 11 and 13 of the Englund Declaration contain URLs at which its scene and object files are located, which Planner 5D contends contain its trade secrets.  Fitton Decl. 1.  Exhibits 12 and 14 reflect the contents of JavaScript Object Notation ("JSON") files for a

15

1   scene and an object, respectively, which also contain its trade secrets. *Id.* It claims that revealing
2   to the public these trade secret URLs and JSON files, as well as a purported method of accessing
3   them, would be damaging to its business. *Id.*

4   Planner 5D also seeks to file under seal portions of its opposition to Princeton's request for
5   judicial notice and opposition to Princeton's motion to dismiss which discuss the same material.
6   Planner 5D's Demonstrative Motion Under Civil L.R. 7-11 & 79-5 to File Provisionally
7   Confidential Information Under Seal [Dkt. No. 75]. Particularly, it only seeks to seal page 4, lines
8   10 through 19, of its opposition to Princeton's request for judicial notice; and page 14, line 6,
9   through page 16, line 4, of its opposition to Princeton's motion to dismiss.

10   Planner 5D has shown a compelling reason to keep the materials sealed. *See Apple Inc. v.*
11   *Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) ("The publication of materials that could
12   result in infringement upon trade secrets has long been considered a factor that would overcome
13   this strong presumption."); *In re Adobe Sys., Inc. Sec. Litig.*, 141 F.R.D. 155, 161-62 (N.D. Cal.
14   1992) (compelling reasons can include the need to preserve a party's "legitimate expectation that
15   confidential business information, proprietary technology and trade secrets will not be publicly
16   disseminated"). Both requests are also narrowly tailored to seek sealing only of sealable material.
17   Civil L. R. 79-5(b).

18   The motions to file under seal are GRANTED without prejudice to defendants' argument
19   that the alleged data files do not qualify as trade secret under DTSA or CUTSA.[7]

## CONCLUSION

21   Princeton's and Facebook's motions to dismiss the trade secret misappropriation claims are
22   DENIED, but their motions to dismiss the copyright infringement claims are GRANTED. I will
23   give Planner 5D 30 days leave to amend its copyright infringement claims so that it has the
24   opportunity to fix the registration problem. However, its copyright infringement claim as to the

---

[7] As noted above, I do not take judicial notice of Exhibits 5 through 14 of the Englund Declaration, but, for purposes of keeping Exhibits 10 through 14 on the court's docket, I find that they should remain sealed.

16

Object Compilation is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: July 24, 2020



William H. Orrick
United States District Judge