| | |
|---|---|
| 1 | MARC N. BERNSTEIN (SBN 145837) |
|   | mbernstein@blgrp.com |
| 2 | WILL B. FITTON (SBN 182818) |
|   | wfitton@blgrp.com |
| 3 | THE BUSINESS LITIGATION GROUP, P.C. |
|   | 150 Spear Street, Suite 800 |
| 4 | San Francisco, CA 94105 |
|   | Telephone: 415.765.6633 |
| 5 | Facsimile: 415.283.4804 |
| 6 | Attorneys for Plaintiff |
|   | UAB "PLANNER5D" |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" dba PLANNER 5D, | **Case No. 3:19-cv-03132-WHO** |
| | **Case No. 3:20-cv-02198-WHO** |
| Plaintiff, | **Case No. 3:20-cv-08261-WHO** |
| v. | **PLANNER 5D'S OPPOSITION TO THE DISMISSAL MOTION OF THE TRUSTEES OF PRINCETON UNIVERSITY, FACEBOOK INC., AND FACEBOOK TECHNOLOGIES, LLC** |
| FACEBOOK INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20, and XYZ UNIVERSITIES 1-20. | |
| | Judge: Honorable William H. Orrick |
| Defendants. | Courtroom: 2, Seventeenth Floor |
| | Hearing Date: March 31, 2021 |
| | Hearing Time: 2:00 p.m. |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 1

    A. Court and Copyright Office Proceedings to Date ..................................................... 1

    B. The Copyright Office Reconsideration Process ........................................................ 3

III. LEGAL STANDARDS ......................................................................................................... 3

IV. ARGUMENT ......................................................................................................................... 4

    A. By Its Own Terms, Section 411(a) Has Now Been Satisfied, Allowing This Case to Proceed. ................................................................................................. 4

        1. Defendants' Proposed Rule Contravenes Both Section 411(a) and *Fourth Estate*. ................................................................................... 5

        2. This Court Must Independently Determine Copyrightability. .................... 6

        3. Dismissal Pending Reconsideration Would Be Bad Policy ....................... 8

            a. Dismissal Would Unnecessarily Delay Copyright Enforcement and Chop Years Off Copyright Holders' Three-Year Statute of Limitations. .................................................. 8

            b. Dismissal Would Defeat the Defendants' Own Justification for Their Proposed Rule ............................................... 9

    B. A Stay Would Also Be Improper. ............................................................................ 10

    C. Defendants' Prejudice Arguments Are Unavailing. ................................................ 11

        1. Neither the Court nor Defendants Face Prejudice. ................................... 11

        2. The Copyright Office Does Not Face Prejudice. ...................................... 12

V. CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Aqua Creations USA Inc. v. Hilton Hotels Corp.*,
  No. 10-cv-246, 2011 WL 1239793 (S.D.N.Y. Mar. 28, 2011) .................................................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 4

*Astiana v. Hain Celestial Group, Inc.*,
  783 F.3d 753 (9th Cir. 2015) ................................................................................................. 10

*Atari Games Corp. v. Oman*,
  888 F.2d 878 (D.C. Cir. 1989) ................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 3

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) ......................................................................................................*passim*

*Games Workshop Ltd. v. Chapterhouse Studios, LLC*,
  No. 10-C-8103, 2013 WL 1340559 (N.D. Ill. Apr. 1, 2013) ................................................. 11

*Hoberman Designs, Inc. v. Gloworks Imports, Inc.*,
  No. CV 14-6743 DSF (SHX), 2015 WL 10015261 (C.D. Cal. Nov. 3, 2015) ......................... 7

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 19-MD-02913-WHO, 2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) .............................. 10

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
  755 F.3d 1038 (9th Cir. 2014) ................................................................................................. 7

*Krommenhock v. Post Foods, LLC*,
  No. 16-cv-04958-WHO, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ................................. 4

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ................................................................................................. 4

*Nova Stylings, Inc. v. Ladd*,
  695 F.2d 1179 (9th Cir. 1983) .................................................................................... 7, 10, 11

*Pension Benefit Guar. Corp. v. Carter & Tillery Enters.*,
  133 F.3d 1183 (9th Cir. 1998) ................................................................................................. 9

*Proline Concrete Tools, Inc. v. Dennis*,
  No. 07-cv-2310-LAB (AJB), 2013 WL 12116134 (S.D. Cal. Mar. 28, 2013) ............... 6, 10, 11

*Rhoades v. Avon Prods., Inc.*,
  504 F.3d 1151 (9th Cir. 2007) ..................................................................................... 8, 10, 11

*Schimsky v. U.S. Off. of Pers. Mgmt.*,
  403 F. App'x 150 (9th Cir. 2010) ............................................................................................ 9

*Sharber v. Spirit Mountain Gaming Inc.*,
  343 F.3d 974 (9th Cir. 2003) ................................................................................................. 9

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
  307 F.3d 775 (9th Cir. 2002) ................................................................................................. 9

*Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*,
  260 F.2d 637 (2d Cir. 1958) .................................................................................................. 5

*Ward v. Nat'l Geographic Soc'y.*,
  208 F. Supp. 2d 429 (S.D.N.Y. 2002) ................................................................................ 6, 7

**Statutes and Regulations**

17 U.S.C. § 408(f)(2) .............................................................................................................. 12,13

17 U.S.C. § 411(a) ................................................................................................................. *passim*

17 U.S.C. § 507 ............................................................................................................................ 8

28 U.S.C. § 517 .......................................................................................................................... 13

37 C.F.R. § 202.16(b) ........................................................................................................... 12, 13

37 C.F.R. § 202.5(b)(3) .......................................................................................................... 3, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 3

H.R. Rep. 94-1476 ....................................................................................................................... 5

S. Rep. No. 94-473 ....................................................................................................................... 5

U.S. Copyright Office,
  Compendium of U.S. Copyright Office Practices (3d ed. 2021) ........................................ 3,7

5 Patry on Copyright § 17:103 .................................................................................................... 7

## I. INTRODUCTION

Princeton scraped and disseminated, and Facebook exploited, over 48,000 hand-crafted interior design files belonging to Planner 5D. According to Princeton's own scientists, these files were the key to teaching computers to recognize interiors. They have called the files unique in all the world in their size and quality, and declared them the solution to a longstanding bottleneck in computer vision research. Those with access to these files can tap into the expected $60 billion scene-recognition market. Given these stakes, it's perhaps unsurprising Princeton and Facebook would seize any procedural tool at hand to avoid the merits.

And so Defendants now seek another substantial case delay. This time they press the novel theory that, though the Copyright Office has now acted on Planner 5D's re-filed applications, the Court must wait another one to two *years* while the Copyright Office reconsiders its registration decision.

But no authority supports Defendants' theory. The sole authority they cite, *Fourth Estate*, refutes it. *Fourth Estate* held that section 411(a) of the Copyright Act, 17 U.S.C. § 411(a), authorizes suit as soon as the Copyright Office "acts" on an application—whether that action is a registration or a refusal. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888–89 (2019). Whether the Copyright Office stamps "registered" or "refused" in applicants' passports, the courthouse doors are now open to them.

Here, the Copyright Office stamped Planner 5D's passport "refused." On reconsideration, the Office may change its stamp to "registered," or it may leave the "refused" stamp intact. Either way, Planner 5D will still have satisfied section 411(a)'s requirement that its passport bear a stamp.

It's time for this case to proceed to the merits.

## II. BACKGROUND

### A. Court and Copyright Office Proceedings to Date

Planner 5D sued Facebook and Princeton in June 2019. (Dkt. 1.) Defendants moved to dismiss, contending that Planner 5D's works, though authored in Eastern Europe, required

1

1  U.S. registration before suit. (Dkt. 31 & 33.) The Court granted dismissal, with leave to re-file
2  after registration. (Dkt. 52.)
3        Planner 5D then submitted copyright registration applications to the Copyright Office,
4  one for its "Objects" work and one for its "Scenes" work. (Dkt. 76-2.) The Office granted
5  both applications and issued registration certificates for the two works. (Case No. 20-cv-2198
6  ("2198") Dkt. 1-1.)
7        Accordingly, Planner 5D re-filed this action for copyright infringement. (2198 Dkt. 1.)
8        Defendants again moved to dismiss, arguing, among other things, that Planner 5D's
9  registrations did not, as Planner 5D had intended, cover the 2016 works Defendants copied,
10 but only works from 2019. (Dkt. 68 & 69.) The Court again dismissed the copyright claims
11 with leave to amend, ruling that Planner 5D could reapply to separately register just those
12 parts of its works completed by 2016. (Dkt. 90 at 8:1-9.)
13       Planner 5D did so. In September 2020, it submitted two new applications to the
14 Copyright Office, one for Object files created through early 2016, and the other Scene
15 compilations from that period. (Case No. 20-cv-08261 ("8261") Dkt. 1 ¶ 95.) Four days later,
16 the Copyright Office issued refusals for each application. (*Id.* ¶ 98; 8261 Dkt. 1-1 at 6-8, 11-
17 12.) Four days after that, the Copyright Office's General Counsel offered to provide
18 Planner 5D with further guidance on registering its works. (8261 Dkt. 1 ¶ 98) After further
19 exchanges regarding Planner 5D's applications, on November 16, 2020, the Copyright Office
20 issued new refusals for both applications, primarily on the basis that the deposited portions of
21 Planner 5D's works were not source code. (*Id.* ¶¶ 99-101; 8261 Dkt. 1-1 Ex. A at 2-4.) In the
22 refusals, the Copyright Office made clear that Planner 5D had satisfied the requirements of 17
23 U.S.C. § 411(a) for bringing an infringement action: "Although the Registration Program
24 Office has concluded that the deposits submitted with these applications do not meet the
25 requirements for registering a work as a computer program, you have delivered to the Office a
26 deposit, application, and fee required for registration of the computer programs 'in proper
27 form,' as required to institute a civil action for infringement under 17 U.S.C. § 411(a)." (8261
28 Dkt. 1 ¶ 102.)

Last November, with this Copyright Office action in hand, Planner 5D refiled the present infringement action. (8261 Dkt. 1.) *See* 17 U.S.C. § 411(a) (permitting commencement of a civil action upon either registration or refusal).

On January 4, 2021, Princeton counsel called Planner 5D's counsel and pressed for a commitment on whether Planner 5D would seek reconsideration in the Copyright Office of the registration refusals. (Declaration of Marc N. Bernstein ¶ 2.) Counsel for Planner 5D confirmed in that call, and again in response to further defense inquires on the same question over the next week and a half, that Planner 5D did plan to seek reconsideration. (*Id.* ¶¶ 2-3.) Defendants jointly filed the present motion on February 2, 2021. (Dkt. 105.) On February 16, Planner 5D timely submitted a Request for Reconsideration to the Copyright Office. (Bernstein Decl. ¶ 3.)

(Planner 5D also filed trade secrets claims against Defendants. These were sustained over Defendants' latest pleadings challenge, and Defendants have filed Answers to the trade secret claims. (Dkt. 101 & 102.))

### B.     The Copyright Office Reconsideration Process

Copyright owners who are refused registration may request reconsideration within three months. 37 C.F.R. § 202.5(b)(3). A Registration Program staff attorney not involved in the initial examination conducts the reconsideration review. U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1703.02 (3d ed. 2021). If the staff attorney upholds the refusal, the applicant may seek further review by the Copyright Office Review Board. (*Id.* § 1704.1) The process is lengthy. In the last few years, reconsideration has averaged 17 months. (*See* Declaration of Natalia Ermakova ¶ 4 & Ex. A (last row).) Sometimes it takes closer to two years. (*See, e.g., id.* Ex. A (sixth column).)

## III.    LEGAL STANDARDS

Complaints must state claims permitting relief. Fed. R. Civ. P. 12(b)(6). They must allege facts sufficient to make claims "plausible on [their] face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facially plausible claims are those with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts weighing 12(b)(6) dismissal "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO, 2018 WL 1335867, at *3 (N.D. Cal. Mar. 15, 2018) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

## IV.   ARGUMENT

### A.   By Its Own Terms, Section 411(a) Has Now Been Satisfied, Allowing This Case to Proceed.

Planner 5D has now indisputably satisfied all of section 411(a)'s prerequisites for suit: (1) submission of its applications to the Copyright Office in proper form (8261 Dkt. 1 ¶ 102); (2) Copyright Office registration or refusal (*id.*); and (3) service of the lawsuit on the Register of Copyrights (Dkt. 106).

The Copyright Office itself has declared Planner 5D's pre-suit work is done:

> Although the Registration Program Office has concluded that the deposits submitted with these applications do not meet the requirements for registering a work as a computer program **you have delivered to the Office a deposit, application, and fee required for registration of the computer programs 'in proper form,' as required to institute a civil action for infringement under 17 U.S.C. § 411(a)**.

(8261 Dkt. 1 ¶ 102 (emphasis added).)

The Office did not condition this conclusion on Planner 5D forgoing reconsideration. It did not say: "You have completed the prerequisites to suit—as long as you skip your appeal."

The Copyright Office was correct. All prerequisites to suit have now been satisfied. The Court should reject Defendants' novel theory that it must *further* delay this case pending reconsideration. As we now show, such an outcome (1) is contrary to law, including both section 411(a) and *Fourth Estate*; (2) conflates the Copyright Office's *registrability* determination with district courts' inquiry into *copyrightability*; and (3) would work terrible policy consequences.

### 1. Defendants' Proposed Rule Contravenes Both Section 411(a) and *Fourth Estate*.

By its plain terms, section 411(a) authorizes civil litigation upon either registration or refusal. The statute does not say that the right to sue is suspended by pendency of internal Copyright Office review. Nor do Defendants cite a single legal authority supporting their novel theory. There are none. Neither the text nor the history of section 411(a) supports it; and *Fourth Estate* flat-out refutes it.

*Fourth Estate* held that "action by the Copyright Office—namely, its registration or refusal to register"—hands copyright holders the key to the courthouse. *Fourth Estate,* 139 S. Ct. at 887, 888–89. As Justice Ginsburg explained, the "refusal" language in section 411(a) was enacted in response to *Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.,* 260 F.2d 637 (2d Cir. 1958) (Hand, J.). *See Fourth Estate*, 139 S. Ct. at 890; *see also* H.R. Rep. 94-1476, at 157 (1975) (noting that section 411(a) would alter the law as interpreted in *Vacheron*); S. Rep. No. 94-473, at 139–40 (1975) (same).

In *Vacheron*, Judge Learned Hand held that copyright owners who are refused registration must bring a separate *mandamus* action against the Register to obtain a registration certificate before initiating an infringement suit. *Vacheron*, 260 F.2d at 640-41. To prevent the "lengthy delay in the Copyright Office" that this would entail, Congress changed the law "to permit an infringement suit upon refusal of registration." *Fourth Estate*, 139 S. Ct. at 891 n.5. Section 411(a) remains focused on "Copyright Office *action* as the trigger for an infringement suit." *Id.* (emphasis added). But now, that "action" may be either registration or refusal. *Id.* at 888-89, 891.

Defendants' theory—that infringement litigation must await Copyright Office reconsideration—would recreate the very problem section 411(a) was enacted to solve: it would replace a lengthy *mandamus* proceeding with a lengthy *reconsideration* process. It is also inconsistent with *Fourth Estate's* characterization of section 411(a) as relatively quick to satisfy.

*Fourth Estate* recognized that section 411(a) was meant to assure a clear and relatively quick path to court for copyright holders facing active infringers. *Id.* at 891. The Court emphasized that the bright line section 411(a) draws at Office "action," of one kind or the other, preserves copyright owners' remedies against active infringers. *Id.* at 891. To sue such infringers, copyright owners "must simply apply for registration and receive the Copyright Office's decision on her application." *Id.* Judicial remedies are available "[o]nce the Register grants or refuses registration." *Id. Fourth Estate*'s discussion of processing times demonstrates it anticipated a relatively quick turnaround for copyright applications, and not the potentially years-long reconsideration process that Defendants' advocate putting copyright holders through before they are allowed to sue. *Id.* at 892 & fn.6. (*See* Ermakova Decl. Ex. A.)

In all these ways, *Fourth Estate* contradicts Defendants' proposal to import a finality requirement into section 411(a). Such a requirement would threaten copyright plaintiffs with dismissal of their lawsuits and erosion of their limitation periods pending the distant outcome of internal Copyright Office review.

### 2. This Court Must Independently Determine Copyrightability.

In arguing that the Court must await the Register's reconsideration to adjudicate this infringement action, Defendants' premise is that "the plaintiff must convince the Court that the Office's refusal was erroneous." (Dkt. 105 at 2:8-10.) This is simply false. Infringement plaintiffs do *not* need to show the Office's refusal was erroneous. *Ward v. Nat'l Geographic Soc'y.*, 208 F. Supp. 2d 429, 444-45 (S.D.N.Y. 2002). Rather, an infringement suit under 411(a) "leaves the Register's refusal to register the copyright claim intact." *Proline Concrete Tools, Inc. v. Dennis*, No. 07-cv-2310-LAB (AJB), 2013 WL 12116134, at *2 (S.D. Cal. Mar. 28, 2013).

District courts make their own, "independent determination as to copyrightability." *Id.* at *4 (quoting *Aqua Creations USA Inc. v. Hilton Hotels Corp.*, No. 10-cv-246, 2011 WL 1239793, at *7 (S.D.N.Y. Mar. 28, 2011)). The district court's ruling on copyrightability may,

*as an incidental matter,* indicate that registration should have been granted. *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1181 (9th Cir. 1983). But that is not its objective. Under section 411(a) "a party may now sue for infringement *notwithstanding* the refusal of the Register to register the claim to copyright." *Id.* (emphasis added). "The *only* precondition is that notice be served on the Register." *Id.* (emphasis added).

Accordingly, despite Defendants' attempt to blur registrability in the Copyright Office with copyrightability in an infringement case, the two are distinct inquiries serving distinct purposes. "Registrability" is "the province of the Copyright Office" while "copyrightability" is "the province of the courts." 5 *Patry on Copyright* § 17:103. Registration does include a copyrightability determination, but it is a less searching one than in an infringement action. *See Ward*, 208 F. Supp. 2d at 446 (quoting *Atari Games Corp. v. Oman*, 888 F.2d 878, 887, (D.C. Cir. 1989)). Registration also involves issues "relating solely to registration formalities," which have no impact in an infringement action. *Ward*, 208 F. Supp. 2d at 448 ("It is inconceivable that Congress intended simultaneously to grant applicants the right to institute an infringement action despite refusal of registration and to allow defects relating solely to registration to defeat these same infringement actions when an applicant potentially possesses a valid copyright.").

Moreover, courts in the Ninth Circuit defer to Office copyrightability determinations only if persuasive. *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042 (9th Cir. 2014). The evidentiary weight accorded to a copyright certificate is a matter of court discretion. *Hoberman Designs, Inc. v. Gloworks Imports, Inc.*, No. CV 14-6743 DSF (SHX), 2015 WL 10015261, at *3 (C.D. Cal. Nov. 3, 2015). Copyright Office registrability determinations are not precedential, even within the Office itself. Compendium (Third) § 309.3(A) ("A decision to register a particular work has no precedential value and is not binding upon the Office when it examines any other application.").

In short, this Court is not reviewing the Copyright Office's refusal to register. This case is not an appeal or an APA action, where it makes sense to get the lower court's or the agency's full and final reasoning before evaluating whether its decision was right or wrong.

7

Defendants' contrary suggestion is simply incorrect. (*See* Dkt. 105 at 2:8-10.) Because the district court makes an independent determination on copyrightability, it is not critical that the Copyright Office's views be fully developed before the action can proceed.

### 3. Dismissal Pending Reconsideration Would Be Bad Policy.

Practically speaking, Defendants' rule of delay would put copyright applicants to the choice of filing an infringement lawsuit or seeking Copyright Office reconsideration, but not both. If accepted, this rule would add years to the resolution of copyright cases, depriving authors of timely resolution of their claims. It would also bite heavily into statute-of-limitations periods. Given these choices, many, if not most, copyright holders facing infringement will simply forgo reconsideration altogether, depriving both themselves and the courts of further Copyright Office analysis. Defendants' proposed rule is thus not just bad law, but also bad policy.

#### a. Dismissal Would Unnecessarily Delay Copyright Enforcement and Chop Years Off Copyright Holders' Three-Year Statute of Limitations.

Copyright owners would be greatly burdened by a rule requiring dismissal of infringement suits pending internal Copyright Office reconsideration. They would be deprived of prompt remedies against active infringers. And they would lose months or years of their three-year statute-of-limitations period. *See* 17 U.S.C. § 507(b). As noted above, the Copyright Office's reconsideration process averages 17 months, and can take close to two years. (*See* Ermakova Decl. Ex. A.) This is in addition to the time needed for the original application, which *Fourth Estate* noted could take seven months. *Fourth Estate*, 139 S. Ct. at 892. Especially without a clear statutory or precedential basis, this Court should decline such a drastic departure from the status quo.

The Ninth Circuit has disapproved dismissal of trademark or copyright cases on the ground that the subject mark or work remains under PTO or Copyright Office review, at least in cases, like this one, that seek remedies against an *infringer* rather than an order of registration or cancellation against an *agency*. *See, e.g., Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1164-65 (9th Cir. 2007) (reversing as an abuse of discretion a district court's

dismissal of a trademark infringement action, where "Congress has not installed the PTO as the exclusive expert in the field," and despite the "potential for overlapping litigation," because the "federal courts are particularly well-suited to handle the [trademark infringement] claims"; contrasting district court infringement actions from actions that *only* seek review of registration determinations. "It would waste everyone's time not to settle the registration issue now[, in district court].");  *cf. Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (discretionarily staying suit because, "in contrast to the typical lawsuit, in which the validity of the underlying *copyright*, not the validity of the *registration*, is in dispute," there, *Syntek* sought only invalidation a Copyright Office registration) (emphasis added).

The Ninth Circuit also frowns on dismissals that would significantly encroach on plaintiffs' statute of limitations periods. *See, e.g., id.*, 307 F.3d at 782 (copyright case); *Sharber v. Spirit Mountain Gaming Inc.*, 343 F.3d 974, 976 (9th Cir. 2003) (per curium); *Pension Benefit Guar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1187 (9th Cir. 1998); *Schimsky v. U.S. Off. of Pers. Mgmt.,* 403 F. App'x 150, 152 (9th Cir. 2010) (non-precedential).

Here, a policy permitting dismissal pending reconsideration could cost copyright holders a year-and-a-half to two years of their three-year statutory period. That is a significant encroachment. In many cases it will be a dispositive one.

The Court should decline to adopt a dismissal rule that would unnecessarily delay copyright holders' enforcement rights while significantly eroding their limitations periods.

### b.   Dismissal Would Defeat the Defendants' Own Justification for Their Proposed Rule.

Dismissal pending reconsideration would undermine Defendants' own stated purpose of giving the Court the benefit of the Copyright Office's further thinking. Given the harms from delay discussed above, many if not most copyright holders, confronting Defendants' proposed Hobson's choice, will forgo reconsideration altogether, and simply file suit instead. Courts will then lose out on the very Copyright Office assessment Defendants say their rule is

meant to preserve. The better rule is the one announced in *Fourth Estate* and found in 411(a)'s text: suits may commence upon the Copyright Office's initial "action," whether a registration or refusal.

\* \* \* \*

In sum, Defendants' proposed rule lacks textual support in the statute, directly contravenes *Fourth Estate*, and would be bad and even self-defeating policy. Further, regardless of the Copyright Office's registration decision, the Court must make an independent determination of copyrightability and infringement. For these reasons the Court should deny Defendants' motion.

### B.   A Stay Would Also Be Improper.

Defendants have not suggested a stay as an alternative to outright dismissal. But a stay would also be unwise here, and would cause unnecessary prejudice to Planner 5D.

As noted, this case has been pending 21 months. If forced to wait for the Copyright Office reconsideration process, the case could be delayed another year or two. (*See* Ermakova Decl. at ¶ 4 & Ex. A (sixth column & last row).) No matter what the Office decides on reconsideration, this Court will still have the last—and independent—word on copyrightability. *See Proline*, 2013 WL 12116134, at \*4; *Nova Stylings*, 695 F.2d at 1181.

The Court declined a stay in similar circumstances in *JUUL Labs*. In determining whether to issue a stay pending FDA determination of an overlapping issue, the Court asked whether a stay would "needlessly delay the resolution of claims," noting that "'efficiency' is the 'deciding factor.'" *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2020 WL 6271173, at \*6 (N.D. Cal. Oct. 23, 2020) (citing *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Rhoades*, 504 F.3d at 1165)). The Court concluded that the inevitability of significant delay and the work the Court would still have to do even after the FDA's determination created inefficiencies that weighed against staying the case. *Id.* So here. Regardless of the Copyright Office's determination on reconsideration, the Court will still have to make an independent determination of copyrightability and infringement—issues courts and juries are equipped to

1  address. The efficient path is for the Court to proceed with this lawsuit. *Id.* (citing *Rhoades*,
2  504 F.3d at 1164-65 (district court abused its discretion in declining to hear trademark
3  infringement action in favor of parallel PTO TTAB proceeding because district court could
4  more quickly and efficiently determine the parties' rights)).

5      The same considerations that were determinative in *JUUL Labs* and *Rhoades* also
6  apply here. To promote efficiency toward a determination that this Court will ultimately have
7  to make for itself anyway, the Court should not stay the case but should let it proceed to the
8  merits.

    **C.**    **Defendants' Prejudice Arguments Are Unavailing.**

    **1.**    **Neither the Court nor Defendants Face Prejudice.**

11   Defendants contend that parallel proceedings in court before the Copyright Office has
12  issued its "considered judgment" in a "final registration decision" would prejudice them and
13  the Court, and waste judicial resources. (Dkt. 105 at 12:1-23 (Court's prejudice), 13:25-14:18
14  (Defendants' prejudice).) These concerns are unfounded.

15      As explained above, Defendants misapprehend the differences between the Court's
16  and the Copyright Office's roles here. The Court makes an independent determination of
17  copyrightability and infringement. *Proline*, 2013 WL 12116134, at *4; *Nova Stylings*, 695
18  F.2d at 1181.

19      Also, assuming Defendants do raise the issue of copyrightability, it will be some time
20  before the Court addresses it. The pleading phase of Planner 5D's copyright case is drawing
21  to a close. The Court will not likely consider questions such as copyrightability until after
22  discovery. That is likely a long way off. The Copyright Office may have made its
23  reconsideration determination by then.

24      And in any event, if necessary or desirable, the Court and the parties can consider and
25  incorporate Copyright Office actions as they come in, even if later in the case. *See*, *e.g.*,
26  *Games Workshop Ltd. v. Chapterhouse Studios, LLC*, No. 10-C-8103, 2013 WL 1340559, at
27  *4 (N.D. Ill. Apr. 1, 2013) (denying motion for reconsideration of summary judgment ruling
28  after Copyright Office's recent decision not to register because "even were the Court to afford

some deference to the Copyright Office's decision . . . the Court still would conclude that GW has crossed the modest threshold of creativity needed to obtain copyright protection").

Indeed, such later-arriving Copyright Office determinations are explicitly contemplated by section 411(a) in the context of preregistrations. 17 U.S.C. § 411(a) ("no civil action for infringement . . . shall be instituted until preregistration").

Preregistration opens the courthouse doors to certain copyright owners to stop infringers before the Copyright Office has made a registration determination. Only certain types of works that have a history of infringement prior to release, such as films and songs, qualify for preregistration. 17 U.S.C. § 408(f)(2); 37 C.F.R. § 202.16(b)(1). The Copyright Office conducts a limited review of a preregistration application and does not consider the copyrightability of the work. 37 C.F.R. § 202.16(b)(7). And "[t]he fact that a work has been preregistered does not create any presumption that the Copyright Office will register the work upon submission of an application for registration." 37 C.F.R. § 202.16(b)(13).Yet section 411(a) expressly authorizes suit upon preregistration. 17 U.S.C. § 411(a). Thus preregistration applicants are meant to bring suit not just before completion of the reconsideration process, but even before the Copyright Office's initial registration determination. This preregistration regime directly undermines Defendants' contention that courts cannot hear a case until the Copyright Office has completed both registration and reconsideration.

### 2. The Copyright Office Does Not Face Prejudice.

Defendants are also wrong that continuing this case would prejudice the Copyright Office. (*See* Dkt. 105 at 12:25-27; 13:9-11, 16-18.) The Copyright Office is in no different position here than in any other case where it receives a section 411(a) notification after a refusal. Its intervention decision is due 60 days from notice of suit, while the copyright holder's reconsideration decision is not due until, as here, three months from refusal. 37 C.F.R. § 202.5(b)(3). The Office is fully aware of these deadlines, and of the fact that, in cases where the copyright holder files suit soon after refusal, the Office will need to decide whether to intervene before the copyright holder's deadline to seek reconsideration. The Court

should not presume the Copyright Office is incapable of making timely intervention decisions notwithstanding these routine deadlines.

Further, the Copyright Office need not intervene in a case to make its views known. Copyright Office intervention has become quite rare. *See* U.S. Copyright Office, "Copyright Office Filings Under Section 411," https://www.copyright.gov/rulings-filings/411/, last viewed Feb. 20, 2021 (listing just one recent "411(a) case"). Instead, the Office typically files a "statement of interest" at any time to make its views known. 28 U.S.C. § 517; *see, e.g.*, Register's Statement of Interest, *Solovsky v. Delta Galil USA*, No. 14-cv-7289 (S.D.N.Y. July 5, 2016), https://www.copyright.gov/rulings-filings/411/, last viewed Feb. 20, 2021 (explaining that although the Copyright Office declined to intervene within sixty days under section 411(a), it was choosing instead "to assist the Court as an interested nonparty" under section 517).

Defendants' final two points are easily dispatched. Defendants contend this case risks wasting the Copyright Office's resources. They argue that if the Office had intervened and Planner 5D later sought reconsideration, the Office would have to operate in two forums. (Dkt. 105 at 13:18-20.) They also argue that if the Court makes a ruling bearing on the registrability on Planner 5D's work before the Copyright Office resolves Planner 5D's reconsideration request, the Office will need to be revisit any work it has done on the reconsideration. (Dkt. 106 at 13:21-24.) As we've shown, each of these objections is belied by the reality that courts and agencies, including the Copyright Office, routinely engage in parallel proceedings. *See* 17 U.S.C. §§ 408(f)(2), 411(a); 37 C.F.R. § 202.16(b)(1) (allowing infringement suit upon preregistration, and before an application for registration, for certain classes of works). The present case is routine, not remarkable, and the Copyright Office is not prejudiced by it.

## V.    CONCLUSION

For all of these reasons, Planner 5D respectfully request that this Court neither dismiss nor stay this action.

RESPECTFULLY SUBMITTED,

DATED: March 3, 2021                THE BUSINESS LITIGATION GROUP, P.C.


                                    By:    /s/ *Marc N. Bernstein*
                                           Marc N. Bernstein

                                    Attorneys for Plaintiff
                                    UAB "PLANNER5D"