**JENNER & BLOCK LLP**
David R. Singer (Cal. Bar No. 204699)
dsinger@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Phone: (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
Andrew H. Bart (*pro hac vice*)
abart@jenner.com
Jacob L. Tracer (*pro hac vice*)
jtracer@jenner.com
919 Third Avenue, 39th Floor
New York, NY 10022-3908
Phone: (212) 891-1600
Facsimile: (212) 891-1699

Attorneys for Defendant
*The Trustees of Princeton University*

**KIRKLAND & ELLIS LLP**
Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (*pro hac vice*)
johanna.schmitt@kirkland.com
Ari Lipsitz (*pro hac vice*)
ari.lipsitz@kirkland.com
601 Lexington Avenue
New York, NY 10022
Phone: (212) 446-4800

**KIRKLAND & ELLIS LLP**
Diana Torres (Cal. Bar No. 162284)
diana.torres@kirkland.com
2019 Century Park East
Los Angeles, CA 90067
Phone: (310) 552-4200

Attorneys for Defendants
*Facebook, Inc.* and *Facebook Technologies, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.; FACEBOOK TECHNOLOGIES, LLC; THE TRUSTEES OF PRINCETON UNIVERSITY; et al.,<br><br>Defendants. | Case No. 3:19-cv-03132-WHO<br>Case No. 3:20-cv-02198-WHO<br>Case No. 3:20-cv-08261-WHO<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>This Document Relates To:<br>Case No. 3:20-cv-08261-WHO<br><br>Complaint filed: November 23, 2020<br><br>Hearing Date: April 7, 2021<br>Hearing Time: 2:00 p.m.<br>Judge: Honorable William H. Orrick<br>Courtroom: 2 |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.    Planner 5D Has Not Satisfied Section 411(a) Because Its Applications For Copyright Registrations Are Still Pending. ....................................................................................... 3

II.   *Fourth Estate* Rejected The Same Policy Concerns Raised By Planner 5D. ................... 6

III.  Litigating A Case While Reconsideration Is Pending Will Prejudice Defendants, This Court, And The Copyright Office. ................................................................................... 10

    A.    Defendants Will Be Prejudiced. ........................................................................ 10

    B.    The Court Will Be Prejudiced. .......................................................................... 12

    C.    The Copyright Office Will Be Prejudiced. ....................................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                          **Page(s)**

*Abbas v. Vertical Ent., LLC*,
   No. 2:18-cv-7399, 2019 WL 6482229 (C.D. Cal. Aug. 19, 2019) ............................................8

*Beyond Blond Prods., LLC. v. Heldman III*,
   479 F. Supp. 3d 874 (C.D. Cal. 2020) ..................................................................................11

*Cnty. of Santa Clara v. Astra USA, Inc.*,
   401 F. Supp. 2d 1022 (N.D. Cal. 2005) ..................................................................................8

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
   122 F.3d 1211 (9th Cir. 1997) ..............................................................................................11

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000) ..............................................................................................11

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019) ...................................................................................................... *passim*

*Games Workshop Ltd. v. Chapterhouse Studios, LLC*,
   No. 10 Civ. 8103, 2013 WL 1340559 (N.D. Ill. Apr. 1, 2013) .............................................14

*J & J Sports Prods., Inc. v. Dailey*,
   No. 10 Civ. 5510, 2011 WL 3418391 (N.D. Cal. Aug. 4, 2011) .............................................4

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ................................................................................................11

*Marya v. Warner/Chappell Music, Inc.*,
   131 F. Supp. 3d 975 (C.D. Cal. 2015) ..................................................................................11

*Nova Stylings, Inc. v. Ladd*,
   695 F.2d 1179 (9th Cir. 1983) .........................................................................................6, 12

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   923 F. Supp. 1231 (N.D. Cal. 1995) .....................................................................................11

*Rhoades v. Avon Prods., Inc.*,
   504 F.3d 1151 (9th Cir. 2007) ................................................................................................4

*Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) ..........................................................................................4, 13

*UAB "Planner 5D" v. Facebook, Inc.*,
   No. 19-cv-03132, 2020 WL 4260733 (N.D. Cal. July 24, 2020) ............................................11

*UAB "Planner 5D" v. Facebook, Inc.*,
   No. 19-cv-03132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ..........................11, 14

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   959 F.3d 1194 (9th Cir. 2020) ...............................................................................................12

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
   630 F.3d 1255 (9th Cir. 2011) ...............................................................................................11

*Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*,
   260 F.2d 637 (2d Cir. 1958).....................................................................................................6

**Statutes**

37 C.F.R. § 202.5......................................................................................................................10

17 U.S.C. § 408..........................................................................................................................7

17 U.S.C. § 410.............................................................................................................5, 11, 12

17 U.S.C. § 411................................................................................................................ *passim*

28 U.S.C. § 517........................................................................................................................14

**Other Authorities**

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices (3d ed. 2021) .........5, 13

United States Copyright Office, *Annual Report 2019* ...................................................................8, 9

# INTRODUCTION[1]

In opposing Defendants' motion to dismiss, Planner 5D asks this Court to permit it to proceed in a way that has never been done before in American copyright litigation. It wants to be the first plaintiff to sue for infringement on the basis that the Copyright Office has initially refused its registration applications while simultaneously asking the Copyright Office to reconsider those very same refusals. Planner 5D cites no cases in support of its position, and Defendants are aware of none.

Planner 5D's copyright claim must be dismissed because its applications remain under examination by the Copyright Office. As such, it has not satisfied the registration requirement under Section 411(a) of the Copyright Act. Dismissal is compelled by the plain text of the statute, the Copyright Office's regulations, and the Supreme Court's decision in *Fourth Estate*, which rejected the "application approach" that would have allowed a plaintiff to file suit while an application is pending—in other words, the very same action Planner 5D is seeking to do in this case. The Court should reject this request.

Section 411(a) permits a copyright plaintiff to institute an infringement claim in federal court only after "registration of the copyright claim has been made" or "has been refused." Planner 5D seeks to straddle both categories so that it can litigate on two tracks at the same time: continuing its effort to convince the Copyright Office to grant its registrations, while at the same time proceeding in this Court under the premise that the Copyright Office has refused registrations. While it is understandable that Planner 5D would want the opportunity to pursue both tracks in tandem, nothing in the Copyright Act, Copyright Office regulations, or *Fourth Estate* supports this theory of copyright registration. Planner 5D is free to continue to pursue its registrations by seeking reconsideration, but having made that choice, it must live with the benefits and burdens of that decision.

Moreover, while Planner 5D focuses solely on its own wishes and convenience, it ignores the prejudice that would befall all other involved parties if this litigation is allowed to proceed before the Copyright Office's examination concludes. Whether Planner 5D is able to obtain registrations will have direct effects on this litigation, and proceeding now without knowing those effects will prejudice

---

[1] Unless otherwise noted, all capitalized terms have the same definitions ascribed to them in Defendants' Motion to Dismiss the Copyright Complaint, filed on Feb. 2, 2021 (Dkt. 105) ("Mem.").

Defendants. A registration can change the basic allocation of evidence between the parties. Without a registration, Planner 5D has the burden of proving that it owns a valid copyright. With a registration, Planner 5D may be entitled to a presumption of validity, which Defendants would have the burden to rebut. As detailed below, validity implicates questions of originality, creativity, authorship, publication, and the scope of infringement—all issues that have already arisen on prior motions to dismiss, and are likely to come up again. While Defendants are prepared to litigate this case, they need to know the scope of the issues and their evidentiary burden *before* discovery commences.

This Court will also be prejudiced by Planner 5D's proposed procedure. Contrary to Planner 5D's argument that allowing it to proceed with its claim while the Copyright Office's examination is pending causes no prejudice to the Court because it makes an independent determination of copyrightability, the Copyright Office's pending determinations are highly relevant to legal issues the Court must determine in this case. It is undisputed that the Court can defer to the Copyright Office's determinations. Nevertheless, Planner 5D would risk preventing the Court from being able even to review the Office's analysis, let alone have an opportunity to consider whether it wishes to defer to it. Such an outcome is inconsistent with *Fourth Estate*'s sensible holding that the Court and the parties will benefit from, and must wait for, the reasoned deliberation of the Copyright Office before infringement litigation commences.

Planner 5D's procedure also prejudices the Copyright Office. Just as the Court is entitled to the Copyright Office's complete evaluation of Planner 5D's alleged works, the Copyright Office is entitled to provide that evaluation to the Court. In addition, Planner 5D would upend the Copyright Office's statutory right to intervene in infringement cases brought on the basis of a refusal. Section 411(a) gives the Copyright Office the right to intervene in such actions, but only for a limited period of time. By litigating before the Office has finally determined whether it will grant or refuse Planner 5D's applications, Planner 5D would effectively strip the Office of its ability to make an informed decision whether to exercise that right.

Planner 5D complains that waiting for further examination will delay its case against Defendants, but such delay is of its own making. Planner 5D could have properly filed its applications before it filed its first complaint for copyright infringement on June 5, 2019. Further, when it filed its first applications

on December 19, 2019, a month after dismissal of its original complaint by this Court, it could have applied to register the allegedly infringed works, rather than different works created in 2019 after the alleged infringement. Moreover, with regard to its second set of applications filed on September 14, 2020, it did not have to engage in two months of back-and-forth with the Copyright Office, only to seek reconsideration of the Copyright Office's initial refusal. Nor did Planner 5D have to wait until the last week of the three-month deadline to request reconsideration. In short, because Planner 5D chose to continue the Copyright Office's examination process, it will need to finish what it started before it is entitled to sue. As such, Defendants respectfully request this Court dismiss Planner 5D's copyright claim in compliance with Section 411(a).

## ARGUMENT

### I. PLANNER 5D HAS NOT SATISFIED SECTION 411(A) BECAUSE ITS APPLICATIONS FOR COPYRIGHT REGISTRATIONS ARE STILL PENDING.

In its opposition, Planner 5D acknowledges that it must allege the following in order to bring a copyright infringement claim on the basis of a refused registration: (1) it has delivered a deposit, application, and fee to the Copyright Office "in proper form," (2) registration "has been refused" by the Copyright Office, and (3) Planner 5D served notice of its suit on the Register of Copyrights. (Dkt. 107 ("Opp.") at 4 (citing 17 U.S.C. § 411(a)).) Here, Planner 5D cannot allege that it has satisfied the second requirement—the registrations "ha[ve] been refused"—because Planner 5D has opted to seek reconsideration and thus the Copyright Office is still in the process of considering its applications. (Opp. at 3.)[2]

As the Supreme Court recognized in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, Section 411(a) focuses on "action by the Copyright Office—namely, its registration or refusal to register a copyright claim." 139 S. Ct, 881, 888–89 (2019). While Planner 5D argues that the Court meant only an *initial* action, it cites no authority for this argument. In other words, it cites no cases (and Defendants

---

[2]  While Planner 5D asserts that the Copyright Office's letter dated November 16, 2020 indicates that Planner 5D satisfied all three requirements, the letter only purported to address the *first* requirement related to the delivery of the applications in "proper form." (No. 3:20-cv-08261-WHO, Dkt. 1 ("Copyright Compl.") Ex. A, at 3.) Indeed, the letter could not possibly have given authorization to sue, as Planner 5D had not yet served notice of its suit at the time the Office issued the letter. (*See* Dkt. 106 (notice served on November 24, 2020).)

are not aware of any) in which a plaintiff was allowed to sue for copyright infringement while its request for reconsideration was pending at the Copyright Office. Indeed, Planner 5D's position is impossible to square with the Court's rejection of the "application approach," which would have allowed a plaintiff to sue for copyright infringement while its application was pending. *Id.* at 888. Yet Planner 5D does not address this conflict at all in its opposition, and makes no attempt to reconcile its position with the Supreme Court's rejection of the application approach in *Fourth Estate*.

Rather, it follows from *Fourth Estate* that such action must be *final*. As Defendants explained in their motion, an initial determination by the Copyright Office could be final. But when a claimant, like Planner 5D, chooses to seek reconsideration, the Copyright Office's initial determination is not final, because it will be superseded by the Office's subsequent *de novo* review. (Mem. at 11.) In other words, it is the Office's *last word* that controls, and if reconsideration is pending, the Office still has more to say as to whether it will grant or refuse registration. Without that final decision, a plaintiff cannot comply with Section 411(a) and does not have a cognizable copyright claim. *See J & J Sports Prods., Inc. v. Dailey*, No. 10 Civ. 5510, 2011 WL 3418391, at *1 (N.D. Cal. Aug. 4, 2011) ("The Ninth Circuit effectively treats the § 411 registration requirement as an element of a copyright infringement claim.").[3]

The statutory and regulatory structure of the Copyright Office's reconsideration process supports Defendants' position. The Copyright Office derives its mandate to issue registrations from Section 410(a) of the Copyright Act, which provides that when, "after examination," the Register of Copyrights determines that an application is registrable, the Register "shall register the claim and issue to the applicant

---

[3] For this reason, Planner 5D's attempt to characterize Defendants as seeking discretionary dismissal on the grounds of primary jurisdiction is misplaced. (Opp. at 8–9.) Primary jurisdiction is "properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). Yet Section 411(a) is a mandatory requirement, which was not present in either of the cases Planner 5D cites. *See Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007) (plaintiff sought declaratory judgment that it did not infringe defendant's trademark); *Syntek Semiconductor*, 307 F.3d at 780 (plaintiff sought declaratory judgment that defendant's copyright registration was invalid).

Planner 5D's claim that a stay is unwarranted is similarly irrelevant. (Opp. at 10–11.) As Planner 5D concedes, Defendants did not request a stay. Because Section 411(a) is treated as an element of a copyright claim, *see J & J Sports Productions*, 2011 WL 3418391, at *1, failure to comply requires dismissal as a matter of law.

a certificate of registration." 17 U.S.C. § 410(a). Thus, a registration decision only occurs "after examination." *Id.*; *see also Fourth Est.*, 139 S. Ct. at 892 (holding that "registration . . . has been made" "when the Register has registered a copyright after examining a properly filed application"). While such "examination" is pending—and until it is complete—*Fourth Estate* prohibits an applicant from filing suit.

Critically, the Copyright Office expressly considers reconsideration a part of that "examination." As the Copyright Office's *Compendium of Copyright Practices* states, when a registration is granted, the Copyright Office refers to the date on which the Office completes its examination as the "registration decision date." Compendium of Copyright Practices (Third) § 625 ("Compendium").[4] The registration decision date controls when an applicant has satisfied Section 411(a). *See id.* ("The registration decision date is the date that 'registration of the copyright claim has been made in accordance with [title 17].'") (quoting 17 U.S.C. § 411(a)). When registration is granted after reconsideration, the registration decision date "is *the date that the Office completed its examination* and approved the claim after reviewing the applicant's first or second request for reconsideration." *Id.* § 1705 (emphasis added). From this, it is clear that the Copyright Office does not distinguish registration "after examination" on initial review from registration "after examination" on reconsideration. In either instance, the Copyright Office acts according to Section 410(a), and issues a certificate of registration "after examination," which includes the reconsideration process if the applicant seeks it. Thus, in the event that Planner 5D is successful in its request for reconsideration, it will be the Copyright Office's final decision—not the initial refusals—that satisfies the statutory requirement. Under Planner 5D's reading, there would be no legal effect to a "registration decision date" assigned after reconsideration because any copyright plaintiff would have satisfied Section 411(a) after receiving an initial refusal.

Accordingly, the proper reading of Section 411(a) is that it requires *final* action, which cannot happen until the Copyright Office's "examination" is complete. When, as here, a plaintiff seeks reconsideration, such "examination" is not complete before the *de novo* reconsideration process is finished.

---

[4] This is distinct from the "effective date of registration," which generally is tied to the day on which "the copyright owner made a proper submission to the Copyright Office." *Id.* (quoting *Fourth Est.*, 139 S. Ct. at 889).

## II. *FOURTH ESTATE* REJECTED THE SAME POLICY CONCERNS RAISED BY PLANNER 5D.

Faced with a complete lack of legal support for its position, Planner 5D misrepresents *Fourth Estate* as standing for the proposition that the Copyright Office need only start, but not complete, its review to satisfy Section 411(a). In doing so, Planner 5D makes a bevy of policy arguments that track the same arguments the petitioner made in *Fourth Estate* to justify the "application approach." The Supreme Court rejected them. This Court should do the same.

*First*, Planner 5D points to the legislative history of Section 411(a) to argue that delay is contrary to the statute. (Opp. at 5–6.) Yet *Fourth Estate* makes clear that Section 411(a) was not enacted simply to allow a plaintiff to race into court as quickly as possible. Rather, Congress enacted Section 411(a) to eliminate the rule requiring an applicant who was refused registration to first prevail in a mandamus action against the Register of Copyrights to compel registration before it could bring an infringement suit. *Fourth Est.*, 139 S. Ct. at 891 n.5 (citing *Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*, 260 F.2d 637 (2d Cir. 1958)). Under Section 411(a), a plaintiff refused registration need not first compel the Copyright Office to issue a registration before it is entitled to commence an infringement action, but it still must wait for the Office to complete its examination before suing. *See id.* at 890; *see also Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1181 (9th Cir. 1983) (holding mandamus unavailable under Section 411(a)).

Ignoring this, Planner 5D instead tries to equate Defendants' position that Planner 5D must complete the registration process with the old pre-Section 411(a) rule that a plaintiff must sue the Copyright Office to challenge a refusal before satisfying the registration requirement. Yet *Fourth Estate* rejected a similar attempt to analogize the registration process to *Vacheron* in order to treat Section 411(a) as an anti-delay statute. *See Fourth Est.*, 139 S. Ct. at 891 n.5 ("Congress' answer to *Vacheron*, codified in § 411(a)'s second sentence, was to permit an infringement suit upon refusal of registration, not to eliminate Copyright Office action as the trigger for an infringement suit."). Defendants' position is not that a refused applicant must challenge the refusal in court before litigating an infringement claim—akin to mandamus under the *Vacheron* rule—or even that a refused applicant must seek reconsideration before suing. Rather, Defendants contend that, pursuant to Section 411(a), an applicant must complete the registration process

before bringing an infringement claim. As explained above, when a refused applicant chooses to seek reconsideration, the registration process is not yet complete.

***Second***, Planner 5D suggests that *Fourth Estate* interpreted Section 411(a) to "assure a clear and relatively quick path to court" in the face of the Copyright Office's administrative processing times. (Opp. at 6.) Yet if anything, the Supreme Court said the opposite. In *Fourth Estate*, the petitioner cited the processing time inherent in obtaining a registration, as Planner 5D does here, to argue in favor of the "application approach." Even though the Court acknowledged that processing times for applications averaged seven months, it rejected the argument that such delay justified the "application approach." *Fourth Est.*, 139 S. Ct. at 892 ("Unfortunate as the current administrative lag may be, that factor does not allow us to revise § 411(a)'s congressionally composed text.").

***Third***, Planner 5D states that if forced to choose whether or not to seek reconsideration prior to filing suit, plaintiffs "would be deprived of prompt remedies against active infringers." (Opp. at 8.) *Fourth Estate* considered the petitioner's nearly identical argument that requiring a copyright owner to complete the registration process before suing "will deprive the owner of her rights during the waiting period," and rejected it. *Fourth Est.*, 139 S. Ct. at 891–92 (noting Congress created limited exceptions such as preregistration, but "[a]s to all other works, however, § 411(a)'s general rule requires owners to await action by the Register before filing suit for infringement.").[5] Moreover, Planner 5D (and other applicants refused registration) do not have to seek reconsideration if they want to file promptly after receiving a refusal. But if an applicant opts for the benefit of reconsideration, it has to wait until the process is complete to file suit.[6]

---

[5] Planner 5D also points to the statutory preregistration provisions in the Copyright Act as evidence that a court is capable of hearing infringement suits before the Copyright Office makes a registration determination. *See* 17 U.S.C. §§ 408(f); 411(a). Yet the preregistration provisions are "explicit carveouts from § 411(a)'s general registration rule," applicable in "limited circumstances" where a work would be vulnerable to infringement before it is distributed. *Fourth Est.*, 139 S. Ct. at 888, 892. Planner 5D does not argue it sought preregistration, or that it could have qualified for preregistration. As such, Planner 5D is subject to the general rule, and the preregistration provisions are inapposite.

[6] Planner 5D's concern is limited to this suit, and is not applicable to other copyright infringement cases it might file against other alleged infringers of its Objects and Scene Compilation. Planner 5D has registrations for the alleged works as they existed in December 2019, and thus could easily satisfy the registration requirement against alleged infringement that occurred after that date. As to other claims based on the 2016 versions of its works, the statute of limitations likely has long since run.

***Finally***, Planner 5D, like the petitioner in *Fourth Estate*, "raises the specter that a copyright owner may lose the ability to enforce her rights if the Copyright Act's three-year statute of limitations runs out before the Copyright Office acts on her application." *Id.* at 892. Yet the Court found such concerns "overstated." *Id.* So too here. While Planner 5D purports to assert a policy argument on behalf of "many, if not most" copyright owners, its grievances are very specific to this case. (Opp. at 8.) As explained above, no party in this litigation is aware of any other example of a copyright plaintiff attempting to litigate an infringement claim on the basis of a refused application while its request for reconsideration is pending. Moreover, as the Copyright Office notes, the overwhelming majority of claimants—96%—do not even have the option to seek reconsideration because the Copyright Office issues them registrations in the first instance. *See* United States Copyright Office, *Annual Report 2019*, at 38 ("In fiscal 2019, the Office rejected approximately 4 percent of claims received").[7] For the few claimants who are refused registration, they are not required to seek reconsideration. Rather, they could take that refusal as the final decision and end the examination by the Copyright Office.

In support of its position that reconsideration is a lengthy process, Planner 5D submits a chart prepared by its declarant, purporting to show an average of 17 months for reconsideration. (Opp. at 8 (citing Dkt. 107-3).) As an initial matter, Defendants oppose Planner 5D's request for judicial notice of the chart, which is not a public document or government record. *See Abbas v. Vertical Ent., LLC*, No. 2:18-cv-7399, 2019 WL 6482229, at *1 (C.D. Cal. Aug. 19, 2019) (taking judicial notice of Copyright Office records, but not "comparison charts that Defendants claim were created from materials obtained from the Copyright Office"). Further, it is inaccurate. First, it omits dates for five of the six registrations covered by the "Air Mesh Tanks" decision.[8] Second, it incorrectly states the dates for every proceeding

---

[7] *Available at* https://www.copyright.gov/reports/annual/2019/ar2019.pdf. Defendants request the Court take judicial notice of this official Copyright Office document. *See Cnty.* of *Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of report information posted on a Department of Health and Human Services website).

[8] *Compare* Dkt. 107-3 (date of first reconsideration request for "Air Mesh Tanks" listed as May 2, 2019), *with* Second Reconsideration Decision on Air Mesh Tank Designs (Oct. 20, 2020) (first reconsideration requested for separate works on May 2, 2019, June 4, 2019, July 18, 2019, and July 23, 2019), *available at* https://www.copyright.gov/rulings-filings/review-board/docs/air-mesh-tanks.pdf.

in the "Laurel Leaf Bracelet" reconsideration process.[9]  Third, it misstates the date of the second reconsideration request for the "BlueMichiganMitten2" decision.[10]

Even on the chart's own terms, however, it does not support Planner 5D's argument. As Planner 5D's declarant admits, Planner 5D calculated its 17-month average based on 23 Review Board decisions issued after a *second* request for reconsideration. (Dkt. 107-2 ¶ 2.) Moreover, these 23 instances are only a small fraction of the number of claimants who seek a *first* reconsideration (which is the situation here)—itself a fraction of the 4% of claimants whose applications are refused. *See* United States Copyright Office, *Annual Report 2019*, *supra* n.7, at 38 (in 2019, only 58 claimants filed second requests for reconsideration, compared with 637 works subject to first requests for reconsideration). Nor are the processing times necessarily representative, given that all 23 decisions were reviewed in 2020 during the backlog caused by the unprecedented COVID-19 pandemic. Notably, Planner 5D's chart does not reflect the reality of any copyright *plaintiff*: of the 23 reconsideration decisions cited in Planner 5D's chart, Defendants could not find a single claimant who filed a copyright suit once the reconsideration process concluded, let alone while the reconsideration process was pending. Moreover, there is no reason why they could not have filed suit after the second reconsideration because, pursuant to Planner 5D's chart, all of the determinations in these rare situations were always under two years, well within the Copyright Act's three-year limitations period. (*See* Dkt. 107-3.)

Planner 5D also cannot ask this Court to save it from a delay of its own making. Planner 5D asserts it learned about the alleged conduct in 2018, but waited until March 2019 to contact Defendants, and waited until June 2019 to sue them. (Copyright Compl. ¶¶ 72, 93.) It initially filed suit without making any attempt to comply with Section 411(a) at all. After this Court dismissed Planner 5D's original Complaint but granted leave for Planner 5D to obtain registrations, Planner 5D did not try to file its applications for

---

[9] *Compare* Dkt. 107-3 (date of first reconsideration request of "Laurel Leaf Bracelet" listed as Nov. 15, 2018), *with* Second Reconsideration Decision on Laurel Leaf Bracelet (Oct. 6, 2020) (first reconsideration requested on June 20, 2019), *available at* https://www.copyright.gov/rulings-filings/review-board/docs/laurel-leaf-bracelet.pdf.

[10] *Compare* Dkt. 107-3 (date of second reconsideration request for "BlueMichiganMitten" listed as Dec. 18, 2019), *with* Second Reconsideration Decision on BlueMichiganMitten2 (June 23, 2020) (second reconsideration requested on Dec. 17, 2019), *available at* https://www.copyright.gov/rulings-filings/review-board/docs/blue-michigan-mitten.pdf.

another month. (Dkt. 52 (granting motion to dismiss on November 21, 2019); Dkt. 77-2 (applications filed on December 19, 2019).) After this Court again dismissed Planner 5D's Complaint but granted leave a second time, Planner 5D waited nearly *two* months to file new applications. (Dkt. 90 (granting motion to dismiss on July 24, 2020); Copyright Compl. ¶ 95 (applications filed on September 14, 2020).) Even though the Copyright Office processed the applications within the week—and even though Planner 5D could have filed suit then and there, foregoing further examination—Planner 5D chose to engage in back-and-forth for another two months. (Copyright Compl. ¶¶ 98 (Copyright Office issued initial refusals on September 18, 2020); 101 (Copyright Office issued further refusals on November 16, 2020).) Planner 5D was unwilling to commit to whether it would seek reconsideration until two months after receiving the Copyright Office's letter—and even then, it waited until the very end of its allotted three months before submitting its request. (Opp. at 3 (reconsideration filed on February 16, 2021).) Planner 5D is finally seeking reconsideration, which it is entitled to do. *See* 37 C.F.R. § 202.5(a). But, given its own conduct, it cannot now turn around and complain about the delay inherent in the process.

### III. LITIGATING A CASE WHILE RECONSIDERATION IS PENDING WILL PREJUDICE DEFENDANTS, THIS COURT, AND THE COPYRIGHT OFFICE.

#### A. Defendants Will Be Prejudiced.

As Defendants explained in their motion, allowing plaintiffs like Planner 5D to litigate a copyright claim while their applications are pending would prejudice defendants because they would be compelled to litigate the merits of a claim *before* the Copyright Office completes its examination. (Mem. at 13–14.) In response, Planner 5D only speculates that "it will be some time" before this Court addresses the merits, which "may" be enough time for the Copyright Office to make a reconsideration decision. (Opp. at 11.) Planner 5D thereby acknowledges the possibility that the Court may address and resolve substantive issues during the very time that the Copyright Office is completing its review. But that is precisely the problem. Defendants would be forced to prepare their case strategies under a provisional refusal, with the possibility that at any time—even midway through briefing dispositive motions—foundational issues in the case could change.

Planner 5D's suggestion that a registration has "no impact in an infringement action" is flat wrong. (Opp. at 7.) Under the Copyright Act, a registration issued within five years of first publication of the

work establishes a presumption of validity, shifting the burden to the defendant to rebut the facts stated in the certificate. *See United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *see also Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 985 (C.D. Cal. 2015) ("The underlying rationale for the presumption of validity is that the Copyright Office implicitly determines whether a work is copyrightable whenever it issues a registration, and courts should defer to the Office's finding."); *see generally* 17 U.S.C. § 410(c). This presumption of validity can affect many issues including:

- Creativity. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) ("[T]o overcome the presumption of validity, defendants must demonstrate why [plaintiffs'] photographs are not copyrightable.").
- Independent creation. *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1218 (9th Cir. 1997) ("[B]ecause [defendant] offered evidence that [plaintiff's] costumes were 'not original but copied from another's work,' the district court properly held that [defendant] had rebutted the statutory presumption.") (citation omitted).
- Ownership. *See United Fabrics*, 630 F.3d at 1258 (registration's "chain of title in the source artwork" was "entitled to the presumption of truth").
- Publication status. *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) ("The dates specified in a copyright notice are evidence of the date of publication.").[11]
- Scope of infringement. *See Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 882 (C.D. Cal. 2020) (registration certificate in motion pictures did not cover alleged infringement of design logos and thus the court found the logos were not at issue in the suit).

These are all issues that have arisen in this case during the prior motions to dismiss, and are likely to be issues going forward. *See UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223, at *8 (N.D. Cal. Nov. 21, 2019) [hereinafter "*Planner 5D I*"] (initial allegations did "not establish originality or creativity"); Dkt. 68 at 3 ("the scenes themselves were created by Planner 5D's users"); Dkt. 33, at 7 n.4 ("Planner 5D does not own the copyright to the Scenes"); *Planner 5D I*, 2019 WL 6219223, at *7 n.4 ("the parties dispute whether Planner 5D's works were actually published"); *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132, 2020 WL 4260733, at *4–5 (N.D. Cal. July 24, 2020) (no valid copyright covering allegedly infringed works); Copyright Compl. Ex. A, at 2, 6–8, 11–12 (Copyright Office initially

---

[11] Publication is also relevant to fair use. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ("Published works are more likely to qualify as fair use because the first appearance of the artist's expression already occurred.").

refused registration because alleged works were not "computer programs," lacked independent creation, and lacked human authorship).[12]

Plainly, the Copyright Office's grounds for refusal, and any possible reconsideration, will directly inform how Defendants litigate this case. It would prejudice Defendants immensely to go through discovery under the tentative assumption that Planner 5D does not have a presumption of validity, only to be surprised by a change in circumstances halfway through the case. It would be even worse if the Copyright Office issues registrations after Defendants file their dispositive motions, which would risk mooting Defendants' arguments.

### B.     The Court Will Be Prejudiced.

Planner 5D argues that it should be able to pursue reconsideration simultaneously because the Court makes an "independent determination as to copyrightability," while the Copyright Office's review will be limited to technical formalities. (Opp. at 11 (quoting *Proline Concrete Tools, Inc. v. Dennis*, No. 07-cv-2310-LAB (AJB), 2013 WL 12116134, at *4 (S.D. Cal. Mar. 28, 2013)).) This is a red herring. As discussed above, the issue of registrability makes a difference for the purposes of copyrightability—among other things, the Office considers copyrightability and its decision determines which party has the burden to show whether the works at issue are protectable or not. Partly for this reason, the Copyright Act is clear that the issue of registrability is squarely within the Court's purview. *See* 17 U.S.C. § 411(a) (the Court has jurisdiction to determine "the issue of registrability of the copyright claim"); *Nova Stylings*, 695 F.2d at 1181 (under Section 411(a), "the district court can determine both the validity of the copyright, which in turn determines its registrability, as well as whether an infringement has occurred"); *see also* 17 U.S.C. § 410(d) (a court of competent jurisdiction may determine "[t]he effective date of a copyright

---

[12]   Further, if Planner 5D receives a registration, Defendants may use discovery to explore whether Planner 5D knowingly included materially inaccurate information. *See* 17 U.S.C. § 411(b)(1); *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1200 (9th Cir. 2020) (remanding to complete process of "deciding whether Unicolors's registration is invalid, which would require dismissing Unicolors's claims and entering judgment in favor of H&M"). Of course, if Planner 5D's refusals are sustained, this issue would not apply.

registration").[13]  Moreover, Planner 5D concedes that the Court can defer to the Copyright Office's copyrightability determination. (Opp. at 7.) If the Court is called upon to adjudicate Planner 5D's claims before the Office completes its reconsideration review, the Court will not have any opportunity to decide whether such deference is appropriate in this case.

Instead, Planner 5D is asking this Court to allow for the possibility that this case would be altered by Copyright Office determinations "as they come in." (Opp. at 11.) By litigating in the shadow of a pending decision from the Copyright Office, Planner 5D effectively asks this Court to issue an advisory opinion. As Defendants laid out in their motion, this is both inconsistent with *Fourth Estate* and deprives the Court's independent determination of the reasoned analysis of the Copyright Office. While Planner 5D attempts to characterize the Copyright Office's review as limited to "formalities [] which have no impact in an infringement action," (Opp. at 6 (citation omitted)), even a cursory review of the Copyright Office's initial grounds for refusal shows that the Office is considering issues central to this litigation.[14] Plainly, what the Copyright Office determines on reconsideration will be relevant to the Court's analysis.

Indeed, the Copyright Office's determination can have persuasive value, as *Fourth Estate* acknowledged. *See Fourth Est.*, 139 S. Ct. at 889 (requiring suit after examination gives the Court "the benefit of the Register's assessment"). Such assessment is especially important here, as Planner 5D is seeking a substantive decision on reconsideration concerning complex questions of source code registrability and authorship better suited for full examination from the Copyright Office. *See also Syntek Semiconductor*, 307 F.3d at 781 (question of "whether decompiled object code qualifies as source code under the Copyright Act" was a "complicated issue that Congress has committed to the Register of

---

[13] While the parties dispute whether Planner 5D has the separate legal burden to show registrability in the event of a refusal, (Opp. at 6 citing *Ward v. National Geographic Society*, 208 F. Supp. 2d 429 (S.D.N.Y. 2002)), that is only another reason to wait for a full review. Depending on what the Copyright Office decides, there may be no reason for the Court to address this issue and resolve the parties' dispute.

[14] For example, the Copyright Office refused registration of Planner 5D's claims to the "screen displays" of its alleged computer programs because Planner 5D failed to deposit any material whatsoever supporting those claims, denying the Office the opportunity to examine the copyrightability of the claimed displays. (Copyright Compl. Ex. A at 3, 7, 12.) *See* Compendium § 721.10(B) (registration covering screen displays may be refused "[i]f the screen displays as a whole do not contain copyrightable authorship"). Yet Planner 5D asserts that Defendants infringed those very displays. (Copyright Compl. ¶¶ 35, 47, 107–08.)

Copyrights"). If the Office's decision comes in after the Court decides the merits, it could require another set of briefing on a motion for reconsideration—as occurred in the (pre-*Fourth Estate*) case Planner 5D cites. *See Games Workshop Ltd. v. Chapterhouse Studios, LLC*, No. 10 Civ. 8103, 2013 WL 1340559 (N.D. Ill. Apr. 1, 2013) (reviewing motion for reconsideration of grant of summary judgment to plaintiff after Copyright Office's refusal). Multiple motions on the issue would be even more burdensome in this case than in *Games Workshop*, in which the court only had to consider a conclusory initial refusal by the Copyright Office that "simply recited, in summary fashion, several basic copyright law principles." *Id.* at *3. Indeed, inviting this Court to expend resources on a decision that may be reconsidered based on the Office's later substantive analysis "as it comes in" would "undermine the objectives animating the Supreme Court's decision in *Fourth Estate*." *See Planner 5D I*, 2019 WL 6219223, at *7 (quoting *Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019)).

**C. The Copyright Office Will Be Prejudiced.**

The Copyright Office has an interest in making its final registration determination known to the Court before the Court rules on the merits of Planner 5D's claims. As noted above, the Court is entitled to defer to the Office's determination. That cannot occur if the Copyright Office is not entitled to make that determination known to the Court before the Court rules.

Further, the Copyright Office also has an interest in the proper maintenance of the copyright system which Planner 5D's self-serving strategy throws into disarray. As Defendants noted, Planner 5D's conduct frustrated the ability of the Copyright Office to decide whether or not to intervene in this case on the issue of registrability by forcing it to do so before it knew if Planner 5D would seek reconsideration. (Mem. at 13.) Planner 5D asserts that this is a "routine" concern for the Office, but cites nothing to suggest a plaintiff has ever forced the issue before, nor any regulation suggesting the Office anticipated a plaintiff would seek reconsideration concurrently with litigation. Moreover, while Planner 5D asserts that the Copyright Office may file a "statement of interest" in lieu of a motion to intervene, it fails to mention that the Office would have to go through the Department of Justice to do so. *See* 28 U.S.C. § 517. This procedure requires additional layers of inter-agency coordination that are not present when the Office intervenes as a matter of right pursuant to Section 411(a).

Yet regardless of whether the Copyright Office chooses to participate in this case or others, the Office benefits from the efficient administration of claims. For example, since *Fourth Estate* was published in 2019, the Copyright Office has decreased its average processing time from seven months to 2.6 months. *See* U.S. Copyright Office, *Registration Processing Times* (last accessed Mar. 9, 2021), https://www.copyright.gov/registration/docs/processing-times-faqs.pdf. Planner 5D would force the Copyright Office to reallocate its limited resources to coordinate its proceedings with those of this Court. It should not be permitted to do so.

## CONCLUSION

For the reasons stated above, Planner 5D's claim for copyright infringement should be dismissed.

Dated: March 17, 2021                                    JENNER & BLOCK LLP

                                                         By: /s/ *Andrew H. Bart*
                                                             ANDREW H. BART (PRO HAC VICE)

                                                         Attorneys for Defendant
                                                         *The Trustees of Princeton University*

Dated: March 17, 2021                                    KIRKLAND & ELLIS LLP

                                                         By: /s/ *Dale M. Cendali*
                                                             Dale M. Cendali (S.B.N. 1969070)

                                                         Attorneys for Defendants
                                                         *Facebook, Inc.* and
                                                         *Facebook Technologies, LLC*

**ATTESTATION**

I, Dale M. Cendali, am the ECF user whose ID and password are being used to file this Reply in Support of Defendants' Motion to Dismiss the Complaint for Copyright Infringement. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from all signatories.

Dated: March 17, 2021                                      By: /s/ *Dale M. Cendali*
                                                                  Dale M. Cendali (S.B.N. 1969070)