Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (admitted *pro hac vice*)
johanna.schmitt@kirkland.com
Ari Lipsitz (admitted *pro hac vice*)
ari.lipsitz@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

Attorneys for Defendants
*Meta Platforms, Inc.*
*and Facebook Technologies, LLC*

David R. Singer (S.B.N. 204699)
dsinger@jenner.com
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-5100

Andrew H. Bart (admitted *pro hac vice*)
abart@jenner.com
Jacob L. Tracer (admitted *pro hac vice*)
jtracer@jenner.com
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600

Attorneys for Defendant
*The Trustees of Princeton University*

Marc N. Bernstein (S.B.N. 145837)
mbernstein@blgrp.com
Will B. Fitton (S.B.N. 182818)
wfitton@blgrp.com
THE BUSINESS LITIGATION GROUP, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone: (415) 765-6633

Attorneys for Plaintiff
*UAB "Planner5D"*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>META PLATFORMS, INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20 and XYZ UNIVERSITIES 1-20,<br>　　　　　Defendants. | Case No. 3:19-cv-03132-WHO<br>Case No. 3:20-cv-02198-WHO<br>Case No. 3:20-cv-08261-WHO<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Upon the stipulation of the parties, the Court ORDERS as follows:

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") ("E-Discovery") in this case as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"), and any other applicable orders and rules.

**2. COOPERATION AND PROPORTIONALITY**

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with the ESI Guidelines to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1.  The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).  The parties have informally exchanged information about the sources of ESI, the relative likelihood that those sources contain relevant information, and the relative burden and expense of searching, extracting, and producing information from those sources.  This stipulation seeks to identify appropriate limits to E-Discovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for E-Discovery collection and production obligations, and other parameters to limit and guide preservation and E-Discovery issues.  The failure of counsel or the parties to cooperate in facilitating and reasonably limiting E-Discovery requests and responses will be considered in cost-shifting determinations.

**3. LIAISON**

Each party shall designate an individual or individuals as E-Discovery Liaison(s) who must:

(a) be prepared to meet and confer on E-Discovery-related matters and to participate in E-Discovery dispute resolution;

(b) be knowledgeable about the party's E-Discovery efforts;

(c) be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d) be, or have reasonable access to those who are, knowledgeable about the technical aspects of E-Discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**4. PRESERVATION AND PRODUCTION**

Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody, or control consistent with Sedona Conference Principle 6, which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."[1] The parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a) The parties have conducted and will continue to conduct a reasonable inquiry to identify and preserve non-duplicative, relevant information currently in their possession, custody, or control.

(b) The parties have discussed the types of relevant ESI they believe should be preserved and the number of custodians of such ESI. The parties shall add or remove custodians as reasonably necessary.

(c) Subject to and without waiving any protection described in Section 4(a) above, for Defendants Meta Platforms, Inc. and Facebook Technologies, LLC, only ESI created or received after January 1, 2014 will be preserved.

(d) The parties represent that backup systems and/or tapes used for disaster recovery are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P.

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

26(b)(2)(B). The parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive this data. Except for information identified and preserved under subsection 4(a), ESI from these sources will not be searched, reviewed, or produced, unless otherwise ordered by the Court upon a motion of a party.

(e) Except as otherwise provided in this Order, the parties agree not to preserve, collect, process, search, review, or produce the following data types from any source regardless of relevance:

1. Deleted, slack, fragmented, or unallocated data only accessible by forensics.
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
3. Online data such as temporary internet files, history, cache, cookies, and the like.
4. Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.

However, if a specific request for ESI from one of these data types is made in good faith, the responding party may object or move for a protective order as usual, but agrees to make reasonably diligent efforts to preserve the responsive ESI, if feasible, until an agreement is reached or the Court rules.

(f) The parties represent that the following data sources in their possession, custody, or control are relatively unlikely to contain non-duplicative relevant information and cannot be searched without undue burden. ESI from these sources will be preserved pursuant to normal business retention. Therefore, except for information identified and preserved under subsection 4(a), ESI from these sources will not be searched, reviewed, or produced in response to broad requests, such as for communications on a particular subject:

1. Voice message audio files.

        2.       Instant messages and chats that are not chronicled to an email archive system. This is not intended to include enterprise chat platforms, such as Meta's Workplace Chat.

        3.       Sound recordings, including, without limitation, .mp3 and .wav files.

        4.       Video recordings.

        5.       Information solely contained on mobile devices.

        6.       Mobile device activity logs.

        7.       Server, system, or network logs.

        8.       Dynamic fields in databases or log files not stored or retained in the usual course of business.

        9.       Information on systems no longer in use that cannot be accessed by using systems currently in use by the party.

        10.     Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

To the extent the parties identify relevant ESI from these above-referenced sources during custodial interviews or other reasonable search, relevant ESI from these sources will be preserved, collected, processed, searched, reviewed, and non-privileged, responsive material will be produced. Additionally, where a narrowly tailored discovery request, made on an articulable basis, clearly and specifically calls for an item or a limited category of ESI from these sources, ESI from these sources will - if feasible - be searched, reviewed, and potentially produced.

    (g)    Nothing prevents the parties from meeting-and-conferring to discuss additional sources that the parties agree not to preserve, collect, process, review and/or produce because such sources are not reasonably accessible or otherwise place an undue burden on the producing party.

**5. SEARCH**

(a) (i) The parties recognize that situations may arise in which it will be necessary to meet and confer about search methodology to identify responsive ESI and other types of documents subject to production. The parties agree to participate in such meet and confers in good faith to discuss the use of reasonable search terms, proximity filters, or date filters, among other possible filters.

(ii) The fact that any ESI or other documents have been identified in agreed-upon searches shall not prevent any party from reviewing, redacting, or withholding such file from production where necessary and appropriate.

(iii) To the extent a party wishes to use technology-assisted review ("TAR") to exclude non-responsive documents from review or production, the parties agree to meet and confer before any such TAR tool is applied for that purpose.

(b) Nothing in this section relieves any party of its obligation to produce relevant documents that it has identified upon a reasonable search, even if such documents do not contain a search term hit or are not located pursuant to any search methodology discussed in 5(a) directly above.

(c) The parties have discussed the types of relevant ESI and other documents they believe should be preserved and collected, and will agree on the number of custodians from whom they will collect and search for such ESI and other documents. After the parties agree on the number of custodians, the parties shall meet-and-confer to add or remove custodians as reasonably necessary.

(d) Nothing in this section may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's request. Similarly, nothing may be construed or interpreted as precluding a producing party from performing a privilege review of documents determined to be relevant by any means. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term, and any

document that is in good faith reasonably deemed not relevant to the requesting party's request, or is privileged or otherwise protected, may be withheld.

(e) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

(f) De-Duplication. Each party is required to produce only a single copy of a responsive document, and each party may de-duplicate responsive ESI (based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

(g) Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

(h) No provision of this Order affects any inspection of source code that is responsive to a discovery request consistent with the protective order governing this case.

(i) On-site inspection will not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

6. PRODUCTION FORMATS

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree to meet and confer

to determine what breaks should be placed in collaboration software discussions or channels, chats, IMs, and similar ESI that may span significantly long periods. The parties further agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

**7.   PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**8.   DOCUMENTS PROTECTED FROM DISCOVERY**

(a)   The production of privileged ESI or work product material shall be subject to the Fed. R. Evid. 502(d) Clawback Order in this case.

(b)   Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(c)   Communications involving or work product associated with inside or outside counsel for the parties related to this case that were created or received after February 14, 2019, for Plaintiff, or after March 14, 2019, for Defendants, need not be placed on a privilege log. To the extent a party articulates a good faith basis for why it believes a specific document is not privileged or otherwise protected, the parties agree to meet-and-confer to discuss whether such specific document should be placed on a privilege log.

(d)   Parties shall meet and confer to discuss whether they will agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email.

(e)   Communications may be identified on a privilege log by category, rather than individually, if appropriate. The parties agree to meet and confer in advance of preparing privilege logs to discuss whether categorical privilege logs are appropriate in the particular circumstances.

(f)     Privilege logs that comply with Fed. R. Civ. P. 26(b)(5) or other legal requirements may be produced 60 days before the close of fact discovery.

(g)     Nothing in this Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**9.  MODIFICATION**

This Stipulated Order may be modified by stipulation of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: December 20, 2021

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali*
Dale M. Cendali (S.B.N. 1969070)

Attorneys for Defendants
*Meta Platforms, Inc.*
*and Facebook Technologies, LLC*

Dated: December 20, 2021

JENNER & BLOCK LLP

/s/ *Andrew H. Bart* (with consent)
Andrew H. Bart

Attorneys for Defendant
*The Trustee of Princeton University*

| | |
|---|---|
| Dated: December 20, 2021 | THE BUSINESS LITIGATION GROUP, P.C. |
| | |
| | */s/ Will B. Fitton* (with consent) |
| | Will B. Fitton |
| | |
| | Attorneys for Plaintiff |
| | *UAB "Planner5D"* |

**IT IS SO ORDERED**.

Dated: December 22, 2021

_____
HON. WILLIAM H. ORRICK
United States District Judge

# APPENDIX 1: PRODUCTION FORMAT

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

    (a) an ASCII delimited data file (.DAT) using standard delimiters;

    (b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    (c) TIFF or JPEG images;

    (d) and document level .TXT files for all documents containing extracted full text or OCR text.

    (e) Parent-child relationships will be maintained in production.

If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP) ("Production"). If a Production is too large to be sent via a secure file sharing method, it may be produced on CD, DVD, flash drive or external hard drive. Each Production shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each Production shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained in the Production. Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3.      **Data Load Files/Image Load Files.**  Each TIFF or JPEG in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production.  The total number of pages referenced in a production's image load file should match the total number of TIFF or JPEG files in the production.  All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.  The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file.  The total number of documents in a production should match the total number of records in the data load file.  Load files shall not vary in format or structure within a production, or from one production to another.

4.      **Metadata Fields.**  Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) ALLCUSTODIAN(S), (f) CONFIDENTIALITY, (g) REDACTED, (h) NATIVEFILEPATH, (i) TEXTFILEPATH, and (j) HASHVALUE, which should be populated by the party or the party's vendor.  The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ALLCUSTODIAN(S) | Individual(s) from whom the documents originated |

| Field Name | Field Description |
|---|---|
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| FILENAME | Filename of an electronic document |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| FILESIZE | The original file size of the produced document |
| REDACTED | Indicate Yes/No if document redacted |

5.     **TIFFs and JPEGs.**  Documents that exist only in hard copy format shall be scanned and produced as either TIFFs or JPEGs.  Documents that exist as ESI shall be converted and produced as TIFFs or JPEGs, except as provided below.  The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF or JPEG image.  Unless excepted below, single page, black and white or color, JPEGs or Group IV TIFFs should

be provided, at least 300 dots per inch (dpi) for all documents.  Each TIFF or JPEG image shall be named according to a unique corresponding Bates number associated with the document.  Each image shall be branded according to the Bates number and the agreed upon confidentiality designation.  Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  Where the JPEG or TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality JPEG or TIFF image or the native or original file.

6.    **Color.**  To the extent feasible and not burdensome, the parties will produce documents in color where the documents are kept in color in the normal course of business.

7.    **Text Files.**  A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF or JPEG filename.  When possible, the text of native files should be extracted directly from the native file.  Text files will not contain the redacted portions of the documents.  A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8.    **Native files.**  Spreadsheets (*e.g.* MS Excel) will be produced in native format unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files.  To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format.  Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

9.    **Confidentiality Designation.**  Responsive documents in TIFF or JPEG format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF or JPEG placeholder.

10. **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.