| | |
|---|---|
| **THE BUSINESS LITIGATION GROUP, P.C.**<br>MARC N. BERNSTEIN (SBN 145837)<br>mbernstein@blgrp.com<br>WILL B. FITTON (SBN 182818)<br>wfitton@blgrp.com<br>CHRISTIAN ANDREU-VON EUW (SBN 265360)<br>christian@blgrp.com<br>150 Spear Street, Suite 800<br>San Francisco, CA 94105<br>Telephone: 415.765.6633<br>Facsimile: 415.283.4804<br><br>Attorneys for Plaintiff<br>UAB "PLANNER5D" d/b/a Planner 5D | **JENNER & BLOCK LLP**<br>DAVID R. SINGER (Cal. Bar No. 204699)<br>dsinger@jenner.com<br>515 S. Flower Street, Suite 3300<br>Los Angeles, CA 90071<br>Phone: (213) 239-5100<br>Facsimile: (213) 239-5199<br><br>**JENNER & BLOCK LLP**<br>ANDREW H. BART (pro hac vice)<br>abart@jenner.com<br>JACOB L. TRACER (pro hac vice)<br>jtracer@jenner.com<br>1155 Avenue of the Americas<br>New York, NY 10036<br>Phone: (212) 891-1600<br>Facsimile: (212) 891-1699<br><br>Attorneys for Defendant<br>The Trustees of Princeton University<br><br>**KIRKLAND & ELLIS LLP**<br>DALE M. CENDALI (Cal. Bar No. 1969070)<br>dale.cendali@kirkland.com<br>JOHANNA SCHMITT (pro hac vice)<br>johanna.schmitt@kirkland.com<br>ARI LIPSITZ (pro hac vice)<br>ari.lipsitz@kirkland.com<br>601 Lexington Avenue<br>New York, NY 10022<br>Phone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Attorneys for Defendants<br>Meta Platforms, Inc. and Facebook Technologies, LLC |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UAB "PLANNER5D" dba PLANNER 5D,<br><br>Plaintiff,<br>v.<br><br>META PLATFORMS, INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20, and XYZ UNIVERSITIES 1-20,<br><br>Defendants. | **Case No. 3:19-cv-03132-WHO**<br>Case No. 3:20-cv-02198-WHO<br>Case No. 3:20-cv-08261-WHO<br><br>The Honorable William H. Orrick<br><br>**JOINT LETTER BRIEF RE: DISCOVERY DISPUTE**<br><br>**February 24, 2022** |

1    Planner 5D (P5D) seeks Court assistance to compel Meta's response to four discovery requests:
2    Interrogatory No. 14 (Ex. A) and Request for Production Nos. 27-29 (Ex. B).

3    **Planner 5D's Position:** Princeton scraped P5D's collection of three-dimensional works and
4    converted them into a computer vision tool called the SUNCG dataset. Meta then used that tool to
5    develop products and services to compete in the forthcoming $60 billion scene-recognition market.
6    Scene recognition is a key component of the augmented reality "metaverse" on which Meta has staked
7    its future. To assess damages, P5D must understand what Meta did with SUNCG and what alternative
8    datasets could be used instead. How do these alternative datasets compare to SUNCG, and what did
9    they cost? Meta refuses to say. It urges that SUNCG's role was limited, and that good alternative
10   datasets abound. But it refuses to produce discovery that allows P5D to test these claims. Meta also
11   won't identify its internal scene recognition projects, because it claims, unilaterally, that these projects
12   did not use SUNCG. Meta won't even disclose projects that expressly considered using SUNCG but
13   didn't or that drew on existing SUNCG work. Instead, Meta simply asserts that those projects did not
14   use SUNCG, and contends they are irrelevant and undiscoverable.

15   Alternative datasets—how many there are, how good they are, and how much they cost—are
16   highly relevant to damages. One damages measure is "the amount a willing buyer would have been
17   reasonably required to pay a willing seller." *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th
18   Cir. 2014) (hypothetical license for copyright); *see also* Cal. Civ. Code § 3426.3 (reasonable royalty
19   for trade secret). P5D needs to know what Meta spent to acquire and develop alternatives to SUNCG,
20   and how those alternatives stack up. Meta admits to using "dozens" of responsive datasets, many of
21   which it surely paid for. But it will only disclose the free and publicly available alternatives it used on
22   one project.  (*See* Ex. A, Resps. to Reqs. 27, 28, and 29.) But free datasets are of little use for
23   calculating a hypothetical license. Planner 5D needs to know about the datasets Mata paid for, which
24   bears on what Meta and others might have paid if SUNCG had not been given away for free. If Meta's
25   alternatives were expensive and jealously guarded, that shows P5D's data had greater value. If
26   alternates cannot match SUNCG's size or performance, that too shows the value of P5D's data.

27   These are actively contested issues. Meta "denies that P5D's data or files are or were 'uniquely
28   large' and 'uniquely realistic,'" and denies that comparable datasets "are 'exceedingly rare.'" (Answer,

1

Joint Letter Brief Re: Discovery Dispute                                    CASE NO. 3:19-cv-003132

Dkt. 102 ¶¶ 3, 6.) In other words, Meta claims there are plenty of good alternatives. And Meta reserves the right to put on evidence of other datasets, refusing to stipulate otherwise. But Meta won't let P5D test this defense. Meta refuses to provide copies of its non-public datasets or related documents.

Also contested is the extent of Meta's use of SUNCG itself. P5D has asked Meta for a list of projects that *both* (i) involve the type of computer vision machine learning that most benefits from SUNCG (interior object and scene recognition) *and* (ii) use datasets similar to SUNCG (3D models of interior scenes and objects). (Ex. B, Resp. to Rog. 14.) This excludes most of Meta's AI research, such as exterior scene recognition, semantic language understanding, and predictive algorithms. Meta identified five public-facing scene-recognition projects, and a sixth that was never started. (*Id.*) Meta's refusal to admit to anything that is not public is illustrated by the fact that P5D had already identified four of the projects in its complaint. (*See* FAC, ECF No. 53 ¶¶ 53-69)

Meta also claims its work with SUNCG was all "open research for the public benefit." Even if true, this hardly forecloses substantial benefits to Meta's commercial efforts. Indeed, Meta's FAIR website explains that Meta uses these public projects "to advance [Meta's] understanding and impact product experiences." (*See* http://ai.facebook.com/research/.) Meta's Chief Scientist admits that many "systems that Meta is built around started as research projects that started at FAIR." (https://youtu.be/SGzMElJ11Cc at 1:51.)   For example, one of the four public SUNCG projects Meta has disclosed seeks to design "smart glasses" that can answer questions like, "where did I last see my keys." (https://aihabitat.org/.) The research proposal for the project has a "potential product impact" section identifying commercial Meta products that would most benefit from it, and Meta highlights this anticipated technology when promoting its "metaverse" augmented reality future. (*See* www.rev.com/blog/transcripts/meta-facebook-connect-2021-metaverse-event-transcript at 1:07.) Given these admitted links between Meta's SUNCG-related research and its commercial efforts,  P5D should not be forced to rely on Meta's self-serving claim that other connections don't exist.

These documents illustrate that projects can be, and likely are, built on technology derived from SUNCG, even if they do not directly "use SUNCG."  Meta is liable not just for projects that were directly trained using P5D data, but also for follow-on projects that build on SUNCG-dependent work. Use of a trade secret "to assist or accelerate research or development" constitutes misappropriation.

*JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010). If Meta's internal projects or datasets incorporate P5D data, algorithms or models developed with P5D's data, or lessons learned from P5D data, then Meta is liable. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1073 (N.D. Cal. 2005). (misappropriation where defendant's product did not practice trade secret but defendant studied the secret to understand "the key to efficiency.")

Meta estimates that it used "dozens" of datasets in "dozens" of projects and asks P5D and the Court to trust that none were benefitted by SUNCG. But Meta concedes it has not done its homework, complaining that disclosing the datasets and projects would require it to conduct many interviews to understand the underlying work. Without this diligence, Meta cannot credibly claim that none of these projects benefited from SUNCG. More to the point, P5D should be allowed to test Meta's pronouncements, not forced to accept them unchallenged.

Meta now argues burden, but Meta has steadfastly declined to negotiate over scope or burden, insisting that relevance was its only concern. Regardless, P5D's requested evidence is both relevant and essential. P5D is entitled to this evidence even if Meta must disclose "dozens" of projects and "dozens" of datasets. Meta's bald assertion of irrelevance is not grounds for denying P5D discovery.

**Meta's Position:** With this motion, P5D seeks discovery far beyond the narrow issues in this case: Whether P5D owns any copyrights or trade secrets in its data files (of course, the Copyright Office denied P5D's applications), and, if so, whether Meta infringed those rights by using Princeton's SUNCG dataset. As explained below, Meta has agreed to discovery about its use of SUNCG, as well as other interior object/scene datasets it used for those projects. P5D now asks this Court to order discovery about *all* of Meta's scene recognition projects that have used interior object/scene datasets, as well as *all* of those other datasets. The requests at issue, however, seek information and documents that are neither relevant, nor proportional to the needs of the case.

After Princeton made SUNCG available to the research community in 2017, Meta used it in non-commercial research projects ("SUNCG Projects") until P5D asserted its claims in 2019. Most SUNCG Projects were conducted at Facebook AI Research (FAIR), whose mission is to advance the state of the art of AI through open research for the public benefit. FAIR researchers collaborated with university researchers for many of the projects, and the results were made available to the public. In

3

addition to FAIR, researchers at Facebook Reality Labs (FRL) used SUNCG in connection with the SUMO Challenge in which students from Princeton, Stanford and Georgia Tech competed to solve a computer vision problem in 2018. Meta is aware of no product or service that resulted from the SUMO Challenge submissions. Nor is Meta aware of any commercial product or service that was developed using SUNCG (directly or indirectly), or any patent that discloses inventions developed using it.

Meta agreed to discovery about its acquisition and use of SUNCG, including internal uses. In fact, Meta has produced over 1,700 documents about its use of SUNCG, including many internal emails, chats and other non-public documents. Meta also provided detailed descriptions of the SUNCG Projects (Interrogatory No. 14), and agreed to produce, to the extent they exist, internal and published research papers discussing the SUNCG Projects (RFP 30), documents about the potential or actual economic benefit, or planned or current commercial products or services, derived from the SUNCG Projects (RFPs 31-32, 38), and documents to identify Meta personnel who worked on them (RFP 39). Meta has not excluded internal projects. For example, Meta disclosed its use of SUNCG with the New View Generation project, even though the FAIR researchers ultimately decided to use non-SUNCG datasets to conduct the resulting public research. Further, Meta disclosed Habitat, a simulation environment it created that could be used by the public for research with different datasets. To the extent Meta projects that used SUNCG with Habitat 1.0 (the version compatible with SUNCG) are identified, Meta will produce responsive documents that relate to those projects. Meta has produced hundreds of non-public documents about Habitat, including the document P5D cites above—which references "*Potential* Product impact" that has not materialized (as well as "Scientific Significance") and mischaracterizes the goal of Habitat, which is to advance the science of Embodied AI generally, and not to develop Meta's current or future commercial products.

With regard to non-SUNCG datasets, in order to strike a reasonable compromise with P5D, Meta has agreed to discovery about those datasets most likely to be comparable, such as datasets that it created as a substitute for SUNCG (RFP 15). Similarly, it agreed to produce documents about non-SUNCG datasets (whether internal or external) that were also used with SUNCG Projects—in other words, datasets used for the same projects in which SUNCG was also used. These would include documents about the SUNCG Projects which discuss the characteristics, strengths, weaknesses, or

value of other interior object/scene datasets used in those projects before this litigation was filed (RFPs 27-28), documents sufficient to show where to obtain downloads of those datasets are available for download—as they are publicly available (RFP 29), and documents sufficient to show the terms on which Meta licensed or acquired the datasets, including the license fees—each of which was free, which reflects the non-commercial nature of this type of research (RFPs 40-41).

P5D, however, is not satisfied with this reasonable compromise and continues to push for discovery into every single one of Meta's scene recognition projects that uses object/scene datasets, and every interior object/scene dataset used by Meta in one of these projects. But Meta projects that did not use SUNCG are not relevant to whether Meta infringed P5D's rights by using SUNCG. Moreover, P5D should not be allowed unfettered discovery into Meta's activities based on speculation that there may be other Meta projects which used SUNCG or were derived from research using it.

Complying with P5D's requests would create an undue burden for Meta based on the disproportionate cost for it to identify, collect, process and review the requested data. FAIR was formed in 2013 and currently employs 125 researchers whose research areas include scene recognition, and FRL employs over 300 research engineers and scientists in the U.S. Meta estimates that there have been dozens of interior scene recognition projects using object/scene datasets over the years. Further, there are hundreds of datasets available for computer vision research (*see, e.g.,* https://zenodo.org/record/4613146#.YgfyEN_MI2x (discussing corpus of 500 datasets)), and Meta estimates it has used dozens of interior object/scene datasets. Thus, Meta would have to interview hundreds of people to identify all of its computer vision projects that used interior object/scene datasets and the datasets used for each of them. Meta would then have to collect and process data from these custodians (which could total hundreds of GBs), likely resulting in the review of tens of thousands of additional documents. This would drastically increase the size and scope of discovery for Meta.

Even if Meta disclosed these other projects and datasets, it would create a litigation burden. It would convert this case from one about Meta's use of SUNCG into a burdensome series of mini-trials about whether or not each project was similar to the SUNCG Projects, to what extent such projects drew on the SUNCG Projects and how much was attributed to SUNCG itself, and how each dataset compared to SUNCG. For these reasons, Meta respectfully requests that the Court deny P5D's motion.

| | |
|---|---|
| Dated:  February 24, 2022 | */s/ Christian Andreu-von Euw*<br>Marc N. Bernstein (S.B.N. 145837)<br>mbernstein@blgrp.com<br>Will B. Fitton (S.B.N. 182818)<br>wfitton@blgrp.com<br>Christian Andreu-von Euw (S.B.N. 265360)<br>christian@blgrp.com<br>THE BUSINESS LITIGATION GROUP, P.C.<br>150 Spear Street, Suite 800<br>San Francisco, CA 94105<br>Telephone: (415) 765-6633<br><br>Attorneys for Plaintiff<br>*UAB "Planner5D"* |
| Dated:  February 24, 2022 | */s/ Dale M. Cendali*<br>KIRKLAND & ELLIS LLP<br>Dale M. Cendali (S.B.N. 1969070)<br>dale.cendali@kirkland.com<br>Johanna Schmitt (*pro hac vice*)<br>johanna.schmitt@kirkland.com<br>Ari Lipsitz (*pro hac vice*)<br>ari.lipsitz@kirkland.com<br>601 Lexington Avenue<br>New York, NY 10022<br>Phone: (212) 446-4800<br><br>Attorneys for Defendants<br>*Meta Platforms, Inc.* and *Facebook Technologies, LLC* |