# Exh. A

**KIRKLAND & ELLIS LLP**
Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (*pro hac vice*)
johanna.schmitt@kirkland.com
Ari Lipsitz (*pro hac vice*)
ari.lipsitz@kirkland.com
601 Lexington Avenue
New York, NY 10022
Phone:          (212) 446-4800

Attorneys for Defendants
*Meta Platforms, Inc. and Facebook Technologies, LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20 and XYZ UNIVERSITIES 1-20,<br><br>Defendants. | Case No. 3:19-cv-03132-WHO<br>Case No. 3:20-cv-02198-WHO<br>Case No. 3:20-cv-08261-WHO<br><br>**DEFENDANTS META PLATFORMS, INC. AND FACEBOOK TECHNOLOGIES, LLC'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF UAB "PLANNER5D" D/B/A PLANNER 5D'S SECOND SET OF INTERROGATORIES**<br><br>**CONFIDENTIAL pursuant to the Terms of the Parties' Negotiated Protective Order** |

---

**META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES**          **CASE NO. 3:19-cv-003132**

**CONFIDENTIAL**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Civil Local Rules of the United States District Court for the Northern District of California (the "Local Rules"), Defendants Meta Platforms, Inc., and Facebook Technologies, LLC (hereinafter, "Meta") hereby amend their responses and objections to Plaintiff UAB "Planner5D" d/b/a Planner 5D's (hereinafter, "Plaintiff") Second Set of Interrogatories (hereinafter, the "Interrogatories" and each individual request, an "Interrogatory") as follows:

**GENERAL OBJECTIONS**

Meta provides these responses (each a "Response," and collectively, the "Responses") to each of the Interrogatories, subject to the following General Objections:

1.  Meta objects to the Interrogatories to the extent that they are overly broad, vague and ambiguous, duplicative, seek the production of documents or information that is not relevant to the claim or defense of any party in this litigation, and not proportional to the needs of the case; and/or seek to impose undue burden and expense. The Interrogatories are overbroad as they seek information about all of Meta's object and scene recognition projects, which are not relevant to the claims in this case, and are not limited to projects for which Meta used the SUNCG Dataset. Further, the Interrogatories also impose an undue burden on Meta as they would require Meta to search for and provide information about all object and scene recognition projects that have ever used a dataset, as well as produce the underlying dataset for each project.

2.  Meta objects to the definition of "INTERIOR OBJECT/SCENE DATASET" as vague, ambiguous, and overbroad because it does not define "interior object/scene" or "dataset," includes "ANY interior object or scene dataset," and includes "ANY dataset generated with the use of another INTERIOR OBJECT/SCENE DATASET." Meta will interpret this term to mean the SUNCG Dataset at issue in this case.

3.  Meta objects to the definition of "OBJECT/SCENE MACHINE LEARNING PROJECT" as vague, ambiguous, and overbroad because it includes "ANY research effort, project, product, service, or feature," and also references "scene recognition, reconstruction, segmentation, or understanding," and "object pose estimation, insertion, deletion, segmentation, or classification," but fails to define any of those terms.

1

**CONFIDENTIAL**

4. Meta objects to the Interrogatories to the extent that they purport to impose obligations beyond those set forth in this Court's Orders, the Federal Rules, the Local Rules, or other applicable law.

5. Meta objects to the Interrogatories to the extent that they seek proprietary or confidential business information, trade secrets, or other sensitive information. To the extent that the Interrogatories seek the disclosure of any non-privileged proprietary or confidential information, trade secrets, or other sensitive information, Meta will only provide such documents in accordance with the protective order that has been entered in this case. (Dkt. 144.) Additionally, Meta reserves the right to exclude information to the extent necessary to protect unnecessary disclosure of proprietary or confidential information, trade secrets, or other sensitive information. Meta also reserves the right to withhold information for which it needs third-party consent to disclose. By responding to the Interrogatories, Meta does not waive, intends to preserve, and is preserving all of its rights to assert that any and all information is confidential and proprietary.

6. Meta objects to the Interrogatories to the extent that they seek information that is subject to the attorney-client privilege, the work product privilege, or other applicable privilege or protection under federal or state law. Meta does not waive, intends to preserve, and is preserving any such privilege with respect to any information protected by such privilege.

7. Meta objects to Instruction H, which requires a privilege log to accompany all objections on the grounds of privilege, as inconsistent with Meta's obligations set forth in this Court's Orders, the Federal Rules, the Local Rules, and/or other applicable law. Meta objects to Instruction H to the extent that it provides that any failure to produce information required under Instruction H constitutes a waiver of any such privilege or protection.

8. The Responses provided to the Interrogatories are based on Meta's interpretation of the language used in the Interrogatories. Meta reserves its right to amend or to supplement its Responses in the event that Plaintiff asserts an interpretation that differs from Meta's interpretation.

9. Meta objects to the Interrogatories to the extent that they seek information that Plaintiff equally may otherwise obtain from public sources or another party, or with less burden or expense by using other means of discovery.

2

META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO
PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES                    CASE NO. 3:19-cv-003132

CONFIDENTIAL

10.	The Responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Interrogatories. Meta's Responses to the Interrogatories in no way constitute admissions or acknowledgements by Meta as to the relevance, materiality, or admissibility of any of the information contained therein, and Meta expressly reserves its rights to object as such.

11.	In responding to the Interrogatories, Meta does not in any way waive or intend to waive, but rather is preserving and intends to preserve:

    1)	All objections as to competency, authenticity, relevancy, materiality and admissibility;

    2)	All rights to object on any grounds to the use in any subsequent proceedings of any of the Responses or information contained herein, including but not limited to the right to object at the trial of this or any other action;

    3)	All objections as to vagueness and ambiguity; and

    4)	All rights to object on any grounds to any further interrogatories.

12.	Meta objects to the Interrogatories to the extent that they seek information outside of Meta's possession, custody, or control.

13.	Meta objects to the Interrogatories as overly broad and unduly burdensome to the extent that they do not specify a timeframe or geographic location and are thus unlimited as to time and geography.

14.	Meta objects to the Interrogatories as compound to the extent they consist of discrete subparts, each of which constitutes a separate interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(1).

15.	Meta objects to the Interrogatories to the extent they seek information beyond what is available to Meta after a reasonable inquiry, including from a reasonable search of Meta's files likely to contain relevant information and a reasonable inquiry of Meta's employees likely to have information relevant to the subject matter of this litigation.

16.	Meta objects to the Interrogatories as overly broad and unduly burdensome to the extent that "Meta" is defined to include "AFFILIATES" of Meta Platforms, Inc. and Facebook

**CONFIDENTIAL**

Technologies, LLC, and to the extent that "AFFILIATES" is defined as "any entities that a first entity directly or indirectly beneficially owns or controls, or that directly or indirectly beneficially own or control the first entity, or that are under common beneficial ownership or control with the first entity." For the purposes of responding to the Interrogatories, Meta will construe the terms "Meta Platforms, Inc." and "Facebook Technologies, LLC" to mean Meta Platforms, Inc. and Facebook Technologies, LLC, and no other person or entity.

17. Meta reserves the right to modify or supplement its Responses to the Interrogatories to conform to the results of continuing discovery.

18. Meta incorporates the foregoing General Objections into each and every one of its Responses to the Interrogatories as set forth below.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 14:**

Describe every OBJECT/SCENE MACHINE LEARNING PROJECT that YOU conducted, sponsored, or participated in that used or uses an INTERIOR OBJECT/SCENE DATASET, by identifying the (i) the PERSON(s) primarily responsible for the Project, (ii) the machine learning algorithm(s) used or developed in that Project, (iii) the INTERIOR OBJECT/SCENE DATASET(s) used in that Project, and (iv) all internal or external research papers referencing that Project.

**RESPONSE TO INTERROGATORY NO. 14:**

Meta incorporates by reference the above-stated General Objections as if fully set forth herein. Meta objects to this Interrogatory as compound because it consists of four discrete subparts, each of which constitutes a separate interrogatory pursuant to Federal Rule 33(a)(1).Meta objects to this Interrogatory as vague and ambiguous to the extent that that the terms "primarily responsible," "machine learning algorithm(s) used or developed in that Project" and "internal or external research papers" are vague, ambiguous and overbroad, and susceptible to different meanings. Meta objects to this Interrogatory as overly broad, unduly burdensome, and seeking information that is neither relevant to the claim or defense of any party in this litigation, nor proportional to the needs of the case, to the extent that it seeks information about "every OBJECT/SCENE MACHINE LEARNING

4

META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO
PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES          CASE NO. 3:19-cv-003132

**CONFIDENTIAL**

PROJECT" that uses any "INTERIOR OBJECT/SCENE DATASET," including "all" papers referencing that project. Meta objects to this Interrogatory to the extent that it seeks confidential and/or proprietary or sensitive business information. Meta objects to this Interrogatory as overly broad because it is not limited to a temporal scope that is relevant to this action. Meta objects to this Interrogatory to the extent it seeks information that is publicly available or which Plaintiff already possesses or to which Plaintiff equally may otherwise obtain from other parties, or with less burden or expense by using other means of discovery. Meta objects to this Interrogatory to the extent that it seeks confidential or personal information about people, such as email addresses, phone numbers, and physical addresses.

Subject to and without waiving the foregoing objections, Meta states that it used the SUNCG Dataset in connection with the following object and scene machine learning research projects:

1) **House3D**: House3D is a virtual 3D environment released in 2017 intended to enable AI agents to navigate and explore indoor spaces. To build House3D, researchers at Facebook AI Research (FAIR) and UC Berkeley developed a rendering program, based on OpenGL, to transform scenes in the SUNCG Dataset into a navigable environment. In House3D, an AI agent can navigate and interact with the SUNCG Dataset scenes, learning about elements including RGB images, depth, segmentation masks and top-down 2D map views. The project was intended as a research contribution and had no commercial objectives. The SUNCG Dataset was not distributed as a part of the project; rather, users were directed to Princeton's website if they wanted to obtain the SUNCG Dataset. The environment and the python API script used to operate House3D are available at https://github.com/facebookresearch/House3D. The following paper discusses the project's research: Wu et al, *Building Generalizable Agents with a Realistic and Rich 3D Environment* (Jan. 2018), https://arxiv.org/pdf/1801.02209v1.pdf. Georgia Gkioxari (Research Scientist at Facebook AI Research) worked on and has material knowledge of the project.

2) **Embodied Question Answering (EQA)**: Embodied Question Answering is a research task created in collaboration with researchers from FAIR, Georgia Tech, and UNC Chapel Hill, focusing on teaching AI agents to answer questions by navigating and understanding 3D

5

META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO
PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES     CASE NO. 3:19-cv-003132

**CONFIDENTIAL**

environments. In 2017, researchers developed questions to ask AI agents about an environment (e.g., "What color is the sofa in the living room?") and trained an algorithmic model to evaluate and respond to those questions. For a 3D environment, the EQA researchers initially selected House3D. They then transformed House3D by adding a set of annotations and a sample convolutional neural network algorithm. The project was intended as a research contribution and had no commercial objectives. The team publicly released this research at https://embodiedqa.org/. The EQA dataset of questions based on House3D remains available at that URL.

Below are papers the Meta team published that discuss the EQA research task and used House3D:

- Das *et al.*, *Embodied Question Answering* (Dec. 2017), https://arxiv.org/pdf/1711.11543.pdf.

- Das *et al.*, *Neural Modular Control for Embodied Question Answering* (Oct. 2018), https://arxiv.org/pdf/1810.11181v1.pdf.

- Yu *et al.*, *Multi-Target Embodied Question Answering* (Apr. 2019), https://arxiv.org/pdf/1904.04686.pdf.

Georgia Gkioxari (Research Scientist at FAIR) worked on and has material knowledge of the project.

3) **SUMO Challenge**: The SUMO Challenge was intended to encourage the development of algorithms to represent and evaluate scene understanding results from 360-degree RGB-D panoramas, with the goal of enabling social AR and VR research and experiences. It was intended as a research contribution and had no commercial objectives. It was part of a Meta scene understanding research initiative called Project Enigma, which was in collaboration with universities including Princeton University, Stanford University, and Virginia Tech. It was modeled after other challenges in the research community, such as the CoCo Challenge: https://cocodataset.org/.

6

**META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO
PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES**                    **CASE NO. 3:19-cv-003132**

**CONFIDENTIAL**

For the SUMO Challenge, the organizers initially intended to use a 3D scene dataset derived from reconstructions of real-world scenes. Meta used the SUNCG Dataset as a reference for structuring that dataset. By early 2018, the organizers decided not to continue with real-world data for the SUMO Challenge and instead decided to use a synthetic dataset, called the SUMO Dataset, generated from a subset of the SUNCG Dataset for the SUMO Challenge. (For details into the creation of the SUMO Dataset, Meta hereby refers to its Response to Planner 5D's Interrogatory No. 3.)

The SUMO Challenge launched in June 2018. To access the SUMO Dataset, people would agree to the User Registration Form, which contained the terms of use, and then would download the dataset from a third-party AWS server. People could then download the SUMO Challenge Toolbox, an API kit distributed on GitHub under an open source MIT License. (For information about the entrants in the SUMO Challenge, Meta hereby refers to its Amended Response to Planner 5D's Interrogatory No. 1.) A second SUMO Challenge was announced in early 2019, but was discontinued in March 2019. The SUMO Dataset is no longer publicly available. No algorithms or datasets developed over the course of the SUMO Challenge or Project Enigma have been used subsequently. Meta is not aware of any paper that was published concerning the results of the SUMO Challenge. Daniel Huber (EM / Computer Vision Research Scientist on XR Insight Spatial Intelligence Engineering at Meta Platforms, Inc.) worked on and has material knowledge of the SUMO Challenge.

4) **Habitat**: Habitat (or AI Habitat) is a simulation platform released in 2019 to enable training of embodied AI agents. Habitat consists of a 3D simulator capable of reading multiple 3D datasets (Habitat-sim), an API library for particular training activities (Habitat-API, later renamed Habitat-Lab), and an annual benchmarking challenge (the Habitat Challenge). The Habitat-sim environment initially was compatible with the SUNCG Dataset, but support for the SUNCG Dataset was later discontinued. Habitat was intended as a research contribution and had no commercial objectives.

Below are papers the Habitat team published that discuss the platform:

7

META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO
PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES   CASE NO. 3:19-cv-003132

**CONFIDENTIAL**

- Manolis Savva *et al.*, *Habitat: A Platform for Embodied AI Research* (Nov. 2019), https://arxiv.org/abs/1904.01201.

- Andrew Szot *et al.*, *Habitat 2.0: Training Home Assistants to Rearrange their Habitat* (Jun. 2021), https://arxiv.org/abs/2106.14405.

Dhruv Batra (Research Director at Facebook AI Research) worked on and has material knowledge of the project.

5) **New View Generation Project**:  The goal of this project was to study how to train a computer to look at a small number of views of a room and predict the view from new viewpoints.  Initially, Meta used Habitat-sim to create room views with source data from the SUNCG Dataset in order to use these room views as training data in this project.  Meta, however, discontinued its work with the SUNCG Dataset before the research was started.   This project was intended as a research contribution and had no commercial objectives.  No machine learning algorithms were used or developed for this project using the room views created using source data from the SUNCG Dataset.  The machine learning algorithms that were used or developed for this project are located on an internal GitHub repository.  There are no papers about this project that referenced any research conducted using room views created using source data from the SUNCG Dataset.   Benjamin Graham (Research Scientist at Facebook AI Research) worked on and has material knowledge of the project.

**AMENDED RESPONSE TO INTERROGATORY NO. 14:**

Subject to and without waiving the foregoing objections, Meta states that in addition to the above-mentioned projects, it also used the SUNCG Dataset in connection with the following object and scene machine learning research project:

6) **SplitNet**:  The purpose of this research project was to study how embodied AI agents could solve visual navigation tasks by implementing information learned from one visual environment (e.g. in a synthetic environment) to a different visual environment (e.g. in a photorealistic environment).  The goal was to advance the research in transferring AI-learned policies from simulated environments to the real-world, also known as Sim2Real.

8

**META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO
PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES**   **CASE NO. 3:19-cv-003132**

**CONFIDENTIAL**

Researchers from University of Washington and FAIR used Habitat-sim to train AI agents using either models from ImageNet or a small segment of scenes from the SUNCG and Matterport3D datasets, and evaluated the agent's performance across tasks and environments in Gibson, Matterport3D, and SUNCG. This project was intended as a research contribution and had no commercial objectives. Meta is aware of no commercial products or services that have been developed using this research. The model and associated scripts are available at: https://github.com/facebookresearch/splitnet#splitnet-sim2sim-and-task2task-transfer-for-embodied-visual-navigation. The following paper discusses the research: Gordon *et al.*, *SplitNet: Sim2Sim and Task2Task Transfer for Embodied Visual Navigation* (May 2019), https://arxiv.org/pdf/1905.07512v1.pdf. Dhruv Batra (Research Director at Facebook AI Research) worked on and has material knowledge of the project.

Dated: February 10, 2022

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali*
**KIRKLAND & ELLIS LLP**
Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (*pro hac vice*)
johanna.schmitt@kirkland.com
Ari Lipsitz (*pro hac vice*)
ari.lipsitz@kirkland.com
601 Lexington Avenue
New York, NY 10022
Phone:         (212) 446-4800

Attorneys for Defendants
*Meta Platforms, Inc. and Facebook Technologies, LLC*

9

META DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO
PLAINTIFF PLANNER 5D'S SECOND SET OF INTERROGATORIES           CASE NO. 3:19-cv-003132

# CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2022, a true and correct copy of **DEFENDANTS META PLATFORMS, INC. AND FACEBOOK TECHNOLOGIES, LLC'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF UAB "PLANNER5D" D/B/A PLANNER 5D'S SECOND SET OF INTERROGATORIES** was served via electronic mail on Plaintiff's counsel at the below addresses:

> MARC N. BERNSTEIN
> mbernstein@blgrp.com
> WILL B. FITTON
> wfitton@blgrp.com
> CHRISTIAN GABRIEL ANDREU-VON EUW
> christian@blgrp.com
> THE BUSINESS LITIGATION GROUP, P.C.
> 150 Spear Street, Suite 800
> San Francisco, CA 94105
> Telephone: 415.765.6633

_____
Karina Patel

1

CERTIFICATE OF SERVICE                                CASE NO. 3:19-cv-003132