Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

| | | |
|---|---|---|
| UAB "PLANNER5D" dba PLANNER 5D, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | **NO. C 19-03132 WHO** |
| META PLATFORMS, INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20 and XYZ UNIVERSITIES 1-20, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

San Francisco, California
Tuesday, March 1, 2022

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:

            THE BUSINESS LITIGATION GROUP, P.C.
            150 Spear Street, Suite 800
            San Francisco, California 94105
        **BY: MARC N. BERNSTEIN**
            **CHRISTIAN ANDREU-VON EUW**
            **ATTORNEYS AT LAW**

        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

TRANSCRIPTION SERVICE BY: Dipti Patel, CET-997
            Liberty Transcripts
            7306 Danwood Drive
            Austin, Texas 78759
            (847) 848-4907

**APPEARANCES:** (CONTINUED)

For Defendants Meta Platforms, Inc. and Facebook Technologies, LLC:

> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, New York 10022
> **BY: DALE CENDALI, ATTORNEY AT LAW**
> **JOHANNA SCHMITT, ATTORNEY AT LAW**

For Defendant Trustees of Princeton University:
> JENNER & BLOCK LLP
> 919 Third Avenue
> New York, New York 10022
> **BY: JACOB L. TRACER, ATTORNEY AT LAW**
> **ANDREW H. BART, ATTORNEY AT LAW**

3

| | |
|---|---|
| 1 | **<u>Tuesday - March 1, 2022</u>** <u>2:43 p.m.</u> |
| 2 | **<u>P R O C E E D I N G S</u>** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  This is Case Number 19-3132, UAB "Planner 5D" |
| 5 | v. Meta Platforms, Incorporate, et al.  Counsel, if you would |
| 6 | please state your appearance for the record. |
| 7 | **MR. BERNSTEIN:**  Good afternoon.  Marc Bernstein for -- of |
| 8 | the Business Litigation Group, for "Planner5D" Plaintiff. |
| 9 | **MR. ANDREW VON-EUW:**  Christian Andreu of Business |
| 10 | Litigation Group also here on behalf of Plaintiff. |
| 11 | **MS. CENDALI:**  Dale Cendali from Kirkland & Ellis on behalf |
| 12 | of the Meta Defendants. |
| 13 | **MS. SCHMITT:**  Johanna Schmitt also from Kirkland & Ellis |
| 14 | for the Meta Defendants. |
| 15 | **MR. TRACER:**  And Jacob Tracer from Jenner & Block on |
| 16 | behalf of the Trustees of Princeton University. |
| 17 | **MR. BART:**  And Andrew Bart from Jenner & Block for |
| 18 | Princeton. |
| 19 | **THE COURT:**  Great. |
| 20 | Well, good afternoon to all of you.  Always a pleasure to |
| 21 | see you.  And I have to say that the way that you appear today |
| 22 | -- the way that you present the very difficult issues that you |
| 23 | have is really quite good.  It shows, I think, that you are |
| 24 | working hard to try to resolve what are complicated issues.  So |
| 25 | I just want to tell you I appreciate that. |

1        And because of that, I will tell you at the front end that

2   I am going to extend the trial schedule the way that you have

3   requested it so that the new trial date will be August 21st of

4   2023.

5        And, Mr. Bernstein, if you need to compel third-party

6   discovery, you really ought to get to it because, you know,

7   time's a wasting as far as the discovery period.

8        **MR. BERNSTEIN:**  Yes, Your Honor.

9        We were trying for a similar miracle with these third-

10  party Defendants.  I think the problem that we have -- we did

11  get a fair way down the road with two of the three of them.  So

12  we're right now at the point where we realize we're as far as

13  we're going to get and we do -- so we should be ready shortly

14  to bring motions.

15       **THE COURT:**  Okay.

16       So I do want to deal with the discovery dispute that you

17  filed if you all are ready to do that.  And let me tell you,

18  you may be able to -- let me tell you how I understand what the

19  problem is.  And I have an idea which it may be ridiculously

20  simplistic, but let me lay it out.

21       So it seems to me that in -- that you're both right in

22  some ways, that Meta is correct that "Planner5D"'s ownership of

23  the copyrights and trade secrets and Meta's alleged

24  infringement of it using the -- is it S-U-N-C-G?  Is it SUNCG?

25       **MR. ANDREW VON-EUW:**  SUNCG, Your Honor.

1          **THE COURT:**  Huh?

2          **MR. ANDREW VON-EUW:**  SUNCG.

3          **THE COURT:**  SUNCG, okay, dataset doesn't require discovery

4     of alternative datasets to establish liability.  And Meta's

5     allowing discovery regarding the use of SUNCG and other

6     datasets used for projects that involve SUNCG, and it's offered

7     datasets that are most likely comparable in its mind as a

8     substitute or that were used with SUNCG.

9          But not every single one of Meta's scene recognition

10     projects that uses the object in scene datasets is being

11     offered because there are dozens of datasets.  It raises issues

12     that are reasonable with respect to confidentiality, burden,

13     and relevance.  But how does "Planner5D" establish its damages?

14     How does it establish the hypothetical license based on the

15     information that's being provided?  That I don't understand,

16     and I'd like to hear about that.

17          I wonder whether there isn't somebody with sufficient

18     knowledge within Meta who could identify some anonomized

19     (phonetic) list of data bases for which Meta paid for a license

20     fee from which one could sample or even look at one or two of

21     them as comparable.  And I don't know how Meta's going to

22     ultimately be able to argue that "Planner5D"'s data weren't

23     valuable without disclosing what is valuable and why it's

24     valuable.

25          So that's -- those are the questions I'm left with.  So,

1    Ms. Cendali, why don't you take those questions on.

2        **MS. CENDALI:**  Fair enough, Your Honor.

3        I mean the problem is we tried to offer, as you said in

4    previous hearings today reasonable accommodations.  And we're

5    giving them everything about SUNCG, we're giving them about

6    projects or FP38 derived of any from SUNCG.  And we also

7    offered to try to compromise here about, okay, if Meta created

8    something as a substitute, we'll give you that or even if it

9    wasn't a substitute, if it's at least with regard to SUNCG some

10   project that used SUNCG, we'll give you that.

11       But we have a fair -- let's still call it fair -- you

12   know, the Facebook AI group.  There's 120 scientists who do

13   scientific research who don't have a neat little list of this

14   is my project and this is the database that I use for the

15   project.  It took us months to produce all these documents and

16   things just with regard to SUNCG, so we were trying to come up

17   with something that was a compromise that would give them more

18   info on datasets.  We've identified at this point seven other

19   datasets that we'll be giving them information about.  And we

20   think that's fair.

21       And I hear you, Your Honor, that, well, what about damages

22   and going rate.  Well, we suggest there's other ways to kind of

23   prove that other than through going through us because if they

24   -- we'd have to have a million mini-trials even if we had to go

25   back to all these researchers, try to figure out what they used

1    -- remember it's been in existence since 2013 -- and what the

2    terms were, what they were, are they comparable, aren't they

3    comparable.  That's a lot of work, and it's going to take a lot

4    of time.

5        Alternatively, they have -- one, they know for their own

6    efforts to license what they offer and have charged or tried to

7    charge others.  There's a lot of public information out there

8    about AI and about datasets and the like, and they or an expert

9    could certainly corral that.  And as you've just heard, they've

10   also subpoenaed, it sounds like, some third parties on some of

11   this kind of information.

12       My problem is -- it's a really practical one.  It would be

13   dozens and dozens of projects with dozens and dozens of

14   datasets.  We spent all this time on what we've done so far.

15   I'm worried this case is going to spin out of control and,

16   hence, that why we came up with the compromise we did.

17       **THE COURT:**  So is there no business guy who -- or somebody

18   with some oversight of this particular kind of project who

19   would be able to say, well, you know, these are the altered

20   data sites -- datasets that exist, this is what we've paid in

21   different ranges, and then, you know, sample one or two or

22   three of them but at different levels?

23       It probably -- I mean I don't know what -- so answer that

24   question and then I'll have another question for you.

25       **MS. CENDALI:**  We asked, and the best way I can visualize

1    this myself, if it's helpful, is that this isn't so much a --

2    there isn't so much like a business project where people are

3    working to meet the goal to come out with a product, but it's a

4    group of 120 scientists, computer scientists, that are

5    researching.  And so they don't have those kinds of lists.

6        And we have given them -- and we've detailed this in our

7    interrogatory answers which were attached to the papers and the

8    motions that there are -- you know, seven other datasets in

9    addition to SUNCG that we gave them information about.  Now

10   Plaintiff is, you know, disappointed, and I can understand why,

11   that they're free licenses.  It's just that that's kind of what

12   we think the going rate is.  But, you know, they're welcome to

13   find other things, but that's what we have.

14       And if there was a simple way to do this, I would have

15   loved to have come up with it.  But we did come up with a

16   compromise that we thought worked, and we heard nothing back to

17   try to -- we've heard nothing back.

18       **MR. ANDREW VON-EUW:**  Your Honor, if I may?

19       **THE COURT:**  No.  Just a second.  Let me finish up because

20   there's -- how do you then -- how will you defend against the

21   Plaintiffs, whatever the Plaintiffs come up with, with respect

22   to an appropriate license using information that you have that

23   says, oh, this is actually -- it's not worth anything because

24   it's all on the public domain or whatever that defense is

25   without having shared the rest of the information that you have

1    that they don't?

2       **MS. CENDALI:**  Well, a couple of things.  First, I'd like a

3    standing objection or argument to the effect that, as Your

4    Honor knows, they don't even have a copyright registration.

5    But putting that aside --

6       **THE COURT:**  Well, you may not get there.  I mean that's

7    the other thing.  And I don't know whether there's a way of

8    bifurcating that issue in a way that would allow this to work.

9    But go ahead.

10      **MS. CENDALI:**  But what we would do is we have the seven

11   that fit, you know, that worked -- that were datasets where

12   SUNCG was used, or potentially if we did something as a

13   substitute, created something as a substitute for that.  And,

14   you know, obviously, we're not giving them more documents.  We

15   can't give them more documents than what we're giving them.  I

16   know it's "what's good for the goose, good for the gander."

17      They will presumably come forward with something, I'm not

18   sure what it will be, to try to say, oh no, it has this value

19   or that value.  I suspect that will likely be through experts,

20   and we'll have to rebut that and through other -- I mean the

21   burden's on them to try to show what the value is for something

22   like this.  And --

23      **THE COURT:**  Well, that's how they're trying to satisfy

24   their burden, by getting information from you.  That's one of

25   the ways they're trying to do it.

1          But anyway, let me go over -- yes, go ahead, Mr. Andrew-

2     von Euw.

3          **MR. ANDREW VON-EUW:**  So, thank you, Your Honor.  First, I

4     want to just point out our motion concerns requests for

5     production which are about datasets which is what we're talking

6     about right now and the interrogatories which are really about

7     the research projects.  So I'm not going to address that.  I

8     assume we'll turn to that next.

9          And I want to point out, Ms. Cendali said we think that's

10    kind of what the going rate is, is free.  But that's all

11    they'll give us is free.  And she says we should get the

12    information ourselves.  "Planner5D" is a small company in

13    Lithuania.  Meta is likely the largest consumer of datasets for

14    machine training for, you know, their MetaVision Division.  So

15    the information, Meta has the information and we all agree it's

16    relevant.

17         Ms. Cendali talks about mini-trials.  I mean what that

18    usually plays out to is competing expert opinions, so it's all

19    one trial.  But she talks about her compromises, so I want to

20    talk about those because one's real and one's really not so

21    real.

22         Meta did amend its response, she points out, to disclose

23    the free datasets which are obviously good for Meta's damages

24    case.  That's appreciated, but it's not enough.  We think we

25    should see the datasets that cost money because we need to know

1    are we in the world that Meta says we are where there are lots

2    of great options and, if so, where are they and what do they

3    pay for or are we in our world where this is the only option.

4         Now if Meta has these datasets, they should produce it.

5    Now they talk about how there might be dozens of datasets.  In

6    a case of this scale, frankly, Your Honor, that's not that

7    burdensome.  Further, they can simply ask all 120 engineers

8    what datasets they use or narrow it as to supervisors, et

9    cetera.

10        Now I want to turn to the second compromise because I

11   think it's really telling.  Quoting here from the motion, the

12   motion says, "In order to strike a reasonable compromise with

13   P5D, Meta has agreed to discovery about those datasets that are

14   most likely to be comparable such as datasets they created for

15   a substitute for SUNCG."  And it points to its response to

16   RFP-15.  That is the response that RFP.  That response was

17   served before we even served this discovery at issue.

18        This is not a compromise.  This is Meta doubling down on

19   its previous position.  And this illustrates why we served

20   these requests.  The first set of requests we served ask for

21   commercial uses and direct substitutes.  Meta said that no

22   commercial uses exist, and they said they'll give us

23   substitutes that are specifically designed to replace SUNCG to

24   the extent they exist.

25        Based on their responses we received so far, it looks like

1    Meta contends they don't exist because we've seen nothing about

2    these direct substitutes.  So we did what you do when the first

3    round of discovery gave wiggle room.  We served a new response

4    that says, okay, tell us about all the datasets.

5         And I also want to just sort of -- there isn't really a

6    dispute here about whether this is relevant.  We're talking

7    about burden which is really something that's happening for the

8    first time.  We're willing to agree to all datasets more than

9    some size or something to make the search a little easier if

10   there really were hundreds and hundreds.  But if it's dozens,

11   frankly, Your Honor, we want to see the dozens.

12        And as one illustration of the clear relevance of this

13   information earlier today in a case where Meta's counsel

14   represents a plaintiff who alleges that their data was scraped

15   and their data was used for machine training, they served a

16   30(b)(6) deposition notice asking for witnesses on all training

17   data used by their opponent.

18        We're not asking for all training data used by Meta

19   because Meta has a lot of artificial intelligence on

20   auto-machine learning.  We're asking for data for this narrow

21   subset that this case is about which is interior

22   (indiscernible) data sets.

23        **THE COURT:**  Ms. Cendali?

24        **MS. CENDALI:**  We do have a very strong relevance

25   objection, you know, to have to -- if something didn't involve

1    SUNCG, then it's not relevant.  And if it wasn't a substitute

2    for SUNCG or used on a project involving SUNCG, it's not

3    relevant.

4        But beyond that, what is being crystallized -- and this

5    has been the problem because we have worked well, Your Honor.

6    I want to start with the note Your Honor started off by kindly

7    saying counsel have worked well together.  And we have resolved

8    many many disputes.  But they want us to produce, you just

9    heard, 15 or more or more than that datasets.  These are not

10   little pieces of paper.  First, we'd have to find them to fit

11   this criteria and, then, we'd have to figure -- the datasets

12   are voluminous, complicated.  I mean they're terabyte-plus type

13   of information.  And then what do we do with them when we get

14   them?

15       I just think that that's way beyond the needs of this case

16   which, again, there's -- they don't have a copyright.  The only

17   trade secrets claim is based on scraping and stuff that they

18   posted themselves on the public internet.  And maybe that

19   doesn't matter, but I think it should.  We're trying to work

20   with them, but the response we keep getting is give us all your

21   datasets that use interior scene recognition.

22       And that's just way too -- we don't think it's relevant at

23   all, but it's certainly way too burdensome.  That's not a

24   compromise.  That's like give us access to everything that you

25   research.

1    **THE COURT:**  So for the Plaintiffs, if you were unable to

2    get the alternative datasets that you're looking for from

3    Facebook, how would you prove your damage?  How would you prove

4    up the hypothetical license?

5    **MR. ANDREW VON-EUW:**  Frankly, Your Honor, it's a little

6    unclear.  We would do the best with what we can find.  I think

7    -- I hypothesized -- I know Meta has data that's internal.

8    We've seen vague illusions to them, so I know they exist and

9    there's no dispute about that.

10   I believe some were developed by Meta, so we'll never know

11   about those.  Some other ones may have been purchased and we

12   may get lucky somewhere else.  But I think, talking about this

13   burden issue, this is not necessarily an interview of every

14   engineer.  If Meta paid for a dataset, they have a bill.  That

15   should be easy to find.

16   And if Meta developed any dataset of an appreciable size,

17   that's a serious engineering effort.  That is something that

18   the team would likely know about quite well.  Yes, there might

19   be little datasets of five objects, ten objects that somebody

20   developed for a pet project.  We're not so interested in those

21   either.  I think the stuff we're talking about is easy to find.

22   And the only way for us to know if it's better or worse

23   than ours is to have our experts look at it and compare it and

24   say, well, it's better in this way and worse in that way and

25   then the damages expert say based on that, I think in total

1   it's worth more or less.  We have no idea because we haven't

2   seen it.

3       **THE COURT:**  Are you able to identify from the discovery

4   that you've gotten from Meta some of those other alternative

5   datasets that they haven't produced or they independent -- you

6   know, sometimes in discovery, you find -- you can find one

7   thing that leads you to another and shows that you've got good

8   cause to look at it because it is presumptively similar.

9       Is the discovery that you're looking at similar to that?

10      **MR. ANDREW VON-EUW:**  I'm not exactly sure what Your Honor

11  means by independent, but the short answer is no, we really

12  can't tell.  I mean we're seeing vague illusions, mentions in

13  passing, and even that, there's very many just telling us

14  there's something there, very little about it.

15      **MS. CENDALI:**  Again, Your Honor, we've given them

16  discovery into seven other datasets other than SUNCG.  And

17  we've tried to work out a compromise, but their response is

18  give us all your datasets.

19      **MR. ANDREW VON-EUW:**  Your Honor, I want to talk about that

20  compromise because, like I said, one of the compromises --

21      **THE COURT:**  No, no, no, no.

22      **MR. ANDREW VON-EUW:**  Sorry.

23      **THE COURT:**  You interrupted, so you don't -- you really

24  don't --

25      **MR. ANDREW VON-EUW:**  My apologies.

 1        **THE COURT:**  Go ahead, Ms. Cendali.

 2        **MS. CENDALI:**  It's just -- again, it's taken us many

 3    months to be able to give them all the stuff that they want

 4    about SUNCG, and now, first, we'd have to find what exists

 5    which is going to be a big effort to begin with.  And then once

 6    we figure out what might exist, then we'd have to, you know,

 7    produce all these datasets and -- that's really, really going

 8    to be time-consuming and burdensome and it's like

 9    exponentially.

10        We did so much on one and now we have to do 14, 15, you

11    know, dozens maybe?  There's got to be a line to draw here.

12        **THE COURT:**  So is there no way to sample this information?

13    Is there no -- it's going back to my initial question, and I

14    really am not sure that -- and maybe you don't know or you

15    don't want to know.  But somebody must know that there was

16    money spent on these alternative datasets, or not, I don't

17    know.  But you got them because you have dozens of them, you

18    say.

19        And so if you have a range of them, why couldn't you then

20    produce some representative sample of three of them, of

21    different costs that the Plaintiffs could look at and make

22    their own evaluation as to whether it's similar or completely

23    different, so -- but it's not everything, but it is -- it's

24    something to sort of -- to close this loop.

25        **MS. CENDALI:**  Well, we were hoping -- I mean, frankly, we

1   were hoping they would accept what we put forward.  But at

2   least we were hoping to get something back to further

3   challenge.  I mean maybe we need to have more meet and confers

4   with them if we can figure out a smaller period of time or

5   limit it to three things or something.

6       I don't know, Your Honor, but we've really been working

7   hard to try to do this and I keep going back to it's not --

8   leaving aside the burden, it's not comparable if something is,

9   I don't know, a Fiat and something is a Ferrari or something is

10  a Pacer, which I learned to drive on, or something like that.

11  And that's where you get into all the complexity here.

12      **THE COURT:**  Right.  But you're trying to make that -- you

13  are making that decision yourself.  And you're not giving the

14  Plaintiff the insight into whether that decision is valid from

15  their perspective or their expert's perspective.  That's the

16  problem.

17      This is what I'm going to do.  This is -- I've now decided

18  to do what I think I probably told you the last time when this

19  was raised.  I'm going to -- given the fact that I'm going to

20  be seeing or that this case is going to be seeing some motions

21  to compel, I'm going to refer this to a magistrate judge to

22  sort out for you, hopefully, with you working on an expedited

23  way.

24      It seems to me that at the moment, the Plaintiffs don't

25  have a reasonable shot at establishing their damages without

1    having some better understanding of what's going on.  It seems

2    -- and matter with these alternative datasets.

3        It seems to me that it may well be way too burdensome to

4    require all of the datasets to be provided, but there ought to

5    be a way of providing some of them maybe with varying license

6    fees or in some other way and maybe for limited time periods,

7    as you -- but there may be lots of ways of reducing the burden

8    and still get provided a reasonable picture of what these

9    datasets look like and why they are similar and dissimilar.

10        Beyond that, I'm not going to make any sort of ruling.  I

11    will leave that for the magistrate judge.  But I will tell you

12    in the meantime that the magistrate judge may require you to do

13    what I told one of the other cases that I saw today and come in

14    and sit down and waste a full day or two working out something

15    that you might be able to figure out yourselves.

16        So the Plaintiffs have to be -- you can't have it all, and

17    I believe the burden argument.  And I think it's probably also

18    there's confidential stuff, there may be relevance.  But in

19    some way, the Plaintiffs need to know what the scope of these

20    alternative sets, datasets are so that they can make a fair

21    case.

22        And, Ms. Cendali, you kept saying about the copyright

23    ownership and stuff.  If there is a motion that you can bring

24    that would dispose of this case from Meta's perspective, I am

25    here.  But I assume I haven't seen it in part because it's more

1    complicated than that and at least more discovery needs to be

2    done before anybody's ready to do that.

3         **MR. ANDREW VON-EUW:**  Your Honor?

4         **MS. CENDALI:**  I think I'd want to look at their documents

5    first, Your Honor.  But in due course, you should likely

6    anticipate such a motion.

7         **THE COURT:**  Fair enough.

8         **MR. ANDREW VON-EUW:**  Your Honor, thank you.  And just to

9    be clear, we discussed, as I said, half the motion.  I'm

10   assuming the entire motion is being referred?

11        **THE COURT:**  Anything having to do with discovery, I'm

12   going to wash my hands of after this.

13        Mr. Bernstein?

14        **MR. BERNSTEIN:**  Yes, Your Honor.  So Ms. Cendali had

15   mentioned first that we don't have a copyright registration.

16   Now she says we don't have a copyright.  I understand that

17   there will be an issue they will challenge copyrightability

18   which Your Honor will ultimately decide.

19        But as we briefed earlier, just for the record, I want to,

20   you know, restate what we briefed the last time which is that

21   the copyright office doesn't need to pass on this anymore.

22   They don't need to register this.  We got our ticket to get

23   into federal court because they refused it.  And now it's up to

24   Your Honor.

25        And I agree Ms. Cendali may well decide she wants to bring

1    a motion.  We're happy to meet that motion because we think

2    it's going to be a tough one.  But I just want to make clear on

3    the record that it's not that we need a registration.  Your

4    Honor does at some point have to pass if they challenge it on

5    copyrightability.

6            THE COURT:  Okay.  All right.

7            So I guess there are two other things that I had written

8    down for the CMC.  One I think is -- speaks for itself.  You're

9    not quite ready to sit down for ADR at this point, so I think

10   I'll pass on that for a while.  And the other thing is I'm

11   going to set a further case management conference for August

12   30th to see where we are.

13           MS. CENDALI:  Thank you, Your Honor.

14           THE COURT:  So with that, let me go to the Plaintiffs

15   first.  Is there anything else that we ought to talk about

16   today?

17           MR. BERNSTEIN:  No, Your Honor.  I think we're good.

18           THE COURT:  Okay.  And, Mr. Bart or Mr. Tracer, I guess

19   you were going to handle this.  I feel terrible that I haven't

20   involved you on this discussion.  Is there anything that you

21   would like to throw in at this point?

22           MR. TRACER:  No.  As much as I, you know, would value the

23   time to talk before Your Honor, I'll -- nothing on behalf of

24   Princeton right now.

25           THE COURT:  Okay.  And, Ms. Cendali, anything else?

1      **MS. CENDALI:**  No, Your Honor.  Thank you.

2      **THE COURT:**  Thank you.

3      All right.  Thank you all very much.  And I do appreciate

4   the manner in which you've been working together.  And this is

5   a big bear to try to wrestle to the ground so keep working

6   together to the extent that you can.  And when you can't work

7   any further, crystalize them and get it now in front of one of

8   my wise colleagues who will be able to spend the time with you

9   that you need.

10      All right.

11      **MR. BERNSTEIN:**  Thank you, Your Honor.

12      **THE COURT:**  Thank you all very much.

13      **MS. CENDALI:**  Thank you again, Your Honor.

14      **THE CLERK:**  And that concludes today's calendar.  Thank

15   you all.

16                  (Proceedings adjourned at 3:12 p.m.)

17                          ---o0o---

18

19

20

21

22

23

24

25

1

## **<u>CERTIFICATE</u>**

2     I certify that the foregoing is a correct transcript

3 from the official electronic sound recording of the proceedings

4 in the above-entitled matter.

5

6 *Dipti Patel*

7 _____

8 DIPTI PATEL, CET-997

9 LIBERTY TRANSCRIPTS    DATE: March 9, 2022

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24