**THE BUSINESS LITIGATION GROUP, P.C.**
MARC N. BERNSTEIN (Cal. Bar No. 145837)
mbernstein@blgrp.com
WILL B. FITTON (Cal. Bar No. 182818)
wfitton@blgrp.com
CHRISTIAN G. ANDREU-VON EUW (Cal. Bar No. 265360)
christian@blgrp.com
150 Spear Street, Suite 800
San Francisco, CA 94105
Phone:          (415) 765-6633
Facsimile:      (415) 283-4804

Attorneys for Plaintiff
*UAB "Planner5D"*

**KIRKLAND & ELLIS LLP**
Dale M. Cendali (Cal. Bar No. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (*pro hac vice*)
johanna.schmitt@kirkland.com
Aaron Schroeder (*pro hac vice*)
aaron.schroeder@kirkland.com
601 Lexington Avenue
New York, NY 10022
Phone:          (212) 446-4800
Facsimile:      (212) 446-4900

Attorneys for Defendants
*Meta Platforms, Inc.* and *Facebook Technologies, LLC*

**JENNER & BLOCK LLP**
David R. Singer (Cal. Bar No. 204699)
dsinger@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Phone:          (213) 239-5100
Facsimile:      (213) 239-5199

**JENNER & BLOCK LLP**
Andrew H. Bart (*pro hac vice*)
abart@jenner.com
Jacob L. Tracer (*pro hac vice*)
jtracer@jenner.com
1155 Avenue of the Americas
New York, NY 10036
Phone:          (212) 891-1600
Facsimile:      (212) 891-1699

Attorneys for Defendant
*The Trustees of Princeton University*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.; FACEBOOK TECHNOLOGIES, LLC; THE TRUSTEES OF PRINCETON UNIVERSITY; et al.,<br><br>Defendants. | Case No. 3:19-cv-03132-WHO (SK)<br>Case No. 3:20-cv-08261-WHO (SK)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**DATE: June 7, 2022**<br>**TIME: 2:00 p.m.**<br>**JUDGE: Hon. William H. Orrick**<br>**COURTROOM: 2, 17th Floor** |

Pursuant to Civil Local Rule 16-10(d) and the Court's Order of May 19, 2022, Dkt. 169, Plaintiff UAB "Planner5D" ("Planner 5D") and Defendants Meta Platforms, Inc. and Facebook Technologies, LLC (together, "Meta") and The Trustees of Princeton University ("Princeton," and together with Facebook, "Defendants") submit this Joint Case Management Statement.

## I.   CASE STATUS

Plaintiff and Defendants (together, the "Parties") are collectively and productively engaged in document productions and the exchange of written discovery.  As the Parties have previously reported to the Court, this is a complex case involving cutting-edge technical issues, and each party has faced challenges in collecting and producing documents.  *See* Dkt. 146 at 2.  They remain engaged in that process, and in attempting to resolve disputes among themselves when possible.  Thus far, no depositions have been taken, although Planner 5D has noticed one deposition of a Meta employee.

On April 19, 2022, Defendants informed Planner 5D that they intended to propose a bifurcation of discovery in this action.  *See* Dkt. 166-2 at 12.  On May 3, 2022, the Parties met and conferred about Defendants' proposal.  *See id.* at 3.  On May 6, 2022, Planner 5D informed Defendants that it opposed bifurcation.  *See id.* at 2.  On May 13, 2022, Defendants requested that the Court schedule a case management conference to address this issue.  *See* Dkt. 166.  On May 19, 2022, the Court granted Defendants' request and asked the parties to "outline their respective positions on the bifurcation of discovery" in this Joint Case Management Statement.  Dkt. 169.  The Parties describe their positions below.

## II.   THE PARTIES' POSITIONS ON BIFURCATION

### A.   Defendants' Position

Defendants respectfully request that the Court issue an order pursuant to Federal Rule of Civil Procedure 42(b) bifurcating the pre-trial proceedings in this action to facilitate an early summary judgment motion on whether Planner 5D owns the copyrights and trade secrets it alleges in its complaint.  Discovery on all other issues—namely other issues related to liability (*e.g.*, misappropriation), Defendants' affirmative defenses, and Planner 5D's alleged damages—should be stayed pending resolution of that motion.  Such bifurcation is appropriate because it would (a) prioritize the resolution of threshold issues that could potentially dispose of the entire case, (b) defer burdensome and costly discovery as well as

inevitable contested issues relating to such discovery that may prove unnecessary, and (c) avoid prejudicing any party.

**Background.**  Planner 5D alleges that it owns both copyright and trade secret interests in the objects and scenes appearing on its website and the datafiles underlying those objects and scenes.  It is Planner 5D's burden to prove that it owns those intellectual property interests.  *See, e.g.*, *Jonathan Browning, Inc. v. Venetian Casino Resort LLC,* 816 F. Supp. 2d 793, 796 (N.D. Cal. 2009); *VSL Corp. v. Gen. Techs. Inc*., No. C 96-20446 RMW(PVT), 1997 WL 654103, at *2 (N.D. Cal. July 21, 1997).  Moreover, discovery has revealed serious threshold questions about whether Planner 5D can meet that burden.  As shown below, courts routinely dismiss copyright and trade secret misappropriation claims on summary judgment in like circumstances.

First, like any copyright plaintiff, Planner 5D can pursue an infringement claim only with regard to the works that are claimed in the registration applications it submitted to the U.S. Copyright Office.  *See Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 204 (S.D.N.Y. 2015) (granting defendant summary judgment on portion of copyright claim premised on illustrations in book when registration was limited to "text").  Indeed, any other rule would contravene *Fourth Estate Public Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881 (2019).[1]  Planner 5D's representations to the Copyright Office and the allegations in its copyright pleading were premised exclusively on claims that Planner 5D owns copyrights in computer programs.  *See, e.g.*, Copyright Compl. ¶¶ 96, 104, 105 (alleging infringement in two "computer program" copyrights).  For the purposes of copyright, a "computer program" is a "set of statements or instructions to be used directly or indirectly in a computer in order bring about a certain result."  17 U.S.C. § 101.  As the Copyright Office informed Planner 5D, this language means that a computer "must be able to execute the specific statements or instructions" in any source code deposited with the Copyright Office.  Ex. B at 2.

---

[1] Contrary to Planner 5D's statement below, 17 U.S.C. § 408(c)(1) does not render Planner 5D's statements about the nature of its alleged works in its registration applications irrelevant to its ability to pursue this infringement claim.  *See infra*, at 19:12-16.  That provision states only that the Copyright Office's internal "administrative classification" of types of works does not limit the "subject matter of copyright."  17 U.S.C. § 408(c)(1).  However, Defendants do not argue that Planner 5D's alleged works are not copyrightable because of how the Copyright Office classified them.  Rather, Defendants argue, consistent with longstanding principles of copyright law and *Fourth Estate*, that Planner 5D's ability to pursue a copyright claim is necessarily limited by how Planner 5D chose to describe its alleged works in its copyright applications.

1   However, the object and scene datafiles that Planner 5D deposited "are not source code," but rather "a set

2   of coordinates used by another computer program to render specific shapes." *Id.*   Accordingly, the

3   Copyright Office *rejected* Planner 5D's attempt to register its alleged computer program copyrights

4   because the object and scene datafiles that Planner 5D submitted and that are at issue in this case "do not

5   directly or indirectly bring about a specific result." *Id.*   The Copyright Office was correct, and that fact

6   alone disposes of Planner 5D's copyright claim.[2]

7           Further, even if Planner 5D could proceed with its claim despite the fact that its alleged works are

8   not computer programs, summary judgment would still be appropriate to dispose of Planner 5D's copyright

9   claim because (a) those alleged works lack human authorship or originality(which are requirements for all

10   copyrightable works); and (b) title to certain alleged works does not lie with Planner 5D.   *See, e.g.*,

11   *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1270 (10th Cir. 2008) (affirming

12   summary judgment on ground the works were not sufficiently original).

13           Second, to prove it owns a trade secret in any of the datafiles at issue, Planner 5D must prove that

14   it took "reasonable" measures to protect its alleged trade secrets.  18 U.S.C. § 1839(3)(A); Cal. Civ. Code

15   § 3426.1(d)(2).   Throughout this litigation, Planner 5D has relied on two alleged measures: the structure

16   of its website, and its terms of service.  *See* First Am. Compl. ¶¶ 33, 37, 41, 44-45; Dk. 90 at 11 (Court's

17   summary of Planner 5D's allegations).   However, Planner 5D's website made the datafiles at issue publicly

18   available online and identified the locations of those datafiles to users of Planner 5D's service.  *See, e.g.,*

19   *Gemisys Corp. v. Phoenix Am., Inc.,* 186 F.R.D. 551, 562 (N.D. Cal. 1999) (granting summary judgment

20   on trade secret claim "in light of [Plaintiff's] lax treatment of [its] alleged trade secrets").   Further, at the

21   relevant time, Planner 5D did not require its users to manifest their assent to its terms of service; instead,

22   the terms were merely available via a link at the bottom of Planner 5D's website.   Thus, Planner 5D's terms

23   of service constituted a "browsewrap" agreement of a type that the Ninth Circuit has repeatedly held is

24

---

25   [2]  Indeed, while the Copyright Office invited Planner 5D to "submit the required source code" to demonstrate that its alleged works are in fact computer programs, Ex. B at 2, Planner 5D never did so

26   because no such source code exists.  For that reason, Planner 5D's reliance below on the Copyright Office's statement that it did not "question" Planner 5D's "assertion" that its alleged works are computer programs

27   cannot save Planner 5D's claim.  The Copyright Office made that statement while inviting Planner 5D to submit *different* deposit materials to prove its claim that it owns computer programs.  It is undisputed that

28   Planner 5D has no other material to submit.

unenforceable.  *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014).  Thus, the undisputed facts will show Planner 5D did not actually employ any of the measures it claims to have taken to protect its alleged secrets and thus does not own any trade secrets as a matter of law.

At the last case management conference held on March 1, 2022, these issues led the Court to ask, unprompted, "whether there's a way of bifurcating" this case to facilitate an early summary judgment motion.  Dkt. 157 at 9:6-9.  The Court further stated that "[i]f there is a motion that [Defendants] can bring that would dispose of this case . . . [the Court is] here."  *Id.* at 19:22-25.  Following the Court's comments, Defendants have focused their discovery efforts on these threshold, potentially dispositive issues, seeking documents and information about the nature of Planner 5D's alleged copyrighted works, what Planner 5D did to create those works, and the steps Planner 5D took or failed to take to protect the secrecy of information on its website.  Defendants' efforts put them in a position to identify the specific fatal gaps in Planner 5D's claims cited above, and promptly raise the issue of bifurcation with Planner 5D and the Court.

Meanwhile, Planner 5D has focused its discovery efforts predominantly on issues related to damages.  On May 13, 2022, Defendants described to the Court the breadth of the damages discovery Planner 5D seeks in this action, including that Planner 5D has sought broad damages discovery from Defendants, has served multiple damages-focused subpoenas on third parties, and has filed multiple motions to compel the discovery it seeks.  *See* Dkt. 166 at 1-2.  Planner 5D did not dispute Defendants' description.  *See* Dkt. 168.  Moreover, even since Defendants presented their description to the Court on May 13, 2022, Magistrate Judge Kim—in response to Planner 5D's motion in response to Magistrate Judge Kim's denial of its motion to compel against Apple—has both authorized Planner 5D to serve a second subpoena on Apple and made clear that Apple has the right to object to that subpoena.  *See* Dkt. 167.  Thus, not only will Planner 5D undoubtedly pursue the broadest damages discovery possible in this case, but the scope of that discovery will likely require additional judicial resources to police.

***Defendants' proposal.***  Because the extensive discovery on the remaining liability issues, affirmative defenses, and damages will be unnecessary if Planner 5D cannot meet its burden to prove it owns any copyrights or trade secrets, Defendants submit that it is in the interests of judicial economy to resolve the threshold ownership issues first.  Accordingly, Defendants propose that the pre-trial

proceedings in this case be bifurcated to permit the parties first to complete targeted discovery relevant to those ownership issues, and then to permit Defendants to jointly move for summary judgment on those issues. If Defendants' motion is granted, the case will be over. If, however, the Court denies Defendants' motion in whole or in part, the parties can then complete discovery on remaining issues and move for summary judgment on those issues before trial.[3]

To be in a position to file their early motion for summary judgment, Defendants expect to need:

- Approximately three weeks to ensure Planner 5D has substantially completed its production of relevant documents;

- Approximately three weeks to conduct two fact depositions of Planner 5D witnesses;

- Approximately three weeks to prepare affirmative expert reports[4];

- Approximately three weeks to prepare any rebuttal expert reports;

- Approximately three weeks to complete expert depositions; and

- Approximately three weeks to move for summary judgment.[5]

To be clear, Defendants' primary objective in proposing bifurcation is to avoid the costs and burdens associated with potentially needless discovery on damages, affirmative defenses and other liability issues, not to advocate for any specific fixed schedule—particularly one that any of the parties believes will deprive it of the time it needs to litigate the case. Thus, Planner 5D's statements below that this proposed schedule will result in prejudice have no foundation. Indeed, when Defendants first proposed bifurcation, they indicated that they were open to collaborating with Planner 5D on a proposed schedule. *See* Dkt. 166-2 at 12. Planner 5D did not make any proposals, but subsequently indicted that it would want to make sure it had enough time for the second phase of discovery (i.e., for liability, affirmative defense,

---

[3] In connection with this request to bifurcate, pursuant to Section 7 of the Court's Standing Order, Defendants each seek leave to file a second summary judgment motion in this action on the issues for which discovery is deferred in the event this case is not dismissed after this early motion for summary judgment.

[4] Because of the technical nature of Planner 5D's website structure, some limited expert testimony will be required to resolve whether Planner 5D owns any trade secrets. Defendants have already engaged a technical expert and coordinated with Planner 5D to ensure that expert has access to the requisite materials from Planner 5D to analyze its website structure.

[5] These proposed time periods assume that Planner 5D will comply with Defendants' discovery requests, and that no motions to compel will be required.

and damages discovery).  *Id.* at 6.  Defendants *again* stated that they were open to discussing an appropriate schedule and invited Planner 5D to share any timeframes it believed would enable it to join the application. *See id.* at 4.  Planner 5D again never did so.

Defendants remain flexible on the appropriate times needed to complete the different stages of discovery, including any expert reports submitted by Planner 5D.  Accordingly, if the Court determines that bifurcation is appropriate, Defendants are willing to discuss potential changes in the schedule proposed above, either at the conference or at a subsequent meet and confer with Planner 5D.

***Factors favoring bifurcation.***  Federal Rule of Civil Procedure 42(b) grants courts "broad discretion to bifurcate proceedings."  *Wixen Music Publishing, Inc. v. Triller, Inc.*, No. 20-cv-10515, 2021 WL 4816627, at *1 (C.D. Cal. Aug. 11, 2021) (bifurcating ownership issues in copyright action).  Indeed, the Ninth Circuit has long recognized that one purpose of Rule 42(b) "is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues."  *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970).

As a threshold matter, there can be no good faith dispute that the threshold ownership issues identified above are potentially dispositive of this lawsuit.  *See supra* at 2:3-4:3.  If Planner 5D cannot meet its burden to demonstrate that it owns any protectable interests in the alleged copyrights or trade secrets, it cannot prevail on its claims.  That fact alone favors bifurcation to prioritize those issues.  *See Wixen Music*, 2021 WL 4816627, at *2 (granting bifurcation when it would address a potentially dispositive issue); *Zahedi v. Miramax, LLC*, No. 20-cv-4512, 2021 WL 3260603, at *2 (C.D. Cal. Mar. 24, 2021) (same).

When considering requests for bifurcation, courts consider the "[1] separability of the issues, [2] simplification of discovery and conservation of resources, and [3] prejudice to the parties." *Wixen Music*, 2021 WL 4816627, at *1 (internal quotations omitted). All three factors support bifurcation here.[6]

Separability of the issues.  Planner 5D does not dispute that the issues Defendants seek to expedite are factually discrete from other issues in the case, which favors bifurcation.  *See Wixen Music*, 2021 WL 4816627, at *2.  Critically, all those issues involve facts in Planner 5D's control.  For the proposed motion for summary judgment on the copyright claim, the inquiry will focus on the nature of Planner 5D's own datafiles, including whether they are "computer programs," and whether Planner 5D contributed any original content.  For the trade secret claim, the inquiry will focus on whether Planner 5D took reasonable steps to protect its alleged trade secrets before they were allegedly misappropriated.  In other words, the issue will be whether the structure of Planner 5D's website and Planner 5D's terms of services constituted reasonable measures under the circumstances.

Planner 5D's contention below that it needs to depose Defendants to resolve whether it took reasonable measures to protect the secrecy of its alleged trade secrets is incorrect as a matter of law and a clear attempt to complicate the issues to avoid bifurcation.  First, Planner 5D claims it needs to depose Princeton and Dr. Shuran Song "because Planner 5D needs to know how they took its data."  *See infra*, at 15:4-5.  However, that issue is irrelevant to what measures *Planner 5D took* to protect its alleged trade secrets, and Planner 5D cites no authorities suggesting otherwise.  Moreover, Planner 5D already knows how its datafiles were copied because Princeton has responded in detail to interrogatories Planner 5D has

---

[6] The cases Planner 5D cites below in which requests for bifurcation were denied all occurred under materially different factual circumstances that affected the analysis of judicial economy in those cases.  *See Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-2726, 2018 WL 6606247, at *6 (N.D. Cal. Dec. 17, 2018) (party seeking bifurcation sought to bifurcate both discovery *and trial*); *Aoki v. Gilbert*, No. 11-cv-2797, 2015 WL 5734626, at *6 (E.D. Cal. Sept. 29, 2015) (party seeking bifurcation made its request after the court had already *resolved* "multiple dispositive motions"); *Gravity Defyer Corp. v. Under Armour, Inc.*, No. 13-cv-1842, 2013 WL 12138987, at *3 (C.D. Cal. July 23, 2013) (party seeking bifurcation sought to bifurcate both discovery and trial); *Datel Holdings LTD. v. Microsoft Corp.*, No. 09-cv-5535, 2010 WL 3910344, at *2 (N.D. Cal. Oct. 4, 2010) (bifurcation would not resolve entire case even if party seeking bifurcation prevailed on all bifurcated issues); *GEM Acquisitionco, LLC v. Sorenson Group Holdings, LLC*, No. 09-cv-1484, 2010 WL 1729400, at *3 (N.D. Cal. Apr. 27, 2010) (party resisting bifurcation took position that post-bifurcation damages portion of case was *not* complex); *White v. E-Loan, Inc.*, No. 05-cv-2080, 2006 WL 2850041, at *2 (N.D. Cal. Oct. 5, 2006) (proposed bifurcation would require third-party discovery relevant to both proposed phases); *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992) (party seeking bifurcation made request *after the close of fact discovery*).

served addressing this very issue.  Second, while Planner 5D also claims it needs to depose Meta about Meta's "policies and practices" regarding the protection of *Meta*'s trade secrets, Planner 5D cites no authority—and Defendants are aware of none—holding that a *defendant*'s policies are relevant to whether a trade secret *plaintiff* exercised reasonable security measures.  *See infra*, at 15:1-2.  Indeed, such a rule would be illogical, as it would mean that a plaintiff's ability to demonstrate it owns trade secrets would change depending on the identity of a particular defendant in a particular case.  Accordingly, discovery into how Planner 5D's datafiles were allegedly misappropriated or what steps another party may have taken to protect different trade secrets in another context is not relevant to resolving Defendants' early motion.

In addition, the issues actually relevant to Defendants' proposed early motion require relatively little additional discovery to finalize.  Defendants have already served and Planner 5D has already responded to interrogatories related to these issues.  Further, Defendants have already requested and Planner 5D is in the process of completing its production of relevant documents.  Finally, because the issues on which Defendants intend to base their motion are discrete, the fact deposition testimony they need is relatively modest.  Indeed, Defendants currently anticipate that they can obtain the fact deposition testimony they need through two depositions: one of Planner 5D through Rule 30(b)(6) on discrete topics related to Planner 5D's ownership of its alleged intellectual property rights, and one of a Planner 5D modeler employee who created some of the alleged object datafiles.[7]  Unless the Court resolves Defendants' motion by requesting further development of the factual record on those issues, Defendants should not need to address the identified topics again in a future Rule 30(b)(6) deposition or depose the modeler a second time.

<u>Simplification of discovery and conservation of resources.</u>  By contrast, the discovery needed to resolve the remaining issues in the case is burdensome, and the legal questions those issues implicate are complex.  Those facts also favor bifurcation.  *See Zahedi*, 2021 WL 3260603, at *2 (granting bifurcation when the second phase of litigation would be "far more complex" and require "extensive discovery"); *Good Morning to You Prods. Corp. v. Warner-Chappell Music, Inc.*, No. 13-CV-4460-GHK (MRWx),

---

[7] If bifurcation is granted, Defendants reserve the right to take an additional Rule 30(b)(6) deposition of Planner 5D during the second phase of discovery on different topics related to the remaining liability issues, affirmative defenses, and damages.

2013 WL 12138670, at *3 (C.D. Cal. Oct. 16, 2013) (bifurcating discovery regarding copyright ownership because the parties agreed this was "the most efficient way to proceed").

The damages discovery Planner 5D seeks in this action is particularly extensive.  Planner 5D has requested broad and sensitive financial information from Meta and has, so far, served *twelve* third-party subpoenas seeking, among other things, documents about datasets other than those at issue in this case on the theory that they are potentially comparable datasets relevant to calculating Planner 5D's alleged damages.  The propriety of two of these requests have already been litigated before this Court and Magistrate Judge Kim, *see* Dkt. 159, 163, 167, and additional efforts by Planner 5D to enforce its requests and subpoenas seem inevitable.  Moreover, as a result of Planner 5D's motion to compel, Meta has to produce documents and information about dozens of other scene recognition projects that did not involve use of SUNCG, and dozens of other datasets, which have no relevance to the case other than Planner 5D's asserted damages theories.  Moreover, after all of this discovery is completed, the parties will have to proceed with subsequent litigation as to whether or not each of the dozens of other datasets is comparable to SUNCG.  None of this extensive and complex discovery will be necessary if Defendants prevail in their early motion thereby conserving resources for all parties.[8]  If, however, Defendants do not prevail in their early motion, Planner 5D can resume its current discovery plan with regards to damages.

Further, all parties could conserve considerable resources by deferring the many potentially unnecessary fact depositions Planner 5D seeks to take.  On multiple occasions, Planner 5D has sought leave to increase the number of fact depositions it is authorized to take in this action, first to 20 depositions and then up to 23.  *See* Dkt. 117 at 7 (anticipating that Planner 5D "may need up to 20 depositions, exclusive of expert depositions); Dkt. 128 at 7-10 (identifying a "list of 23 specific deponents").  Even when the Court increased Planner 5D's deposition limit from 10 to 12, Planner 5D sought "more slack" and asked the Court "what the criteria is or what you want to see" to authorize more.  Dkt. 141 at 17:2-12.  If Defendants prevail on their early summary judgment motion, all such depositions would be moot, as would any dispute requiring judicial resolution about the proper number of depositions in this case.

---

[8]  Regardless of whether or not the Court grants Defendants' request for bifurcation, Meta plans to produce documents in accordance with Magistrate Judge Kim's Order by June 10th as the parties agreed.

Finally, many of the legal issues related to liability (other than those addressed in the first phase of the proposed bifurcated proceedings) and Defendants' affirmative defenses are complex and could be avoided if Defendants' early summary judgment motion is successful. In particular, all Defendants have alleged fair use as a defense to Planner 5D's copyright claim. That issue can be fact-intensive and require nuance to develop and resolve. The legal standards associated with that defense may also change, as the Supreme Court has agreed to hear a fair use case next term. *See Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, No. 21-869 (U.S.). Thus, this Court may benefit from deferring consideration of that issue until (a) it is necessary that such consideration is required and (b) the Parties and the Court have the benefit of considering the Supreme Court's upcoming opinion on that topic.

Prejudice to the parties. The potential prejudice to Defendants if bifurcation is denied far exceeds the potential prejudice to Planner 5D if bifurcation is granted. Defendants experience a "high" degree of prejudice when they are compelled "to proceed with costly discovery" that may prove unnecessary. *Wixen Music*, 2021 WL 4816627, at *4. Without bifurcation here, Defendants will be forced to do just that, all before being able to test whether Planner 5D owns any protectable intellectual property interests.

By contrast, plaintiffs experience "minimal" prejudice when such prejudice is limited to "some delay in conducting discovery" it seeks to elicit. *Id.* That is the only potential prejudice Planner 5D can articulate here. Indeed, while claiming below that bifurcation would be a "highly-prejudicial" change, the only prejudice that Planner 5D actually articulates is the potential extension of the schedule in this case. Planner 5D's written correspondence to Defendants further confirms that the only potential prejudice to Planner 5D is the extension of the case schedule: it represented to Defendants that the case schedule was "of critical and probably dispositive significance" when considering bifurcation. Dkt. 166-2 at 6.

In this case, delay does not impose a significant prejudice on Planner 5D. The primary remedy Planner 5D seeks is damages, not an injunction, as Defendants ceased using and distributing the SUNCG and/or SUMO Datasets. Moreover, Planner 5D itself caused the majority of delay in this lawsuit. Planner 5D chose to initiate this case before it even attempted to register its alleged copyrights, which caused the Court to dismiss Planner 5D's copyright claim twice at the pleading stage and required this case to remain inactive while Planner 5D attempted to register its alleged works and chose to engage with the Copyright

Office regarding its preferred means of doing so.  *See* Dkt. 52, 90.  As a result of Planner 5D's deficient pleadings and registrations, discovery in this case did not commence until last summer, and document discovery did not begin in earnest until December 2021 given protracted negotiations about the Stipulated Protective Order and the Stipulated Order Re: Discovery Of Electronically Stored Information.  At this point, the parties are still resolving issues with regard to document discovery and only one deposition has been noticed.  Given that Planner 5D asserts it would be too onerous to complete the two limited fact depositions requested by Defendants within three weeks, Defendants believe it is unlikely that the parties will be able to complete all fact discovery (including the twelve depositions currently allotted to Planner 5D, as well as resolving any disputes about more depositions Planner 5D claims it needs) by the current August 10, 2022 deadline.  If fact discovery is extended even without bifurcation, any prejudice Planner 5D alleges based on extensions associated with bifurcation is reduced.

Ultimately, bifurcation will in fact benefit all Parties because it will provide a procedural structure to determine core, potentially dispositive issues before any party incurs the bulk of costs associated with Planner 5D's discovery on damages and other issues of liability.  When the Parties met and conferred about Defendants' request, Planner 5D acknowledged this reality, conceding that "gating" procedures can benefit plaintiffs as well as defendants because they can ensure that claims are viable before significant discovery costs are incurred.  That is all Defendants seek to do here.[9]

### B.     Planner 5D's Position

The prejudice of Defendants' proposal is overwhelming.  Three years into the case and over a year into discovery, Defendants ask Planner 5D to drop everything, abandon the discovery plan the Parties jointly requested just three months ago, and switch to a new schedule where Planner 5D must respond to

---

[9]  To facilitate this joint submission, Defendants sent their portion of this statement to Planner 5D two business days after the Court issued its Order setting the case management conference and asked Planner 5D to send its responsive portion in twice that time (*i.e.*, four business days) so that Defendants could review, consult with their clients, and revise, especially due to the intervening Memorial Day holiday. Planner 5D, however, did not send Defendants a draft of its portion until Monday, May 30 (the day before the joint statement was due to the Court, and also Memorial Day).  Defendants' counsel worked through the holiday and scrambled to consult with both their clients this morning to respond to as many of Planner 5D's arguments as possible by early afternoon today.  However, Planner 5D then insisted on amending its portion of the statement and did not send its edits to Defendants until late in the evening.  Those edits introduced new arguments and a new authority, which Defendants will be prepared to address at the conference.

Defendants' preferred defenses on an accelerated and highly prejudicial basis, while simultaneously delaying resolution of the case. The issues covered in the Phase One of Defendants' proposal are complex. They require expert discovery and depositions from all Parties (not just Planner 5D as Defendants claim). This is a far cry from the simple contract issues in the contested bifurcation/discovery stay cases Defendants rely on. Defendants implicitly acknowledge the prejudice of their accelerated schedule by offering to extend it. (*See supra* at 6:4-7.) But that would trade one prejudice for another. If Defendants' one-sided first phase takes more time, it will delay this matter even further.

Defendants contend their accelerated schedule ***may*** lead to a complete resolution. But "this argument could be made in almost any case, and does not present a strong basis for bifurcation." *GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, No. C 09-01484 SI, 2010 WL 1729400, at *3 (N.D. Cal. Apr. 27, 2010) (denying motion to bifurcate and stay damages discovery). At a minimum, a court should consider the actual likelihood of an early resolution based on the particular facts of the case. Here, Defendants' proposed Phase One issues raise fact-dependent questions that will be unsuitable for summary resolution, as we show below. They are not the clean, threshold questions Defendants portray.

And finally, the efficiency and fairness Defendants purport to offer are illusory. During meet-and-confer, Defendants said that under their plan, both Parties could continue to conduct discovery on Phase One issues in Phase Two. In other words, Defendants want two bites at the apple: first they want a period of exclusive focus on their preferred Phase One issues. But if they lose, then they want the right to continue litigating Phase One issues in Phase Two, apparently up to and including a second summary judgment motion that *includes Phase One issues*. (*Cf. supra* pp. 8:17-20 ("**Unless** the Court resolves Defendants' motion by requesting further development of the factual record on those issues, Defendants **should not need** to have a need to address the identified topics again in a future Rule 30(b)(6) deposition or depose the modeler a second time.") (emphasis added).) Two rounds of discovery and then two summary judgment motions on Defendants' preferred defenses is neither efficient nor fair, especially where, as here, Defendants' odds of success are so low.

Moreover, to end the case, Defendants must eliminate all of Planner 5D's claims. The defenses for copyright and trade secret claims are quite different, while the liability and damages analyses are very

similar.  Defendants' goal is not efficiency, but rather to sideline Planner 5D while they take an extra shot on goal.

>    1.    **Defendants Bear the Heavy Burden of Showing This Is One of the Exceptional Cases Where Bifurcation and a Discovery Stay Would Be Appropriate.**

"In the Ninth Circuit, [b]ifurcation is the exception rather than the rule[,]" and Defendants bear the burden of showing it is warranted.  *GEM* at *3 (internal quotation marks and citation omitted).  Defendants do not dispute this.  *See* Meta Opposition to Motion for Bifurcation and Stay of Discovery, *Facebook Inc. v. OnlineNic Inc.*, N.D. Cal Case No. 3:19-cv-07071, Dkt. 220 at 4:9-11 (Mar. 12, 2022) ("heavy burden to show that this case is one of the few exceptional cases where bifurcation and a discovery stay would be appropriate.").  This is in part because bifurcation leads to a longer overall trial schedule and "the longer a matter is pending, the more disputes are likely to arise and the more motions are likely to be brought, with higher costs the result." *Gravity Defyer Corp. v. Under Armour, Inc*., No. LA CV 13-01842 2013 WL 12138987, at *3 (C.D. Cal. July 23, 2013).  Further, "[b]ifurcation invites two rounds of discovery, with depositions of some [of] the same persons taken more than once, and additional potential for disputes." *Id*.

"Bifurcation should be ordered *only* when the separation will result in judicial economy *and* will not unduly prejudice any party."  *Datel Holdings LTD. v. Microsoft Corp.*, No. C-09-05535 EDL, 2010 WL 3910344, at *2 (N.D. Cal. Oct. 4, 2010) (emphasis added); *Spectra-Physics Lasers, Inc. v. Uniphase Corp*., 144 F.R.D. 99, 101 (N.D. Cal. 1992) (same).

>    2.    **Defendants' Accelerated Schedule Would Unduly Prejudice P5D.**

Defendants' accelerated proposal would significantly prejudice Planner 5D by forcing it to abandon its discovery plan and devote all its resources to litigating Defendants' preferred defenses on their preferred and highly-prejudicial schedule.

Defendants' proposed schedule contemplates the completion of expert discovery by September 20, two and half months earlier than previously planned.  (*See* deadline comparison chart, attached as Exhibit A.) Defendants are ready for this accelerated schedule.  They admit they started preparing for bifurcation three months ago, immediately after they jointly advocated for the current schedule at the last case management conference.  (*See supra* 4:4-12.)  Unaware of Defendants' plan, Planner 5D continued

executing the schedule the Parties agreed to.  That schedule provides that opening reports would be submitted in late September and expert discovery would conclude in December.  Accordingly, Planner 5D has prioritized discovery-intensive issues that require information from Defendants or third parties.  It plans to focus on Defendants' preferred defenses, which require less discovery from Defendants, at a later stage.

Defendants ask Planner 5D to abandon its careful plan, stop almost all discovery into how its information was misused, and allocate its scarce resources to the issues Defendants want to talk about. Defendants propose a rushed schedule in which Defendants would submit affirmative expert reports in support of their early summary judgment motion around August 9, and Planner 5D would then have only three weeks to respond to the Phase One "affirmative" expert reports.  This assumes that by "affirmative reports," Defendants mean only their own expert reports submitted in support of their motion.  If Defendants expect Planner 5D to also submit opening expert reports by August 9 (which under the current schedule are due September 22), that will impose an unfair burden on Planner 5D. Unlike Defendants— who have billions in assets, well-staffed in-house legal departments, and representation by international law firms—Planner 5D is a small company represented by a small law firm.  This matters.  *See* FRCP 26 ("the parties' resources" should be considered when limiting discovery).  Given its size, the burdens of litigation fall much more heavily on Planner 5D.  Planner 5D is trying to manage that burden by carefully managing its discovery plan.  Defendants are trying to manage their burden by asking for special treatment.

Defendants' assertion that relevant discovery is almost complete is also not true.  It is true that *Planner 5D* has largely completed production of documents relevant to Phase One, and that Planner 5D has also made its source code available to Defendants' experts.  But Defendants are not as far along.  For example, Meta has yet to produce documents responsive to Request No. 26 (documents about instances where Meta was the victim of similar data theft) and No. 23 (seeking documents about Meta's data protection policies), and it is not yet clear whether motion practice will be needed.  These documents are needed because the trade secret protection issues Defendants want to pursue "require estimation and measurement by persons knowledgeable in the particular field."  *Rockwell Graphic Sys., Inc. v. DEV*

*Indus., Inc*., 925 F.2d 174, 179 (7th Cir. 1991).  Like Planner 5D, Meta operates in the field of commercial web services, and its policies and practices are probative to the rushed inquiry Defendants are demanding.

Defendants do not admit it, but they will also need to sit for depositions.  Princeton and Dr. Shuran Song, who stole Planner 5D's data, will have to be deposed because Planner 5D needs to know how they took its data. If Planner 5D does not know which protections were circumvented, it cannot explain why the circumvented protections were reasonable.  Further, the problems Dr. Song needed to solve and difficulties she needed to overcome in order to scrape Planner 5D's data are evidence of the reasonableness of Planner 5D's measures.   Defendants suggest that an interrogatory response explaining their misappropriation makes a deposition unnecessary. But Planner 5D is entitled to test Defendants' written responses, and ask follow-up questions, at deposition.

Meta will also need to be deposed.  Again, Meta operates a commercial website and its practices and positions on protecting behind-the-scenes material used by their web servers is probative of the practices in this particular field. Defendants deny that their own security measures are relevant to the reasonableness of Planner 5D's. But Meta is a giant in commercial web services. The precautions it does and does not employ are clearly evidence of what's reasonable in the industry. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991) (Posner, J.) ("what is a 'reasonable' precaution . . . that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved.").

Defendants' proposal also undermines existing discovery commitments.  Over two months ago, Judge Kim ordered Meta to produce certain documents and ordered the parties to confer on timing.  (*See* Dkt. 159.) Meta repeatedly refused to provide an estimated completion date.  When Planner 5D said it intended to ask Judge Kim to set a compliance deadline, Meta announced that it would comply by June 10, three days after this CMC hearing.[10] Meta similarly spent weeks ignoring requests to provide deposition dates for its first witness, but recently relented and said that it will produce him the week after the CMC

---

[10] Meta states in footnote 8 that it "plans to produce documents in accordance with Magistrate Judge Kim's Order by June 10th as the parties agreed."  To be clear, Planner 5D agreed only that it would hold off on its motion if Meta fully complied by June 10.  The Parties have not agreed on what will constitute full compliance.

hearing.  Planner 5D also has outstanding subpoenas, many of which are in the final stages of negotiations, that seek material that would suddenly be outside the scope of discovery.  It is not clear what would happen to these outstanding issues if the Court changed the rules of the game.  What is clear is that the start-and-stop discovery that Defendants seek is far from efficient and is highly prejudicial.

### 3.     Defendants' Proposal Is Highly Unlikely to Resolve Either Proposed Issue.

Defendants propose to limit discovery to "threshold issues that could potentially dispose of the entire case." (*Supra* at 1:25-27.)    Defendants' proposed easy-to-dispose-of issues are (i) the copyrightability of Planner 5D's works, and whether Planner 5D has title to them, and (ii) whether Planner 5D took reasonable measures to protect its trade secrets.  Neither issue is amenable to resolution on summary judgment.

### a.     The Trade Secret Issues Are Unlikely to Be Resolved through Summary Judgment.

Defendants contend that whether Planner 5D used reasonable efforts to protect its trade secrets can be easily disposed of.  It cannot. "The determination of whether 'reasonable efforts' have been taken is quintessentially fact-specific."  *Mattel, Inc. v. MGA Ent., Inc.*, No. CV 04-9049, 2011 WL 3420571, at *2 (C.D. Cal. Aug. 4, 2011). "[W]hat is a 'reasonable' precaution . . . depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991) (Posner, J.). As a result, "only in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment." *AT&T Commc'ns of California, Inc. v. Pac. Bell*, 238 F.3d 427 (9th Cir. 2000) (quoting *Rockwell*). *Accord Art of Living Found. V. Does 1-10*, No. 10-cv-05022-LHK, 2012 WL 1565281, at *22 (N.D. Cal. May 1, 2012).

This is especially true here. There is an inherent trade off, for web-based applications like Planner 5D's interior design tool, between security protections and ensuring an optimum customer experience. The law of trade secrets recognizes that these kinds of cost-benefit trade-offs are integral to the reasonable-measures inquiry—and that they are almost always highly fact specific. *See Rockwell*, 925 F.2d at 180 ("The more Rockwell restricts access to its drawings, either by its engineers or by the

vendors, the harder it will be for either group to do the work expected of it . . . Such reconfigurations of patterns of work and production are far from costless; and therefore perfect security is not optimum security.").

Planner 5D will present expert testimony that it struck a commercially-reasonable balance between the protections it took and the operability of its web application. That Princeton's scientists were able to overcome Planner 5D's protections will not refute this contention. Rather, the question will be the commercial reasonableness of Planner 5D's protections in these precise circumstances. This is a fact-intensive inquiry that will raise multiple jury questions, just as in *Rockwell Graphic Systems* and *AT&T Communications.* The commercial reasonableness of secrecy efforts turns on a "balancing of costs and benefits that will vary from case to case," such that except "in an extreme case," the reasonableness of secrecy efforts is not amenable to summary judgment. *Id*. at 179; *AT&T*, 238 F.3d 427. *Accord Mattel, Inc. v. MGA Ent., Inc*., No. CV 04-9049 DOC RNBX, 2011 WL 3420571, at *2 (C.D. Cal. Aug. 4, 2011).

Defendants describe this issue as a simple legal question about the enforceability of Planner 5D's Terms of Service. But that inquiry cannot resolve the reasonable-measures question. Planner 5D's Terms of Service could in *themselves* constitute a reasonable measure. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.,* 978 F.3d 653, 661 (9th Cir. 2020) ("licensing agreements constitute reasonable measures that are adequate to preclude judgment as a matter of law"). But the converse is not true. Unenforceability of the Terms of Service will not end the inquiry. *See Hilderman v. Enea TekSci, Inc.,* 551 F. Supp. 2d 1183, 1201 (S.D. Cal. 2008) ("the lack of confidentiality agreements is not dispositive on the issue of secrecy. Enea may have taken other precautions to keep its information secret"). Rather, the inquiry will return to a fact- and expert-intensive exploration of whether, under all the circumstances, the technical measures Planner 5D took to protect its files were reasonable. This is just the kind of question that *Rockwell*, *AT&T*, and other cases have held require a jury to decide.

Nor does Defendants' citation to a solitary trade secrets case granting summary judgment diminish this principle. The plaintiff there widely disseminated its trade secrets without protecting their confidentiality, and, unlike here, with no countervailing objective such as the operability of its software.

1   *Gemisys Corp. v. Phoenix Am., Inc.,* 186 F.R.D. 551, 557-62 (N.D. Cal. 1999) (Wilken, J.). In addition,

2   the trade secret claim in *Gemisys* was "brought under Colorado's trade secret statute, not CUTSA," and

3   the confidentiality marking requirement at issue "was derived from Tenth Circuit case law." *PQ Labs, Inc.*

4   *v. Yang Qi*, No. 12-cv-0450 CW, 2014 WL 334453 at *4 (N.D. Cal. Jan. 29, 2014).

5       Defendants' own actions show their awareness that the reasonable-measures question is fact

6   intensive. Defendants' experts have recently scrutinized Planner 5D's source code, aware that they need to

7   show Planner 5D's technical protections were unreasonable under *all* the applicable circumstances. *See*

8   *Rockwell Graphic Sys*, 925 F.2d at 180 ("Obviously it could have taken more precautions.  But at a cost,

9   and the question is whether the additional benefit in security would have exceeded that cost.").

10       Contrary to Defendants' hope, the reasonable-measures inquiry is not a clean threshold issue, or an

11   early off-ramp from Planner 5D's trade secrets claims. It is a jury question and thus not a justification to

12   disturb the discovery schedule.

13                  **b.    The Copyright Issues Are Unlikely to Be Resolved through Summary**
                          **Judgment.**
14

15       The copyrightability issues Defendants seek to accelerate are equally unsuitable as "threshold"

16   issues.  Defendants are vague about their arguments here.  But however they are construed, they fall short

17   of promising an early exit from these claims.

18       Defendants contend title "to certain alleged works" does not lie with Planner 5D.  (S*upra* at 3:10.)

19   Even if that were true, it would not dispose of the copyright claims.  If Defendants proved that only "certain

20   works" were not owned by Planner 5D, other works would remain. The case would proceed.

21       Second, Defendants incorrectly suggest that the Copyright Office found Planner 5D's works were

22   not computer programs.  But the Office said the opposite: that it "does not question the assertion that the

23   works [Planner 5D] seek[s] to register constitute computer programs." (Exhibit B at 2.)   The Office

24   explained that its concern was about the separate issue of whether Planner 5D had met the *deposit copy*

25   requirements for a computer program by depositing "source code." *Id.* ("[W]hat is at issue is whether the

26   deposit requirements for registration of a computer program have been met, and in particular, whether

27   'source code' has been deposited.").

28

Defendants' argument is yet another an attempt to litigate the Copyright Office's registration process, something that is no longer a live issue in this case.  (*See* n. 2 *supra*.) As this Court already found, Planner 5D obtained the required Copyright Office action for this case to proceed to litigation—here, a refusal of registration.  (Dkt. 112 at 9 ("the Copyright Office 'stated that Planner 5D had done all of the things 'required to institute a civil action for infringement under 17 U.S.C. § 411(a).'" (citation omitted)).) The hoops and hurdles required for Copyright Office registration are thus no longer part of this case. *Ward v. Nat'l Geographic Soc'y.*, 208 F. Supp. 2d 429, 444-45 (S.D.N.Y. 2002) (Infringement plaintiffs do not need to show the Office's refusal was erroneous.); *Proline Concrete Tools, Inc. v. Dennis*, No. 07-cv-2310-LAB (AJB), 2013 WL 12116134, at *2 (S.D. Cal. Mar. 28, 2013) (an infringement suit under 411(a) "leaves the Register's refusal to register the copyright claim intact.").

Further, Defendants' argument that "how Planner 5D chose to describe its … works" in its application could limit copyrightability is incorrect. (*Supra* at n.1.) The Register of Copyrights' specification of "administrative classes into which works are to be placed for purposes of deposit and registration . . .  has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title." 17 U.S.C. § 408(c)(1).  Registration involves issues "relating solely to registration formalities," which have no impact in an infringement action. *Ward*, 208 F. Supp. 2d at 448. Defendants suggest that technical hair-splitting will show Planner 5D's works were not "computer programs," but do not explain why Planner 5D describing its works as "computer programs" makes them unprotectable. The holding of *Fourth Estate* is that copyright registration or refusal is a prerequisite to suit, not a requirement that applications' descriptions correspond to statutory definitions. And Planner 5D's description cannot prejudice Defendants, who know what files they took from Planner 5D even if they now dispute whether they technically constitute computer programs.

And though the Court thus need not (and should not) reach the question whether Planner 5D's deposit copies were computer programs, even if the Court allowed evidence on the question there will be competing expert views which will preclude summary judgment for Defendants.

Finally, Defendants say they will argue that Planner 5D's works "lack human authorship or originality." (*Supra* at 3:9-10.)  But that's another fact-intensive issue unsuitable for summary judgment.

The evidence will show that Planner 5D's modelers acted as sculptors of three-dimensional virtual objects. Although they were often inspired by two-dimensional reference pictures, their highly original sculptures deviated from those pictures and always incorporated extensive expressive decision-making not found in those references.  (*See, e.g.*, Copyright Compl., Case No. 20-08261, Dkt. 1 at ¶ 35.)  The evidence will also show that the modelers made further creative choices to configure visualization attributes such as UV mapping, specular intensity and color, transparency, translucency, blending, diffuseness color, and alpha channels.  (*See id.* ¶¶ 36-37; *see also id.* ¶¶ 45-57 (creation of Planner 5D's scenes and scene compilation).)  Against this evidence of the modelers' many creative and expressive choices, as construed in Planner 5D's favor, Defendants will have a near insuperable task to establish, as a matter of *law*, that Planner 5D's works lack the "modicum of creativity" required for copyright protection.  *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1260 (9th Cir. 2021); *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 111 S. Ct. 1282, 1287 (1991) ("the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be").

### 4. There Is No Efficiency if Either Claim Survives.

Unless Defendants prevail completely on both accelerated defenses, discovery will proceed, but Planner 5D will have endured months of unnecessary litigation costs while its ability to develop its case was curtailed by a stay of its discovery.

Disposing of only the copyright or trade secret claims will not significantly narrow discovery, as they all involve the same basic questions about liability and damages: Who was given Planner 5D's data? How did they use it? And what is that data worth?

### B. Defendants' Proposal Is Inexplicably and Prejudicially Untimely.

### 1. It Is Too Late for a Motion to Bifurcate and Stay Discovery.

Defendants' proposal is especially prejudicial because it was filed so late.  It was filed over a year after discovery started, long after Planner 5D built a discovery plan in reliance on the schedule the Parties jointly requested.  That alone is reason to deny this request.  *See Spectra-Physics,* 144 F.R.D. at 101 ("If Uniphase was concerned with burdensome and potentially unnecessary discovery, it should have brought

1   this motion many months ago."); *see also Aoki v. Gilbert*, No. 211-cv-02797, 2015 WL 5734626, at *6

2   (E.D. Cal. Sept. 29, 2015) (denying bifurcation motion filed three years after complaint).

3         Bifurcation and stay requests should come early because that is the only way to achieve efficiency.

4   Waiting until the second year of discovery defeats the purpose of bifurcation because the Parties have

5   already been extensively working on issues that would be put off.  Bifurcation and stay in this situation in

6   fact minimizes efficiency and maximizes prejudice.  *See GEM*, 2010 WL 1729400, at *3 ("GEM has been

7   working with its damages experts for months . . . Accordingly, the Court does not believe that bifurcating

8   trial and extending the deadlines for expert discovery will significantly improve the economy of this case

9   or avoid prejudice.").

10         The need for timely bifurcation requests is exemplified by the two contested bifurcation cases

11   Defendants cite.  The bifurcation motion in *Zahedi v. Miramax, LLC*, No. 20-cv-4512, 2021 WL 3260603

12   (C.D. Cal. Mar. 24, 2021) was filed one week after the last defendant filed its answer.  (*Compare* Answer

13   to Amended Complaint, *Zahedi*, C.D. Cal. Case No. 20-cv-4512, Dkt. 120 (Feb. 18) *with* Motion to

14   Bifurcate, Dkt. No. 121 (Feb. 25).)  The motion in *Wixen Music Publishing, Inc. v. Triller, Inc.*, No. 20-

15   cv-10515, 2021 WL 4816627, at *1 (C.D. Cal. Aug. 11, 2021) was filed soon after motions to dismiss.

16   (*Compare Wixen*, C.D. Cal. Case No. 20-cv-10515, Order on Motion to Dismiss, Dkt. 41 (May 6) *with*

17   Motion to Bifurcate, Dkt. No. 44 (June 25).)

18         Defendants did not seek bifurcation soon after filing their Answers, or soon after their motions to

19   dismiss were denied.  They also did not seek bifurcation at the first case management conference, or the

20   second, or the third.  Instead, they seek it now, after the Parties have largely completed document

21   production, except for Meta's production of materials ordered by Judge Kim and current refusal to respond

22   to much of Planner 5D's damages related discovery.

23             **2.**    **Defendants Cannot Otherwise Justify Their Request.**

24         Defendants offer justifications for their belated request, but all of them were foreseeable.  They

25   complain that Planner 5D served damages discovery, but that can hardly be a surprise.  They also complain

26   that Planner 5D served subpoenas on many third parties, but Defendants knew this was the plan all along.

27   Planner 5D's May 2021 case management statement anticipated "a higher than usual number of witnesses"

28

that included "third party companies that have used the SUNCG dataset" and "third party damages witnesses." (Dkt. No. 117 at 7:1-10.)

Defendants also complain that Planner 5D filed two motions to compel, as if that were a surprisingly high number. The first motion was against Meta, and Judge Kim granted it in full. She did not find the discovery to be excessive. The order on the second motion quashed one Planner 5D subpoena "as drafted" and gave Planner 5D leave to serve a narrower subpoena. (*See* Dkt. 163 & 167.) That subpoena was broad because it was one of the first ones Planner 5D served. Later subpoenas, most of which were served before Judge Kim's ruling, seek far less information and are generally targeted at obtaining comparable license agreements, which are indisputably relevant. *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) (hypothetical license for copyright); *see also* Cal. Civ. Code § 3426.3 (reasonable royalty for trade secret).

Planner 5D is not serving excessive, or unexpected, discovery. In fact, it has been more measured than Defendants: Princeton has served twice as many document requests as it received, and Meta has served over three times as many document requests as it received.

The problem, from Defendants' point of view, is that discovery has shown that their liability is more extensive than previously thought. Princeton has been forced to admit that it distributed Planner 5D's data to over eight hundred people outside of Princeton. Meta originally claimed that it only directly used SUNCG for five projects. After Judge Kim ordered a more thorough investigation, that number rose to nine. That investigation also found over fifty projects that implement the same technology (machine recognition of interior scene data), and many of those projects are staffed or headed by engineers that previously used Planner 5D's data, and likely learned from it. It is not surprising that Meta wants to stop this discovery. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 399 F. Supp. 2d 1064, 1073 (N.D. Cal. 2005) (misappropriation where defendant's product did not practice trade secret but the defendant's engineers studied the trade secret during product development); *see also JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010) (use of a trade secret "to assist or accelerate research or development" is misappropriation).

1    Defendants finally try to justify their belated motion by noting that, three months ago, the Court

2    said that "[i]f there is a motion that [Defendants] can bring that would dispose of this case . . . [the Court

3    is] here." (*Id.* at 19:22-25.) It is true that Defendants are free to file a dispositive motion at any time. But

4    they have not. Instead, they quietly shifted the focus of their discovery to their preferred defenses in

5    apparent preparation for this request, (*see supra.* at 4:4-12), and once they were ready, demanded that

6    Planner 5D drop everything, abandon the schedule the Parties agreed to, and immediately focus on

7    Defendants' preferred issues on a very accelerated basis.

8              **3.     Defendants' Proposal Requires Duplicative Discovery and Serial Motions.**

9                   **a.     The Same Witnesses Will Need to Be Deposed Twice.**

10    The detour Defendants seek will cause more waste than simple delay. Meta, Princeton, and

11    Dr. Song will have to deposed again because many of the topics Planner 5D will want to inquire about will

12    be forbidden in the first phase. Presumably Defendants will want to depose Planner 5D again as well. The

13    technical experts that opined on reasonable protections will likely need to opine on the improper means

14    Defendants used to steal Planner 5D's trade secrets. This will require another round of reports and another

15    round of depositions. And the witnesses testifying to the creativity and originality in Planner 5D's

16    copyrighted works will also have to testify on Defendants' fair use copyright defense.

17    This significant overlap is another reason to deny Defendants' request. *Cf. White v. E-Loan, Inc.*,

18    No. C 05-02080 SI, 2006 WL 2850041, at *2 (N.D. Cal. Oct. 5, 2006) ("bifurcation could lead to

19    duplicative discovery requests to the same individuals or companies, resulting in the very waste of

20    resources that bifurcation is intended to avoid"); *Datel Holdings*, 2010 WL 3910344, at *5 (denying

21    bifurcation where "there may be at least some overlap in factual and legal issues" and "experts would be

22    used for [both phases].").

23              **b.     Defendants Will Re-Examine the Same Issues and File More Motions
                        in Phase Two.**

24

25    In addition to requiring repeat appearances by the same witnesses and the same experts, the second

26    phase could involve the same issues as well. Planner 5D asked Defendants if they were willing to limit

27    the exploration of copyrightability and reasonable practices inquires to the first phase, and they refused.

28

---

1   Arguing that they would need to see the summary judgment opinion before providing a position, they

2   expressly reserved the right to continue litigating Phase One issues in Phase Two. Defendants also seek

3   leave to ignore the prohibition on multiple summary judgment briefs and file another round of summary

4   judgment briefs, which will apparently revisit the same issues. (*See* n.3, *supra.*)

5         Given the many advantages that Defendants seek, they cannot make the required showing that their

6   request will not unduly prejudice any party. *See Spectra-Physics* 144 F.R.D. at 101 (bifurcation should be

7   ordered "only when the separation will result in judicial economy and will not unduly prejudice any

8   party"); *Datel Holdings*, 2010 WL 3910344, at *2 (same).

9         This duplicative discovery will take time and the case schedule will be significant delayed. *See*

10  *Spectra-Physics* at 101 ("prejudice may simply amount to unfair delay to the final disposition"). That

11  delay is extremely prejudicial to a small litigant with limited resources. *See* FRCP 26 ("the parties'

12  resources" should be considered when limiting discovery). Again, Defendants' promised efficiency will

13  only materialize if they show that there are no material factual disputes concerning all Planner 5D's claims.

14  The paths to eliminating the trade secret and copyright claims are difficult and completely unrelated, while

15  the liability and damages discovery for the claims is very similar. The most likely outcome is that this case

16  will proceed to Phase Two, and the Parties and the Court will have to spend even more time and more

17  resources on this dispute.

18        This likely outcome is illustrated by one of the two contested cases Defendants rely on. The *Wixen*

19  bifurcation was granted because the court thought bifurcation could be achieved without affecting the trial

20  date. *See Wixen*, 2021 WL 4816627at *3. That speed was not achieved. Phase-one discovery was

21  extended three times and—after all that—summary judgment was denied in part. (*See Wixen*, C.D. Cal.

22  Case No. 20-cv-10515, Dkt. Nos. 61, 64, 66, 126, 128, 129.) Over a year later, the parties were largely

23  back where they started.

24        Defendants' motion should be denied because "this case has been pending for over three years and

25  bifurcation would lead to additional delay." *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-TSH,

26  2018 WL 6606247, at *6 (N.D. Cal. Dec. 17, 2018).

27

28

III.   **ADR**

    A.   **Defendants' Position**

    Defendants submit that if bifurcation is ordered and their early summary judgment motion is not granted in full, mediation of this matter may be appropriate before additional discovery costs are incurred.

    B.   **Planner 5D's Position**

    Although Planner 5D is willing to participate in mediation, Planner 5D believes it will be hard for the Parties to value the case until they have a shared understanding of the potential damages available to Planner 5D, and the strengths and weakness of Planner 5D's damages case.

    As a result, precluding damages discovery prior to a settlement mediation will likely decrease its chance of success. *Cf. GEM*, 2010 WL 1729400, at *3 ("bifurcation may actually discourage Sorenson from engaging in settlement discussions prior to the liability trial").

Respectfully submitted,

Dated:  May 31, 2022                              **JENNER & BLOCK LLP**


By: /s/ *Andrew H. Bart*
    Andrew H. Bart (*pro hac vice*)

Attorneys for Defendant
*The Trustees of Princeton University*

Dated:  May 31, 2022                              **KIRKLAND & ELLIS LLP**


By: /s/ *Dale M. Cendali*
    Dale M. Cendali (Cal. Bar No. 1969070)

Attorneys for Defendants
*Meta Platforms, Inc.* and
*Facebook Technologies, LLC*

Dated:  May 31, 2022                              **THE BUSINESS LITIGATION GROUP, P.C.**


By: /s/ *Marc N. Bernstein*
    Marc N. Bernstein (Cal. Bar No. 145837)

Attorneys for Plaintiff
*UAB "Planner5D"*

1

Attestation

2          I, Andrew H. Bart, am the ECF user whose ID and password are being used to file this Joint Case

3   Management Statement.  In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the

4   filing of this document has been obtained from all signatories.

5

6   Dated:  May 31, 2022                                        By: /s/ *Andrew H. Bart*_____

7                                                                       Andrew H. Bart (*pro hac vice*)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28