1  Dale M. Cendali (S.B.N. 1969070)
   dale.cendali@kirkland.com
2  Johanna Schmitt (*pro hac vice*)
   johanna.schmitt@kirkland.com
3  Aaron Schroeder (*pro hac vice*)
   aaron.schroeder@kirkland.com
4  **KIRKLAND & ELLIS LLP**
   601 Lexington Avenue
5  New York, NY 10022
   Phone: (212) 446-4800
6
   Kristen Reichenbach
7  kristen.reichenbach@kirkland.com
   **KIRKLAND & ELLIS LLP**
8  555 California Street
   San Francisco, CA 94104
9
   Attorneys for Defendants
10 *Meta Platforms, Inc.* and
   *Facebook Technologies, LLC*
11

   David R. Singer (S.B.N. 204699)
   dsinger@jenner.com
   **JENNER & BLOCK LLP**
   515 S. Flower Street, Suite 3300
   Los Angeles, CA 90071
   Telephone: (213) 239-5100

   Andrew H. Bart (admitted *pro hac vice*)
   abart@jenner.com
   Jacob L. Tracer (admitted *pro hac vice*)
   jtracer@jenner.com
   **JENNER & BLOCK LLP**
   1155 Avenue of the Americas
   New York, NY 10036
   Telephone: (212) 891-1600

   Attorneys for Defendant
   *The Trustees of Princeton University*

12

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20 and XYZ UNIVERSITIES 1-20,<br><br>Defendants. | ) Case No. 3:19-cv-03132-WHO<br>) Case No. 3:20-cv-02198-WHO<br>) Case No. 3:20-cv-08261-WHO<br>)<br>)<br>)<br>)<br>) **DECLARATION OF VALENTINAS**<br>) **MIKELĖNAS IN SUPPORT OF**<br>) **DEFENDANTS' MOTION FOR RELIEF**<br>) **FROM NONDISPOSITIVE PRETRIAL**<br>) **ORDER OF MAGISTRATE JUDGE**<br>)<br>)<br>)<br>)<br>)<br>) |

I, Valentinas Mikelėnas, declare as follows:

1.      I am a professor of the Department of Private Law, Faculty of Law, at Vilnius University.  I am also a partner at the law firm of Ellex Valiunas in Vilnius, Lithuania.  I am a member of the Lithuanian Bar authorized to practice law in Lithuania.  I have personal knowledge of the facts set forth in this Declaration below or have obtained such knowledge from those working with me and/or at my direction.

2.      I have more than 30 years of experience with Lithuanian law.  From 1990 to 1995, I was the Legal Advisor of the Law Department of the Parliament of the Republic of Lithuania, where I advised the Lithuanian government on a variety of domestic legal issues.  Between 1992 and 2000, I was also the Head of the Working Group for the preparation of a new Civil Code of Lithuania and expert of the draft of the Code of Civil Procedure of Lithuania that was enacted in 2002 and is still in effect today.  I am also the Chief Editor of the Commentary on the Civil Code of Lithuania.

3.      From 6 December 1997 to 13 April 2006, I also served as a Judge of the Supreme Court of Lithuania, the highest court in the country.

4.      I also have extensive experience as a scholar of Lithuanian law.  From 1990 to 2003, I was the Head of the Department of Civil Law and Civil Procedure of the Faculty of Law at Vilnius University.  I also served as the Dean of the Faculty of Law from 1992 to 1997.  In my current role at Vilnius University, I teach a course on civil procedure law.  During my career, I have authored or co-authored more than 140 publications on Lithuanian law, including a book on Lithuanian civil procedure[1] and numerous articles on Lithuanian civil procedure law.

5.      In my role at Ellex Valiunas, I also have more than a decade of practical experience assisting foreign parties with issues regarding Lithuanian civil procedure law and privilege law.

---

[1] Dalia Mikelėnienė and Valentinas Mikelėnas.  Civil Procedure in Lithuania.  The Hague: Kluwer Law International, 2000. - 166 p. //International Encyclopedia of Laws. Civil Procedure

6.      I was retained by Defendants in this matter to provide an opinion about Lithuanian law regarding the attorney-client privilege and the collection of evidence in civil disputes resolved under Lithuanian procedural rules.[2]

7.      In preparing this Declaration, I reviewed the parties' Joint Discovery Brief Re: Discovery Dispute dated 1 July 2022 (Dkt. No. 186); the privilege logs prepared by Plaintiff UAB "Planner5D" ("Planner 5D") attached thereto; the Order Regarding Joint Discovery Letter Brief issued by Magistrate Judge Kim on 8 July 2022 (Dkt. No. 188); and relevant Lithuanian legal authorities, including legislation and case law.

8.      The summary of my opinions analyses is as follows.

**I.      Lithuanian Privilege Law**

9.      In Lithuania, the relationship between attorneys and clients and the confidentiality of their communications in civil proceedings are regulated by two legal acts: the Law on the Bar of the Republic of Lithuania of 2004-03-18 (the "Law on the Bar") and the Code of Civil Procedure of the Republic of Lithuania of 2002-02-28 (the "CCP").

10.      As a threshold matter, Article 17 of the Law on the Bar requires individuals seeking to practise as attorneys in Lithuania to first register with the Lithuanian Bar Association and obtain an attorney's certificate.  Pursuant to Article 17(1), only individuals who have obtained an attorney's certificate and are included in a list of practising attorneys maintained by the Lithuanian Bar Association are granted the rights and obligations of an attorney in Lithuania and are permitted to be engaged in the activities of an attorney (hereinafter defined as a "Qualified Attorney").  The date of issue of the Qualified Attorney's certificate is considered to be the date granting the rights and obligations to engage in the activities of an attorney.

11.      In Lithuania, the activities of a Qualified Attorney include representing the interests of clients who engage the attorney.  Thus, a company's outside retained counsel in Lithuania must have an attorney's certificate in order to be a Qualified Attorney, and such counsel is granted the

---

[2] I note that Meta is a client of Ellex Valiunas.  The loss of Meta as a client would not materially affect the firm's business, and I personally have not worked on any Meta matters.  My opinion is not contingent on the outcome of this motion.

2

rights and obligations of an attorney in Lithuania.  If such outside lawyer is not a Qualified attorney, a company's relationship with such outside counsel is not governed or protected by the Law on the Bar.  A company's relationship with any in-house legal personnel is an employment relationship regulated by the Labor Code, not by the Law on Bar.  Therefore, a company's relationship with any in-house legal personnel is not protected by the Law on the Bar.

12.     Lithuanian law includes numerous provisions that protect the confidentiality of a client's communications with Qualified Attorneys.  For example, pursuant to Article 46(1) of the Law on the Bar, Qualified Attorneys may not be summoned as a witness in any dispute or give explanations on circumstances which he has become aware in the course of his professional duties representing a client.  Further, Article 46(5) prohibits access to information covered by the professional secrecy of a Qualified Attorney and its use as evidence in any dispute.  The professional secrecy of a Qualified Attorney expressly includes the terms of the contract with the client, the information provided by the client and the data provided by the client, the nature of the consultation and the data collected by the Qualified Attorney working on behalf of the client, as well as other content of communication between the Qualified Attorney and the client (such as meetings, correspondence, telephone conversations or other forms of communication).

13.     Moreover, Article 199(3) of the CCP provides that the persons addressed in Article 189(2)(1) (*i.e.*, Qualified Attorneys) are not required to produce documents or other written evidence if such production would result in disclosure of circumstances in which they cannot be heard as witnesses.

14.     As discussed above, these provisions of Lithuanian law protect the professional secrecy of a Qualified Attorneys engaged to provide outside counsel in Lithuania, but do not protect the professional secrecy of any lawyer in Lithuania not so registered and engaged.  Thus, if an individual providing legal advice in Lithuania is not a Qualified Attorneys (*i.e.* are not included in the list of practising attorneys maintained by the Lithuanian Bar Association), then his or her correspondence with other persons is not protected from disclosure by the aforementioned rules.

15.     Also as discussed above, the Lithuanian Bar Association maintains a list of practising attorneys in the country.  I checked whether any of Olga Sheremetyeva, Kotryna Masčinkaitė and

3

Sergey Avetikov are included in this list of practising attorneys maintained by the Lithuanian Bar Association.  As of 21 July 2022, none of those individuals are listed, and thus they are not Qualified Attorneys and their communications would not be protected under Lithuanian privilege law.[3]

## II.     Lithuanian Procedural Law

16.     Pursuant to Articles 12 and 178 of the CCP, Lithuanian civil proceedings are based on the adversarial principle and each party must prove the facts on which it relies.  Therefore, the collection and presentation of evidence (including documents) to the court is the right and duty of the parties.

17.     If a party encounters difficulties in obtaining evidence, including from an adversary in a dispute, he has the right to seek the assistance of a court.  In particular, Article 198(1) of the CCP permits courts to require parties to produce written evidence, including documents, to the adverse party.  The assistance provided by the court to the parties in the taking of evidence is based on the principle of co-operation between the court and the parties[4], described in Article 8 of the CCP.

18.     The procedure according to which a court can require parties to produce documentary evidence is governed by Article 199 of the CCP.  Pursuant to that article, a person who asks a court to compel the production of documentary evidence from participants in a proceeding must indicate

---

[3] https://www.advokatura.lt/irasai/advokatu-paieska/?mf3c01hierarchyid%5B%5D=2&mf3c01product_limit=10&mf3c01filt_Specs=pasirinkite&mf3c01title_search2=&mf3c01title_search=Olga%20%C5%A0eremetjeva%20 (last accessed on 21 July 2022);

https://www.advokatura.lt/irasai/advokatu-paieska/?mf3c01hierarchyid%5B%5D=2&mf3c01product_limit=10&mf3c01filt_Specs=pasirinkite&mf3c01title_search2=&mf3c01title_search=Kotryna%20Mas%C4%8Dinskait%C4%97 (last accessed on 21 July 2022);

https://www.advokatura.lt/irasai/advokatu-paieska/?mf3c01hierarchyid%5B%5D=2&mf3c01product_limit=10&mf3c01filt_Specs=pasirinkite&mf3c01title_search2=&mf3c01title_search=Sergej%20Avetikov (last accessed on 21 July 2022).

[4] Order of the Supreme Court of Lithuania of 2018-06-21, case No e3K-3-245-378/2018, par. 21//https://www.infolex.lt/ta/Default.aspx?id=20&item=doc&AktoId=1604474&cid=64154

4

the following: (a) the requested written evidence; (b) the reasons why a particular person is assumed

to possess the written evidence; and (c) the factual circumstances to be proved by the written

evidence.

19.    Upon receipt of such a request, the court hears the opinion of the opposing party and

decides whether or not to grant such a request.  The most important criteria for examining such

requests are the relevance of the evidence sought to the dispute, its admissibility, and the precise

indication of the evidence sought to be recovered.

20.    The court exercises its right of discretion when considering such requests.  If a party

adequately specifies the evidence sought to be recovered and that evidence relates to the case at

hand, and is admissible then such a request will be granted by the court.  Lithuanian case law also

emphasises that the main objective of the court of any instance is a fair hearing of the case in order

to establish the substantive truth in the case.  The court's duty is to investigate all the circumstances

relevant to the case and to make a fair decision (Order of the Supreme Court of Lithuania of 14 April

2017 in civil case No 3K-3-179-611/2017)[5].

21.    If the court of first instance refuses to grant a party's request to recover evidence, the

losing party may raise such refusal on appeal.  In such a case, the appellate court examines whether

the court of first instance was indeed justified in denying the request.  If the appellate court finds that

the court unreasonably rejected the party's application, it can overturn the court's judgment and refer

the case back to the court of first instance for a new trial.

22.    For example, in a very recent case before the Court of Appeal of Lithuania, the court

stated that Lithuanian courts *" must not limit a party's ability to prove in the evidentiary process if a*

*party substantiates his request for the recovery of evidence, indicates the circumstances that the*

*written evidence can substantiate, and provides evidence that he cannot obtain the relevant*

*evidence. During the proceedings, i.e. without examining the merits of the case, the court is not*

*entitled to draw a conclusion on the merits of the claims in the claim, and therefore does not have*

*the right to find that the evidence sought by the plaintiff will not be decisive for the satisfaction of the*

[5] Order of the Lithuanian Court of Appeal, case Noe2A-425-934/2002, par.9
//http://www.infolex.lt/tp/2094221

1   *claim (order of the Supreme Court of Lithuania of 1 February 2017 in civil case No. 3K-3-3-*

2   *695/2017)"[6].*

3        23.    The Court of Appeal of Lithuania, in sending that case back to the court of first

4   instance for retrial, also stated that because *"the plaintiff had substantiated her application for the*

5   *recovery of evidence and had set out the relevant facts which the written evidence could*

6   *substantiate, [. . ]. the trial court had wrongly refused to grant the plaintiff's request for the*

7   *production of evidence. As has already been said, the court is not entitled to refuse to recover the*

8   *evidence on the ground that the evidence sought to be recovered will not be decisive for the*

9   *satisfaction of the claim [. . .]"[7].*

10        24.    This order means that the court, in deciding whether to grant a party's request for

11   recovery of evidence, only makes a preliminary review of the relevance of the evidence sought to be

12   recovered to the case file.  The final assessment of the relevancy of the evidence should be done in

13   the final judgment on the merits.  Therefore, Lithuanian courts must grant such requests of a party if

14   it sees at least a minimal relevance of the evidence sought to be asserted to the case.

15        25.    If the court grants a party's request and compels the production of evidence, the

16   person who possesses the evidence must submit it to the court.  If such a person does not comply

17   with the court order, he may be fined up to EUR 300 pursuant to Article 199(6) of the CCP[8].

18   Further, the evidence may still be recovered using a compulsory procedure, for example through a

19   bailiff.

20        26.    I have also reviewed the Lithuanian legal authorities cited by Planner 5D in footnote

21   9 on page 5 of the Joint Letter Brief Re: Discovery Dispute.  It should be noted that Planner 5D

22   misinterprets that case law applying Article 199 of the CCP.  In particular, while Planner 5D refers

23

24   _____

25   [6] Order of the Lithuanian Court of Appeal, case Noe2A-425-934/2002, par.27
//http://www.infolex.lt/tp/2094221

26   [7] Order of the Lithuanian Court of Appeal, case Noe2A-425-934/2002, par.28
//http://www.infolex.lt/tp/2094221

27   [8] Order of the Lithuanian Court of Appeal of 2020-09-18, case No e2-1087-
843/2020//https://liteko.teismai.lt/viesasprendimupaieska/tekstas.aspx?id=8cf88845-f4a5-4fc8-87e2-
28   aae2a65354f0

to three orders of the Court of Appeal and argues that Lithuanian courts recover only "*necessary*" evidence, that is not true.  None of the three cases cited by Planner 5D reached such a conclusion.

27.     First, in case No 2A-1765/-2013, the Court of Appeal of Lithuania stated that *"in the case at issue, the plaintiffs, AB "Underground Works"/ Stulz-Wasser und Prozestechnik GmbH, did not properly state the facts of the case, which the written evidence requested by them could confirm. A panel of appellate court judges finds that the evidence sought to be recovered is irrelevant to the determination of the facts relevant to the case, and therefore the appellate court's panel of judges disagrees with the appellants' request and rejects it as unfounded."*[9].  Thus, the request for recovery of evidence was not denied because the evidence sought to be presented was "unnecessary," but because the party seeking the evidence did not sufficiently demonstrate its relevance.  In other words, the party seeking evidence did not prove at least a minimal link between the evidence sought to be recovered and the facts to be proved.

28.     Second, in case No 2-1303/2014, the request to recover documents was both cumulative and improperly presented to the court of appeal in the first instance.  The Court of Appeal stated that *"the court rejects the defendant's request to recover new evidence from R.P. because, as mentioned above, the trial court in the case has established the essential facts relevant to the question of the defendant's solvency. In the meantime, the abstract reasons set out in the application do not give rise to the conclusion that the documents sought to be recovered are necessary and relevant for the purpose of verifying the validity and legality of the impugned order of the court, so that granting this request and postponing the proceedings would not be contrary to the requirements of the principles of concentration and economy of procedure [. . .]"*[10] Thus, the court did not grant the application on the ground that the fact of insolvency had already been proved in the course of the proceedings in the court of first instance and the recovery of new evidence on that issue would be superfluous. In addition, the party seeking evidence in that case first raised its request with

---

[9] http://www.infolex.lt/tp/684892

[10] http://www.infolex.lt/tp/838557

7

the Court of Appeal, which, pursuant to Article 314 of the CCP, generally refuses to consider new evidence that could have been presented in the court of first instance.

29.     Third, in case No 2-1895/2014 Court of Appeal of Lithuania has stated that "[…] *in the event that the person involved in the case fails to obtain evidence for objective reasons, the court may decide on the question of the necessity of obtaining the relevant evidence (art. 199 CCP). If a party submits a request to recover evidence, the court may refuse such a request if it is clear that the evidence sought will neither confirm nor refute the facts that are relevant to the case (Article 180 CCP). In the appellate court's view, the plaintiff's request for recovery of the evidence relied on does not substantiate the necessity of such a procedural action and, moreover, in view of the fact that the said evidence would neither confirm nor refute the materially new facts relating to the dispute between the parties, the decision to recover the evidence sought would unduly delay the examination of the separate appeal and would lead to the admission of evidence of an excessive nature in relation to the dispute between the parties concerning the granting of the loan  before the Lithuanian Arbitration Court, the application must therefore be dismissed as unfounded (Article 314 CCP)*"[11]. Thus, the request at issue was denied because the party was unable to prove the relevancy between the evidence sought to be recovered and the facts to be proved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: July 21, 2022

Valentinas Mikelėnas

---

[11] http://www.infolex.lt/tp/939209