**JENNER & BLOCK LLP**
David R. Singer (Cal. Bar No. 204699)
dsinger@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA  90071
Phone:         (213) 239-5100
Facsimile:     (213) 239-5199

**JENNER & BLOCK LLP**
Andrew H. Bart (*pro hac vice*)
abart@jenner.com
Jacob L. Tracer (*pro hac vice*)
jtracer@jenner.com
1155 Avenue of the Americas
New York, NY  10036
Phone:         (212) 891-1600
Facsimile:     (212) 891-1699

Attorneys for Defendant
*The Trustees of Princeton University*

**KIRKLAND & ELLIS LLP**
Dale M. Cendali (Cal. Bar No. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (*pro hac vice*)
johanna.schmitt@kirkland.com
Aaron Schroeder (*pro hac vice*)
aaron.schroeder@kirkland.com
601 Lexington Avenue
New York, NY  10022
Phone:         (212) 446-4800
Facsimile:     (212) 446-4900

Attorneys for Defendants
*Meta Platforms, Inc.* and *Facebook Technologies, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.; FACEBOOK TECHNOLOGIES, LLC; THE TRUSTEES OF PRINCETON UNIVERSITY; et al.,<br><br>Defendants. | Case No. 3:19-cv-03132-WHO (SK)<br>Case No. 3:20-cv-08261-WHO (SK)<br><br>**DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |

Pursuant to Civil Local Rule 72-2 and Federal Rule of Civil Procedure 72(a), Defendants Meta Platforms, Inc., Facebook Technologies, LLC, and The Trustees of Princeton University (collectively, "Defendants") respectfully move to set aside an order issued by Magistrate Judge Kim on July 8, 2022 (Dkt. 188) (the "Order").   The Order denied Defendants' motion to compel the production of 134 documents identified on the privilege log of Plaintiff UAB "Planner5D" ("Planner 5D") that are concededly *not* privileged under the laws of Lithuania, where the communications occurred.  Defendants respectfully submit that the Order applied an incorrect legal standard, and on that basis was "contrary to law." Fed. R. Civ. P. 72(a).  Planner 5D should be compelled to produce the documents at issue.

## BACKGROUND AND PROCEDURAL HISTORY

The material facts are not in dispute.  Planner 5D is a Lithuanian company that has its principal place of business in Vilnius, Lithuania.  All of the individuals relevant to this dispute are based there, including Planner 5D's head of legal affairs (Olga Sheremetyeva), another employee in Planner 5D's legal department (Kotryna Mascinkaite), and a third party (Sergey Avetikov) whom Planner 5D claims is affiliated with Planner 5D's managing shareholder.[1]  In its privilege log, Planner 5D disclosed that it is withholding 107 documents reflecting communications Planner 5D personnel had with Ms. Sheremetyeva and/or Ms. Mascinkaite, as well as 27 documents reflecting communications Planner 5D personnel had with Mr. Avetikov.  *See* Dkt. 186 at 1 nn.1 & 2.  From the information disclosed in Planner 5D's privilege log, it appears the documents touch on critical issues in this case (including in Phase 1), such as Planner 5D's alleged efforts to protect its purported trade secrets through the terms of service on its website, the conditions pursuant to which Planner 5D considered disclosing its alleged trade secrets to third parties, and Planner 5D's consideration of intellectual property issues affecting its operations, among others.

It is also undisputed that, under Lithuanian law, these communications are not protected by attorney-client privilege.  Like many European civil law countries, Lithuania protects from disclosure communications between clients and retained outside counsel who are members of the national bar, but

---

[1] Planner 5D made contradictory statements about Mr. Avetikov's role in the process of presenting this dispute to Magistrate Judge Kim.  *See* Dkt. 186 at 1 n.2.  For the purposes of this motion only, Defendants accept Planner 5D's articulation, as it is immaterial to the resolution of the motion.

does *not* protect communications between employees of a company and members of the company's in-house legal department.  *See* Decl. of Valentinas Mikelenas ("Mikelenas Decl.") ¶¶ 9-14.[2]  Indeed, Planner 5D conceded that point before Magistrate Judge Kim.  *See* Order at 2:5.  Applying Lithuanian privilege law, Planner 5D's withholding is improper and these documents must be produced.  *See, e.g.*, *AstraZeneca LP v. Breath Ltd.*, No. 08-cv-1512, 2011 WL 1421800, at *8 (D.N.J. Mar. 31, 2011) (compelling production of communications between in-house counsel and employees not protected under Swedish law); *In re Rivastigimine Pat. Litig*., 239 F.R.D. 351, 360 (S.D.N.Y. 2006) (same, under Swiss law).

Unable to avoid the scope of Lithuanian privilege law, Planner 5D instead asserted that *U.S.* privilege law should apply to the communications at issue.  But that is contrary to the law.

When a privilege dispute arises involving communications in a foreign country, federal courts apply a "touch base" test to determine what country's privilege law applies.  Order at 1:22-25; *see also Cadence Pharmas., Inc. v. Fersneius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014).  Under that test, the "law of the country that has the predominant or the most direct and compelling interest" in the communication governs, which is "usually the place where the alleged privileged relationship was entered into or the place in which that relationship was centered" when the communication was sent.  Order at 1:25-2:2 (internal quotations omitted).  The Order correctly determined that, in applying that test, "Lithuanian law of privilege applies."  *Id.* at 2:3.

Nonetheless, relying on one case addressing demonstrably different facts, the Order concluded that, before Lithuanian privilege law could be applied, Defendants had the burden to demonstrate that they "would be able to obtain the communications" in civil litigation in Lithuania as a matter of Lithuanian *procedural* law.  *Id.* at 2:11-12.  Respectfully, that was in error.  In order to avoid the application of a foreign nation's privilege laws to documents that do not "touch base" with the United States, the party asserting privilege must demonstrate that (a) the foreign jurisdiction does not have a developed body of attorney-client privilege law to apply **and** (b) the foreign jurisdiction's procedural rules *make it impossible* to obtain the documents at issue in a foreign proceeding.  Planner 5D cannot satisfy that burden.

---

[2] Magistrate Judge Kim's standing order prohibited the parties from submitting declarations about Lithuanian law.  Accordingly, Defendants submit one now.  *See* Dkt. 186 at 3 n.5 (proffering a declaration).

**ARGUMENT**

There is no dispute that the country with "the most direct and compelling interest" in the documents at issue is Lithuania. Thus, the presumption is that Lithuanian privilege law governs disclosure of these documents. The Order, however, held that a narrow exception to the "touch base" test should apply, based on a citation to a single case, *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92 (S.D.N.Y. 2002). *See* Order at 2:3-14. In *Astra*, a court applied U.S. privilege law to certain Korean documents that did not "touch base" with the United States because (a) Korea had no developed body of substantive privilege law to apply and (b) the absence of such law was attributable to the fact that Korean *procedural* law permitted "virtually no disclosure" of documents and thus made it impossible to obtain the documents at issue. 208 F.R.D. at 102. In other words, *Astra* held that because Korean procedural law foreclosed litigants from obtaining the documents and the documents were privileged under U.S. law, it would have been inequitable to allow the absence of a developed body of Korean privilege law to result in the production of documents that would not have been produced in either country. *See id.* That holding is limited to the narrow circumstance where a nation has no developed body of privilege law but has made it procedurally impossible for an adverse party to obtain the documents at issue in a litigation in that forum.

In the 20 years since it was decided, *Astra* has never been applied to a legal regime other than Korea's. To the contrary, courts have rejected arguments based on *Astra* when the intersection of a nation's privilege and procedural laws were not precisely analogous to Korea's. Thus, one court distinguished *Astra* because Swiss privilege law is developed and "specifically excludes the documents at issue from the privilege it recognizes," and did not engage in an analysis of the "comparability" of the Swiss and U.S. legal systems. *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 78 (S.D.N.Y. 2006), *abrogated on other grounds by In re Queen's Univ. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016). In another case involving Chinese documents, the court distinguished *Astra* because—while Korean procedural law foreclosed the possibility that the documents at issue were discoverable—production "could happen" under Chinese law. *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 490-91 (S.D.N.Y. 2013), *on reconsideration in part*, No. 11-cv-1266, 2013 WL 6098484 (S.D.N.Y. Nov. 20, 2013). To reach the conclusion that production could happen in China, the court in *Wultz* considered whether Chinese law permitted the production of

3

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE JUDGE
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-08261-WHO

documents under an articulable standard and concluded that "nothing in Chinese law prevents the disclosure" of documents "in the same way that Korean law prevented the disclosure of the documents in question in *Astra*." *Id.* at 491. Tellingly, the court expressly rejected an argument that it should attempt to *apply* Chinese procedural law or make any determination as to how a Chinese court might apply that law. *See id.* Thus, *Rivastigmine* and *Wultz* demonstrate that as long as a country has a developed body of privilege law or has procedures and standards that permit the production of relevant documents, *Astra* is inapposite. Tellingly, Defendants are not aware of *any* case other than *Astra* itself in which the precise circumstances leading to its result were duplicated.[3]

*Astra* is distinguishable here because, unlike Korea, Lithuania has *both* a developed body of privilege law that defines what communications are and are not protected from disclosure *and* procedural laws that grant courts broad discretion to compel the production of relevant non-privileged documents.

First, Lithuania has a developed body of substantive rules governing the scope of its attorney-client privilege. Notably, those rules protect from disclosure communications between clients and retained counsel who are members of the Lithuanian bar. *See* Mikelenas Decl. ¶¶ 12-13. Thus, when clients retain outside counsel, both the clients and their counsel reasonably expect their communications will be kept confidential. *See id.* By contrast, Lithuanian privilege law does *not* protect communications between employees of a company and members of the company's in-house legal department. *See id.* ¶ 11. This distinction is common among European civil law countries. *See AstraZeneca*, 2011 WL 1421800, at *8 (Swedish law); *Rivastigimine*, 239 F.R.D. at 360 (Swiss law). Thus, in-house legal personnel in Lithuania do not even register as members of the bar in that country, and none of Ms. Sheremetyeva, Ms. Mascinkaite, or Mr. Avetikov did so. *See* Mikelenas Decl. ¶¶ 11, 15. Planner 5D could not have expected its employees' communications with these individuals would remain confidential. *See Rivastigimine*, 237 F.R.D. at 78.

---

[3] In the only other case on this issue Planner 5D cited to the Magistrate Judge, the court expressly held that the documents at issue "touched base" with the United States, distinguishing that case from *Astra* and from the facts here. *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 67 (S.D.N.Y. 2010). Only after reaching that conclusion did the court in *Gucci* go on in *dicta* to consider issues of international comity, citing *Astra* in the process. *See id.* at 67-68. Tellingly, when analyzing the scope of *Astra*, the court in *Wultz* distinguished *Gucci* as a case relating to the application of the "touch base" test and did not cite *Gucci* as a relevant authority interpreting *Astra*. *See Wultz*, 979 F. Supp. 2d at 489 n.56.

Second, Lithuanian procedural law gives courts broad discretion to compel the production of relevant documents. The Lithuanian Code of Civil Procedure expressly permits litigants to make written applications seeking documents from an adversary. *See* Mikelenas Decl. ¶¶ 17-18. Courts then have broad discretion to grant such requests, based predominantly on the potential relevance of the documents sought. *See id.* ¶¶ 19-24.[4] Thus, litigants in Lithuania know that any of their non-privileged, relevant documents *could* be subject to production. That renders *Astra* inapposite. *See Wultz*, 979 F. Supp. 2d at 490-91.

Accordingly, the Order erred in finding this case analogous to *Astra*. Rather than evaluating whether Lithuania has procedural laws that prevent the disclosure of documents as did the Korean laws at issue in *Astra*, the Order held that Defendants are required to demonstrate that they "would be able to obtain" the documents in Lithuania. Order at 2:11-12. That approach would require U.S. courts to *apply* foreign procedural law and adjudicate how a foreign court would resolve hypothetical discovery disputes, rather than merely determine the potential range of outcomes permissible under that law. Such an approach is impractical as a general matter, and especially so in this instance, where Planner 5D contends that a court must determine whether its documents are "necessary" to resolving the dispute without even having access to the documents at issue. Accordingly, *Wultz* expressly considered and rejected an argument that *Astra* required U.S. courts to apply foreign procedural law. *See* 979 F. Supp. 2d at 490-91. While Defendants cited *Wultz* to the Magistrate Judge, the Order did not mention *Wultz* or make any effort to distinguish it.

In short, U.S. privilege law should apply to documents that do not "touch base" with the United States only when the party withholding the documents demonstrates that the procedural laws of the relevant nation make it impossible to obtain the documents at issue. Planner 5D cannot meet that burden.

## **CONCLUSION**

Defendants respectfully request an order compelling Planner 5D to produce the documents at issue.

---

[4] Planner 5D previously argued that Lithuanian courts apply a different standard, based on necessity rather than relevance. *See* Dkt. 186 at 5:14-22. That is incorrect. In particular, the Lithuanian authorities on which Planner 5D relied rejected applications for discovery either because the party seeking discovery failed to make a threshold showing of relevance or because the discovery sought would be cumulative with discovery already obtained. *See* Mikelenas Decl. ¶¶ 26-29. Nevertheless, even accepting Planner 5D's description, Defendants should still prevail because Planner 5D concedes it is *possible* to obtain the documents at issue under Lithuanian procedural law. *See* Dkt. 186 at 5:17-19.

Dated:  July 22, 2022                          JENNER & BLOCK LLP


                                               By: /s/ *Andrew H. Bart* (with consent)
                                                   Andrew H. Bart (*pro hac vice*)

                                               Attorneys for Defendant
                                               *The Trustees of Princeton University*


Dated:  July 22, 2022                          KIRKLAND & ELLIS LLP

                                               By: /s/ *Dale M. Cendali*
                                                   Dale M. Cendali (Cal. Bar No. 1969070)

                                               Attorneys for Defendants
                                               *Meta Platforms, Inc.* and
                                               *Facebook Technologies, LLC*

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE JUDGE
Case Nos. 3:19-cv-03132-WHO & 3:20-cv-08261-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ATTESTATION</u>**

I, Dale M. Cendali, am the ECF user whose ID and password are being used to file this Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge.  In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from all signatories.


Dated:  July 22, 2022                                      By: /s/ *Dale M. Cendali*_____
                                                                     Dale M. Cendali (Cal. Bar No. 1969070)