MARC N. BERNSTEIN (SBN 145837)
mbernstein@blgrp.com
WILL B. FITTON (SBN 182818)
wfitton@blgrp.com
CHRISTIAN G. ANDREU-VON EUW (SBN 265360)
christian@blgrp.com
THE BUSINESS LITIGATION GROUP, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone: 415.765.6633
Facsimile: 415.283.4804

Attorneys for Plaintiff
UAB "PLANNER5D"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" dba PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20, and XYZ UNIVERSITIES 1-20.<br><br>Defendants. | Case No.  3:19-cv-03132-WHO (SK)<br>Case No.  3:20-cv-08261-WHO<br><br><br>**OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |

## I. INTRODUCTION

In Lithuania, the closest thing to a discovery request is a motion for an order requiring the opposing party to submit specified evidence *to the court* for consideration in deciding the case on the merits. This very different process requires very different standards. Lithuanian courts will only order a party to submit evidence to the court that—to quote a treatise co-authored by Defendants' expert—is "necessary and sufficient" to establish the relevant facts of the case. The attorney-client communications that Defendants seek are by no means essential to a decision in this case, and Defendants fail to show otherwise. Thus, under the persuasive reasoning of the district court in *Astra*, Judge Kim correctly decided to apply U.S. privilege law and deny Defendants' motion to compel.

Defendants' motion for review of Judge Kim's order should be denied.

## II. STANDARD OF REVIEW

The district court may reconsider a magistrate judge's nondispositive rulings if "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "[T]he magistrate's factual determinations are reviewed for clear error[.]" *Id.* at 485. A finding is clear error when "the record contains no evidence on which [the magistrate judge] rationally could have based that decision." *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999).

## III. ARGUMENT

### A. A Lithuanian court would not require production of these attorney-client communications unless shown to be necessary to a decision of the case on the merits.

The self-executing pre-trial discovery process that is so familiar to U.S. lawyers does not exist in Lithuanian courts. Rather, in Lithuania, evidence is submitted directly to the court. (Inta Decl. ¶¶ 5, 10.) Lithuanian courts can order specific evidence to be produced, but when they do, they order it to be submitted *to the court*. (*Id.*; Mikelėnas Decl., ECF No. 196-1 ¶¶ 24–25.) U.S. courts deciding

discovery disputes define relevance loosely because the vast majority of what is produced will never be used at trial. But because Lithuanian courts receive and review everything that is produced, they must define relevance more stringently. (Inta Decl. ¶ 13.) Otherwise, nothing would get done.

Lithuanian courts thus only admit evidence that is "necessary and sufficient" to establish the facts of the case, which means that a comprehensive examination of the case is not possible without the requested evidence. (Inta Decl. ¶ 9.) The term "relevance" is used interchangeably with this standard. (Inta Decl. ¶ 11.) Defendants' expert, Prof. Valentinas Mikelėnas, co-authored a treatise that makes this point well:

> The court admits and examines only such evidence that supports the facts relevant to the case. This feature of evidence, which at the same time is one of the most important evidentiary rules, is known as relevance of evidence. In every civil case, evidence must concentrate solely on the subject-matter to be proven, i.e. the facts that must be established and examined. *Therefore, only information that is necessary and sufficient for establishing all the facts of the case may be admitted, examined, and assessed.* This rule helps to sort out from a great deal of information such information that has nothing to do with the case, so as not to burden the court with superfluous work of examining facts that are irrelevant to the case. It is for the judge to determine whether the evidence that the parties to the case have adduced and that they request to recover is relevant to the case.

(Inta Decl. ¶ 12) (emphasis added).

In sum, a Lithuanian court would not order these attorney-client communications to be produced—that is, submitted to the court—unless Defendants

1  showed that the court needs to examine them to fully decide the case on the merits.
2  Defendants made no such showing before Judge Kim. And they make no such
3  showing in this Court. In fact, Defendants say nothing about why they want these
4  attorney-client communications, let alone why they are necessary for the Court to
5  decide the case. As a result, a Lithuanian court would not order the documents to be
6  produced. And Judge Kim was right to deny Defendants' motion.

       **B.**    ***Astra* and *Gucci* establish the right standard, and Judge Kim correctly followed it.**

      In denying Defendants' motion, Judge Kim correctly followed *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 102 (S.D.N.Y. 2002). *Astra* involved a challenge to a privilege claim over documents related to Korean patent proceedings. The *Astra* court observed that Korean law does have some "protections related to the concept of attorney-client privilege," but found that those protections did not cover the challenged documents. *Id.* at 100–101. The court also observed that Korean law permits only limited discovery in the first place. *Id.* at 101–102. "Under these circumstances, where virtually no disclosure is contemplated, it is hardly surprising that Korea has not developed a substantive law relating to attorney-client privilege and work product *that is co-extensive with our own law*." *Id.* at 102 (emphasis added). Given these circumstances, the court concluded, compelled disclosure of the Korean documents would violate international comity as well as the public policy of the federal forum, "which promotes full discovery but, at the same time, prevents disclosure of privileged documents." *Id.* Thus, even though the documents did not "touch base" with the United States, the court applied federal common law, and found the documents to be privileged. *Id.*

      Defendants misread *Astra*'s holding as "limited to the narrow circumstance where a nation has no developed body of privilege law but has made it procedurally impossible for an adverse party to obtain the documents at issue in a litigation in that

1  forum." (ECF No. 196 at 3:13–15.) But it isn't true that the *Astra* court found that
2  Korea had no developed body privilege law. On the contrary, the court found that
3  Korean law did have some attorney-client privilege–type protections. *Id.* at 100–101.
4  What the court *did* say is that "Korea has not developed a substantive law relating to
5  attorney-client privilege . . . *that is co-extensive with our own law*." *Id.* at 102 (emphasis
6  added). *Astra* thus does not support Defendants' claim that U.S. privilege law can
7  only be applied to foreign documents if that country has no privilege law at all.

8      Nor does *Astra* support the claim that the documents must be procedurally
9  impossible to obtain under the foreign law. On the contrary, the court cited the
10 Second Circuit's holding that "in the extremely sensitive and delicate area of foreign
11 affairs, . . . [m]echanical or overbroad rules of thumb are of little value; what is
12 required is a careful balancing of the interests involved and a precise understanding
13 of the facts and circumstances of the particular case." *Id.* at 102 (quoting *United States*
14 *v. First National City Bank*, 396 F.2d 897, 901 (2d Cir.1968)).

15     The court in *Gucci* also disagreed with Defendants' rigid reading of *Astra*.
16 *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58 (S.D.N.Y. 2010). Much like Lithuanian
17 courts, Italian courts "may direct a party to produce a document 'about which the
18 requesting party knows, or purports to know, the specific content, which must be
19 relevant and material for the resolution of the dispute.'" *Id.* at 69. *Cf.* Code Civ. Proc.
20 of Rep. of Lith., Art. 199(1). Under these standards, the *Gucci* court found that it was
21 "*unclear* whether [the contested documents] would be discoverable in an Italian
22 lawsuit" and the "Italian court *likely* would not grant categorical requests for the
23 production of documents 'as known in Common Law countries.'" *Id.* at 68-69
24 (emphasis added). The court held that, "absent definitive evidence that Italy
25 recognizes an attorney-client privilege scheme analogous to the evidentiary privilege
26 recognized by federal common law[,]… application of Italian law would violate the
27 public policy of this forum," and declined to compel production. *Id.* at 70.
28

4

1    Defendants argue that the Court should disregard *Gucci*, claiming that the
2 district court's discussion of international comity is "dicta." (ECF No. 196 at 4 n.3.)
3 Planner 5D disagrees that that discussion is dicta. But the distinction is irrelevant
4 because decisions of other district courts are not binding in any event, but instead are
5 helpful only to the extent their reasoning is persuasive. *Gucci* is well reasoned, and
6 therefore persuasive. Defendants also contend the Court should disregard *Gucci*
7 because other district courts have ruled differently, citing *Wultz v. Bank of China Ltd.*,
8 979 F. Supp. 2d 479 (S.D.N.Y. 2013). *Wultz*'s attempt to draw bright-line rules
9 contradicts *Astra*'s case-by-case approach. *See Astra*, 208 F.R.D. at 102 (declining to
10 apply Korean privilege law "in a vacuum."). And even following *Wultz*, a Lithuanian
11 court could not order these communications to be produced in light of Defendants'
12 failure to show that the Court needs to examine them to fully decide the case. *Wultz*,
13 979 F. Supp. 2d 490–91. In any event, Planner 5D believes that *Astra* and *Gucci* are the
14 better reasoned and fairer decisions. Judge Kim agreed.

15   **C.   Defendants fail to raise, and thus waive, two arguments made to Judge Kim.**
16

17    Defendants raised two objections before Judge Kim that they do not raise here,
18 and thus waive. *See* Fed. R. Civ. P. 72(a). First, Defendants argued that any privilege
19 was waived as to twenty-seven communications between Planner 5D and Sergey
20 Avetikov, a director and in-house lawyer of one of Planner 5D's managing
21 shareholders. (*See* ECF No. 186 at 1:17–19 & n.2, 7:9–8:10.) In their motion,
22 Defendants confirm that they are not seeking relief on this issue. (ECF No. 196 at 1
23 n.1.)
24    Second, during drafting of the joint letter, Planner 5D updated eleven entries
25 in its log to make clear they involved legal advice from either U.S. litigation counsel

26
27
28

or outside Lithuanian counsel.[1] Defendants conceded the updated entries merited protection, but argued that Planner 5D waived its claim by not including the new information in its original log. (ECF No. 186 at 10:11–19; ECF No. 186-2 at Nos. 15, 16, 117–19, 120, 123–24, 127–28, & 136).) Defendants omit this argument, too, from this motion, which should thus be denied outright as to these eleven documents.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Defendants motion for relief from Judge Kim's order.

DATED:  July 29, 2022                           THE BUSINESS LITIGATION GROUP, P.C.


                                                By:     /s/ *Marc N. Bernstein*
                                                         Marc N. Bernstein


                                                Attorneys for Plaintiff PLANNER 5D

---

[1] Nine of the updated entries are for internal discussions of legal advice that Planner 5D received from counsel of record in this proceeding. (ECF No. 186-2 at Nos. 117-19, 120, 123-24, 127-28, & 136.) These documents "touch base" with the United States, and thus are privileged under U.S. law. *See Cadence Pharmas., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014). They also reveal attorney work product. The other two updated entries are for discussions seeking legal advice from outside Lithuanian counsel, (ECF No. 186-2 at Nos. 15 & 16), which Defendants admitted would enjoy protection from disclosure. (ECF No. 186 at 4 n.7.)