**THE BUSINESS LITIGATION GROUP, P.C.**
MARC N. BERNSTEIN (Cal. Bar No. 145837)
mbernstein@blgrp.com
WILL B. FITTON (Cal. Bar No. 182818)
wfitton@blgrp.com
CHRISTIAN G. ANDREU-VON EUW (Cal. Bar No. 265360)
christian@blgrp.com
150 Spear Street, Suite 800
San Francisco, CA  94105
Phone:        (415) 765-6633
Facsimile:    (415) 283-4804

Attorneys for Plaintiff
*UAB "Planner5D"*

**KIRKLAND & ELLIS LLP**
Dale M. Cendali (Cal. Bar No. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (*pro hac vice*)
johanna.schmitt@kirkland.com
Abbey Gauger Quigley (*pro hac vice*)
abbey.quigley@kirkland.com
Aaron Schroeder (*pro hac vice*)
aaron.schroeder@kirkland.com
601 Lexington Avenue
New York, NY  10022
Phone:        (212) 446-4800
Facsimile:    (212) 446-4900

Attorneys for Defendants
*Meta Platforms, Inc.* and *Facebook Technologies, LLC*

**JENNER & BLOCK LLP**
David R. Singer (Cal. Bar No. 204699)
dsinger@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA  90071
Phone:        (213) 239-5100
Facsimile:    (213) 239-5199

**JENNER & BLOCK LLP**
Andrew H. Bart (*pro hac vice*)
abart@jenner.com
Jacob L. Tracer (*pro hac vice*)
jtracer@jenner.com
1155 Avenue of the Americas
New York, NY  10036
Phone:        (212) 891-1600
Facsimile:    (212) 891-1699

Attorneys for Defendant
*The Trustees of Princeton University*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.; FACEBOOK TECHNOLOGIES, LLC; THE TRUSTEES OF PRINCETON UNIVERSITY; et al.,<br><br>Defendants. | Case No. 3:19-cv-03132-WHO (SK)<br>Case No. 3:20-cv-08261-WHO (SK)<br><br>**JOINT LETTER BRIEF RE: DISCOVERY DISPUTE**<br><br>**September 9, 2022** |

Counsel for Plaintiff UAB "Planner5D" ("Planner 5D") and Defendants Meta Platforms, Inc.; Facebook Technologies, LLC; and The Trustees of Princeton University ("Defendants") attest that before filing this letter they met and conferred on Zoom and complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.

Dated: September 9, 2022             **JENNER & BLOCK LLP**

                                     By: /s/ *Andrew H. Bart*
                                         Andrew H. Bart (*pro hac vice*)

                                         Attorneys for Defendant
                                         *The Trustees of Princeton University*

Dated: September 9, 2022             **KIRKLAND & ELLIS LLP**

                                     By: /s/ *Dale M. Cendali*
                                         Dale M. Cendali (Cal. Bar No. 1969070)

                                         Attorneys for Defendants
                                         *Meta Platforms, Inc.* and
                                         *Facebook Technologies, LLC*

Dated: September 9, 2022             **THE BUSINESS LITIGATION GROUP, P.C.**

                                     By: /s/ *Marc N. Bernstein*
                                         Marc N. Bernstein (Cal. Bar No. 145837)

                                         Attorneys for Plaintiff
                                         *UAB "Planner5D"*

**The Dispute**: Defendants seek to compel Planner 5D to produce a 30(b)(6) witness to testify about Examination Topic 2 (the copyright applications on which Planner 5D bases its infringement claims) and Topic 4 (the factual bases for Planner 5D's position that it satisfied the copyright registration requirement before filing suit) identified in Defendants' Notice of 30(b)(6) Deposition of Plaintiff. (Ex. A.) Planner 5D produced a 30(b)(6) witness to testify on these topics on August 26, 2022. In advance of that deposition, the parties had agreed, among other things, that the witness would only need to be knowledgeable about the "factual matter captured by [Topics 2 and 4] (and not any attorney-client privileged or work product information captured by the topics)."

The parties disagree on whether Planner 5D's witness was adequately prepared according to the parties' agreements. Planner 5D has agreed to a continued deposition on these topics. What's left in dispute is only (a) whether Defendants have adequately designated the topics for examination, and (b) what matter captured by the topics is attorney-client privileged or work product information. Counsel conferred in an attempt to resolve this dispute, but reached an impasse. The current deadline to complete fact depositions passed on August 31, 2022. Dkt. 206. However, the parties have agreed to negotiate an extension of the case schedule in light of the need for an additional deposition on Topics 2 and 4, among other recent developments in fact discovery.

**Defendants' Position**: At issue is Planner 5D's refusal to produce a witness to testify about the "factual matter captured by [Topics 2 and 4]" in Defendants' notice *unless* Defendants: (i) identify the "specific questions" or specific categories of information they will address at the deposition, and (ii) agree that its witness will not be required to testify about any document or process involving attorneys on the basis of attorney-client privilege or work product. Planner 5D's demand imposes obligations and restrictions on Defendants that have no basis in law. Planner 5D should be compelled to produce a witness to testify on the factual matter captured by Topics 2 and 4.

Planner 5D claims ownership of thousands of digital renderings of real-world objects (*e.g.*, sofas and beds) and a compilation of tens of thousands of virtual scenes created from these objects. The objects and scenes are each saved as an individual data file. On September 14, 2020, Planner 5D applied to register certain object files, as well as a compilation of scene files, as "computer programs" with the Copyright Office. However, it submitted only a few redacted object and scene files as deposit copies with its

applications. *See* 37 C.F.R. § 202.20(c)(2)(vii)(A)(2). The Copyright Office rejected those applications on the basis that the submitted works are not computer programs, but merely data files. Planner 5D subsequently conferred and met with Copyright Office representatives, and sought reconsideration of the denials, but registrations have not been granted. Nevertheless, Planner 5D brought this action, claiming copyright infringement based on its purported interests in these "computer programs" (the "Asserted Copyrighted Works") and that it had satisfied the requirements of Section 411(a) of the Copyright Act.[1]

Topic 2 covers Planner 5D's "COPYRIGHT APPLICATIONS, including, but not limited to, the preparation of, decision to file, contentions contained in, and works covered by [the] COPYRIGHT APPLICATIONS, the prosecution history and disposition of [the] COPYRIGHT APPLICATIONS, and COMMUNICATIONS related to [the] COPYRIGHT APPLICATIONS." Ex. A at 4. Topic 4 covers "The factual bases for YOUR position that Planner 5D satisfied the Copyright Registration requirement before filing suit under 17 U.S.C. § 411(a), as described in YOUR response to Meta's Interrogatory No. 17." *Id.*; *see also* Planner 5D's response to Meta's Interrogatory No. 17 (Ex. B). Both topics are relevant to Defendants' argument that Planner 5D cannot assert copyrights interests in the Asserted Copyrighted Works because they are not "computer programs" as defined in the Copyright Act. They are also relevant to assessing which object and scene files are covered by the copyright applications, and thus "defin[ing] the scope of the copyrighted material that can be enforced." *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 51 (1st Cir. 2020) (citing *Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. at 887).

Planner 5D baselessly contends that these topics fail to identify, with specificity, the matters subject to examination. Such an objection has merit only when a 30(b)(6) topic is "phrased so broadly or vaguely" that the party to be deposed is "unable to prepare its representative(s) to respond to questions on these subjects." *Loop AI Labs Inc v. Gatti*, No. 15-cv-00798, 2016 WL 913377, at *1 (N.D. Cal. Mar. 10, 2016). However, Topics 2 and 4 clearly articulate the categories of factual information Defendants seek. Indeed, Topics 2 and 4 cover the works covered by Planner 5D's copyright applications, the factual bases underlying Planner 5D's contention that the works are "computer programs," whether (and how) the

---

[1] A plaintiff can sue if it has received a registration or refusal by the Copyright Office to grant registration, but only for works covered by the registration or application that was refused. *See, e.g.*, *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891-92 (2019).

deposit copies have ever been amended, the status of Planner 5D's copyright applications, and the substance of Planner 5D's discussions with the Copyright Office regarding its applications.[2] Planner 5D's objection thus reflects its litigation strategy to avoid answering questions on these topics rather than any genuine confusion about what the topics are.[3] Indeed, the witness was unable to answer basic information plainly covered by these topics, even when viewing the relevant documents. He could not say whether he had ever seen or recognized Planner 5D's copyright applications despite being presented with them. *See* Ex. C. at 163:2-13; 178:13-23. Nor could he (i) identify the works reflected in the deposit copies submitted with Planner 5D's applications, (ii) say whether Planner 5D's deposit copies were ever amended, (iii) identify the matter redacted from the publicly-filed deposit copies,[4] (iv) identify exactly how many object and scene files are covered by the applications,[5] or (v) answer any questions about the prosecution history of Planner 5D's applications, such as when Planner 5D's representatives met with the Copyright Office or what was discussed.[6] *See* Ex. C at 162:4-184:1.

In addition, at the deposition, Planner 5D's counsel objected to *each* of these inquiries on the basis that they concern a legal document or process and, thus, are not "factual matter." For example, on this

---

[2] Contrary to Planner 5D's suggestion below, Defendants' use of the phrase "including, but not limited to" in Topic 2 does not affect the analysis. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 1054279, at *4 (D. Kan. Apr. 9, 2007) (deposition topic not overbroad when the topic used the phrase "including but not limited to" followed by "specifically list[ing] the information sought" (distinguishing *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000))).

[3] During the drafting of this joint letter brief, Defendants asked if specifying these categories of non-privileged information have ameliorated Plaintiff's concerns, but Plaintiff stated it would still need even "greater specificity."

[4] Planner 5D's assertion that Defendants "have the unredacted versions[,]" *infra* p. 7:18-19, is untrue, as it has not produced unredacted versions of the copyright applications and the unredacted scene files that it has produced differ from the versions Planner 5D submitted to the Copyright Office.

[5] Planner 5D's argument the witness need not have provided the exact number of files covered by the copyright applications, *infra*, p. 7:12-14, should be rejected. The composition of the Asserted Copyrighted Works is at the heart of Planner 5D's copyright claim—yet Planner 5D's applications do not list the specific number of works at issue, Planner 5D did not provide copies of all its alleged works to the Copyright Office with its applications, and Planner 5D's discovery responses on this issue have been inconsistent. *Compare* Ex. C at 167:8-11 (witness stating "about 3,000" objects in the purported objects work) *with* Planner 5D Response to Meta Interrogatory No. 1 (listing 3,719 objects) *and* Planner 5D's Supplemental Response to Meta Interrogatory No. 3 (listing 3,893 objects).

[6] Defendants never stated the witness would not have to be knowledgeable about the communications between Planner 5D and the Copyright Office. The only way Defendants can obtain discovery about these verbal meetings, which are relevant to the copyright claims, is through deposition testimony. *See Sadowski v. Gudmundsson*, 206 F.R.D. 25, 27 (D.D.C. 2002).

basis, Planner 5D's counsel prevented the witness from answering questions to authenticate one of Planner 5D's copyright applications. *See* Ex. C at 162:13-166:14. Eventually, Planner 5D's counsel instructed the witness not to answer any questions on these issues based on privilege: the witness refused to answer the question "[d]o you know if [Planner 5D's representatives] had in-person meetings with the copyright office?" under instruction of counsel, because his knowledge of those meetings was derived from information provided by attorneys in preparation for his deposition. *Id.* at 175:16-176:7. Planner 5D's counsel also objected to, and the witness did not answer, "[d]o you know what documents [Planner 5D's attorneys] provided [to the Copyright Office in support of Planner 5D's application for the objects work]?" *Id.* at 172:23-173:23.

Those objections and instructions were improper. As a threshold matter, Planner 5D "has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are 'known or reasonably available' to the corporation." *Postx Corp. v. Secure Data Motion, Inc.*, Case No. C 02-04483 SI, 2005 WL 767593, at *1 (N.D. Cal. Apr. 1, 2005). If a witness must "collect information, review documents, or interview other employees" to fulfill that duty, it "cannot claim that [the] information-gathering process is protected by the work-product doctrine even if counsel participates in the process." *Corcoran v. CVS Health*, No. 15-cv-03504, 2016 WL 11565649, at *4 (N.D. Cal. Dec. 9, 2016). Similarly, the notion that any process involving attorneys converts factual information to work product or privileged information has no basis in the law. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("discovery facts learned by an attorney in the course of an investigation [are not shielded] because the attorney-client privilege protects communications, not facts."). If that were the case, Defendants would be unable to ask Planner 5D about its complaint, discovery responses, or any factual information that its 30(b)(6) witness learned from attorneys in preparation for a deposition, which would be absurd. Planner 5D does not contest this notion, nor the fact that its communications with the Copyright Office, including ones where counsel was present, are not privileged. *See Sadowski*, 206 F.R.D. at 27 (conversations between attorney and copyright officer regarding prosecution of application are not privileged). Defendants questioned the witness about purely factual matters, yet he was not prepared to testify on them. Counsel's objections, and instructions to not answer these questions, are an attempt to block Defendants from obtaining discovery on non-privileged,

relevant information within Planner 5D's knowledge.

Furthermore, Planner 5D's refusal to produce a witness on Topics 2 and 4 because these topics could possibly implicate privileged information is baseless.[7] *See, e.g.*, *Fed. Trade Comm'n v. AMG Servs., Inc.*, No. 12-cv-536, 2015 WL 5097526, at *8 (D. Nev. Aug. 28, 2015) (objection that a deposition *may* elicit privileged testimony "is not ripe for review"); *3M Co. v. Kanbar*, C06-01225 JW, 2007 WL 1794936, at *1 (N.D. Cal. June 19, 2007) (a party is required "to make a specific objection or showing of privilege at the deposition on a question-by-question basis"); *Loop AI Labs Inc.*, 2016 WL 913377 at *1 (declining to preclude deposition topics "altogether based on speculation about what questions [] counsel may ask"). Accordingly, Defendants seek an order compelling Planner 5D to produce a witness(es) to testify about all factual matter captured by Topics 2 and 4 within Planner 5D's knowledge, absent improper objections and instructions not to answer questions on the basis of privilege or work product from counsel.

**Planner 5D's Position**:

In meet-and-confer discussions, Planner 5D has already agreed to prepare a witness to answer Defendants' further questions. Although Defendants significantly mischaracterize the testimony of Planner 5D's witness, that question is now moot. What remains for decision are two questions.

First, Planner 5D has requested additional guidance from Defendants about the areas on which to prepare its witness. That guidance is important here because Planner 5D's officers and managers do not have personal knowledge of the copyright applications, which were prosecuted by counsel in the course of and as part of this litigation. In the meet and confer on this issue, Planner 5D asked only that Defendants provide some guidance—not "specific questions," as Defendants contend above, and not legal strategies— to help Planner 5D properly prepare its witness. Planner 5D hopes to avoid another return to the Court over the scope of testimony, and some further guidance seems a reasonable way to achieve that aim, especially in light of the differing understandings last time around about topic scope.

Second, having unsuccessfully pursued a general agreement with Defendants on the boundaries of privilege and work product in the context of these two topics, Planner 5D seeks one from the Court.

---

[7] Defendants do not intend to seek testimony on Planner 5D's legal strategy.  It is no surprise that Planner 5D's example question about "why Planner 5D chose to register its works as computer programs" is merely hypothetical and was never asked in the deposition.  *Infra* p. 6:6-8.

Topics 2 and 4 address copyright applications prepared by lawyers in support of active litigation. There is an obvious potential for intrusion into work product or privilege. Defendants may ask about facts underlying the copyright applications. But not about legal strategies underlying Planner 5D's prosecution choices. For example, Defendants can, and have, asked what makes Planner 5D's works computer programs; and Planner 5D's witness has answered in detail.[8] But Defendants cannot ask, for example, why Planner 5D chose to register its works as computer programs rather than literary works after the Copyright Office offered the latter route. This was a strategic decision made by Planner 5D's counsel in the course of this litigation, and it is clearly protected work product. Yet when this example was raised in the meet and confer, Meta's counsel insisted it was a proper subject of inquiry. This points up the need for guidance on the proper scope of inquiry for these litigation-related topics. Planner 5D seeks Court confirmation that Defendants may ask about the facts underlying the copyright applications, but that questions of prosecution and litigation strategy are wholly off-limits.

What's not disputed in this motion is whether Planner 5D will sit for further testimony. Planner 5D has already agreed to that. The question is whether Defendants must, consistent with Rule 30(b)(6), provide Planner 5D some further guidance to allow it to adequately prepare its witness. *See Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (Rule 30(b)(6) topic designations inadequate unless they identify the outer limits of the areas of inquiry.) Also at issue here is whether Defendants can ask questions that implicate Planner 5D's prosecution and litigation strategy.

Andrey Ustyugov's testimony illustrates the need for guidance on these issues before a further deposition. Planner 5D understood from pre-deposition negotiations that Defendants would not inquire about the copyright prosecution history, or Planner 5D's legal contentions. *See Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 20-CV-01294-RS (TSH), 2021 WL 2222811, at *2 (N.D. Cal. June 2, 2021) (a topic

---

[8] Planner 5D has long contended that whether the asserted copyrighted works qualify as computer programs is irrelevant to this litigation. If an application is submitted to the Copyright Office in proper form, as the Copyright Office expressly found here (Case No. 3:20-cv-08261, ECF No. 1 ¶ 102), a district court action may proceed. 17 U.S.C. § 411(a). Registrability issues—including whether a work qualifies as a computer program under Copyright Office regulations—drop out of the case. The Court determines copyrightability independently, including the category or categories of copyright for which the work qualifies. 17 U.S.C. § 408(c)(1) ("administrative classes into which works are to be placed for purposes of deposit and registration . . . has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title.") Planner 5D has briefed these issues in detail elsewhere. (ECF No. 107 at 4:7-8:3; ECF No. 170 at 18:21-19:25.)

that does not "describe any factual matter at all, but instead improperly calls for legal contentions from a lay witness" fails the 'reasonable particularity" requirement). For Topic 2, Planner 5D understood that Defendants would only ask about the facts underlying Planner 5D's copyright applications. For Topic 4, the parties limited the scope of questioning to the facts (not legal conclusions) set forth in Planner 5D's response to Meta's Interrogatory No. 17. The parties also agreed that: (a) the witness did not need to be prepared on privileged or attorney work product issues (which covers many of the core strategic questions covered by Topic 2); (b) the witness did not need to be prepared to testify about communications from memory; and (c) the witness would have a chance to review any written communications before being asked about them.[9]

Consistent with these agreed limitations, Mr. Ustyugov was reasonably able to answer all of Defendants' questions on Topics 2 and 4. For example, Mr. Ustyugov knew the approximate number of objects covered by Planner 5D's object work application. He hadn't memorized the exact number—which has been disclosed more than once[10]—but "Rule 30(b)(6) is not designed to be a memory contest." *Risinger v. SOC, LLC*, 306 F.R.D. 655, 663 (D. Nev. 2015). Similarly, Mr. Ustyugov was able to intelligently discuss the JSON files that comprise Planner 5D's works. (*E.g.,* Ex. C at 168:18-169:5m 179:11-180:16.) He couldn't recall redacted details of specific files (Ex. C. at 169:2-21, 179:25-180:16), but that hardly indicates a lack of adequate preparation. *See id.* If Defendants want to know what's redacted, they have the unredacted versions of all object and scene files covered by the applications. And the parties had agreed that the witness would not have memorized the details of communications, such as those between Planner 5D's counsel and the Copyright Office. Defendants' main reason for concluding Mr. Ustyugov was unprepared is that they misinterpreted him as having testified that he did not know whether he had ever seen Planner 5D's copyright applications. (*Supra,* p. 3:5-7.) In fact, Mr. Ustyugov testified that he *had* seen the application; he just couldn't confirm that Defendants' 53-page exhibit was the identical document. (Ex.

---

[9] If requested, Planner 5D will submit its e-mails with Defendants memorializing these agreements.

[10] Defendants note that Planner 5D revised its disclosure of the number of objects in its work. (*Supra,* p.3 n.5.) This further illustrates the inadequacy of Defendants' designation. If Defendants expected the witness to be prepared to discuss the different discovery responses they cite and the reasons for any changes, they should have been specific in designating those as matters for the deposition. For example, Defendants could have identified those responses in advance, which is how the parties agreed that Planner 5D's specificity objections would be resolved.

C at 164:12- 166:20.)

Based on this, it is not clear to Planner 5D what topics Defendants believe Mr. Ustyugov should have been educated on, but was not. To assure that Planner 5D's witness is adequately prepared for a further deposition, Defendants should describe their areas of inquiry specifically enough to avoid this kind of misunderstanding. Defendants' refusal to do so is unreasonable and counterproductive.

Finally, Defendants falsely suggest that Mr. Ustyugov was repeatedly instructed not to answer questions on Topics 2 and 4. In fact, he was only once instructed not to answer a question within those topics, and then only when he was specifically asked for an attorney-client communication. (Ex. C at 175:23-176:4.) The witness was specifically instructed, "You can answer" when asked about the underlying facts. (Ex. C at 175:12-20.) For all other questions on Topics 2 and 4, the witness was allowed, and indeed encouraged, to answer.[11]

\* \* \*

Defendants' motion should be denied as moot, because Planner 5D has already agreed to produce a witness. The Court should, however, order Defendants to provide Planner 5D further guidance, consistent with Rule 30(b)(6)'s reasonable-particularity requirement, which will enable Planner 5D to provide a properly prepared witness and avoid further misunderstandings and motion practice. The Court should also make clear that Defendants may ask about facts underlying copyright applications, but not about the legal theories or strategies motivating Planner 5D's choices.

---

[11] The witness was also instructed not to disclose his communications with counsel in preparing for the deposition and during the break. These questions did not relate to Topics 2 or 4.

1    Dated:  September 9, 2022                    **JENNER & BLOCK LLP**

2

3                                                 By: /s/ *Andrew H. Bart*
                                                      Andrew H. Bart (*pro hac vice*)

4
                                                      Attorneys for Defendant
5                                                     *The Trustees of Princeton University*

6    Dated:  September 9, 2022                    **KIRKLAND & ELLIS LLP**

7
                                                  By: /s/ *Dale M. Cendali*
8                                                     Dale M. Cendali (Cal. Bar No. 1969070)

9
                                                      Attorneys for Defendants
10                                                    *Meta Platforms, Inc.* and
                                                      *Facebook Technologies, LLC*
11
     Dated:  September 9, 2022                    **THE BUSINESS LITIGATION GROUP, P.C.**
12
                                                  By: /s/ *Marc N. Bernstein*
13                                                    Marc N. Bernstein (Cal. Bar No. 145837)

14
                                                      Attorneys for Plaintiff
15                                                    *UAB "Planner5D"*

16

17

18

19

20

21

22

23

24

25

26

27

28

**Attestation**

I, Andrew H. Bart, am the ECF user whose ID and password are being used to file this Joint Letter Brief Re: Discovery Dispute. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from all signatories.

Dated: September 9, 2022                    By: */s/ Andrew H. Bart*
                                                                Andrew H. Bart