# Exh. 11



**United States Copyright Office**
Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

September 22, 2020

Via Email: jacqueline.charlesworth@akbllp.com
Jacqueline C. Charlesworth, Esq.
Alter, Kendrick & Baron, LLP
156 Fifth Avenue, Suite 1208
New York, New York 10010

Re:   *UAB "Planner5D" v. Facebook, Inc., et al.,* No. 3:19-cv-03132-WHO (N.D. Cal. filed June 5, 2019), *consolidated with UAB "Planner5D" v. Facebook, Inc., et al.,* No. 3:20-cv-02198-WHO (N.D. Cal. filed Mar. 31, 2020)

Dear Ms. Charlesworth:

Thank you for your inquiry seeking to clarify the scope of the registrations for the computer program relevant to the above dispute currently pending in the Northern District of California. As the agency responsible for administering significant portions of the nation's copyright law, the U.S. Copyright Office ("Office") provides applicants with general information about the provisions of the Copyright Act and will explain the relevant practices and procedures for registering works such as computer programs.

The Office has reviewed the records related to Planner 5D's Registration Nos. TX0008818101 and TX0008818102 and offers the below guidance regarding the scope of Planner 5D's registrations and how Planner 5D can prepare future registration applications for computer programs. In offering this guidance, the Office does not write to provide UAB "Planner5D" ("Planner 5D") with specific legal advice, but rather to provide clarification as to the Office's view of the registrations previously considered by the court and information as to the Office's general practices on software registration in light of the court's opinion.[1]

## I.   Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410. Regulations governing applications for registration are codified in title 37 of the Code of Federal Regulations at 37 C.F.R. §§ 202.1 to

---
[1] 37 C.F.R. § 201.2(a)(3).

Jacqueline C. Charlesworth, Esq.  September 22, 2020
Alter, Kendrick & Baron, LLP

202.24. The principles that govern how the Office examines registration applications are found in the *Compendium of U.S. Copyright Office Practices* ("*Compendium*").

### A. Registration of Multiple Versions of a Work

The Office generally requires that separate works be registered separately.[2] The Copyright Act states that "a work is 'created' when it is fixed in a copy or phonorecord for the first time" and that "where the work has been prepared in different versions, each version constitutes a separate work."[3] The *Compendium* provides examples explaining that each draft of a literary work is protected by copyright from the moment it is written on paper, saved in a data file, or inscribed in any other medium of expression and each take of a motion picture is protected by copyright from the moment it is captured on an audiovisual medium.[4]

If a work is unpublished, there is generally no need to register each version of that work separately. The applicant may submit the most recent or the most complete version of the work, and the copyright registration will extend to all protectable material that appears in that version of the work.[5]

If multiple versions of a work have been published, the applicant should generally submit "a separate application, a separate filing fee, and a separate set of deposit copies for each version."[6] The Office will register multiple versions of a published work, provided that each version contains a sufficient amount of copyrightable authorship that does not appear in the other versions.[7]

### B. Each Published Version of a Computer Software Program That Contains New Copyrightable Authorship Should Be Registered Separately

The Copyright Office registers computer software following this same general approach; each published version of a computer program that contains a sufficient amount of new material that is original should be registered separately.[8] This requirement is not satisfied by "[m]aking only a few minor changes or revisions to a preexisting work, or making changes or revisions of a rote

---

[2] *See* COMPENDIUM (THIRD) § 511. There are exceptions to this rule, including for registration of collective works, published works using the "unit of publication" option, and group registration for serials, newspapers, newsletters, contributions to periodicals, unpublished photographs, published photographs, databases, and secure test items. *See* 37 CFR §§ 202.3(b)(5), 202.4; COMPENDIUM (THIRD) §§ 511, 512.2 n.2.

[3] 17 U.S.C. § 101 (definition of "created").

[4] COMPENDIUM (THIRD) § 512.

[5] COMPENDIUM (THIRD) § 512.1.

[6] COMPENDIUM (THIRD) § 512.2. Depending on which version is the "most complete" and when each version is published with respect to the other versions, the *Compendium (Third)* outlines specific application procedures. *See* COMPENDIUM (THIRD) § 512.2(A)–(C).

[7] COMPENDIUM (THIRD) § 512.2.

[8] COMPENDIUM (THIRD) § 721.8.

P5D-0065309

Jacqueline C. Charlesworth, Esq. September 22, 2020
Alter, Kendrick & Baron, LLP

nature that are predetermined by the functional considerations of the hardware."[9]  As the Copyright Office's Circular on Registration of Computer Software states:

> Note that each version of a computer program containing new, copyrightable authorship is considered a separate work. You must submit a separate application, filing fee, and deposit for each version you want to register.[10]

A registration for a specific version of a computer program covers new material that the author contributed to that version of the program, and excludes material that was previously published or registered.[11]  The *Compendium* provides the following example:

> Softwear, Inc. submits an application to register a program titled Clothing Maker version 3.0. Version 3.0 contains an appreciable amount of code that appeared in versions 1.0 and 2.0 of the same program. Softwear distributed copies of versions 1.0 and 2.0 to the public before it filed its application for registration of version 3.0. Versions 1.0 and 2.0 would be considered previously published works, even if the copies only contained the object code for those versions and even if the source code for those versions was never disclosed. Therefore, the application should be limited to the new material that appears in version 3.0, and any source code that appeared in versions 1.0 or 2.0 should be excluded from the claim.[12]

### C. Year of Completion

The Copyright Act requires an application to include "the year in which creation of the work was completed."[13]  As noted above, "where a work is prepared over a period of time, the portion of [the work] that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work."[14]  By regulation, "year of completion" means "the latest year in which the creation of any copyrightable element was completed."[15]

### D. Date of First Publication

For published works, applications must also include the date and nation of a work's first.[16]  Publication is defined as the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[17]  Publication occurs when copies or phonorecords of the work are actually distributed to the public or when they are offered

---

[9] COMPENDIUM (THIRD) § 721.8.

[10] Circular 61, *Copyright Registration of Computer Programs* (2020), https://www.copyright.gov/circs/circ61.pdf.

[11] COMPENDIUM (THIRD) § 721.8.

[12] COMPENDIUM (THIRD) § 721.8.

[13] 17 U.S.C. § 409(7).

[14] 17 U.S.C. § 101; *see also* COMPENDIUM (THIRD) §§ 611.1(B), 721.9(D).

[15] 37 C.F.R. § 202.3(c)(4).

[16] 17 U.S.C. § 409(8).

[17] 17 U.S.C. § 101.

3

Jacqueline C. Charlesworth, Esq.  September 22, 2020
Alter, Kendrick & Baron, LLP

for distribution to the public, provided that the offer is made by or with the authority of the copyright owner and copies or phonorecords of the work exist at the time the offer is made.[18] The Compendium further states that distribution is made when "one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work."[19]

## II. Planner 5D's Existing Registrations

As the Copyright Office understands the facts, Planner 5D created the Planner 5D tool for use in home design. Planner 5D created a library of digitized three-dimensional objects ("Planner 5D Objects"), such as furniture, appliances, lights, people and other objects that might be found in a structure. Copyright Compl. ¶ 5. Users of the Planner5D tool then dragged and dropped the Planner 5D Objects into floor plans or "scenes." Copyright Compl. ¶ 5. Planner 5D collected a subset of these user-created scenes to display in its public gallery ("Planner 5D Scenes"). Copyright Compl. ¶ 46.

On December 19, 2019, Planner 5D filed separate applications to register the Planner 5D Objects and Planner 5D Scenes works.[20] In its applications, Planner 5D stated that Planner 5D Objects was completed in 2011 and first published on February 1, 2012 and that Planner 5D Scenes was completed in 2012 and first published on May 18, 2012. *Planner 5D Objects*, 1-8343772601 Application (Dec. 19, 2019). *Planner 5D Scenes*, 1-8343817552 Application (Dec. 19, 2019). The application to register Planner 5D Scenes excluded "computer program, Preexisting elements of Claimant's computer program; third-party authorship of derivative works based upon preexisting elements of Claimant's computer program." *Id*.

Planner 5D also included a Note on each of the applications in which it stated that it first created the programs in 2011 and 2012 respectively,[21] and "has added to it regularly since then." The Notes explained that for each of the works, the "date of completion was December 17, 2019" and that Planned 5D "claims the entire work as it existed on December 17, 2019." *Planner 5D Objects*, 1-8343772601 Application (Dec. 19, 2019); *Planner 5D Scenes*, 1-8343817552 Application (Dec. 19, 2019).

Planner 5D indicated in the Notes to the C.O. field of its copyright application for Planner 5D Objects that "[f]rom February 2012 through December 2019, Planner 5D has made the program continuously available online to the public for use as a home design tool." *Planner 5D Objects*, 1-8343772601 Application (Dec. 19, 2019). Similarly, Planner 5D indicated in the Notes to the C.O. field of its copyright application for Planner 5D Scenes that "[f]rom May 18, 2012 through

---

[18] 17 U.S.C. § 101; COMPENDIUM (THIRD) §§ 1906, 1906.3.

[19] COMPENDIUM (THIRD) § 1905.1.

[20] Planner 5D also submitted an application to register "Planner 5D building blocks" in December 2019. The Examiner who reviewed that application refused registration for that work because the deposit did not qualify as source code, such that the work could not be registered as a computer program and did not contain sufficient literary authorship to be registrable as a textual work. Correspondence from Examiner Payne to Naomi Gray (Feb. 4, 2020). Planner 5D has requested reconsideration of the Office's refusal.

[21] In a September 15, 2020 email to the Copyright Office, Planner 5B's counsel indicated that the Planner 5D Objects work was created in 2012, not 2011.

4

Jacqueline C. Charlesworth, Esq.  September 22, 2020
Alter, Kendrick & Baron, LLP

December 2019, Planner 5D has made the program continuously available online to the public for use as a home design tool." *Planner 5D Scenes*, 1-8343817552 Application (Dec. 19, 2019).

The Office identified a video that appears to show that the Planner 5D tool containing early versions of the Planner 5D Objects and the Planner 5D Scenes libraries was available for use by consumers as early as March 2013.[22] It appears to the Office that Planner 5D has made the works available to the public in new versions of the Planner 5D tool that it has released periodically for download by the public as an app, including through Apple's App Store and Google Play.[23] For example, Apple's App store currently offers version 4.3.14 available for download, which is the twenty-fifth version offered in the past seventh months.[24] Over sixty versions of Planner 5D, dated December 2016 through July 2020, are offered for download as an Android app.[25]

The Examiner reviewed the applications and was confused by the discrepancy between the dates of completion and publication provided in the applications, which were in 2011 and 2012, and the date of completion provided in the Notes, which was December 17, 2019. The Examiner corresponded with applicant's counsel seeking clarification regarding the year of creation and the date of publication for each work. Specifically, the Examiner asked applicant's counsel to provide "the year of completion and complete publication date (month, day, year) *for this particular version of the work*." Emails from Examiner Latkovic, Copyright Examiner, U.S. Copyright Office to Naomi Jane Gray (Dec. 19, 2019) (emphasis added).

While the Examiner's correspondence could have perhaps been more explicit, the Examiner's correspondence focused on the dates of completion and publication "for this particular version of the work," reflecting the Copyright Office's longstanding practice of requiring each published version of a computer program that contains new copyrightable authorship to be registered separately.[26] As noted above, it does appear that Planner 5D had previously distributed versions of the software for download by the general public earlier versions of the Planner 5D Objects and Planer 5D Scenes works, which the Compendium states constitutes publication of these versions.[27]

Planner 5D's responded by identifying 2019 as the year of completion and December 17, 2019, as the date of publication, arguably acknowledging that it sought registration of the version of each works that was published on December 17, 2019. Emails from Naomi Jane Gray to

---

[22] *See Planner 5D goes real: Showroom 5D* (Mar. 3, 2013), https://www.youtube.com/watch?v=nx0_Ynqdt8w.

[23] *See, e.g., Release of New iOS Version*, PLANNER 5D (Oct. 31, 2018), https://planner5d.com/blog/cZea/release-of-new-ios-version; Planner 5D, FACEBOOK (Oct. 31, 2018), https://www.facebook.com/Planner5D/videos/2060697044174842/. Planner 5D, UAB, *Mac App Store Preview: Planner 5D – Interior Design*, APPS.APPLE.COM (Sept. 6, 2019), https://web.archive.org/web/20190906135757if_/https:/apps.apple.com/us/app/planner-5d-interior-design/id1310584536?mt=12. https://planner5d.com/ (advertising download on Apple App Store, Google Play, and Mac App Store, and listing platforms as Web, iOS, Android, macOS and Windows).

[24] https://apps.apple.com/us/app/planner-5d-interior-design/id606173978.

[25] https://mobile.softpedia.com/apk/planner-5d/1.17.3/.

[26] COMPENDIUM (THIRD) §§ 512.2, 721.8.

[27] COMPENDIUM (THIRD) § 721.8.

5

Jacqueline C. Charlesworth, Esq.  September 22, 2020
Alter, Kendrick & Baron, LLP

Examiner Latkovic, Copyright Examiner, U.S. Copyright Office (Dec. 20, 2019). The deposit materials submitted with Registration Nos. TX0008818101 and TX0008818102 also indicated that the works were completed and published in 2019.

Having received corrected information on the years of completion and the dates of publication for each of the works, the Examiner proceeded to register the works with the amended dates. The Examiner did not specify in the "Material excluded from this claim" box on the Planner 5D Objects registration certificate that the registration excluded prior published versions of the computer program.[28]

Based on the foregoing statutory and regulatory standards, and its examining practices, the Office confirms its understanding that Planner 5D's Registration Nos. TX0008818101 and TX0008818102 cover the new material that was first published in the December 17, 2019 version of the Planner 5D tool and do not include any materials from previously published versions of the works. Pursuant to section 411(a) and the court's order, Planner 5D may separately register the elements of the computer programs that appeared in versions of the programs that were published prior to December 17, 2019 and have allegedly been infringed to bring a claim for infringement of those elements.

**Future Applications and Deposit Issues**

Your letter requested guidance as to what steps may be taken to register the relevant sections of the Planner 5D Objects and Planner 5D Scenes works. To register the versions of these works that were first published in 2016, Planner 5D has the following options:

1) It may submit applications to register these works as computer programs, in connection with which it will be required to provide deposits consisting of source code.[29] I understand that on September 14, 2020, Planner 5D submitted applications to register versions of the Planner 5D Objects and Planner 5D Scenes works as they existed on January 13, 2016 and February 17, 2016 respectively. *Planner 5D Objects (2016)*, 1-9270652291 Application (Sept. 14, 2020); *Planner 5D Scenes (2016)*, 1-9270798186 Application (Sept. 14, 2020). On September 18, 2020, the Office refused registration of the application for failure to meet the deposit requirements for a computer program or computer screen displays.

   Given that this matter remained under consideration by the Office of the General Counsel when the refusals were issued and in light of the specific circumstances in this case, the Office has determined that it will provide additional guidance to Planner 5D as well as an opportunity to resubmit the deposits required to register the copyrights in the works. Accordingly, the Office of Registration Policy and Practice will send you separate correspondence promptly that provides additional guidance regarding your options for

---

[28] The application to register Planner 5D Scenes excluded "computer program, Preexisting elements of Claimant's computer program; third-party authorship of derivative works based upon preexisting elements of Claimant's computer program," so prior published versions were already excluded from that claim.

[29] COMPENDIUM (THIRD) § 1509.1(C)(2).

P5D-0065313

Jacqueline C. Charlesworth, Esq. September 22, 2020
Alter, Kendrick & Baron, LLP

submitting alternate deposits for the Planner 5D Objects (2016) and Planner 5D Scenes (2016) works, which you may do without submitting new applications or filing fees.

2) It may submit applications to register the Java Script Object Notation files as literary works, which would require submission of the complete, unredacted text of the files as deposits.

3) It may consider other alternatives for registering the materials that were allegedly infringed by defendants, including whether the materials could be registered as part of a database containing a compilation of artwork.[30]

Please feel free to reach out to me with any additional questions.

Sincerely,

Regan A. Smith
General Counsel and Associate Register of Copyrights
U.S. Copyright Office
Office of the General Counsel
regans@copyright.gov

---

[30] See COMPENDIUM (THIRD) § 727. The deposit requirements for a database are discussed in COMPENDIUM (THIRD) § 1117.6.