Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Johanna Schmitt (admitted *pro hac vice*)
johanna.schmitt@kirkland.com
Abbey Elizabeth Quigley (admitted *pro hac vice*)
abbey.quigley@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Phone: (212) 446-4800

Kristen Reichenbach
kristen.reichenbach@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104

Attorneys for Defendants
*Meta Platforms, Inc.* and
*Facebook Technologies, LLC*

David R. Singer (S.B.N. 204699)
dsinger@jenner.com
**JENNER & BLOCK LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-5100

Andrew H. Bart (admitted *pro hac vice*)
abart@jenner.com
Jacob L. Tracer (admitted *pro hac vice*)
jtracer@jenner.com
Cayman C. Mitchell (admitted *pro hac vice*)
cmitchell@jenner.com
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600

Attorneys for Defendant
*The Trustees of Princeton University*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UAB "PLANNER5D" d/b/a PLANNER 5D,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., FACEBOOK TECHNOLOGIES, LLC, THE TRUSTEES OF PRINCETON UNIVERSITY, DOES 1-200, ABC CORPORATIONS 1-20 and XYZ UNIVERSITIES 1-20,<br><br>Defendants. | CASE NO. 3:19-CV-03132-WHO<br>CASE NO. 3:20-CV-08261-WHO<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: July 12, 2023<br>Time: 2:00 PM<br>Courtroom: 2, 17th Floor<br><br>Judge: Honorable William H. Orrick |

## TABLE OF CONTENTS

**I. INTRODUCTION ..... 1**

**II. SUMMARY JUDGMENT FOR DEFENDANTS IS WARRANTED ON THE COPYRIGHT CLAIMS. ..... 2**

A. Planner 5D Has Not Satisfied The Pre-Suit Requirements Of Section 411. ..... 2

1. The Office correctly concluded that Planner 5D's alleged works are "data files" and not "computer programs." ..... 3

2. Section 411 does not allow Planner 5D to pursue copyright claims it purposefully withheld from the Office's review. ..... 5

B. Planner 5D Has Not Established Ownership of a Valid Copyright. ..... 9

1. Because Planner 5D does not dispute that its JSON files were automatically generated by a machine they lack human authorship as a matter of law. ..... 9

2. Planner 5D has not met its burden to show that its 3D models of real-world items contain any creative material, created by Planner 5D. ..... 9

**III. SUMMARY JUDGMENT IS WARRANTED ON THE TRADE SECRET CLAIMS. ..... 12**

A. Planner 5D Disclosed Its Alleged Trade Secrets As A Matter Of Law. ..... 14

1. Planner 5D Made Its Alleged Trade Secrets Available To The Public Online. ..... 14

2. Planner 5D's Purported Factual Disputes Are Immaterial. ..... 17

B. Planner 5D Did Not Bind Its Users To An Obligation Of Confidentiality. ..... 18

1. Planner 5D's Terms Of Service Were Unenforceable. ..... 18

2. Planner 5D's Terms Of Service Did Not Assert Any Confidentiality Obligation. ..... 20

**IV. CONCLUSION ..... 20**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABS Entm't Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) ....................10, 11

*Action Tapes, Inc. v. Mattson*,
462 F.3d 1010 (8th Cir. 2006) ....................4, 8

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
226 Cal. App. 4th 26 (2014) ....................13, 16

*Arkeyo, LLC v. Cummins Allison Corp.*,
342 F. Supp. 3d 622 (E.D. Pa. 2017) ....................13, 15, 17, 19

*Atari Games Corp. v. Nintendo of Am., Inc.*,
No. 88-cv-4805, 1993 WL 214886 (N.D. Cal. Apr. 15, 1993) ....................4

*Benson v. Double Down Interactive, LLC*,
No. 18-cv-525, 2018 WL 5921062 (W.D. Wash. Nov. 13, 2018) ....................20

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................18, 19

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
No. 04-cv-4825, 2005 WL 756610 (Apr. 1, 2005) ....................20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................4, 12, 18

*Clanton v. UMG Recordings, Inc.*,
556 F. Supp. 3d 322 (S.D.N.Y. 2021) ....................10

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
36 F.3d 1147 (1st Cir. 1994) ....................8

*DHI Grp., Inc. v. Kent*,
No. 16-cv-1670, 2017 WL 4837730 (S.D. Tex. Oct. 26, 2017) ....................20

*DVD Copy Control Ass'n, Inc. v. Bunner*,
116 Cal. App. 4th 241 (2004) ....................13, 14

*Ent. Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) ....................10, 11

*Ets-Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000) ....................10

*Express, LLC v. Fetish Grp., Inc.*,
424 F. Supp. 2d 1211 (C.D. Cal. 2006) ....................7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
499 U.S. 340 (1991)....................12

*Fourth Est. v. Wall-Street.com*,
139 S. Ct. 881 (2019)....................2

*Glass Egg Digit. Media v. Gameloft, Inc.*,
No. 17-cv-04165, 2018 WL 3659259 (N.D. Cal. Aug. 2, 2018) ....................11

*Hilderman v. Enea TekSci, Inc.*,
551 F. Supp. 2d 1183 (S.D. Cal. 2008)....................14

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
808 F. Supp. 2d 542 (S.D.N.Y. 2011)....................8

*KnowledgePlex, Inc. v. Placebase, Inc.*,
No. 08-cv-4267, 2008 WL 5245484 (N.D. Cal. Dec. 17, 2008)....................7

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
342 F.3d 714 (7th Cir. 2003) ....................17

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*,
528 F.3d 1258 (10th Cir. 2008) ....................10

*Morelli v. Tiffany & Co.*,
186 F. Supp. 2d. 563 (E.D. Pa. 2002) ....................7

*N. Am. Deer Registry, Inc. v. DNA Solutions, Inc.*,
No. 17-cv-00062, 2017 WL 2402579 (E.D. Tex. June 2, 2017) ....................17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................18, 19, 20

*Niemi v. NHK Spring Co.*,
543 F.3d 294 (6th Cir. 2008) ....................17

*Oja v. U.S. Army Corps of Engineers*,
440 F.3d 1122, 1131 (9th Cir. 2006) ....................14

*Oravec v. Sunny Isles Luxury Ventures L.C.*,
469 F. Supp. 2d 1148 (S.D. Fla. 2006) ....................7

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.*,
175 F. Supp. 2d 542 (S.D.N.Y. 2001)....................10

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ..... 20

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
925 F.2d 174 (7th Cir. 1991) ..... 13, 17

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
No. 07-cv-635, 2008 WL 166950 (N.D. Cal. Jan. 17, 2008) ..... 13

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ..... 2

*Skyline Design, Inc. v. McGrory Glass, Inc.*,
No. 12-cv-10198, 2014 WL 258564 (N.D. Ill. Jan. 23, 2014) ..... 8

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) ..... 3

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) ..... 7, 8

*Torres-Negron v. J & N Recs, LLC*,
504 F.3d 151 (1st Cir. 2007) ..... 2

*Villapando v. Banamex USA Bancorp*,
No. 19-cv-5149, 2020 WL 1942783 (C.D. Cal. Apr. 21, 2020) ..... 12

*Ward v. Nat'l Geographic Soc'y*,
208 F. Supp. 2d 429 (S.D.N.Y. 2002) ..... 6

*Wilson v. Huuuge, Inc.*,
351 F. Supp. 3d 1308 (W.D. Wash. 2018) ..... 20

*Yurman Studio, Inc. v. Castaneda*,
591 F. Supp. 2d 471 (S.D.N.Y. 2008) ..... 8

**Statutes**

17 U.S.C. § 101 ..... 3

17 U.S.C. § 102 ..... 7

17 U.S.C. § 408 ..... 7, 9

17 U.S.C. § 411(a) ..... *passim*

17 U.S.C. § 1201 ..... 14

18 U.S.C. § 1839(3) ..... 13

18 U.S.C. § 1839(6)(A) ........ 13

Cal. Civ. Code § 3426.1(a) ........ 13

Cal. Civ. Code § 3426.1(d) ........ 13

**Other Authorities**

37 C.F.R. § 202.11(c) ........ 7

Circular 56, U.S. Copyright Office (Mar. 2021) ........ 7

Compendium of U.S. Copyright Practices ........ *passim*

LumenScript Refusal ........ 5

William F. Patry, Patry on Copyright (2023) ........ 7, 8

## I. INTRODUCTION[1]

From the outset of this litigation, Defendants have maintained that Planner 5D does not own any copyrighted works or trade secrets. Planner 5D's opposition brief confirms that Defendants are correct, as Planner 5D does not and cannot dispute the material facts demonstrating that Planner 5D's claims of ownership fail as a matter of law. Therefore, in its effort to defeat summary judgment, Planner 5D attempts to invent new legal standards that have no foundation in the law and to use them to create purported factual disputes. But that is not enough to defeat summary judgment under the Supreme Court's decision in *Celotex*. At a minimum, Planner 5D must come forward with specific facts showing that there is a genuine issue for trial. Because Planner 5D is unable to do so, Defendants' motion should be granted.[2]

***First***, Planner 5D's copyright claim fails because the Copyright Office correctly determined that Planner 5D's alleged works are not computer programs. Although Planner 5D argues in this proceeding, for the first time, that it can claim copyright protection in some other category of works based on the design of its visual objects, that claim should be rejected. Such an argument is unavailing given that the Office repeatedly advised Planner 5D to amend its application and deposit if it wanted to register non-computer program works, but Planner 5D refused to do so. There is no authority that allows a plaintiff to litigate copyright claims it purposefully prevented the Office from evaluating. Moreover, doing so would upend the registration process and deprive the Office of its statutorily guaranteed role to review copyright claims before they are litigated under Section 411.

Planner 5D's claim that its visual objects are copyrightable is also wrong; its objects are near exact replicas of real-world items and Planner 5D has no evidence that they contain original material.

***Second***, Planner 5D's claims for trade secret misappropriation fail because it is undisputed that (a) Planner 5D's alleged trade secrets were made available to any user of its Website, and (b) its Terms of Service did not protect the confidentiality of its alleged secrets. Planner 5D's primary response is to assert that factual disputes exist that preclude summary judgment. However, those alleged disputes do not

---

[1] All capitalized terms used herein have the meaning ascribed to them in Defendants' Motion ("Mot.").

[2] Because the Court can grant summary judgment without considering the disputed factual issues Planner 5D raises, there is no need for Defendants to raise admissibility challenges to Planner 5D's purported evidence at this time. Defendants reserve all rights to challenge the admissibility of Planner 5D's factual evidence and expert testimony if there is ever a need to do so.

address whether ***Planner 5D*** took necessary steps to protect its alleged secrets. Because Planner 5D does not identify any disputed issues material to Defendants' motion, summary judgment is warranted.

## II. SUMMARY JUDGMENT FOR DEFENDANTS IS WARRANTED ON THE COPYRIGHT CLAIMS.

Summary judgment should be entered for Defendants because Planner 5D has not demonstrated it satisfied the pre-suit requirements of Section 411 or that it has valid copyrights in its asserted works.

### A. Planner 5D Has Not Satisfied The Pre-Suit Requirements Of Section 411.

Section 411 requires that applicants define, and submit deposit material reflecting, the copyright "claim" they intend to register. 17 U.S.C. § 411(a). The purpose of this requirement is to allow the Office to review the claimed copyrights and "make an initial judgment about the validity of copyrights, based on its experience and expertise," while also providing notice to third parties of owned rights. *Torres-Negron v. J & N Recs, LLC*, 504 F.3d 151, 161–62 (1st Cir. 2007); *see also Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1062–63 (9th Cir. 2020) (deposits make a record of, provide notice of, and "prevent confusion about" claimed copyrights).[3] If the Office is deprived of the opportunity to conduct that review, then a plaintiff's claims must be dismissed. *Fourth Est. v. Wall-Street.com*, 139 S. Ct. 881, 887 (2019).

There is no dispute that: (1) the works Planner 5D applied to register are JSON files, which are read by Planner 5D's software Tool (a separate work not at issue here) to render Objects and Scenes; (2) Planner 5D applied to register these JSON files as "computer programs," and (3) Planner 5D refused to deposit any renderings of its Objects and Scenes with its applications (despite the Office's explicit request that it do so), instead *only* depositing the first and last 25 pages of its JSON text files pursuant to the Office's special rules for source code. Planner 5D also does not dispute that it chose to claim its works as computer programs, and limit its deposit to text files, in order to gain a tactical advantage in litigation.

Nevertheless, Planner 5D urges the Court to disregard Section 411 and permit it to proceed on copyright claims in 3D models that it purposefully withheld from the Office's review, and to have the Court usurp the role of the Office to decide in the first instance whether its 3D material is original as a matter of law. No legal authority supports this unprecedented request. Moreover, allowing such claims to

[3] Planner 5D contends that the deposit copy is not intended to "give the Register the opportunity to pass ***final*** judgment on the question of a work's copyrightability," Opp. at 16 (emphasis added), but that is inapposite. Defendants do not dispute that the Register's copyrightability determination is reviewable.

proceed would condone Planner 5D's decision to avoid Office review of the works at issue. Further, it would continue to prejudice Defendants in this litigation.[4] Planner 5D claims that this result is appropriate under the "broad and deferential standard" the Ninth Circuit applies to Section 411, but in reality, it would render the rules of 411 endorsed by the Supreme Court meaningless. *See* Mot. at 15.

There is no basis to excuse Planner 5D's failure to comply with Section 411. Based on its applications, Planner 5D only has standing to enforce its JSON files as computer programs, but its JSON files are not computer programs as a matter of law. Thus, Planner 5D's copyright claims must be dismissed.

1. <u>The Office correctly concluded that Planner 5D's alleged works are "data files" and not "computer programs."</u>

There is no dispute about what Planner 5D's JSON files are or how they operate. Information in Planner 5D's JSON text files are read by its Tool (a separate work not at issue) to render an Object or Scene. Opp. at 26. [redacted] *Id.*; Tracer Decl. ¶¶ 4–5. This is consistent with the Office's conclusion that the files are "a set of coordinates—to be used by a separate computer program in the rendering of a particular shape or shapes." Schmitt Decl. ¶ 137. Planner 5D also admits that: (1) [redacted]; (2) [redacted]; and (3) before and *during* this litigation, it repeatedly referred to its files as "data files," not "code" or a "computer program." *Compare* Mot. at 14 *with* Opp. at 25–27.

Thus, the sole legal issue is whether [redacted] in Planner 5D's JSON files qualify as "instructions to be used directly or indirectly in a computer in order to bring about a certain result" under the Act's definition of computer program. 17 U.S.C. § 101. Manifestly, they do not. Courts and the Office have made clear that "instructions" must be expressed in "object code" or "source code"—the latter of which must be written in a programming language. *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 779 (9th Cir. 2002); Compendium § 721.3 (defining source code);

---

[4] Planner 5D's failure to comply with Section 411 has burdened Defendants with years of litigation without notice of the scope of Planner 5D's alleged works. Among other things, Planner 5D has avoided identifying: (1) the Scenes in its Asserted Scene Compilation; (2) how that compilation was created; (3) the files associated with its works; and (4) the pre-existing material incorporated into its Objects Works. *See* Mot. at 18; Schmitt Decl. ¶¶ 145-61, Ex. 6 (Rog 2); Ex. 10 (Rog. 10). To this day, Planner 5D still struggles to affirmatively define its alleged works (repeatedly claiming its work is whatever "Princeton [allegedly] scraped," Opp. at 9, 15, 23) to the prejudice of Defendants and the Court.

*see also Action Tapes, Inc. v. Mattson*, 462 F.3d 1010 (8th Cir. 2006) (same). Planner 5D admits that its works do not contain object code. Dkt. 221-12 (Schmitt Ex. 12 (RFA No. 3)). And despite contending for years that its works "were written in a programming language called Java Script Object Notation" (including in a sworn statement to the Office, Opp. at 6), Planner 5D *now* admits that "JSON is not itself a programming language." Opp. at 27.[5] Thus, by definition, Planner 5D's works do not contain source code.

Planner 5D's sole argument in response is that [redacted] in its JSON files constitute "instructions" as a matter of law because they "cause the computer to calculate geometric, optical, and other properties of objects and scenes, and render them on the user's screen." Opp. at 25. But that position was expressly rejected by the Office after *months* of correspondence [redacted] on the issue. Schmitt Decl. ¶¶ 136–44. [redacted] Planner 5D has no evidence to refute Professor Lopresti's findings. [redacted] Thus, Planner 5D's conclusory statements that its JSON files contain "instructions" are insufficient to defeat Defendants' Motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (summary judgment warranted where nonmoving party "failed to make a sufficient showing on an essential element of her case").

Furthermore, to expand the meaning of "instructions" to include *any* information read by a separate computer program and interpreted by that program to perform a task—like rendering an object—would obliterate the well-settled distinction between computer programs and data files. *See e.g.*, *Atari Games*

[5] Evidently troubled by its knowledge that it would have to make this admission, Planner 5D belatedly amended its discovery responses, three years into this litigation, to assert that its works are, instead, written in a "proprietary programming language based on the JSON standard." Ex. 6 (Rog 5). However, [redacted] Lopresti Decl. ¶¶ 84–91.

*Corp. v. Nintendo of Am., Inc.*, No. 88-cv-4805, 1993 WL 214886, at *4 (N.D. Cal. Apr. 15, 1993) (files read by computer programs lack instructions because they do not contain code telling the computer "what to do"); LumenScript Refusal 6 (files fed to a computer program and interpreted to generate light displays not a computer program because "a computer could not interpret these data as a set of instructions").

Indeed, data files are routinely read by a computer program and interpreted to perform a task. For example, HTML contains data regarding how to "format[] the text and files on a webpage." A computer program (generally, a web browser) reads and interprets HTML data files to display a webpage. *See* Compendium §§ 1006.1(A), 1002.4. Similarly, a spreadsheet of data may be read by a computer program to perform calculations. The Compendium is clear that *neither* of those data files (HTML nor spreadsheets) are computer programs, *id.* §§ 1006.1(A), 725, but under Planner 5D's definition of "instructions," they would be. Planner 5D does not cite a single case to support its radical expansion of this settled definition.

Finally, Planner 5D's claim that the OpenSCAD language can be used to create 3D models is a red herring. Opp. at 26. OpenSCAD is *software*, comprised of extensive libraries of code, with a well-documented programming language. Tracer Decl. ¶¶ 9–12 & Exs. 95–97. It is entirely unlike Planner 5D's JSON data files, which are not software, contain no code, and have no language documentation.[6] Similarly, Planner 5D's claim that JSON *can* be used to "encode any information, including instructions" is irrelevant. Opp. at 27. The issue is not what information JSON *can* theoretically store, but rather what Planner 5D's JSON files *actually* store—which is merely data (*i.e.*, [redacted] Opp. at 26).

Thus, as the Office found, Planner 5D's JSON files are not computer programs as a matter of law.[7]

2. <u>Section 411 does not allow Planner 5D to pursue copyright claims it purposefully withheld from the Office's review.</u>

Section 411 provides that *no* action for infringement "shall be instituted until . . . registration of the

---

[6] The text in the OpenSCAD code and Planner 5D's JSON files serve different purposes, too. "OpenSCAD is a set of modelling tools rather than a library of predefined models." Tracer Decl. ¶ 12. These tools are defined by code (like "cube" to draw a cube). *Id.* [redacted]

[7] Planner 5D's reliance on its registration for subsequent works as "computer programs" is unavailing. The Compendium makes clear that "***[a] decision to register a particular work has no precedential value and is not binding upon the Office when it examines any other application***." Compendium § 309.3 (emphasis added). Furthermore, there is no evidence that Planner 5D's applications for subsequent works were reviewed by the Office's computer program specialists, as they were here. Schmitt Decl. ¶¶ 137–43.

***copyright claim*** has been made . . . [or] where the deposit, application, and fee required for registration have been delivered [] in ***proper form*** and registration has been refused." 17 U.S.C. § 411(a) (emphasis added). Thus, as set forth below, an application that fails to identify the subject matter the applicant seeks to protect, or fails to provide a deposit copy in proper form, has not satisfied its Section 411 requirements.

Here, Planner 5D has failed to do both. There is no dispute that the only subject matter claimed in Planner 5D's applications is "computer program, including displays generated by computer program," and that the only material Planner 5D deposited was excerpts of text files. Dkts. 222-3 & 222-4.[8] But as explained above, those text files are demonstrably *not* computer programs. Further, because Planner 5D did not deposit any visual material for the Office to evaluate, it is beyond dispute that it did not submit a proper deposit copy that would support any copyright claim in the designs of visual renderings generated by a computer program, 3D models, or compilations thereof. Its deposits therefore do not satisfy its pre-suit requirements for the claims it is now asserting.

Unable to contest this, Planner 5D seeks to downplay the effect of its failure to comply with Section 411 on its claims in this litigation. ***First***, Planner 5D contends that the "proper form" requirement is a "formalit[y]" that has "no impact [on its] infringement action." Opp. at 17. But the sole case Planner 5D cites in support of this argument, *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 448 (S.D.N.Y. 2002), says nothing of the kind. In that case, there was no issue regarding: (1) the adequacy of the deposit copy; (2) a plaintiff seeking to enforce rights outside the copyright claimed in the application; or (3) the copyrightability of the work, as are present here.[9] To suggest that *Ward* excuses any inquiry into Planner 5D's compliance with Section 411 is a gross misstatement.

***Second***, Planner 5D urges the Court to accept its deposit of text files associated with [redacted]

---

[8] Despite making the conclusory assertion that it could not register its works as visual works or under a group registration, Planner 5D *never* states why it could not deposit the visual renderings allegedly generated by its computer program for the Objects and Scenes, as required to obtain a registration in them. The Office repeatedly asked for this material, but Planner 5D refused to provide it. Dkt. 252-34. Thus, as the Office concluded, Planner 5D did not fulfill the deposit requirement for these alleged "visual renderings." *Id.* Moreover, Planner 5D's excuses as to why it did not pursue registration of other types of works are meritless. Planner 5D cannot cite a single case in which similar circumstances allowed a party to avoid the Act's pre-suit requirements. Planner 5D also admits that the Office, having considered these alleged burdens, declined to excuse Planner 5D's failure to satisfy the deposit requirements. Opp. at 21.

[9] That case also did not involve computer programs. It merely considered whether an author, whose name was left off of the published version of a work, could enforce ownership rights in the work under the Copyright Act of 1909. *Ward*, 208 F. Supp. at 444–48.

[redacted] the guise that it represents a "bona fide copy" of its catalog of 3,719 three-dimensional Objects and compilation of [redacted] Scenes. Opp. at 22–23. Yet, Planner 5D can point to no authority that supports a finding that depositing [redacted] of text files associated with a pictorial, graphic, or sculptural ("PGS") work or compilation constitutes a "bona fide copy" of that work.[10] This is unsurprising, given that Section 408(b) states that deposits must be a "complete copy" of the work, and that text files are not a proper deposit for any claimed rights in PGS works or compilations. Mot. at 17.

***Third***, Planner 5D contends that the classification of its works as "computer programs" is "irrelevant to this case" under Section 408 of the Act. Opp. at 18. But Planner 5D's argument conflates the Office's "administrative classes" with the subject matter of copyright. The former are set by the Register, as allowed by Section 408, for the purposes of organizing registrations and deposits. 17 U.S.C. § 408. The latter dictate the subject matter eligible for copyright protection, as codified in 17 U.S.C. § 102. Although administrative classifications may not affect the scope of a registration, the claimed ***subject matter*** in an application or registration does.

Indeed, courts have consistently held that an applicant's claimed subject matter helps define the "scope for the copyright protection" enforceable under the registration.[11] *Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211, 1218 (C.D. Cal. 2006); *see also* Patry on Copyright § 17.119 ("the scope of registration is determined by the nature and extent of the deposit, and by the registrant's description of its claim"); *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1162–63 (S.D. Fla. 2006) (work registered as a PGS work not enforceable as an "architectural work"); Compendium § 721.10(A)

[10] In Planner 5D's cited cases, the deposit copies were in the required format and substantially complete, unlike here. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000) ("deposit copy included all of the [work's] essential elements"); *KnowledgePlex, Inc. v. Placebase, Inc.*, No. 08-cv-4267, 2008 WL 5245484, at *9 (N.D. Cal. Dec. 17, 2008) (computer program deposit included last 25 pages of source code). Planner 5D's reliance on *Morelli v. Tiffany & Co.*, 186 F. Supp. 2d. 563 (E.D. Pa. 2002) is also misplaced because the completeness of the deposit copy was not at issue in that case.

[11] Planner 5D contends that, because its works "don't fit neatly into the Office's current administrative classes" this rule should be ignored. But the Office recognizes that one work can embody multiple copyright claims and nevertheless requires that *separate* applications be submitted for each claim. *See, e.g.*, Circular 56 ("Sound recordings often contain other separate copyrightable creative works. . . . As a general rule, you must submit a *separate application, filing fee, and deposit for each work you want to register*.") (emphasis added); 37 C.F.R. § 202.11(c)(4) ("Where dual copyright claims exist in technical drawings and the architectural work depicted in the drawings, any claims with respect to the technical drawings and architectural work must be registered separately."). Despite multiple suggestions from the Office about how to register various claims in its alleged works, Planner 5D declined to follow them.

(application to register HTML (a data file) does not cover the actual website content "unless applicant submits a copy of the website content and expressly asserts a claim in that material"). Thus, copyright claims that are *not* included in a registration, yet alleged in litigation, must be denied for failure to satisfy 411(a).[12] *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1013–14 (8th Cir. 2006) (registration for visual arts does not fulfill 411(a) requirements for computer program that allegedly rendered the display).[13]

Against this body of law, Planner 5D contends that, because it applied for *some* copyright claim in a work (*i.e.*, a computer program), it should be allowed to enforce *any* copyright claim associated with the work (such as PGS rights). Yet Planner 5D does not point to a single case that supports the relief it seeks.[14]

***Finally,*** in a last-ditch effort to survive dismissal, Planner 5D alternatively contends that its decision to apply for the alleged works as computer programs and limit its deposit to 50 pages of text was an error and should be excused. But an application error is only excusable if it is immaterial, meaning that its discovery would not have changed the Office's decision as to copyrightability. *See* Patry on Copyright § 17.124 ("submitting an application on the wrong form is generally not a material error unless the deposit reveals that had the application been submitted on the correct form, there would be no registrable subject matter in the correct class").[15] Here, there is no dispute that Planner 5D's registrations were refused *because* the Office concluded that the deposited material is not a copyrightable computer program. Opp.

---

[12] Planner 5D's cited cases, in which courts found that three-dimensional artworks may be covered by a registration for photographs of those works. are distinguishable. In each case, the three-dimensional works were expressly claimed in the application and depicted in the deposit copy—but neither is true here. *See, e.g.*, *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 546–47 (S.D.N.Y. 2011) (3D works of art captured by photographs); *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 494 (S.D.N.Y. 2008) (deposit of catalog covered "photographs and text" claimed in original application and jewelry designs claimed in supplemental application); *Skyline Design, Inc. v. McGrory Glass, Inc.*, No. 12-cv-10198, 2014 WL 258564, at *4 (N.D. Ill. Jan. 23, 2014) (2-dimensional artwork and double-sided etched glass design captured by registration that "sufficiently describe[d]" both works).

[13] Planner 5D's attempt to distinguish this case because it implicated claims under the Rental Amendments Act is a red herring. Planner 5D concedes that the Eighth Circuit determined Section 411(a) was not satisfied by a registration claiming and depositing a different work.

[14] This is also unsurprising, as such a rule would render the Register's right under Section 411(a) to "become a party to the action with respect to the issue of registrability of the ***copyright claim***" nonsensical, because the Register would be participating in an action on a copyright claim that was not applied for (and thus it never reviewed). 17 U.S.C. § 411(a) (emphasis added).

[15] The cases on which Planner 5D relies do not hold otherwise. In each case, the alleged errors in the applications had no impact on the claimed work's copyrightability. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000) (no dispute that the claimed work was copyrightable); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161 (1st Cir. 1994) (same).

at 6–7. Thus, Planner 5D's decision is—by definition—material.

Moreover, this was not a mistake. The undisputed application history shows that, when the Office urged Planner 5D to consider claiming its alleged works differently (including as a literary work consisting of textual materials or a database), Planner 5D refused. Schmitt Decl. ¶¶ 138–42. And when the Office suggested Planner 5D deposit alternative textual material, Planner 5D said "there was no other code to deposit." Opp. at 6–7. Even when the Office encouraged Planner 5D to submit copies of its visual renderings, Planner 5D declined. Dkt. 252-34. Knowingly maintaining its partial deposit and claimed subject matter as a "computer program" is the antithesis of a mistake.[16]

Thus, this Court should enter summary judgment for Defendants on the copyright claims.

**B. Planner 5D Has Not Established Ownership of a Valid Copyright.**

1. Because Planner 5D does not dispute that its JSON files were automatically generated by a machine they lack human authorship as a matter of law.

Planner 5D's claims separately fail because Planner 5D has not established its JSON files contain human authorship. Planner 5D does not dispute (and thus concedes) the process by which its JSON files are created: [redacted] It also does not dispute that the text in the JSON file was "produced by a machine or mere mechanical process that operates . . . automatically." *Id.* at 22. Thus, the Court need not look further; works created in such a manner lack human authorship and are uncopyrightable as a matter of law.[17] Compendium § 313.2; *see also* Mot. at 22–23.

2. Planner 5D has not met its burden to show that its 3D models of real-world items contain any creative material, created by Planner 5D.

Planner 5D's claims with respect to its Objects fail for lack of originality. Because the Office refused to register Planner 5D's alleged copyrights, no presumption of validity attaches and Planner 5D bears the burden of demonstrating originality. 17 U.S.C. § 408(c). It has not met that burden.

---

[16] Contrary to Planner 5D's claim, Defendants were severely prejudiced by its "mistake." *See infra* n.4.

[17] Planner 5D's conclusory claim that it exercised "creative control" over the text the third-party script generated in the JSON file is insufficient. Among other things, Planner 5D does not identify *what* or *how* it exercised creative control. The only "creativity" it alleges in its brief, at all, is with regard to modeling Objects in Blender, not drafting text in the JSON files. *See* Opp. at 7–14.

"[I]n assessing the originality of a work for which copyright protection is sought, [courts] look only at the final ***product***, not the ***process***" by which it was created. *ABS Entm't Inc. v. CBS Corp.*, 908 F.3d 405, 416 (9th Cir. 2018) (quoting *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*, 528 F.3d 1258, 1268 (10th Cir. 2008)). Indeed, "the fact that intensive, skillful, ***and even creative labor*** is invested in the process of creating a product does not guarantee its copyrightability." *Id.* (emphasis added).[18]

Nevertheless, Planner 5D argues that its Objects are "original" because its modelers made "choices" when modeling the Objects to look like "real objects" while using "images the modelers encountered in real life" or "references images modelers saw on the web" (collectively, the "Reference Material"). Opp. at 2–3, 9–13. However, there is no evidence that these "choices" yielded an original product. Instead, the evidence in the record establishes that Planner 5D's Objects are near exact replicas of real-world objects. *See* Dkts. 223-3 & 224-1. Thus, Planner 5D has not met its burden to demonstrate originality as a matter of law. *See Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 331 (S.D.N.Y. 2021) (no copyright in work lacking "a spark of distinctiveness"); *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001) (photographs serving "purely utilitarian purpose" of identifying real-world food items not copyrightable).

Planner 5D's claim that its modelers had to "fashion objects" in 3D form from a 2D photo is also irrelevant. The Ninth Circuit has held that "making decisions that enable one to reproduce or transform an already existing work into another medium or dimension—though perhaps quite difficult and intricate decisions—is not enough to constitute" originality, *even when* those decisions are allegedly guided by "artistic impression." *Ent. Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1222–23 (9th Cir. 1997) (transforming 2D characters into 3D costumes not original).[19] Moreover, despite having the burden of demonstrating the originality of all its Objects, Planner 5D cites only one example of material

---

[18] The cases on which Planner 5D relies do not hold otherwise. Opp. at 8. In each case, the court concluded that the *resulting work* was copyrightable. In *Ets–Hokin v. Skyy Spirits, Inc.*, the Ninth Circuit even clarified that it is not the "decisions" by photographers that result in copyright protection, but rather "the elements of photographs that result from these decisions . . . ." 225 F.3d 1068, 1074–75 (9th Cir. 2000).

[19] Planner 5D seeks to distinguish this case because its modelers used "reference works . . . which are not copyrightable." Opp. at 12. Given that Planner 5D does not identify a single piece of Reference Material used, this self-serving conclusion should be disregarded.

it added to a 3D model that is not viewable in the Reference Material: an unadorned leg of a table.[20] Opp. at 10. However, Planner 5D offers no explanation of what creativity was needed to produce that leg, which is unoriginal to the naked eye because it consists only of a simple cylindrical pole and circular base. Thus, Planner 5D fails to meet its burden to demonstrate that the table leg—let alone the 3,718 other Objects that Planner 5D fails to address—is creative. *Genesis Creative*, 122 F.3d at 1221.[21]

Even if the choices Planner 5D's modelers allegedly made as to "mesh" (*i.e.*, polygon placement) and "materials" (*i.e.*, color and texture) were relevant to originality—which they are not—its claims would still fail. ***First***, Planner 5D's relies on *Glass Egg* to argue that "[m]esh choices alone . . . meet the threshold for copyrightability." Opp. at 9. But the court there held that the polygon placement can *only* be original if "the polygon arrangements can be separated from the shape and appearance of the" object. *Glass Egg Digit. Media v. Gameloft, Inc.*, No. 17-cv-04165, 2018 WL 3659259, at *5 (N.D. Cal. Aug. 2, 2018). That is not the case here (and Planner 5D does not claim otherwise).[22] ***Second***, Planner 5D's material choices amount to little more than how and where color and texture is placed. *See* Opp. at 4–5 (describing material choices as "how dull or shiny a surface is," "color of specular reflections from an object's surface," "how opaque or transparent a surface is," "texture," "how a 2D texture image is mapped onto a 3D object's surface," and "color of its surfaces without texture"). But these decisions are not original as a matter of law because they: (1) are not Planner 5D's original creation (but rather were copied from the Reference Material to replicate the real-life object), *see* Dkts. 223-3 & 224-1, and (2) lack the requisite degree of creativity, because "merely add[ing] or chang[ing] a few colors that appear in a preexisting work of authorship or merely add[ing], chang[ing], or combin[ing] expected or familiar sets or pairs of colors" are

---

[20] Moreover, Planner 5D admits that its Objects were modeled off of "real objects." Opp. at 2. Because it does not identify the Reference Materials used for *any* Objects, it has not established that this Object was modeled based off of a 2D image as opposed to the "real object[]" depicted in that image.

[21] Planner 5D also claims that: (i) one model of a bed is different from its Reference Material, because it has, *inter alia*, "green . . . feet" and replaced a "gray band over the lower portion of the bed" with a "shiny, gray-olive object," and (ii) one model of a couch is "significantly more specular (shiny)" than the Reference Material. Dkt. 253 (Ustyugov Decl.) ¶¶ 24, 27, 30. But the fact that these two models "merely exhibit[] perceptible changes" from the Reference Material does not make them original. *Abs Entm't v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018). To the contrary, the Compendium is clear that color choices, alone, are not original contributions. Compendium § 313.4(K). And, in any event, Planner 5D's alleged contributions to two Objects have no bearing on the purported originality of the remaining 3,717 Objects.

[22] *Glass Egg* is also inapposite because the work at issue was a compilation of polygons. *Glass Egg*, 2018 WL 3659259, at *4. Planner 5D has never claimed a copyright in the compilation of polygons.

not creative contributions. Compendium § 313.4(K); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) (originality requires both independent creation and creativity).

Finally, Planner 5D's claim that its modelers created Objects "from imagination" should be disregarded. ***First***, Planner 5D has not met its burden to identify which Objects these are. It has changed its position on this matter from "the earliest 100 objects or so" to "another 100" and now says "likely many more."[23] Opp. at 9 n.2. To allow Planner 5D to proceed with claims on works *it has not identified* would be highly prejudicial. ***Second***, after Defendants identified Reference Material that was used to create select Objects that Planner 5D claims were created from imagination, Planner 5D offered no evidence in response. *Id*. Thus, the record evidence shows that these Objects were not created from imagination. ***Finally***, Planner 5D fails to identify any creative material in these Objects—it simply concludes that "[a] work containing hundred objects [sic] created from scratch surely establishes 'a modicum of creativity.'" Opp. at 9. But Planner 5D cannot rely on conclusory statements, alone, to defeat summary judgment. *Celotex*, 477 U.S. at 333. Moreover, a claim that a work is created from imagination does not make that object per se original. If that were the case, *all* works would be original for the mere fact that an author thought to make them.

Thus, Planner 5D has not met its burden to establish that *any* Objects contain creative material created by Planner 5D. Defendants' motion for summary judgment should be granted.[24]

## III. SUMMARY JUDGMENT IS WARRANTED ON THE TRADE SECRET CLAIMS.

Planner 5D does not dispute that it (a) made all its alleged trade secrets available online to users of its Website and (b) had nothing more than an unenforceable "browsewrap" agreement to allegedly obligate users to a duty of confidentiality. Thus, Planner 5D failed to "take[] reasonable measures" to protect its

[23] Planner 5D's attempt to divert blame to Defendants for this issue because Mr. Sheremetyev was "cut off" in his deposition is absurd. Opp. at 9 n. 2. If Mr. Sheremetyev had more objects he wanted to identify, he could have done that in his declaration in support of Planner 5D's opposition. But he did not.

[24] Planner 5D's request for summary judgment in its favor on its Scenes Work on the basis that it was "creative" is improper and must be denied. Opp. at 13. Defendants did not move for summary judgment on this basis because there remain material issues of disputed fact, including whether: (1) Planner 5D's alleged "winnowing" of scenes from the public gallery was creative, and (2) Planner 5D's evidence that it created a compilation is credible. Planner 5D, as the non-moving party, may *not* seek summary judgment on grounds other than those raised by Defendants. *See Villapando v. Banamex USA Bancorp*, No. 19-cv-5149, 2020 WL 1942783, at *13 (C.D. Cal. Apr. 21, 2020) (denying plaintiff's request for summary judgment on issue raised for the first time on opposition).

alleged trade secrets as a matter of law. 18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(d).

In their motion, Defendants cited a dozen cases demonstrating that when a plaintiff discloses its alleged trade secrets to individuals without binding them to an obligation of confidentiality, no trade secrets exist as a matter of law. *See* Mot. at 27–29. That longstanding rule existed under common law, was incorporated into the statutory regimes under which Planner 5D alleges its trade secret claims, applies to the disclosure of trade secrets online, and is readily resolvable on summary judgment. *See id.*

Tellingly, Planner 5D does not dispute that analysis.[25] Instead, it attempts to divert the focus from the legal insufficiency of its claims by asserting that secrecy is a fact-intensive inquiry and by making a series of irrelevant factual contentions that relate predominantly to how graduate student researchers at Princeton accessed Planner 5D's alleged secrets. *See* Opp. at 27–35. However, as even the cases cited by Planner 5D demonstrate, the reasonableness and adequacy of security measures turn on the ***plaintiff's*** efforts to protect its alleged trade secrets, not the defendant's conduct. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991). Thus, when a plaintiff fails to protect its alleged trade secrets, it does not matter how a defendant acquired them. *See id.* Permitting a plaintiff to recover damages in that circumstance would undermine the incentives trade secret law places on owners to protect their alleged secrets and amount to "a windfall" akin to permitting recovery for the loss of what is effectively "abandoned property." *Id.*[26] Indeed, in the cases that Planner 5D cited for the proposition that secrecy was a fact-intensive inquiry, the inquiries related to whether the plaintiff imposed sufficient confidentiality obligations on a party to whom it disclosed its alleged secrets. *See* Opp. at 27–28 (citing cases).[27] Here,

---

[25] Of the twelve cases Defendants cited articulating these principles, Planner 5D ignores ten outright and refers to the other two only in passing and without disputing their legal analyses. *Compare* Mot. at 27–29, *with* Opp. at 29–30 (referring to *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622 (E.D. Pa. 2017), and *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26 (2014)).

[26] Considering Defendants' conduct in evaluating the adequacy of Planner 5D's efforts to protect its alleged trade secrets would also conflate the "reasonable measures" element of Planner 5D's trade secret claims with Planner 5D's separate and distinct obligation to prove that any alleged misappropriation was through "improper means" like "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); Cal. Civil Code § 3426.1(a).

[27] The only two exceptions involved an entirely different issue: whether a third party had so widely leaked an alleged trade secret to the public that it ceased to be a secret. *See DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 251–32 (2004); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. 07-cv-635, 2008 WL 166950, at *16 (N.D. Cal. Jan. 17, 2008). Third party leaks are not at issue here.

the undisputed facts demonstrate that Planner 5D disclosed its alleged trade secrets to individuals under no confidentiality obligation. Accordingly, no trade secrets exist as a matter of law and summary judgment is appropriate. *See* Mot. at 28–29.[28]

**A. Planner 5D Disclosed Its Alleged Trade Secrets As A Matter Of Law.**

Planner 5D simultaneously asserts that its Object Data Files, Scene Data Files, and compilations of such files are trade secrets ***and*** that those same files are "published" copyrighted works. As Defendants previously explained, those assertions are incompatible because, under copyright law, publication means the alleged works were distributed "to the public." Mot. at 30–31. Planner 5D ignored this tension and failed to cite any case in which a plaintiff published an alleged work under copyright law yet successfully claimed it did not disclose that work. Thus, Planner 5D's admission of publication is a concession that it disclosed these alleged trade secrets to the public.[29] The undisputed facts demonstrate the same.

1. <u>Planner 5D Made Its Alleged Trade Secrets Available To The Public Online.</u>

A plaintiff discloses an alleged trade secret on the Internet when that secret is "made available to the public" online. *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622, 631–32 (E.D. Pa. 2017) (quoting *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1131 (9th Cir. 2006)); *see* Mot. at 30. Planner 5D does not dispute this standard.

In their opening brief, Defendants demonstrated that Planner 5D made all of its alleged trade secrets available through its Website. *See* Mot. at 6–8, 30. As explained below, Planner 5D made each category of trade secrets it alleges in this action available to the public.

[redacted] It is undisputed that, [redacted]

---

[28] While Planner 5D claims that trade secrets can also be protected by "[o]ther" means, the sole authority it cites only considered: (1) limiting access to the alleged secret (*i.e.*, preventing disclosure), and (2) telling parties that the information was confidential (*i.e.*, imposing a confidentiality obligation). *See Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1201 (S.D. Cal. 2008).

[29] The only time Planner 5D even references copyright law in the trade secret portion of its opposition addresses a different—and irrelevant—issue. Specifically, Planner 5D notes that 17 U.S.C. § 1201 regulates the circumvention of technological measures that control access to a copyrighted work. *See* Opp. at 29. However, Planner 5D has never alleged that Defendants violated this provision, which in any event "does not inquire" into whether such claims are "based on secret information." *DVD Copy Control Ass'n, Inc.*, 31 Cal. 4th at 902 (Moreno, J., concurring).

[redacted] Those facts alone demonstrate that Planner 5D made these [redacted] "available to the public" online and thus disclosed them as a matter of law. *Arkeyo*, 342 F. Supp. 3d at 631–32.

Planner 5D has no substantive response to these dispositive facts and instead claims that [redacted][30] Accordingly, Planner 5D made these [redacted] available to its users.

[redacted][31] Planner 5D does not dispute these facts. Thus, Planner 5D disclosed its Object Data Files and Scene Data Files by making them available online. *See Arkeyo*, 342 F. Supp. 3d at 631 (finding disclosure when plaintiff made software available to anyone who "simply typed" the relevant URL "into a web browser").

Unable to address these dispositive facts, Planner 5D instead raises two irrelevant issues in response. ***First***, Planner 5D claims that while that its Object Data Files and Scene Data Files were "sent to the user's computer," the files were nevertheless "hidden." Opp. at 29. That contention is a strawman. Defendants are not contending that users were able to access the files because Planner 5D sent them to the users' computers. Rather, Defendants demonstrated that Planner 5D made its Object Data Files and Scene Data Files available by [redacted] *See*

---

[30] Planner 5D's only attempt to distinguish *Arkeyo* is unavailing. Planner 5D claims that, unlike the URL at issue in *Arkeyo*, [redacted] Opp. at 30. However, whether Planner 5D's [redacted] is irrelevant since Planner 5D made those [redacted] accessible to its users.

[31] Planner 5D's Object Data Files and Scene Data Files [redacted]

Mot. at 7–8. Whether Planner 5D also sent the files to users' computers is irrelevant.[32]

***Second***, Planner 5D claims that it protected its Object Data Files and Scene Data Files because it used an allegedly "proprietary file format" that made it "hard to decipher" those files. Opp. at 30. That allegation is not properly before the Court because Planner 5D did not identify it in its pleadings or trade secret disclosures served at the outset of discovery. *See* Mot. at 29 n.18. Regardless, Planner 5D's alleged "proprietary file format" did nothing to prevent the disclosure to the public of the files that it alleges are trade secrets.[33] Indeed, Planner 5D conceded during a Rule 30(b)(6) deposition that its file format did not prevent anyone from accessing and downloading its files as described above. *See* Tracer Decl. ¶¶ 13–14. Accordingly, Planner 5D made its files available and thus disclosed them as a matter of law.

Compilations. Planner 5D also claims that its complete collections of Object Data Files and Scene Data Files are independently protectable as trade secret compilations. *See* Dkt. 53 (First Am. Compl.) ¶¶ 93, 108. However, Planner 5D does not dispute that any user could access ***all*** of those files by identifying and accessing [redacted]. Thus, Planner 5D made its alleged compilations of Object Data Files and Scene Data Files available to its users. *See* Mot. at 30.[34]

Planner 5D's only response is another strawman, this time that it "would take months or years" to acquire all the Object Data Files and Scene Data Files using a "one-by-one manual process." Opp. at 31. However, that improperly focuses on a third party's conduct, not Planner 5D's. Indeed, there is no authority holding that the length of time necessary to access an alleged trade secret compilation on a website by using a "manual process" protects against the disclosure of the alleged compilation. The only case Planner 5D cites did not involve the Internet at all and held that only "sparse amount[s]" of the alleged

---

[32] Planner 5D's argument also lacks legal support. Planner 5D does not cite any cases holding that a file concededly "sent to the user's computer" can nevertheless be a trade secret because it is "hidden from the user." Opp. at 29. The only case Planner 5D cites—*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*—did not even involve Internet disclosure, but rather considered an entirely different issue, namely whether "design concepts" in software are disclosed to end users of that software. 226 Cal. App. 4th 26, 59–61 (2014). That question has no relevance to this case.

[33] Planner 5D has never alleged that its method for rendering its Object Data Files and Scene Data Files into images of objects and scenes constitutes a trade secret. Thus, Planner 5D's claims about how its files are [redacted] are irrelevant to evaluating whether Planner 5D disclosed its alleged trade secrets, *i.e.*, the files themselves. Opp. at 30.

[34] Planner 5D's claim that Defendants "mounted no real challenge" to the secrecy of its alleged trade secret compilations is wrong. Opp. at 31. Defendants expressly argued in their opening brief that Planner 5D made all its Object Data Files and Scene Data files available online. *See* Mot. at 30.

compilations—not the entire alleged compilations—were available to the public. *N. Am. Deer Registry, Inc. v. DNA Solutions, Inc.*, No. 17-cv-00062, 2017 WL 2402579, at *7–8 (E.D. Tex. June 2, 2017).

Accordingly, Planner 5D disclosed all its alleged trade secrets as a matter of law by making them available to the public online. *See Arkeyo*, 342 F. Supp. 3d at 631–32.

2. Planner 5D's Purported Factual Disputes Are Immaterial.

Unable to challenge the dispositive issues described above, Planner 5D suggests that a number of irrelevant factual disputes about other issues exist, like Defendants' conduct and the reasons why Planner 5D built its Website to function as it did. *See* Opp. at 30–32. However, those issues have no bearing on whether Planner 5D disclosed its alleged trade secrets by making them available online.

Most notably, Planner 5D focuses heavily on how researchers at Princeton discovered Planner 5D and accessed its files. *See* Opp. at 7, 30–31; *see also* Dkt. 252 (Andreu-von Euw Decl.) ¶¶ 26–44. However, whether Planner 5D took adequate steps to protect its alleged trade secrets turns on ***Planner 5D's*** conduct, not Defendants'. *See supra* at 13–14. Holding otherwise would grant Planner 5D an improper "windfall" when it freely disclosed its alleged secrets to its users. *Rockwell*, 925 F.2d at 179.

Planner 5D also claims that its status as a small business somehow excuses its disclosure of its alleged trade secrets. However, the two cases on which Planner 5D relies do not hold that the adequacy of a plaintiff's protection of its alleged trade secrets is affected by the size of the plaintiff's organization. Instead, both considered whether undisputed disclosures of alleged trade secrets were made under sufficient confidentiality obligations. Opp. at 31–32 (citing *Niemi v. NHK Spring Co.*, 543 F.3d 294, 302–03 (6th Cir. 2008); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003)).

Indeed, the notion that there should be a "sliding scale" for the adequacy of trade secret protection based on the size of a plaintiff's business would create an unworkable rule of law because Internet users would be required to investigate the size and circumstances of organizations hosting websites simply to determine whether information accessible on those websites might reasonably be considered confidential. The vast majority of facts that Planner 5D deems relevant to that analysis—its number of employees, their managerial responsibilities, and its number of users—are unavailable or themselves confidential. *See* Opp. at 31. No authority suggests that trade secret laws intended to create such a result.

Planner 5D also claims that its decision to make its alleged trade secrets available on its Website

should not be considered disclosure based on how other websites operate. *See* Opp. at 32. However, there are no cases holding that the operation of other websites is relevant to whether a plaintiff disclosed its alleged trade secrets.[35] Moreover, even if the operation of other websites could theoretically be relevant, there is no information in this record about whether any such websites consider their materials to be trade secrets or, if they do, whether they disclose their materials to users only after ensuring that users agree to treat the materials confidentially. Thus, the operations of those websites are irrelevant.

**B. Planner 5D Did Not Bind Its Users To An Obligation Of Confidentiality.**

Having disclosed its alleged trade secrets by making them available on its Website, Planner 5D was required to bind its users to an obligation of confidentiality in order to maintain a trade secret claim. *See* Mot. at 27–29. The only purported source of any such obligation here is the Terms of Service on Planner 5D's Website. *See* Opp. at 32–35. However, because Planner 5D did not give users notice of the Terms of Service, they are unenforceable. Even if the Terms of Service were enforceable, there was no confidentiality obligation because Planner 5D did not assert that anything on its Website was confidential.

1. Planner 5D's Terms Of Service Were Unenforceable.

Ninth Circuit law expressly limits the enforceability of online contracts to circumstances where users have actual or inquiry notice of the terms. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *see also* Mot. at 31–32. There was no actual notice here and it is undisputed that Planner 5D did not ensure that its users were on inquiry notice either. *See* Mot. at 32–34.

Actual Notice. In their opening brief, Defendants explained that there is no evidence in this case that any particular Planner 5D user ever had actual notice of Planner 5D's Terms of Service. *See* Mot. at 32–33. Planner 5D ignores this issue and thus concedes it. *See Celotex*, 477 U.S. at 323.

Inquiry Notice. To put users on inquiry notice, a website must (a) provide "reasonably conspicuous notice" of its terms on its website and (b) require users to take some affirmative action (like clicking a button or checking a box) to "unambiguously" manifest their assent to be bound. *Berman*, 30 F.4th at 856. However, Planner 5D's Terms of Service were available only through inconspicuous hyperlinks at the

[35] The only case Planner 5D cites is *Learning Curve*, where disclosure was undisputed. *See supra*, at 17.

bottom of certain webpages, and Planner 5D did not require users to manifest their assent in any manner. *See* Mot. at 33–34. In other words, Planner 5D's Terms of Service were a textbook "browsewrap" agreement, which court after court has held fails to provide inquiry notice as a matter of law. *See id.*

Indeed, Planner 5D does not dispute any of that analysis and even concedes that its Terms of Service constituted a "browsewrap agreement." Opp. at 33. Applying binding Ninth Circuit precedent, that concession renders Planner 5D's Terms of Service unenforceable and dooms Planner 5D's claim that it imposed any obligation of confidentiality on its users. With no basis to dispute the clear application of that Ninth Circuit precedent, Planner 5D instead argues that the unambiguous rules of law articulated in *Berman* and *Nguyen* should be ignored and that the appropriate inquiry is to examine the particular conduct of Princeton's researchers. *See* Opp. at 33–35. Planner 5D is wrong as a matter of law.

***First***, because Planner 5D made its alleged trade secrets available to all its users, if it wished to maintain the secrecy of those materials, it was required to obligate all of those users to a duty of confidentiality. Indeed, the court in *Arkeyo* reached exactly that conclusion and held that the plaintiff's non-disclosure agreement with the defendant "became ineffectual" once the alleged secrets were published online because they were "available to individuals who owed no duty of non-disclosure." 342 F. Supp. 3d at 631. The same analysis applies here: even if Planner 5D's Terms of Service were binding on Princeton's researchers (which they are not), Planner 5D still made its alleged trade secrets available to its millions of other users. Planner 5D makes no argument that those users were bound by its browsewrap agreement.

***Second***, Planner 5D's attempt to limit the clear and unambiguous rule of law announced in *Berman* and *Nguyen* is meritless. Planner 5D argues that the rule established by those cases applies only to "a website's ordinary consumers." Opp. at 33. However, no such limitation exists anywhere in the relevant jurisprudence. Both *Berman* and *Nguyen* turned on the design and structure of the websites at issue to determine whether they provided users with reasonable notice and required users to take action to manifest their assent. *See Berman*, 30 F.4th at 856–58; *Nguyen*, 763 F.3d at 1177–79. Those inquires are not affected by the user's purpose in using the website, and nothing in *Berman* or *Nguyen* indicated otherwise.

Further, there is no authority holding that a browsewrap agreement can be enforced on an inquiry notice theory based on repeated access to a website. Neither of the two cases Planner 5D cites stands for that proposition. *See* Opp. at 33. In one, the defendant admitted it was "fully aware" of the plaintiff's

terms, making it a case of actual notice, not inquiry notice. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402 (2d Cir. 2004). In the other, every page of the website at issue included a conspicuous notice about the existence of the terms of service and that continued use of the site constituted acceptance of those terms, providing more notice to users than a browsewrap agreement like Planner 5D's. *See Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-cv-4825, 2005 WL 756610, at *2 (Apr. 1, 2005). Indeed, the Ninth Circuit has expressly considered Planner 5D's two cases and distinguished them on exactly those grounds. *See Nguyen*, 763 F.3d at 1176–77.[36] Thus, *Berman* and *Nguyen* compel the holding that Planner 5D's Terms of Service were unenforceable.[37]

2. <u>Planner 5D's Terms Of Service Did Not Assert Any Confidentiality Obligation.</u>

Even if Planner 5D's Terms of Service were enforceable, it is undisputed that it did not expressly assert that anything on Planner 5D's Website was confidential. Thus, it did not bind any of Planner 5D's users to maintain the secrecy of Planner 5D's alleged trade secrets. *See* Mot. at 35. Planner 5D's primary response is that the Court rejected this argument at the pleading stage. *See* Opp. at 35. However, at that point in the litigation, the Court was required to credit the allegations in Planner 5D's pleadings. Dkt. 90 at 11–12. Now, the Court must consider the record evidence. Based on that evidence, it is beyond dispute that Planner 5D failed to inform users what materials it wanted them to treat confidentially. Mot. at 35.[38]

## IV. CONCLUSION

For all the reasons stated above, the Court should enter summary judgment in Defendants' favor.

---

[36] When other website operators have argued that *Register.com* and *Cairo* authorize a broader approach to determine inquiry notice, district courts in the Ninth Circuit have rejected the arguments as being inconsistent with *Nguyen*. *See Wilson v. Huuuge, Inc.*, 351 F. Supp. 3d 1308, 1315–16 (W.D. Wash. 2018); *Benson v. Double Down Interactive, LLC*, No. 18-cv-525, 2018 WL 5921062, at *5 (W.D. Wash. Nov. 13, 2018). Accordingly, Planner 5D is wrong to suggest that *Register.com* and *Cairo* support considering evidence like the use of robot software to access a website when evaluating inquiry notice. *See* Opp. at 33–34.

[37] Planner 5D's alternative argument that inquiry notice can be established when "a defendant's conduct demonstrates that it was aware it was violating service terms" is also incorrect as a matter of law. Opp. at 34. In the only case Planner 5D cites for this proposition, the court expressly limited its holding to "instances where both parties are sophisticated businesses that use browsewrap agreements." *DHI Grp., Inc. v. Kent*, No. 16-cv-1670, 2017 WL 4837730, at *3-4 (S.D. Tex. Oct. 26, 2017). There is no evidence such circumstances are present here, and Planner 5D does not contend otherwise.

[38] The only provision Planner 5D invokes prohibits users from acquiring "any portion" of Planner 5D's Website, which includes materials that Planner 5D does not contend are trade secrets. Opp. at 35. Because Planner 5D did not inform its users which portions of its website were allegedly confidential, that clause cannot be read to notify users what they were expected to keep secret.

Dated: May 26, 2023

JENNER & BLOCK LLP

/s/ *Andrew H. Bart*
Andrew H. Bart

Attorneys for Defendant
*The Trustees of Princeton University*

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali* (with consent)
Dale M. Cendali (S.B.N. 1969070)

Attorneys for Defendants
*Meta Platforms, Inc.* and *Facebook Technologies, LLC*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

I, Andrew H. Bart, am the ECF User whose ID and password are being used to file this document. I hereby attest that concurrence in the filing of this document has been obtained from the signatories.

DATED: May 26, 2023

*/s/ Andrew H. Bart*
Andrew H. Bart

**CERTIFICATE OF SERVICE**

On May 26, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

DATED: May 26, 2023

*/s/ Andrew H. Bart*
Andrew H. Bart