UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UAB "PLANNER5D" dba PLANNER 5D,
Plaintiff,

v.

META PLATFORMS, INC., et al.,
Defendants.

Case No. 19-cv-03132-WHO

**ORDER SETTING ASIDE NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE AND ORDERING ADDITIONAL SUBMISSIONS**

Re: Dkt. No. 346

I have referred discovery in this case to the Hon. Sallie Kim. Plaintiff UAB "Planner 5D" ("Planner 5D") requests that I set aside her February 5, 2024, Order Denying Motion to Compel and Quashing Subpoena, where Judge Kim denied Planner 5D's motion to compel documents from non-party Apple and quashed its related subpoena. *See* Motion for Relief from Order of Magistrate Judge ("Relief Mot.") [Dkt. No. 346]; Order Denying Motion to Compel and Quashing Subpoena ("MJ Order") [Dkt. No. 335]. Planner 5D's motion has some merit, and I will set aside Judge Kim's order as discussed below.

**BACKGROUND**

Relevant to this motion, Planner 5D claims that "Apple obtained and presumably used" a particular dataset that defendant Princeton had created from what Planner 5D describes as "unauthorized copies of [Planner 5D's] three-dimensional works." Dkt. No. 184 at 1:11-16. That dataset is called the "SUNCG dataset." Planner 5D claims—and Apple has confirmed—that Apple asked Princeton to license that dataset (among others) for commercial projects, and Princeton declined. *See* Dkt. No. 162 at 4:11-13 (Joint Letter Brief re: Discovery Dispute, filed April 22, 2022). After that denial, Apple found and licensed what Planner 5D describes as "similar objects and scenes" from a different company, Evermotion, and used them to create a

United States District Court
Northern District of California

United States District Court
Northern District of California

different but (according to Planner 5D) comparable dataset to the one that Princeton allegedly created based on Planner 5D's works, called "Hypersim." Relief Mot. 1:20-25.[1] Planner 5D wishes to use this Evermotion license as a "benchmark license in the industry" to calculate hypothetical-license damages in this case, as "[it] will show what Apple paid for an alternative dataset and on what terms." Dkt. No. 162 at 2.

Planner 5D first sought discovery into the relevance of this license in October 2021, when it subpoenaed Apple for records concerning its interest in SUNCG. Dkt. No. 162 at 1:1. Apple began collecting responsive records, and agreed to produce responsive emails once they were collected and reviewed, although some disputes remained. *See id.* at 3:14-17. In April 2022, Planner 5D moved to compel Apple's production of "(1) the Evermotion license; (2) records of other Hypersim development expenses; and (3) records of other alternative datasets." Relief Mot. 2; Dkt. No. 162 at 1:3-6. Judge Kim denied that motion, quashed the subpoena, and directed Planner 5D to narrow its subpoena. Dkt. No. 163.

Accordingly, on May 20, 2022, Planner 5D served non-party Apple another subpoena seeking the following: (1) "All non-privileged "internal and external e-mails collected from current and former APPLE employees related to P5D and the SUNCG dataset" that APPLE was or is reviewing in response to P5D's October 2021 subpoena"; (2) "APPLE's license with a third-party to use Evermotion data ('the Evermotion License')"; and (3) the "first five purchase orders submitted under the Evermotion License that APPLE identifies after reasonable investigation." Dkt. No. 184-1. After Apple objected to producing responsive documents by a particular date, Planner 5D asked Judge Kim on June 28, 2022, to order Apple to produce "all responsive documents" within three business days of the entry of her order. Dkt. No. 184. But at that point, I had bifurcated discovery, and the motion to compel was stayed until the end of Phase 1 of discovery. Dkt. No. 187. After the stay was lifted, Judge Kim held a hearing, *see* Dkt. No. 330, and then denied the motion to compel and quashed the subpoena, holding that Requests 2 and 3, for the Evermotion License and purchase orders, were "not relevant to this litigation," and that

[1] Even after obtaining the Evermotion license, Apple asked Planner 5D for a license to its works. Planner 5D declined. *See* Mot. 1:20-26.

Request 1 was still too broad and sought information that Judge Kim considered of "minimal value." *See* MJ Order 2-3.

Planner 5D now asks that I set aside Judge Kim's order, allow Apple the chance to submit evidence or a declaration supporting its objections as to burden, give Planner 5D the opportunity to respond, and clarify the relevant law. *See* Relief Mot. 5:23-26.

In opposing Planner 5D's present motion, Apple has contested Planner 5D's version of the facts regarding the Evermotion timeline insofar as it protests that it sought the Evermotion license "at least two years before any discussions with [Planner 5D]," which it argues proves that it "did not license the Evermotion assets because it could not acquire [Planner 5D's] assets."[2] *See generally* Opposition to Relief Mot. ("Oppo.") [Dkt. No. 356]; *see also* Dkt. 162 at 4:17-24. Apple has consistently opposed production with the argument that a license between two non-parties has no bearing on this litigation, and that the burden of production on it as a non-party is too great. *See* Dkt. No. 162 at 4-5; Oppo. 3-4.

## LEGAL STANDARD

The district court may reconsider a magistrate judge's nondispositive rulings if "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "The 'clearly erroneous' standard applies to the magistrate judge's findings of fact; legal conclusions are freely reviewable de novo[.]" *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999).

## DISCUSSION

### A. Evermotion License

Judge Kim's order explained that Planner 5D confirmed at the hearing on the motion to compel that Apple's license with Evermotion "dealt with intellectual property that is completely separate from Plaintiff's data, and Plaintiff seeks this information to prove a hypothetical license between Plaintiff and Defendants for Plaintiff's different intellectual property." MJ Order 2:12-15. She then stated that "[a] license between parties for intellectual property that is not at issue in this

[2] Whether this is an accurate description of the timeline remains to be seen; Apple was about to produce emails pertaining to the question of how it obtained the Evermotion license and how the Evermotion license is related to Planner 5D's dataset before the previously explained disputes, stay, and order to quash delayed that process.

United States District Court
Northern District of California

litigation is not relevant." *Id.* 2:15-16. Given the burden on Apple, which Judge Kim determined was great, and "lack of relevance," the court found that "forcing Apple to produce documents [was] not warranted." *Id.* 2:16-19.

As Judge Kim recognized in another order granting a motion to compel defendant Meta to produce licenses for comparable but distinct datasets as relevant to a hypothetical license, Dkt. No. 159, licenses for different but comparable works, or "benchmark licenses in the industry," are a standard way to calculate hypothetical-license damages. *See Williams v. Gaye*, 895 F.3d 1106, 1128-29 (9th Cir. 2018). In this case, Planner 5D has explained why the Evermotion license may be comparable and a benchmark. *See* Dkt. 162 at 2 ("The licensing documents will show what Apple paid for an alternative dataset and on what terms[]"); *see id.* ("[h]ow much Apple spent to develop Hypersim . . . after failing to legally license [Planner 5D's] files bears directly on the value of [its] works, and thus on [Planner 5D's] damages[]"); *see also* Relief Mot. 4:10-17 (arguing that since it was precluded, by defendants' actions, from licensing the datasets, Planner 5D can only prove damages using license for comparable, not identical, datasets); Reply ISO Motion for Relief [Dkt. No. 357] 1:26-2:6 (stating that "Apple may have licensed Evermotion's data as a substitute for SUNCG, which incorporates P5D's works," and that "[t]he Evermotion works [occupy] . . . exactly the niche occupied by P5D's works."). Planner 5D alleges that it was precluded from ever licensing its data because of the actions of the defendants; it is not precluded from tethering its hypothetical license damages to evidence of a benchmark license. *See Gaye*, 895 F.3d at 1129.

The usefulness of the Evermotion license depends on the similarity of the data possessed by Planner 5D and Evermotion. Given Apple's interest in the SUNCG dataset and the not yet disputed relationship alleged by Planner 5D between the datasets, it appears that the Evermotion license could serve as a benchmark license in the industry. Accordingly, the Evermotion license is discoverable and relevant for calculating hypothetical-license damages in this case.[3] There is no

[3] Apple argues that "to the extent that any licenses to alternative datasets might be relevant, those would be licenses that *Defendants* had with other non-parties, not licenses between non-parties." Oppo. 3:18-21 (emphasis in original). That depends on the similarity of the datasets in question. While nonparties subject to discovery requests are entitled to extra protection from the courts, they

basis provided yet by Apple to conclude that it would be unduly burdensome to produce the Evermotion license. It is in line with Ninth Circuit law to use such licenses to calculate hypothetical-license damages. Apple should produce the Evermotion license by March 26, 2024.

**B. Other Requests for Production**

In addition to the Evermotion license, Planner 5D requests that Apple produce "[a]ll non-privileged 'internal and external e-mails collected from current and former APPLE employees related to P5D and the SUNCG dataset' that APPLE was or is reviewing in response to P5D's October 2021 subpoena," and "[t]he first five purchase orders submitted under the Evermotion License that APPLE identifies after reasonable investigation." *See* Dkt. No. 184-1 (outlining requests for production). Apple opposed that those requests were unduly burdensome. Dkt. No. 184 at 4:2-12. It argues the same now. *See* Oppo. 5:5-25.

Planner 5D requested that Apple be required to submit declarations or other competent evidence to support its objections about burden. *See* Dkt. No. 184 at 4:15-21.[4] Apple submitted no such declarations or evidence. It should by March 26, 2024. Planner 5D may respond by April 2, 2024, and Apple may reply by April 9, 2024. Judge Kim may then determine with a more complete record whether it is unduly burdensome for Apple to produce the emails and purchase orders that Planner 5D seeks.

**CONCLUSION**

The February 5, 2024, Order Denying Motion to Compel and Quashing Subpoena is set aside. All further papers related to this issue should be submitted to Judge Kim.

**IT IS SO ORDERED.**

Dated: March 12, 2024

William H. Orrick
United States District Judge

---

are not immune to discovery, particularly where that discovery seeks relevant information and is not unduly burdensome.

[4] The MJ Order also states that Planner 5D "does not dispute" that the burden to Apple of searching for "the first five purchase orders" is "great." MJ Order 2:16-18. But Planner 5D did dispute that burden, stating in the joint discovery brief that "Apple . . . cannot establish that it is disproportionately burdensome to produce (1) e-mails Apple has already collected and promised to produce; (2) a license it already has in hand; and (3) its five *easiest-to-find* purchase orders." Dkt. No. 184 2:22-24.