Susan J. Kohlmann (*pro hac vice*)
skohlmann@jenner.com
Cayman C. Mitchell (*pro hac vice*)
cmitchell@jenner.com
Sarah L. Atkinson (*pro hac vice*)
satkinson@jenner.com
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
T: (212) 891-1600

Kara V. Brandeisky (*pro hac vice*)
kbrandeisky@jenner.com
JENNER & BLOCK LLP
1099 New York Ave NW # 900
Washington, DC 20001
T: (202) 639-3865

David R. Singer (SBN 204699)
dsinger@jenner.com
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
T: (213) 239-5100

*Attorneys for Defendant*
*The Trustees of Princeton University*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

UAB "PLANNER5D" d/b/a PLANNER 5D,

Plaintiff,

v.

META PLATFORMS, INC.; META PLATFORMS TECHNOLOGIES, LLC; THE TRUSTEES OF PRINCETON UNIVERSITY; et al.,

Defendants.

Case No. 3:19-CV-03132-WHO
Case No. 3:20-CV-08261-WHO

**THE TRUSTEES OF PRINCETON UNIVERSITY'S REPLY IN SUPPORT OF PHASE 2 MOTION FOR SUMMARY JUDGMENT**

Hearing Date: March 28, 2025
Time: 10:00 AM
Courtroom: 2, 17th Floor
Judge: Honorable William H. Orrick

# TABLE OF CONTENTS


**I. INTRODUCTION .......... 1**

**II. ARGUMENT .......... 1**

A. Princeton Qualifies for a Section 512 Safe Harbor as a Matter of Law. .......... 1

B. The Researchers' Use of the Scenes and Objects for Noncommercial Academic Research Purposes Was Fair. .......... 3

1. The Researchers' Scholarship Was Quintessentially Transformative and Noncommercial. .......... 3

2. Planner 5D's Works Contain Minimal Protectible Expressive Content. .......... 5

3. The Researchers Used the Amount Necessary for Their Scholarship. .......... 6

4. The Researchers' Use Did Not Harm Any Actual or Potential Market. .......... 6

C. Princeton Did Not Distribute the Asserted Scene Compilation. .......... 8

1. Any Copyright in the Asserted Scene Compilation Is Limited to Its Selection. .......... 8

2. SUNCG's Selection Is Not Virtually Identical to Planner 5D's Minimally Creative Selection. .......... 10

3. The Eighteen Scenes Do Not Preclude Entry of Judgment for Princeton. .......... 13

D. Planner 5D Has Not Met Its Burden to Prove That the Objects Based on Reference Materials Are Copyrightable. .......... 14

**III. CONCLUSION .......... 15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ....................7

*AFL Telecommunications LLC v. SurplusEQ.com Inc.*,
946 F. Supp. 2d 928 (D. Ariz. 2013) ....................14

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
82 F.4th 1262 (D.C. Cir. 2023)....................3, 6

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023)....................3

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ....................9, 10, 11

*Apple Computer, Inc. v. Microsoft Corp.*,
821 F. Supp. 616 (N.D. Cal. 1993), *aff'd*, 35 F.3d 1435 (9th Cir. 1994) ....................9

*Authors Guild v. Google, Inc.*,
804 F. 3d 202 (2d Cir. 2015)....................6

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)....................7, 8

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989)....................14

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) ....................15

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*,
893 F.3d 1176 (9th Cir. 2018) ....................11, 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)....................9, 10, 11, 12

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021)....................6

*Hachette Book Grp., Inc. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) ....................3

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)....................8

*Infogroup, Inc. v. DatabaseUSA.com LLC*,
No. 14-CV-00049, 2018 WL 6624217 (D. Neb. Dec. 18, 2018), *aff'd sub nom. Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063 (8th Cir. 2020) ....12

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*,
528 F.3d 1258 (10th Cir. 2008) ....15

*Nunez v. Caribbean Int'l News Corp.*,
235 F.3d 18 (1st Cir. 2000) ....8

*Oddo v. Ries*,
743 F.2d 630, 633–34 (9th Cir. 1984) ....10

*Sega Enterprises Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) ....5, 6

*Splunk Inc. v. Cribl, Inc.*,
No. C 22-07611 WHA, 2024 WL 2701627 (N.D. Cal. May 24, 2024) ....5

*Stewart v. Abend*,
495 U.S. 207 (1990) ....10

*Tasini v. N.Y. Times Co.*,
206 F.3d 161 (2d Cir. 2000), *aff'd*, 533 U.S. 483 (2001) ....10

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc*,
No. 20-CV-00613, 2025 WL 458520 (D. Del. Feb. 11, 2025) ....4

*Weissmann v. Freeman*,
868 F.2d 1313 (2d Cir. 1989) ....4

*Worldwide Church of God v. Phila. Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000) ....4

**Statutes**

17 U.S.C. § 512 .... *passim*

**Other Authorities**

Pierre N. Leval, *Toward A Fair Use Standard*, 103 Harv. L. Rev. 1105 (1990) ....7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

After full briefing of the parties' cross-motions for summary judgment, resolution is straightforward. Both parties agree that this Court can decide as a matter of law Princeton's affirmative defenses. This Court should enter judgment that Princeton is entitled to the protection of a safe harbor under § 512 for infringement claims, and that the use of Planner 5D's Scenes and Objects for noncommercial academic research was fair and noninfringing. The material facts necessary to resolve the legal issues are undisputed: Princeton is a service provider and a nonprofit academic institution that had no knowledge of its researchers' activity, entitling it to DMCA protection, and that activity was noncommercial scholarship, quintessentially a fair use. A favorable ruling for Princeton on either § 512 or fair use disposes of Planner 5D's copyright claims. And Princeton also should prevail on the remaining issues related to copyrightability of the Asserted Objects and Asserted Scene Compilation: Planner 5D cannot meet this Court's required showing of "specific and demonstrable creative choices" in each of its Objects and the researchers did not distribute Planner 5D's Asserted Scene Compilation, even if it were copyrightable (it is not). Planner 5D's copyright claims can go no further.

## II. ARGUMENT

### A. Princeton Qualifies for a Section 512 Safe Harbor as a Matter of Law.

The Copyright Act's "Limitation on Liability of Nonprofit Educational Institutions" provides that in precisely the circumstances here, where faculty and graduate students used university computer resources for allegedly infringing activities, universities cannot be held liable for the acts of their independent researchers. Dkt. 532 ("Princeton's MSJ") at 16–19. In arguing to the contrary, Planner 5D advocates a tortured interpretation of § 512(c) and attempts to impute to Princeton the actions and knowledge of its independent researchers in violation of § 512(e). Princeton explains why those efforts fail in its opposition to Planner 5D's cross-motion, Dkt. 583 ("Princeton's Opp."), at 3–14.

The essence of the inquiry under the § 512(c) safe harbor, as modified by § 512(e), is simple: Was allegedly infringing activity involving material stored on university computers conducted by the institution itself, or by its independent researchers using those computers? And if the latter, did the institution expeditiously take down the allegedly infringing material upon receiving notification from

the copyright owner? Planner 5D does not and cannot dispute that the researchers stored data downloaded from Planner 5D's website, as well as the SUNCG dataset they developed, on computer systems operated by Princeton; that no one in the University other than the research team knew about this activity, much less that it was infringing; and that within one day after receiving Planner 5D's takedown notice, Princeton disabled access to the relevant material on its network. *Id.* Since the basic statutory eligibility requirements are not in dispute,[1] the Court should enter judgment for Princeton.

Planner 5D's arguments to the contrary—which are almost verbatim those raised in its cross-motion, *compare* Dkt. 589 ("Opp.") at 7–10, *with* Dkt. 552 ("P5D's MSJ") at 4–11—fail because they would eviscerate the protection Congress deemed necessary to protect independent academic research. *See* Princeton's Opp. at 3–14. The only new argument Planner 5D raises is that it purportedly disputes that Princeton "provide[d] to all users of its system or network informational materials that accurately describe, and promote compliance with," U.S. copyright law, as required by § 512(e)(1)(C). But Planner 5D concedes that Princeton *did* provide policies that described and promoted compliance with copyright law on its website and on the Princeton campus. Opp. at 10. It merely questions whether these were provided "in any meaningful sense," because six years after they had left Princeton, two researchers did not recall receiving those policies. *Id.* There is no dispute that Princeton did what § 512(e) requires: provide copyright compliance materials to all its users. Whether the particular researchers involved remembered them, years after they were provided, is of no consequence.

* * *

Planner 5D's opposition to the application of § 512(c) and (e) wrongly seeks to erect a divide between material stored on Princeton's website and other activity using Princeton's computers and networks, wrongly seeks to impute to Princeton the acts and knowledge of its faculty and students, wrongly asserts that conduct protected by § 512(e) actually disqualifies Princeton from its protection, and wrongly ignores the purpose and public policy behind § 512(e), compelling the entry of summary judgment in favor of Princeton and rejection of Planner 5D's attack on independent scholarship.

[1] Planner 5D does not contest that Princeton is a service provider as defined in § 512(k)(1)(B), that it is a nonprofit institution of higher education eligible for the special protection of § 512(e), that it adopted and reasonably implemented a termination policy for repeat infringers as required by § 512(i)(1)(A), and that it designated an agent to receive takedown notices as required by § 512(c)(2). Princeton's MSJ at 17.

### B. The Researchers' Use of the Scenes and Objects for Noncommercial Academic Research Purposes Was Fair.

Even without the protections of § 512, the researchers' use of Planner 5D's works "furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 531 (2023). It is undisputed that the researchers used Planner 5D's works for scholarship and academic research about machine vision and scene understanding, they received no revenue or profits from SUNCG, and third parties expressed interest in paying for Planner 5D's asserted copyrighted works only *after* the release of SUNCG and while it was still available for noncommercial use. The researchers' use of Planner 5D's asserted works was fair.

#### 1. The Researchers' Scholarship Was Quintessentially Transformative and Noncommercial.

The researchers used the Object and Scene files for a quintessentially, *presumptively* transformative purpose: scholarship and research. *See* Princeton Opp. at 15–19; 17 U.S.C. § 107 ("scholarship, or research, is not an infringement"); *Warhol*, 598 U.S. at 528. And because it is undisputed that neither Princeton nor the researchers "profit[ed] directly from . . . exploitation of the Works in Suit," the use was noncommercial. *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 186 (2d Cir. 2024). Factor one strongly weighs in favor of fair use.

Planner 5D completely ignores the fact that the accused use was scholarship and effectively concedes that academic research is a transformative purpose. It does not cite *a single case* in which a court held that use of nonacademic works for academic research was not a transformative purpose or not fair use, and Princeton is aware of none. Instead, Planner 5D contends that the researchers' distribution of SUNCG in connection with their research somehow eviscerates the transformative purpose of the research. Opp. at 12. Planner 5D cites no support for such a rule. Where, as here, copying is done in the service of "nonprofit, educational purposes" that are "fundamental[ly]" different from the copyright owner's purposes, even large-scale reproduction and distribution of a plaintiff's work can be fair. *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1267–68 (D.C. Cir. 2023); *see also Keck v. Mix Creative Learning Ctr., L.L.C.*, 116 F.4th 448, 455 (5th Cir. 2024) (finding use of paintings in educational art kits was fair).

Planner 5D's misplaced reference to "other prominent AI cases," Opp. at 12, disregards the noncommercial, scholarly nature of the use here. In the recently decided case of *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, the defendant used the copyrighted works of a competitor's legal research platform to develop its own competing commercial legal research product. No. 20-CV-00613, 2025 WL 458520, at *7 (D. Del. Feb. 11, 2025). Here, the researchers' scholarship did not compete with Planner 5D's "interior design tool." P5D's MSJ at 2. Even assuming that Planner 5D also used its works for AI training, *id.* at 14, the purpose of Planner 5D's AI training was to improve its interior design tool, not to publish scholarship about predicting contextual information in real-world interiors. These uses differ fundamentally.

Planner 5D's other factor one arguments fall flat. Opp. at 10. <u>First</u>, Planner 5D attacks a strawman by arguing that nonprofit status, alone, does not make a use noncommercial, referring to cases where, unlike here, nonprofit entities were found to have engaged in commercial use. This case is not like *Weissmann v. Freeman*, where both parties used the copyrighted material for "the same intrinsic purpose" of lectures at professional symposia and where the defendant attempted to take credit for the plaintiff's authorship. 868 F.2d 1313, 1324 (2d Cir. 1989). Here, the researchers did not merely copy Planner 5D's works and seek to pass them off as their own; they conducted significant original computer vision research and expressly credited Planner 5D as the source of data used in their work. Princeton's MSJ at 4–7, 21–22. Any boon to Princeton's or the researchers' reputations was the result of the researchers' transformative efforts, for which they paid "the usual price that accompanies scientific research and writing, that is to say, by the sweat of [their] brow." *Weissmann*, 868 F.2d at 1324. This case is also unlike *Worldwide Church of God v. Philadelphia Church of God, Inc.*, where both parties used a copyrighted religious text for the same purpose of religious observance. 227 F.3d 1110, 1118 (9th Cir. 2000). Here, the researchers "bestowed" "intellectual labor and judgment" on Planner 5D's works, and any reputational benefit was from their own labor. *Id.* at 1117 (citations omitted); *see* Princeton's Opp. at 19–20.

<u>Second</u>, Planner 5D points to voluminous patent records of third-party commercial entities that identify SUNCG as prior art. Opp. at 11–12 & Exs. 1–32. These records highlight how the researchers' transformative scholarship advanced the art of machine vision, but are otherwise irrelevant, because

even if Planner 5D had identified some commercial use by third parties relating to these patents (it has not), there is no dispute that *Princeton* never commercialized any technology using SUNCG. Princeton's Opp. at 19.

Third, there is no dispute that the SUNCG terms of use prohibited commercial uses. *Id.* When Google asked whether research using SUNCG "could eventually be used in a product or service," the researchers did not "avoid[] the question," Opp. at 12; rather, they directed Google to the SUNCG terms and stated that they would make no exceptions. Dkt. 533 ¶ 73. To the extent any third party violated those terms by using SUNCG commercially or redistributing SUNCG to someone who had not signed the terms, that would be a breach of the terms and does not bear on *Princeton's* use.

**2. Planner 5D's Works Contain Minimal Protectible Expressive Content.**

Planner 5D's factor two analysis is also fundamentally flawed. *See* Opp. at 13–14. In Phase 1, it asserted (and this Court accepted), that its works were computer programs that "instruct a computer to draw 3D objects and scenes." Dkt. 250-4 at 25; *see also* Dkt. 278 at 9. Computer programs are "functional in nature, and functional aspects are not copyrightable." *Splunk Inc. v. Cribl, Inc.*, No. C 22-07611 WHA, 2024 WL 2701627, at *4 (N.D. Cal. May 24, 2024) (second factor favored fair use for computer program); *see also Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) (second factor favors fair use because computer programs are functional).

Now, Planner 5D asks this Court to view its Objects as pictorial or sculptural works, claiming they were "digitally sculpted" based on "aesthetic criteria." P5D's MSJ at 2, 17. Planner 5D should be held to its prior position. Its asserted computer programs are mostly functional, and Planner 5D contributed little, if any, copyrightable expression to the works, *see infra* §§ II.C.1 & II.D, so the 'nature of the work' favors fair use. As to the compilation, Planner 5D concedes there was no creative arrangement to the gallery. P5D's MSJ at 1, 20–21; Opp. at 1. Planner 5D's alleged "selection" did not begin until after the downloading here,[2] and in any event was limited to approval over a pipeline of Scenes that *users* designated for inclusion in the website gallery. Opp. at 3. As to the Objects, Planner 5D contributed no more than trivial 'choices' to Objects copied from reference material, and

[2] As Princeton has explained, no reasonable jury could find Planner 5D creatively selected its Scenes since it conceded it did not begin "winnowing" its Scenes until 2017. Princeton's Opp. at 24.

its allegedly independently-created Objects were intended not to be original, but to be realistic models of real-world furniture. Dkt. 545-3 at 108:3–7. Any copyrights it has are thin, *infra* §§ II.C.1 & II.D, and factor two weighs in favor of fair use. *See, e.g.*, *Sega*, 977 F.2d at 1524.[3]

**3. The Researchers Used the Amount Necessary for Their Scholarship.**

Even copying an "entire work" may be "reasonable in relation to the purpose of the copying." *Public.Resource.Org*, 82 F.4th at 1269 (citations omitted); *see also Authors Guild v. Google, Inc.*, 804 F. 3d 202, 221 (2d Cir. 2015) ("Complete unchanged copying has repeatedly been found justified as fair use when the copying was reasonably appropriate to achieve the copier's transformative purpose and was done in such a manner that it did not offer a competing substitute for the original."). The researchers used the data for noncommercial academic research involving prediction of contextual information in scenes. Large amounts of data were required for that transformative research. Princeton's Opp. at 21. Moreover, as Princeton explained in its MSJ (at 23), this factor is less relevant here than in the typical case, because Planner 5D claims that it has thousands more Objects and millions more Scenes, but only attempted to register those that were downloaded. It is unsurprising that a copyright registration application crafted specifically for this litigation would cover all (or nearly all) the works used by the defendant and no more. This factor is at most neutral.

**4. The Researchers' Use Did Not Harm Any Actual or Potential Market.**

Almost a decade after the alleged downloading occurred, years after machine vision research has moved past SUNCG, and after submitting three separate briefs in Phase 2, Planner 5D still has not identified any harm to a market for its data. Planner 5D concedes it has never licensed its alleged works for a fee; it asserts harm only to a potential market. Opp. at 14. Contrary to the undisputed record, Planner 5D makes the conclusory assertion that "[b]y distributing P5D's entire dataset freely, Princeton and Meta harmed any potential market for P5D's works." P5D's MSJ at 19. But Planner 5D did not acquire from its users rights to commercialize their Scenes in this potential market.[4] Moreover,

[3] Planner 5D's attempt to distinguish *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021) instead shows why it demands that the second factor favor fair use. As in *Google*, here the work copied is minimally original. If anything, the "'declaring code,' which labels and organizes different programming tasks," Opp. at 13, is more creative than approving or rejecting a pipeline of Scenes selected by others.

[4] Absent an express transfer of rights, users owned any copyrights in the Scenes they created. *See* 17 U.S.C. § 201(a). Planner 5D's terms of service in 2016 *did not* grant it the right to license its users' Scenes to others for machine learning; rather, the terms granted Planner 5D only the right to use users'

third parties *did* express interest in paying to license or acquire Planner 5D's Objects and Scenes for commercial use, but only *after* SUNCG's release highlighted potential applications of the data, and *while* SUNCG was still available under noncommercial restrictions. P5D's MSJ at 18–19; Princeton's Opp. at 22. Planner 5D speculates that commercial entities that accessed SUNCG *may* have learned something commercially valuable from that access, Opp. at 11, but speculation is insufficient to overcome Princeton's demonstration of lack of market harm, Princeton's MSJ at 23–25.

Unable to substantiate any harm to actual or potential markets, or to refute the benefit it received from SUNCG, Planner 5D relies on *Campbell* and *A&M* for what it says is the "well established" proposition that "[e]ven if infringement publicizes an original work and *increases* markets for it, that does not weigh in favor of fair use." Opp. at 15 (emphasis in original). Neither *Campbell* nor *A&M* say any such thing, and it is contrary to the meaning of the fourth factor. In *Campbell v. Acuff-Rose Music, Inc.*, the Supreme Court cited a law review hypothetical about a film producer's appropriation of a composition which turns the song into a commercial success, noting that "the boon to the song does not make the film's simple copying fair." 510 U.S. 569, 590 n.21 (1994) (citing Pierre N. Leval, *Toward A Fair Use Standard*, 103 Harv. L. Rev. 1105, 1124 n.84 (1990)). But that is a comment about the overall outcome of the fair use test, not the conclusion under the fourth factor. As Judge Leval states elsewhere in the cited passage, in such a case there would be an "***absence*** of market impairment," but the taking may nevertheless be "unjustified under the ***first*** factor," leading to a finding of infringement. 103 Harv. L. Rev. at 1124 n.84 (emphases added). The same was true in *A&M Recs., Inc. v. Napster, Inc.* The Ninth Circuit held that the record companies *had* demonstrated harm to the market for audio CDs and online distribution of the works in suit. 239 F.3d 1004, 1018 (9th Cir. 2001). Then in dicta the court observed that even if Napster had shown enhancement of plaintiffs' sales, that "would not tip the fair use analysis conclusively in favor of defendant." *Id.* In other words, evidence of enhancement of sales of the copyrighted work *would have* made factor four weigh in favor of fair use, but would not have changed the overall outcome of the case. *Id.*

---

Scenes in connection with operating Planner 5D's home design tool. Dkt. 545-23. Planner 5D essentially concedes this point; its only response is that *its own* machine learning uses of the Scenes were authorized under its 2016 terms, and that that authorization was "sublicensable." P5D Opp. to Meta's MSJ at 24. In fact, through 2016, users were not required to agree to any terms to create a Planner 5D account, create Scenes, or select them for inclusion in the public gallery. Dkt. 546-16 at 8.

Thus, Planner 5D is wrong that evidence that increasing a market for the plaintiff's works "does not weigh in favor of fair use." Opp. at 15. Where the defendant's use causes no harm but instead bolsters the market for the plaintiff's work, the fourth factor clearly weighs in favor of fair use. *See, e.g.*, *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000). And indeed, that must be the law. Under Planner 5D's strained reading, *any use at all* would weigh against fair use under the fourth factor, whether it harmed or aided the market for plaintiff's works. Here, Princeton's use demonstrably caused no harm and, if anything, increased demand for Planner 5D's works. The fourth factor strongly weighs in favor of a finding of fair use.

* * *

Since no factors, including the factors the Supreme Court considers most important, *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985); *Campbell*, 510 U.S. at 578, weigh against fair use, Princeton's researchers' uses were "not an infringement," 17 U.S.C. § 107.

### C. Princeton Did Not Distribute the Asserted Scene Compilation.

#### 1. Any Copyright in the Asserted Scene Compilation Is Limited to Its Selection.

If the Court grants Princeton summary judgment under § 512 and fair use (as it should), it need not reach the other issues raised by the parties' motions. If the Court proceeds past § 512 and fair use, the Court should hold that SUNCG did not infringe the Asserted Scene Compilation.

Initially, the Court should consider the scope of Planner 5D's copyright in its Asserted Scene Compilation, because Planner 5D is attempting to claim protection well beyond its limited *selection* of preexisting, user-designed, and user-designated Scenes. Planner 5D asserts that copyright protection for its Asserted Scene Compilation is not "thin," but "fat." Opp. at 1. Thin protection, Planner 5D says, is reserved solely for compilations of *facts*, whereas its compilation "deserves far broader copyright protection because it "is made up of non-public scenes that . . . are creatively designed using P5D's copyrighted objects." *Id.* at 2–4.

Planner 5D fundamentally misunderstands the nature of a compilation. As this Court recognized nearly five years ago in dismissing with prejudice Planner 5D's alleged object compilation as uncopyrightable, "[i]n order to allege copyright protection in a compilation, a plaintiff must allege that it made creative 'choices as to selection and arrangement' of the compilation's elements such that

they 'are made independently by the compiler and entail a minimal degree of creativity.'" Dkt. 90 at 8 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991)). This Court properly acknowledged that the originality of constituent elements does not matter for the purpose of determining whether the *compilation* itself is copyrightable. *Id.* Indeed, "copyright protection may extend only to those components of a work that are original to the author." *Feist*, 499 U.S. at 348. And yet Planner 5D's opposition depends on rejecting this basic principle of copyright law, as it asks this Court to give it protection based on the creativity of its users in making Scenes and for the creativity of the reference materials from which it copied its Objects.

Whether a compilation is deserving of "thin" or "fat" protection depends solely on the extent of copyrightable expression added by the compiler. The compiler has *no* protection in *any* preexisting material it selects for the compilation that it does not otherwise own—whether it be facts, ideas, materials in the public domain, or copyrighted materials owned by others. 17 U.S.C.§ 103(b). *Feist* flatly rejects Planner 5D's view, discussing how its rule extends to any "constituent elements that are not original" to the author, not just facts. 499 U.S. at 350; *contra* Opp. at 2 ("*Feist*'s reasoning applies only to compilations of 'public domain materials'"). *Apple* also rejects Planner 5D's view; the Ninth Circuit expressly considered and rejected Apple's argument that a compilation of artistic elements in an audiovisual work must have "broader protection" than the "'thin' protection" afforded to factual compilations. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446–47 (9th Cir. 1994).

Here, it is undisputed that Planner 5D does not own copyrights in the Scenes its users created, which constituted at least 99.96% of the gallery Scenes. None of their creativity in arranging floorplans factors into the scope of Planner 5D's protection in the compilation.[5] That Planner 5D purports to also own copyrights for the Objects arranged by users does not expand the scope of Planner 5D's Asserted Scene Compilation copyright, either. "Preexisting material in a derivative work which is carried forward from a prior work is only protected under the copyrights for the prior work." *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616, 628 (N.D. Cal. 1993), *aff'd*, 35 F.3d 1435 (9th Cir. 1994).

---

[5] Planner 5D's attempt to overcome this reality by characterizing its users' Scenes as "non-public" and "privately created," Opp. at 3, is unavailing. The Scenes were *published* to Planner 5D's *public* gallery, as Planner 5D admits both elsewhere in its opposition, *id.* at 8 (Scenes came from "public gallery"), and in its registration application, which certified the Scenes were published, Dkt. 222-4 at 2.

Of course, this Court has already rejected Planner 5D's claim for a compilation copyright with respect to the Objects. *See* Dkt. 90 at 8–9. Planner 5D cannot attempt an end-run around that ruling by asserting that the Asserted Scene Compilation also protects all the Objects within it.[6]

Finally, Planner 5D tries a slippery slope argument, claiming that if Princeton is right that Planner 5D's compilation has only thin protection, "then anyone could openly steal any compilation and get away with commercializing it, royalty free." Opp. at 4. Of course, neither Princeton nor the researchers commercialized the compilation. And as the Supreme Court recognized in *Feist*, it is "neither unfair nor unfortunate" that "only the compiler's selection and arrangement may be protected" while unprotected constituent works "may be copied at will" "without compensation"; instead, that "is the means by which copyright advances the progress of science and art." 499 U.S. at 349–50.

Planner 5D's Asserted Scene Compilation, if copyrightable at all, has at most thin protection.

### 2. SUNCG's Selection Is Not Virtually Identical to Planner 5D's Minimally Creative Selection.

SUNCG does not infringe the Asserted Scene Compilation because the selection of data for SUNCG is not virtually identical to the selection for the Asserted Scene Compilation. Initially, Planner 5D is wrong to assert that the "virtual identity" standard for infringement of a compilation copyright is only applicable to factual compilations. The Ninth Circuit case that *established* the standard concerned a compilation encompassing creative works, and unlike here, those creative works were authored by the compilation author. *Apple*, 35 F.3d at 1442. The *Apple* graphical user interface was made up in large part of Apple's copyrightable expression that it had licensed to Microsoft for derivative uses. *Id.* The Ninth Circuit followed a typical copyright infringement analysis and filtered out unprotectible elements, which meant excluding material within Apple's compilation it had licensed. *Id.* Because Apple's claim was reduced to "the copying of Apple's unique selection and arrangement" of mostly-licensed elements, a virtual identity standard applied. *Id.* at 1446.

[6] If anything, the fact that the vast majority of Planner 5D's Asserted Scene Compilation consists of independently copyrightable expression from third-party users should make this Court *even more* cautious in construing the scope of Planner 5D's Asserted Scene Compilation than if the underlying Scenes were in the public domain. Planner 5D's users retain the rights to license and make derivative uses of their own Scenes. *See Stewart v. Abend*, 495 U.S. 207, 223 (1990). Any copyright in the compilation owned by Planner 5D "is independent of, and does not affect . . . the scope" of the users' rights. 17 U.S.C. § 103(b).

Planner 5D is also wrong to reject the "virtual identity" standard because it is merely a special case of the generally-applicable "substantial similarity" standard. For all works, unoriginal and unprotected material must be filtered out before determining "whether sufficient copying to constitute infringement has taken place." *Apple*, 35 F.3d at 1442. Where a plaintiff's original contributions are minimal—as in the case where the only contribution is selection—the "range of protectable and unauthorized expression is narrow," and so for an accused work to be substantially similar to the protected work, it must be virtually identical. *Id.* at 1439.

Here, Planner 5D's alleged original contributions to the Asserted Scene Compilation are "thin" by any metric. At most, it can prevent copying of its exact or nearly exact selection. *See supra* § II.C.1. Even if the 0.04% of floorplans allegedly created by Planner 5D are within the scope of Planner 5D's Asserted Scene Compilation, this tiny number of Scenes "add[s] so little to the mix of protectable material that the outcome could not reasonably be affected." *Apple*, 35 F.3d at 1445.

Planner 5D's analogy of "*The 1000 Best Road Trips*" versus "*The 920 Best Road Trips*," Opp. at 4, is unavailing. The researchers did not merely republish a large portion of Planner 5D's allegedly copyrightable expression. Rather, the researchers applied their own, independent selection criteria to develop SUNCG. In addition to omitting Scenes unsuited to their computer vision research, they also added substantial original annotations to serve their scholarly research purpose, altered and cleaned existing Scenes, and reformatted and rearranged the Scenes so that the information defining each Scene was packaged such that other researchers could easily use the data to reproduce the researchers' results. *See* Princeton's MSJ at 5–6, 15–16. As *Feist* explained, where the compilation author does not have exclusive rights in the constituent works, others are free to copy those works *from the plaintiff* "at will"; they need not copy the same material from some other source. 499 U.S. at 350.[7]

Planner 5D's argument that the Court should reject binding Ninth Circuit precedent, Opp. at 6, does not move the needle either. *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176 (9th Cir. 2018), remains good law. Commentators have criticized *Experian* in large part because

---

[7] It is ironic that Planner 5D asserts that the researchers' omission of user-designed Scenes from SUNCG merely creates an infringing derivative work and not a new, noninfringing compilation. Opp. at 5. As to *its* Objects, Planner 5D argues that "creativity may easily be expressed by the omission of features." Dkt. 588 ("P5D's Opp. to Meta's MSJ") at 22.

of the Ninth Circuit's *exclusive* reliance on quantitative overlap. *See* 1 Nimmer § 3.04; 2 Patry § 3:68 ("Infringement is a case-by-case determination and has never depended upon percentages: the qualitative nature of substantial similarity precludes it."). But that criticism does not affect the analysis here. Whatever the merits of a percentage-overlap-only analysis approach, no reasonable jury could find that the researchers' selection for SUNCG was both quantitatively and qualitatively similar to the Asserted Scene Compilation.[8]

Far from correcting for any such error, Planner 5D redoubles it by asking the Court to find that there was *per se* infringement of Planner 5D's compilation simply based on quantitative overlap, without qualitatively analyzing what original contributions Planner 5D can claim, and what of those contributions actually appear in SUNCG. Opp. at 4. Planner 5D's "selection" copyright is so thin that even small deviations in the Scenes the researchers chose to include in SUNCG demonstrate significant rejections of Planner 5D's purported "selection."

Indeed, Planner 5D's reliance on *Infogroup, Inc. v. DatabaseUSA.com LLC* shows that even high statistical overlap is not sufficient for a finding of infringement. No. 14-CV-00049, 2018 WL 6624217, at *12 (D. Neb. Dec. 18, 2018), *aff'd sub nom. Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063 (8th Cir. 2020). *Infogroup* found only one of the defendant's works was infringing, in large part because of an adverse inference arising from the defendant's spoliation of evidence. 2018 WL 6624217, at *12. By contrast, for another of defendant's compilations where the adverse inference did not apply, the court held that a 91% match rate was, "without more," insufficient to prove virtually identical copying and infringement. *Id.* Thus, Planner 5D's assertion that the researchers' use of 92% (by its calculation) of gallery Scenes was infringement "[b]y any reasonable standard" is contradicted by the very case it cites for that proposition. Opp. at 4.[9]

[8] Moreover, Planner 5D's "selection" is *even less* creative than the plaintiff's selection in *Experian*. Experian "pick[ed] from roughly 2,200 public and proprietary sources that it believes have reliable, value-adding data" regarding consumer name and address pairings, before measuring, reviewing, and validating the potential new contributions for quality and valuableness to clients. *Id.* at 1180. Here, Planner 5D has conceded it did not "winnow" Scenes until after the downloading. Princeton's Opp. at 24. But at most, Planner 5D did no more than review a pipeline of user-created Scenes that *users*, not Planner 5D, nominated for inclusion in the gallery in the first instance. Opp. at 3. This "selection" process is more reminiscent of *Feist*, where the telephone book simply published data provided to it by its subscribers. 499 U.S. at 362.

[9] Planner 5D's suggestion that the researchers' removal of thousands of duplicate Scenes increases the statistical similarity of the works, Opp. at 4, 14, actually further confirms the qualitative dissimilarity

Finally, Planner 5D's assertion that Princeton "is liable for distributing SUNCG wholly apart from whether SUNCG infringes," Opp. at 5, defies law and logic. If SUNCG does not infringe Planner 5D's copyrights, then Princeton is not liable for infringement for its distribution. Planner 5D's compilation copyright, if it exists at all, is thin, and was not infringed by SUNCG. Therefore, as a matter of law, Princeton is not liable for distribution of Planner 5D's Asserted Scene Compilation.

**3. The Eighteen Scenes Do Not Preclude Entry of Judgment for Princeton.**

Planner 5D asserts that SUNCG infringes 18 Scenes that Planner 5D's employees authored. Opp. at 6. Not so. There is a reason that Princeton did not (and need not) seek summary judgment on infringement of those 18 Scenes: infringement of those individual Scenes is not a claim in this case.

Planner 5D sought registration of a compilation of Scenes, not individual Scenes. This Court has already held in the context of rejecting one of Planner 5D's earlier deficient copyright claims that Planner 5D's claims must be confined to the scope of its registration applications. Dkt. 90 at 6–8. While a registration for a compilation can sometimes cover constituent works that are owned by the compilation author, that is *not* the case where the certificate does "not identify [the] unregistered preexisting works" that are the foundation of the action. *Id.* at 7 (citing *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229–30 (11th Cir. 2008); *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 529 (S.D.N.Y. 2004)). Thus, in this Court's second dismissal of the compilation claim, it rejected Planner 5D's argument that its registration of a 2019 scene compilation "encompass[ed] each individual object and each compilation of scenes" that was a subset of the 2019 compilation registered. *Id.* at 6. That same logic applies with full force here; Planner 5D's 2016 scene compilation does not "encompass each individual" Scene. *Id.* Planner 5D has no registration, so the Court must look to the scope of its refused application, which is docketed at Dkt. 222-4. Not only does Planner 5D's application for its Asserted Scene Compilation nowhere mention that it asserts protection in preexisting, unregistered, individual Scenes by Planner 5D, but it also expressly *excludes* a claim to "preexisting elements of Planner 5D's computer program." *Id.* at 2. The

---

of the copyrightable expression. Planner 5D's selection criteria apparently did not include eliminating redundancy, while the researchers thought it was critical to remove duplicate Scenes so their models trained on a diverse dataset without bias toward any one particular type of Scene. Where the only claimed creativity is selection, this is an important indication that the researchers used different selection principles.

only new material Planner 5D states is the subject of its registration application is the "selection, coordination and arrangement of derivative works created by third parties." *Id.* As at this case's motion to dismiss stage, and in *Oravec* and *I.M.S.*, Planner 5D's registration does not "cover the alleged works at issue," Dkt. 90 at 7, so it cannot pursue infringement of the 18 individual Scenes. *See also AFL Telecommunications LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 941 (D. Ariz. 2013) (registration specifically excluding "previous version" of work cannot be used to sue over that work).

Even if the 18 Scenes were encompassed within the scope of Planner 5D's refused application, they are no impediment to granting Princeton's MSJ. Planner 5D bears the burden of establishing its ownership of a valid copyright in those Scenes. *See* Dkt. 278 at 9, 15. But Planner 5D has provided no evidence of ownership, including proof that the human authors of the 18 Scenes transferred ownership in those Scenes to Planner 5D. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (absent an express transfer of rights or a showing that a work was made for hire, copyright is presumed to vest with the author (citing 17 U.S.C. § 201)). And it has provided no evidence of creativity, such as testimony from the Scenes' authors about their creation. Mere conclusory statements that "creative judgment [is] unavoidable" in creating Scenes, P5D's Opp. to Meta's MSJ at 16, fares no better than its statements that the 3D Objects are inherently creative.

### D. Planner 5D Has Not Met Its Burden to Prove That the Objects Based on Reference Materials Are Copyrightable.

Planner 5D's opposition presents no new evidence of "specific and demonstrable *creative* choice[s]" that it made with respect to the Objects based on reference material. Dkt. 278 at 22 (emphasis added). Instead, it devotes its entire argument on object copyrightability to seeking to overturn this Court's Phase 1 opinion granting summary judgment to Defendants. Planner 5D says that when its modelers made 3D copies of reference material, the copying "inherently," "necessarily," "inevitabl[y]," and "always" required choices for "any 3D model . . . even from a reference image." P5D's Opp. to Meta's MSJ at 17–20. This Court already rejected that expansive view of copyrightability in its Phase 1 SJ Order, expressly directing Planner 5D to identify its creative choices in Objects based on reference images because such models *are not* inherently original. Dkt. 278 at 13–

14, 22. The "modelers' choices" made in copying 3D Objects from reference material did not "yield[] an original product." *Id.* at 14; *see also id.* ("'mesh' choices are insufficient to establish creativity").

The same reasoning holds with respect to the alleged "texture choices." Planner 5D describes different methods for representing a wood grain or a fish's scales. P5D's Opp. to Meta MSJ at 19–20. But regardless of whether Meta's expert chose to use a repeating texture or Planner 5D's modeler chose to use a single wood grain image, they both created a slatted bench with a wood grain. Tellingly, Planner 5D describes these "choices" as "solutions." P5D's Opp. to Meta's MSJ at 18, 20. A "solution" to the technical problem of converting a 2D image to a 3D model is not a "creative" choice—that's precisely what *Genesis*, *ABS,* and *Meshwerks* stand for. *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1223 (9th Cir. 1997) ("[T]hese so-called artistic differences are really nothing more than changes necessitated by utilitarian concerns."); *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 420 (9th Cir. 2018) ("[T]he reason for the remastering was to overcome the technical limitations of vinyl."); *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*, 528 F.3d 1258, 1267 (10th Cir. 2008) (noting that although the wire models did not "recreate Toyota vehicles outright—steel, rubber, and all," "what Meshwerks accomplished was a peculiar kind of copying").

Planner 5D's theory is also untenable because it would eviscerate the rights of the creators of the reference material. As explained, copyright protection in a derivative work "extends only to the material contributed by the author of such work, . . . and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." 17 U.S.C. § 103(b). Planner 5D's copyrights, to the extent they exist, cannot interfere with the scope of the underlying copyrights to the works Planner 5D used as reference materials (including the designs of the furniture and photographs of the reference images). Planner 5D has failed to come forward with any evidence of copyrightability other than its blanket assertion that everything its modelers did was creative, so its copyright claims as to the Objects copied from reference materials fail as a matter of law.

## III. CONCLUSION

For the foregoing reasons, Princeton respectfully requests that the Court enter summary judgment in Princeton's favor on all copyright claims.

Respectfully submitted,

DATED: February 5, 2025

JENNER & BLOCK LLP

*/s/ Susan J. Kohlmann*

Susan J. Kohlmann

*Attorneys for Defendant The Trustees of Princeton University*