UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UAB "PLANNER5D",<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>META PLATFORMS, INC., et al.,<br><br>　　　　Defendants. | Case No. 19-cv-03132-WHO<br><br>**TENTATIVES AND HEARING PROCEDURE**<br><br>Re: Dkt. Nos. 532, 541, 552 |

At tomorrow's hearing, defendant the Trustees of Princeton University ("Princeton") and plaintiff UAB "Planner 5D" ("Planner 5D") will first address the Princeton-related issues. Each side will have 20 minutes. Princeton goes first. Then defendant Meta Platforms, Inc. ("Meta") and Planner 5D will address the Meta-related issues for 20 minutes each (or less). Meta goes first. Following that, Princeton and Meta will each have 10 minutes to sum up, and Planner 5D shall have 15 minutes.

Below are the tentatives.

## COPYRIGHT INFRINGEMENT

**With respect to the copyrightability of Planner 5D's Objects listed on Exhibits B-D of the Narrowed Objects List:**

- The Objects for which Planner 5D states that its **modeler used a reference image when creating the Object, but for which no known reference image has been produced** (all Objects in Exhibit D and most in Exhibit C), are not copyrightable. These are the Objects for which only a "reverse-image search" reference image has been made available to the court, and there is no reliable way to compare an Object with a speculative reference image and determine whether the differences between the two are non-trivial such that the modeler exhibited the required "creative spark" in fashioning the three-dimensional model.
- The Objects for which Planner 5D states that its **modeler used a reference image when creating the Object, and for which a reference image has been produced** (either through examination of the Object's metadata or in the context of the business-to-business Objects), may be copyrightable depending on whether a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

reasonable trier of fact could determine that the differences between the Object and the reference are non-trivial.
- To meet the threshold of creativity, when compared with a reference image for the Object, (1) the Object must contain a non-trivial difference, (2) the intent of creating the object must not be to create an exact replica of the reference, and (3) any difference must not arise entirely from functional considerations or technical limitations. If a Planner 5D modeler included additional elements on the Object that were not present in the known reference image, those elements <u>are</u> creative choices, and Planner 5D may hold a valid copyright in that Object. Differences in shape, proportion, color, transparency, and texture between a modeled Object and the reference image <u>can</u> be creative if the difference is non-trivial, the intent of creating the object was not to create an exact replica of the reference, and the difference did not arise merely from functional considerations or technical limitations.
- I will ask the parties to further winnow the Narrowed Objects List prior to the Pretrial Conference. Then I can determine that Planner 5D holds a valid copyright for certain Objects and provide a list of certain other Objects to the jury for their determination on copyright status (because reasonable triers of fact could disagree about whether the differences between the Object and its identified reference image are trivial).

**With respect to whether the defendants infringed upon Planner 5D's Asserted Scene Compilation through either the SUNCG dataset, the SUMO dataset, or both:**
- **The SUNCG dataset**: I am inclined to <u>deny</u> both defendants' motions for summary judgment on Planner 5D's infringement claim with respect to the Asserted Scene Compilation and the SUNCG dataset. As a compilation of copyrighted and non-copyrighted work, the Asserted Scene Compilation is entitled to thin copyright protection. The defendants may be liable for infringement if the compilations at issue—the SUNCG and SUMO datasets—are "substantially similar" to Planner 5D's Asserted Scene Compilation. Disputes of material fact persist as to the degree of similarity between the Asserted Scene Compilation and SUNCG, meaning that the copyrightability of the Asserted Scene Compilation and the defendants' potential liability for distributing datasets compiled from it are unresolved. *Experian* does not apply directly to resolve this issue as a matter of law; even if it did, *Experian* would support a finding of substantial similarity on a quantitative level, given the 92% match rate between the Asserted Scene Compilation and the SUNCG dataset. Substantial similarity is a question for the jury to decide. I am also inclined to <u>deny</u> Meta's motion for summary judgment that it did not infringe upon the 18 user-created scenes; disputes of material fact persist as to creativity with respect to those scenes.
- **The SUMO dataset**: I am inclined to <u>grant</u> Meta's motion for summary judgment on Planner 5D's infringement claim with respect to the Asserted Scene Compilation and the SUMO dataset. Planner 5D cannot demonstrate substantial similarity between its Asserted Scene Compilation and SUMO. Meta compiled SUMO by selecting a subset of scenes from SUNCG and compiling them into a new dataset. This compilation is too attenuated from the Asserted Scene Compilation for Planner 5D to show that the two are substantially similar.
- I am inclined to <u>deny</u> Planner 5D's motion for summary judgment that Princeton is liable for the initial scraping of its data and compiling it into the SUNCG dataset

regardless of the copyright status of the comprising Objects.  As discussed, disputes of fact persist as to the copyrightability of the Asserted Scene Compilation itself.

**With respect to whether Meta is also liable for indirect copyright infringement:**
- I am inclined to deny Meta's motion for summary judgment on indirect copyright infringement.  Planner 5D has made a threshold showing of direct infringement against Meta and has produced evidence suggesting that Meta was responsible for encouraging or inducing others to infringe upon Planner 5D's data through its use of the SUNCG dataset in its House3D and Habitat projects, both of which had commercial elements, suggesting that it could be found liable for either contributory infringement, vicarious infringement, or both.

## TRADE SECRETS

**With respect to whether Meta is entitled to summary judgment in its favor on Planner 5D's Trade Secrets claims:**
- I am inclined to deny Meta's motion for summary judgment on Planner 5D's trade secrets claims.  I am not persuaded by Meta's argument that any trade secret protection Planner 5D had in its data was "extinguished" by the time Meta acquired the SUNCG dataset; Princeton's granting access to the SUNCG dataset on a per-request basis to fewer than 25 people before Meta acquired SUNCG did not render the trade secret information "generally known" or "public knowledge."  There are also material disputes of fact concerning whether Meta was in "privity" with Princeton in light of the Facebook fellowship, collaboration on the Enigma virtual reality project, and Meta's support of Song's project, and concerning whether Meta had "reason to know" that the data in the SUNCG dataset was misappropriated.

## AFFIRMATIVE DEFENSES

**With respect to whether Princeton can assert a "safe harbor" affirmative defense under the Digital Millenium Copyright Act (the "DMCA"), 17 U.S.C. § 512:**
- I am inclined to deny Princeton's motion for summary judgment on the safe harbor defense, at least with respect to liability arising from Dr. Funkhouser's actions in his role as an agent of Princeton.  Princeton's purported liability for copyright infringement does not arise "by reason of the storage [of allegedly infringing material] at the direction of a user," as would be necessary for § 512(c) to apply; it arises from its researchers' actions.  Princeton argues that § 512(e) divorces its researchers' alleged misconduct from the university such that all the university did *itself* giving rise to liability was *host* the allegedly infringing material at the direction of its users, meaning that § 512(c) *can* provide it shelter from Planner 5D's copyright claims.  Neither party offers a case interpreting § 512(e), but left with the statutory language and the Congressional Committee Report concerning the DMCA's enactment, it appears that the nature of Princeton's researchers' conduct (namely, Funkhouser's direct use of SUNCG in his coursework and one-on-one student advising) takes Princeton outside of the § 512(e) safe harbor.  I agree with Princeton that Congress's intent in enacting § 512(e) was to ensure that courts would not be tempted to invoke the otherwise naturally applicable doctrine of *respondeat superior* to attribute researchers' potentially infringing actions to their employers where the employer university *should* be insulated from liability.  But I am not convinced either way that this situation is like what § 512(e)

3

contemplates. Princeton and Planner 5D should focus upon whether and why the doctrine of *respondeat superior* should or should not apply to attribute Funkhouser's actions with respect to SUNCG to Princeton, and provide analogous precedent if possible. I would also like the parties to clarify the nature and extent of any financial relationship that was spurred by or involved Princeton's researchers' work surrounding the SUNCG dataset that may have existed between Princeton and Meta between 2016 and 2019.

**With respect to whether either defendant may assert a "fair use" defense against Planner 5D's copyright claims:**

- I am inclined to <u>deny</u> the motions for summary judgment on the "fair use" defenses. The defendants' use was not "transformative," and the market effects were negative for Planner 5D. At oral argument, I would like the parties to address Factors One and Four of the "fair use" test outlined by the United States Supreme Court, i.e. the "purpose and character of the use" by defendants and the "market effects" of the use. I would also like the parties to discuss the comparison of Planner 5D's Objects and Scenes to the computer programming script at issue in the case *Google LLC v. Oracle America, Inc.*, 593 U.S. 1 (2021), the likes of which the Supreme Court held to be "far from the heart of copyright." This goes to the second "fair use" factor, the "nature of the copyrighted work." I am unpersuaded by the comparison, but as this case requires application of the "fair use" defense to a novel work, further discussion may be helpful.

Dated: March 27, 2025



William H. Orrick
United States District Judge